IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SHANNON PEREZ et al., | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | **CIVIL ACTION NO.** |
| | § | **5:11-CV-0360-OLG-JES-XLR** |
| STATE OF TEXAS et al., | § | |
| | § | |
| *Defendants*. | § | |

## MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

Defendants the State of Texas, Rick Perry, David Dewhurst, Joe Straus, and Hope Andrade hereby move to dismiss Plaintiffs' Second Amended Complaint with prejudice pursuant to Rules 12(b)(1) and 12(b)(6).[1]  In support of their motion, Defendants respectfully submit the following memorandum of points and authorities.

## INTRODUCTION

Plaintiffs' Second Amended Complaint ("Complaint") challenges the recently enacted redistricting plan for the Texas House of Representatives and the apportionment base used to draw Texas House and congressional districts.  The Complaint presents purely legal issues that are ripe for immediate resolution.

First, Plaintiffs claim that the variation in population among Texas House districts violates the Fourteenth Amendment's one-person, one-vote principle.  That claim is foreclosed by well-settled Supreme Court precedent holding that the Equal Protection Clause permits state legislative districts to vary in population as long as the total deviation (*i.e.*, the difference

---

[1] Defendants' previously filed a Motion to Dismiss Plaintiffs' First Amended Complaint, which is now moot in light of the Court's June 17, 2011 Order granting Plaintiffs leave to file their Second Amended Complaint.  *See, e.g.*, *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam) ("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading.") (citing *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir.1985)).

between the most and least densely populated districts) is less than 10% of the ideal district population. *See, e.g.*, *Brown v. Thomson*, 462 U.S. 835, 842–43 (1983). In hopes of creating a claim, Plaintiffs allege that the Texas House plan is not entitled to the 10% safe harbor traditionally accorded state redistricting plans because it is "blatantly a political gerrymander" and because it contains excessive deviation that is not the product of a good-faith effort to achieve population equality. The fact that the House plan is concededly within the 10% safe harbor requires Plaintiffs to rebut the presumption that the Legislature acted in good faith. Their conclusory statement that the plan is a "political gerrymander," unsupported by a single factual allegation, is not sufficient to pass the notice pleading standard or to shift the burden to the State. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Dismissal with prejudice is the appropriate remedy.

Second, Plaintiffs claim that the State's practice of counting prisoners as residents of the county in which they are incarcerated results in unconstitutional population deviations between Texas House and congressional districts. This argument, too, fails as a matter of law. While the State is prepared to stipulate that some, perhaps many, of its prisoners reside in a county not of their choosing, the decision of where their representation should lie is vested exclusively in the discretion of state lawmakers. Plaintiffs cannot cite any relevant state or federal law to support their theory. Their claim should be dismissed with prejudice.

Finally, and independent of their substantive shortcomings, Plaintiffs' claims fall outside the Court's subject matter jurisdiction. Plaintiffs lack standing to pursue any of their claims because they fail to identify a concrete, individualized injury caused by the Texas House and congressional redistricting plans, and it is evident that the declaratory relief they seek will not

redress their purported—but unstated—injuries.    Moreover, Plaintiffs' challenge to the enumeration of the prison population presents a nonjusticiable political question.

## LEGAL STANDARD

Dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) is required when the court lacks constitutional and statutory power over the case.  *E.g.*, *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).  Plaintiffs bear the burden of establishing this Court's subject matter jurisdiction, *see Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), including their own standing to sue, *see Cobb v. Central States*, 461 F.3d 632, 635 (5th Cir. 2006).  To establish constitutional standing under Article III, § 2, a plaintiff must "demonstrate that he has suffered 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Under Rule 12(b)(6), the Court must accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.  *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004).  However, the plaintiff must provide more than conclusory factual allegations or a mere recitation of the elements of its claims.  *See Iqbal*, 129 S.Ct. at 1949.  "To survive a Rule 12(b)(6) motion, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 129 S.Ct. at 1950.

Because the Court must evaluate its jurisdiction before proceeding to the merits, Defendants address the jurisdictional question first.  *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94–95 (1998).

## ARGUMENT AND AUTHORITIES

### I.   Subject Matter Jurisdiction Is Lacking in Multiple Respects.

#### A.   Plaintiffs Lack Standing to Pursue Any of Their Claims Because They Do Not Identify a Concrete Injury.

Plaintiffs lack standing because they do not identify any individual harm caused by the State's redistricting plans.  To establish standing, the plaintiff must identify "a concrete and imminent invasion of a legally protected interest that is neither conjectural nor hypothetical." *Lujan*, 504 U.S. at 560.   Plaintiffs do not allege that their own electoral districts are overpopulated or that they have otherwise been harmed by the challenged redistricting plans. The complete failure to identify an injury deprives Plaintiffs of standing and divests this Court of subject matter jurisdiction.

#### B.   Plaintiffs Cannot Establish a Causal Link Between the Classification of Prisoners and Their Alleged Injury.

Plaintiffs cannot establish the causal link necessary for standing because they do not identify a feasible alternative method of counting prisoners that would have prevented their alleged injury.  *See Nat'l Law Center on Homelessness & Poverty v. Kantor*, 91 F.3d 178, 183 (D.C. Cir. 1996) ("To demonstrate that their injury was caused by the S-Night count [of homeless persons], appellants must show that the homeless were improperly undercounted by the S-Night methodology *as compared to a feasible, alternative methodology*.") (citing *Franklin v. Massachusetts*, 505 U.S. 788, 802 (1992) (plurality)); *Kaplan v. County of Sullivan*, 74 F.3d 398, 399–400 (2d Cir. 1996) (holding that the plaintiff lacked standing to challenge the exclusion of

prisoners from the county's apportionment base because he could not show that including prisoners would strengthen his vote); *Federation for Am. Immigration Reform v. Klutznick*, 486 F. Supp. 564 (D.D.C. 1980) (holding that plaintiffs lacked standing because they could not show that adjusting the Census to exclude illegal aliens would increase their representation).  Because Plaintiffs fail to present a feasible alternative method and demonstrate that it would have prevented their injury, they cannot carry their burden of establishing standing.

### C. Any Injury Caused by the Classification of Prisoners Is Not Redressable by this Court.

Plaintiffs also fail to show that their purported injuries will be redressed by the declaratory relief they seek.[2]  They do not explain, for example, how the Court's declaration of "the law with respect to the appropriate allocation of the state's prison population" or "the law with respect to the requirements of one person-one vote," Complaint at 5, will correct the alleged defects in the State's electoral districts.  They effectively request an advisory opinion.

Plaintiffs do not even attempt to explain how prisoners should be counted or how a different method would improve their position.  In a similar claim alleging an undercount of homeless persons, the D.C. Circuit found redressability lacking because the plaintiffs did not propose a feasible alternative method that would correct the undercount.  The Court explained that the plaintiffs

> would have us appoint a commission to formulate a better methodology.  We can hardly assume that a commission of as-yet unnamed persons, using as-yet unidentified methodologies, will devise a better homeless count that will redound to appellants' benefit.

*Nat'l Law Center*, 91 F.3d at 183.  Because Plaintiffs have made no effort to propose an alternative methodology, much less address the formidable practical obstacles posed by

---

[2] Plaintiffs' only request for injunctive relief relates to the congressional and House districts in place before the 2010 Census.  These claims are moot because new electoral districts have been drawn by the Legislature.

reclassifying the entire state prison population, they cannot show that a favorable decision from the Court will redress their purported injuries.

### D.  The Classification of Prisoners Presents a Nonjusticiable Political Question.

Plaintiffs' challenge to the State's classification of prisoners is not justiciable because the State's choice of a population base for the purposes of drawing electoral districts presents a nonjusticiable political question.  *See Chen v. City of Houston*, 206 F.3d 502, 528 (5th Cir. 2000) (characterizing the use of total population rather than citizen voting age population for local redistricting as an "eminently political question [that] has been left to the political process"); *cf. Burns v. Richardson*, 384 U.S. 73, 92 (1966) ("The decision to include or exclude any such group [of aliens, transients, temporary residents, or persons denied the vote for conviction of crime] involves choices about the nature of representation with which we have been shown no constitutionally founded reason to interfere.").

### E.  The Eleventh Amendment Precludes State Law Claims.

Plaintiffs allege that the State's redistricting efforts are based on a misinterpretation of Texas Election Code § 1.015, which addresses the residence of institutional inmates for voting, not representational or redistricting, purposes.  To the extent Plaintiffs assert a claim for violation of the Texas Election Code, it is precluded by the Eleventh Amendment, which bars suits in federal court against a state or state officials, in their official capacities, for violations of state law.[3]  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105–06 (1984).

---

[3] In any event, Plaintiffs' challenge to the House redistricting plan is plainly foreclosed by the Texas Constitution, which requires the State to draw House districts based on the total Census population.  *See* TEX. CONST., art. III, § 26.

**II. Plaintiffs Fail to State a Claim Upon Which Relief May Be Granted.**

**A. Plaintiffs' Request for Declaratory Relief Regarding the Standard of Population Equality Contradicts Clearly Established Law.**

Plaintiffs complain that Texas has failed to make a "good faith effort to achieve population equality," instead redistricting with the "goal [of] achieving a deviation of 10%." Complaint ¶ 16. Plaintiffs imply that state legislative districts must have exactly the same population unless the state can justify any difference by reference to "valid neutral state policies." *Id.* This is directly contrary to basic Fourteenth Amendment doctrine. The Supreme Court has held that the least populated district and the most populated district may deviate from the ideal district population by up to 5%—creating a total deviation of up to 10%—without violating the Equal Protection Clause, or even compelling the state to explain the difference in population among districts. Significantly, Plaintiffs do not (and cannot) allege that the House redistricting plan exceeds the 10% threshold.

The State's constitutional obligation to "make an honest and good faith effort to construct districts, in both houses of its legislature, as nearly of equal population as is practicable," *Reynolds v. Sims*, 377 U.S. 533, 577 (1964), does not require that House districts contain exactly the same number of persons. The Supreme Court has expressly rejected the proposition "that *any* deviations from absolute [population] equality, however small, must be justified to the satisfaction of the judiciary to avoid invalidation under the Equal Protection Clause." *White v. Regester*, 412 U.S. 755, 763 (1973). A deviation of less than 10% is considered to be *de minimis* and consistent with the Constitution. *See, e.g.*, *Brown*, 462 U.S. at 842–43 ("Our decisions have established, as a general matter, that an apportionment plan with a maximum population deviation under 10% falls within this category of minor deviations.").

Plaintiffs suggest that the 10% threshold has no place in the age of computerized redistricting.   The Supreme Court's decisions, however, are not based on the difficulty of drawing districts with exactly the same number of inhabitants.   The governing legal principle is not that all districts must have precisely the same population, but rather that each district's population be equitable.  *See, e.g.*, *Gaffney v. Cummings*, 412 U.S. 740–41 (1973) (holding that a total deviation of 7.83% did not state a prima facie claim, even if a smaller deviation were possible).   Plaintiffs ignore not only the inherently political nature of this inquiry but the many competing legal imperatives under which the Legislature operates.  *See, e.g.*, TEX. CONST., art. III, § 26 (directing the Legislature to keep counties whole whenever possible in drawing Texas House districts).   In any event, the 10% threshold remains the law until the Supreme Court says otherwise.

### B. Plaintiffs' Challenge to the State's Classification of the Prison Population Lacks Any Basis in Federal Law.

Plaintiffs allege that the State's classification of prisoners results in "excessive population deviation" among electoral districts for the Texas House of Representatives.   Complaint ¶ 16. Plaintiffs concede that the existing practice has produced a House plan with a deviation of less than 10%.   Plaintiffs' claim therefore hinges on the legality of the State's classification of prisoners.   Unless the Constitution requires prisoners to be counted somewhere else (or not counted at all), counting them where they are incarcerated cannot rationally be said to produce a deviation in population.

The State's classification of prisoners is subject to rational-basis scrutiny.  *See Mahan v. Howell*, 410 U.S. 315, 326 (1973) ("[T]he proper equal protection test [of one person one vote claims] is not framed in terms of 'governmental necessity,' but instead in terms of a claim that a State may 'rationally consider.'") (quoting *Reynolds v. Sims*, 377 U.S. at 580–81); *see also Daly*

*v. Hunt*, 93 F.3d 1212, 1218 n.8 (4th Cir. 1996) (commenting on the absence of strict scrutiny review in one-person, one-vote claims under the Equal Protection Clause).  Classifying prisoners as residents of the districts in which they are incarcerated is indisputably rational because each prisoner lives in the district where his or her prison cell is located.  *See Borough of Bethel Park v. Stans*, 449 F.2d 575, 578, 582 (3d Cir. 1971) (rejecting a challenge to the Census Bureau's enumeration of prisoners, college students, and military personnel as residents of the place of their respective institutions, holding that the Bureau's policy had a rational basis); *cf. District of Columbia v. U. S. Dept. of Commerce*, 789 F. Supp. 1179 (D.D.C. 1992) (holding that the Census Bureau's usual-residence rule was not arbitrary and capricious but a rational exercise of discretion).  Moreover, any alternative approach raises substantive and procedural complexity that the Legislature wisely avoids under the existing test.  *See, e.g.*, Greg A. Greenberg & Robert A Rosenheck, *Jail Incarceration, Homelessness, and Mental Health: A National Study*, 59 PSYCHIATRIC SERVICES 170 (2008) (describing a study showing substantially higher rates of homelessness among jail inmates preceding incarceration compared to the general population).  In any event, the Supreme Court has never suggested that the Equal Protection Clause prohibits states from counting persons as residents of the legislative districts where they actually live.

### C.   Plaintiffs' Allegation of Political Gerrymandering Is Not Sufficient to State a Claim for Relief or to Rebut the Presumption of Good Faith.

Plaintiffs assert that the Texas House redistricting plan is not entitled to the traditional 10% safe harbor or a presumption of good faith because it is "blatantly a political gerrymander." Complaint ¶18.  They fail to identify the elements of their claim, however, much less allege facts to support it.  Their conclusory allegation is plainly insufficient to state a claim.  *See, e.g.*, *Iqbal*, 129 S.Ct. at 1950 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the

pleader is entitled to relief.'") (quoting FED. R. CIV. P. 8(a)(2)); *see also Duckworth v. State Admin. Bd. of Election Laws*, 332 F.3d 769, 777 (4th Cir. 2003) (holding that the plaintiff failed to state a claim because he did not "plead facts adequate to prove *Davis* [*v. Bandemer*'s][4] two required elements").

The Supreme Court's 10% threshold operates as a burden-shifting mechanism in challenges to state legislative redistricting plans. "If a population deviance is less than 10%, it is considered minor and does not suffice, alone, to make out a prima facie case of discrimination." *Fairley v. Hattiesburg*, 584 F.3d 660, 675 (5th Cir. 2009). Plaintiffs' conclusory allegation of political gerrymandering is not sufficient to shift the burden to the state. Their claim must be dismissed.

The Supreme Court's summary affirmance in *Georgia v. Larios*, 542 U.S. 947 (2004), confirms the validity of the 10% threshold. The district court acknowledged that legislative plans with a total deviation of less than 10% "are presumptively constitutional, and the burden lies on the plaintiffs to rebut that presumption." *Larios v. Cox*, 300 F. Supp. 2d 1320, 1341 (N.D. Ga.), *aff'd sub nom. Georgia v. Larios*, 542 U.S. 947 (2004). It held that Georgia's redistricting plans violated the Equal Protection Clause because they were motivated by "deliberate regional favoritism," which "created more than a taint of arbitrariness and discrimination," *id.* at 1347, and because the legislature systematically underpopulated Democratic districts and overpopulated Republican districts. *See id.* at 1348. The plaintiffs in *Larios* thus presented both allegations and evidence to rebut the longstanding—and still applicable—presumption that a redistricting plan within the 10% threshold is constitutional. The Plaintiffs make no factual allegations whatsoever.

---

[4] 478 U.S. 109 (1986).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiffs' Second Amended Complaint with prejudice.

Dated: July 1, 2011                                      Respectfully Submitted,

                                                         GREG ABBOTT
                                                         Attorney General of Texas

                                                         DANIEL T. HODGE
                                                         First Assistant Attorney General

                                                         BILL COBB
                                                         Deputy Attorney General for Civil Litigation

                                                         DAVID C. MATTAX
                                                         Director of Defense Litigation

                                                         J. REED CLAY, JR.
                                                         Special Assistant and Senior Counsel
                                                         to the Attorney General


                                                         */s/ David Schenck*
                                                         DAVID SCHENCK
                                                         Deputy Attorney General for Legal Counsel
                                                         Texas Bar No. 17736870
                                                         david.schenck@oag.state.tx.us

                                                         MATTHEW H. FREDERICK
                                                         Special Counsel to the Attorney General
                                                         Texas Bar No. 24040931
                                                         matthew.frederick@oag.state.tx.us

                                                         P.O. Box 12548
                                                         Austin, TX 78711-2548
                                                         (512) 936-1342
                                                         (512) 936-0545 (fax)

                                                         **ATTORNEYS FOR THE STATE OF TEXAS,
                                                         RICK PERRY, DAVID DEWHURST, JOE
                                                         STRAUS, AND HOPE ANDRADE**

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been sent *via* the court's electronic notification system, on July 1, 2011, to the following:

David Richards
Richards, Rodriguez & Skeith LLP
816 Congress Avenue, Suite 1200
Austin, TX 78701
(512) 476-0005
(512) 476-1513 (fax)

Richard E Gray, III
Gray & Becker, P.C.
900 West Avenue, Suite 300
Austin, TX 78701
(512) 482-0061
(512) 482-0924 (fax)

*Attorneys for Plaintiffs*

*/s/ David Schenck*
DAVID SCHENCK