UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SHANNON PEREZ et al., | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| MEXICAN AMERICAN LEGISLATIVE | § | |
| CAUCUS, TEXAS HOUSE OF | § | |
| REPRESENTATIVES, (MALC), | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| TEXAS LATINO REDISTRICTING | § | |
| TASK FORCE, *et al.,* | § | |
| | § | |
| *Plaintiffs,* | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 5:11-CV-0360-OLG-JES-XR |
| | § | (Consolidated) |
| STATE OF TEXAS, *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

## PLAINTIFF MALC'S SECOND AMENDED COMPLAINT

1.      This is a redistricting lawsuit.  This action is brought pursuant to Section 2 of the

Voting Rights Act, 42 U.S.C. § 1973 *et seq*., Section 5 of the Voting Rights Act, 42 U.S.C.

§ 1973c, and the Fourteenth and Fifteenth Amendments to the United States Constitution,

42 U.S.C. § 1983.   Plaintiff brings this action requesting declaratory and injunctive relief against

the Defendants to challenge the redistricting plans adopted by the State of Texas for the Texas

House of Representatives and United States House of Representatives.

2.      Plaintiff brings this action challenging the plan adopted by the State of Texas for

Texas House of Representatives districts and  for United States House of Representatives

districts (Congressional districts).  Population growth in the State over the last decade was

1

predominantly Latino and minority.  As a result, increased Latino and minority opportunity districts could have and should have been included in the new redistricting plans for both the Texas House districts and the Congressional districts. The plans adopted by the State failed to increase Latino and minority opportunity districts.  Instead, the plans were developed to minimize and limit Latino and minority electoral opportunities.  These plans, therefore, dilute the voting strength of Latino and minority voters of Texas in violation of Section 2 of the Voting Rights Act.  Moreover, since the challenged plans have not secured the required approval pursuant to Section 5 of the Voting Rights Act, they are not effective in law and violate Section 5 of the Voting Rights Act.

3.     The plans adopted for the Texas House of Representatives also failed to accommodate the undercount of the Latino population in the data used for the State's 2011 redistricting efforts.  The 2010 Census severely undercounts Latinos.  The 2010 Census process and procedures resulted in substantial omissions of Latino population, particularly in the border region of Texas, including Cameron, Hidalgo, Starr, Webb, and El Paso Counties, as well as urban areas in Dallas and Houston. Defendant State of Texas and Defendants Perry, Dewhurst, and Straus (hereinafter collectively referred to as the "State Defendants") have used this data in the 2011 redistricting to determine the number of State House representatives that were apportioned to Texas Counties, as well as to determine compliance with the equal population requirements of the Texas and United States Constitutions. Use of this data, without accommodating for the undercount of Latino population, resulted in the undervaluing of the vote of Texas Latinos and limiting the number of majority Latino districts that can be drawn consistent with applicable constitutional and statutory requirements, resulting in a violation of Section 2 of the Voting Rights Act.

4.      Plaintiff also brings this action challenging the plan adopted by the State of Texas or Texas House districts because the plan uses population variances to gain racial and partisan advantage in violation of the Fourteenth Amendment's one person, one vote principle.

5.      In addition, Plaintiff brings this action challenging the current districts for the Texas House of Representatives and the United States House of Representatives in Texas and because they contain substantial population disparities in violation of the equal population requirements of the United States Constitution.

6.      Plaintiff also brings this action to challenge the manner in which the State Defendants are applying the redistricting requirement of the Texas Constitution regarding the Texas House of Representatives, embodied in Article III, § 26, commonly referred to as the "whole county rule."

7.      The State Defendants have completed the redistricting process.  The Texas Legislature used the 2010 Census without modification, accommodation, or consideration of the undercount of the Latino population in adopting the plan for the Texas House districts.  In addition, the State Defendants have enforced Article III, § 26, of the Texas Constitution in a manner that will diminish Latino voting strength.  Enforcement of Article III, § 26 in the manner now employed by the State has diminished the opportunity of Latino voters of Texas to participate in the political process by limiting the number of majority Latino districts that can be developed consistent with the requirements of the Voting Rights Act and the Fourteenth and Fifteenth Amendments of the United States Constitution.  The State Defendants have also packed and cracked politically cohesive Latino and minority communities, resulting in fewer Latino majority districts.  Moreover, the State Defendants have consistently overpopulated Latino majority districts and consistently under-populated majority Anglo districts to limit and diminish

Latino voting strength.  By diminishing and limiting Latino voting strength, the State Defendants violated Sections 2 and 5 of the Voting Rights Act and the one person, one vote principle.

## I.  JURISDICTION

9.      Plaintiff's complaint arises under the United States Constitution and federal statutes.  This court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 1988.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

11.     Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

12.     Plaintiff requests convening of a three-judge court pursuant to 28 U.S.C. § 2284.

## II.  PARTIES

13.     Plaintiff, Mexican American Legislative Caucus, Texas House of Representatives (hereinafter MALC), is the nation's oldest and largest Latino legislative caucus.  MALC is a non-profit organization established to serve the members of the Texas House of Representatives and their staffs in matters of interest to the Mexican American community of Texas, in order to form a strong and cohesive voice on those matters in the legislative process, including redistricting.  Many of its members are elected from and represent constituencies in majority Latino districts and many of its members are Latino. Moreover, some of the members reside in overpopulated Texas House districts and United States House of Representatives districts.

14.      Defendant is the State of Texas.  The State of Texas is a political subdivision covered under the provisions of the Voting Rights Act and responsible for the actions of its officials with regard to state-wide redistricting.

14.     Defendant Rick Perry is the Governor of the State of Texas. Pursuant to Article IV, § 1 of the Texas Constitution, he is the chief executive officer of the Defendant State of Texas. He is sued in his official capacity.

15.     Defendant David Dewhurst is the Lieutenant Governor of Texas. Under Article IV, § 16 of the Texas Constitution, he is the President of the Texas Senate. He is sued in his official capacity.

16.     Defendant Joe Straus is the Speaker of the Texas House of Representatives and is the presiding officer over the Texas House of Representatives. He is sued in his official capacity.

### III. FACTS

17.     Plaintiff MALC is the nation's oldest and largest Latino legislative caucus. MALC is a non-profit organization established to serve the members of the Texas House of Representatives and their staffs in matters of interest to the Mexican American community of Texas, in order to form a strong and cohesive voice on those matters in the legislative process, including redistricting. Many of its members are elected from and represent constituencies in majority Latino districts and many of its members are Latino. Some of the members of MALC reside in and represent districts that have population substantially greater than the ideal district size for those types of districts. Moreover, the members of MALC are registered voters in Texas and participate in state and local elections.

18.     On or about February 17, 2011, the United States Department of Commerce and the United States Census Bureau released to the State of Texas the population data gathered as a result of the conduct of the 2010 Census.

19.    The information released to the State of Texas showed that the population of Texas had increased to 25,145,561 for 2010.  The population of Texas, according to the 2010 Census, had increased over the decade by about 20% from the 2000 population of 20,851,820.

20.    According to the 2010 Census, the Hispanic population of Texas grew to 9,460,921 from 6,669,666 in the 2000 Census. This was an increase of about 42%.  Moreover, according to the 2010 Census, Hispanic growth accounted for about 65% of the overall growth of Texas.

21.    The numbers released to the State of Texas by the Census Bureau in February of 2011 have been used to redistrict the Texas House of Representatives.  The redistricting legislation for the Texas House districts, H.B. 150, was signed by the Governor on June 17, 2011. The redistricting legislation for the United States House of Representatives, S.B. 4, was passed by the Texas Legislature on or about June 15, 2011.

22.    Historically, there has never been a completely accurate census in the United States.  Moreover, the undercount of population has affected racial and ethnic minorities more than whites.  That is, while many people simply were not counted, among certain groups, e.g., blacks and Latinos, the level of undercount has been more severe than with whites. This disparate impact of the undercount is often referred to as the "differential undercount."

23.    Historically, American censuses result in more accurate counts for whites than they do for racial and ethnic minorities.  *See* National Research Council, "Modernizing the U.S. Census" at 32, 33 (Barry Edmonston & Charles Schutze eds., 1995).

24.    The Census Bureau has recognized that in Texas certain populations are more difficult to count than other populations.  For example, people in poor urban communities are harder to count, as are people who live in poor suburban unincorporated subdivisions primarily

6

located along the Texas-Mexican border and often referred to as "colonias."  In Texas, this means an undercount of racial and ethnic minorities.

25.     The traditional difficulties of accurately counting were compounded by the manner in which the Census Bureau actually conducted the census in Hidalgo County and other border area counties. After promoting and advertising and educating the community in these counties of the use of the mail-out, mail-in counting strategy, the Census Bureau announced on the day the Census was to commence that this strategy would not be employed for the "colonias." The decision to forgo one of the most relied upon strategies for the very population known to be hardest to count, after an extensive media and educational campaign to secure compliance, had a devastating effect on the ability to secure a complete count.

26.     Upon information and belief, the resulting undercount of Latinos along the border region of Texas was between 4% and 8% of the population for the region.

27.     The use of the inaccurate 2010 Census numbers for redistricting of Texas House of Representatives districts without accommodating for the undercount of Latino population will dilute the voting strength of Latino voters of Texas.

28.     According to the 2010 Census, the Texas House of Representatives districts have population disparities between the most and least populated district, or a "top to bottom deviation," of over 109%.  This population disparity far exceeds the allowable deviation under the United States Constitution. The overpopulated districts for the Texas House of Representatives include District 40 in Hidalgo County, with a deviation of over  +28%, and District 36 in Hidalgo County, with a deviation of over +20%.

30.     According to the 2010 Census, the Texas Congressional districts have population disparities between the most populated and least populated districts, or "top to

bottom" deviation, of over 48%. This population disparity far exceeds the allowable deviation under the United States Constitution. The overpopulated districts for the United States House of Representatives include District 15 in Hidalgo County, with a deviation of over +12%, and District 28 in Hidalgo County, with a deviation of about +22%.

31.     The United States Supreme Court recently explained and articulated that the standard for compliance with the one person, one vote principle does not provide a complete safe harbor, even when a plan has less than a 10% total deviation. Unless the jurisdiction can articulate a legitimate non-racial, non-political reason for its deviation, districts should be as equal in population as is practicable. *Cox v. Larios*, 159 L. Ed. 2d 831, 833 (2004).

32.     The State's redistricting plans contain deviations that far exceed permissible limits under the United States Constitution. As described above, both of the current plans for Texas House of Representatives and United States House of Representatives far exceed permissible deviation limits. Moreover, the plan adopted by the State of Texas for the Texas House of Representatives, H.B. 150, has a top to bottom deviation of 9.9%. The deviation for H.B. 150 of 9.9% is achieved by overpopulating about 70% of the Latino majority districts that can be overpopulated and under-populating a majority of Anglo majority districts. The deviation cannot be justified by legitimate state redistricting interests.

33.     Elections in Texas continue to be racially polarized.

34.     Latinos generally vote as a group and are politically cohesive.

35.     African Americans in Texas generally vote as a group and are politically cohesive.

36.     Latinos and African Americans in Texas generally vote as a group and are politically cohesive.

37.     Anglos in Texas generally vote as group, are politically cohesive, and vote sufficiently as a block to defeat the preferred candidate of Latino and African American voters absent fair and equitable majority-minority single-member districts.

38.     According to the 2000 Census, the total population of Harris County was 3,400,590.  The ideal district size for the Texas House of Representatives in the 2000 redistricting cycle was 139,012 persons.  Therefore, the number of ideal districts for Harris County was 24.46.

39.     In its efforts to comply with Article III, § 26 of the Texas Constitution, Texas allocated 25 districts to Harris County for the 2001 redistricting.

40.     According to the 2010 Census, the total population of Harris County is 4,029,459.  The ideal district size in 2011 for the Texas House of Representatives, according to the 2010 Census, is 167,637 persons.  Therefore, the number of ideal districts for Harris County is 24.41.

41.     In its efforts to comply with Article III, § 26 of the Texas Constitution, Texas allocated 24 districts to Harris County for the 2011 redistricting cycle.

42.     A Harris County Texas House of Representatives redistricting plan that allocates 24 districts to Harris County results in fewer Hispanic opportunity districts in Harris County than a plan allocating 25 districts to Harris County.

43.     According to the 2000 Census, Hispanics in Harris County comprised about 33% of the total population.  According to the 2010 Census, however, Hispanics dominated the growth of the County and comprise over 40% of the County's population.

44.     In the face of such tremendous Hispanic growth and when the County's overall proportion of the State's population is nearly identical to the 2000 proportion, when the State allocated 25 districts, allocating only 24 districts to Harris County is an intentional attempt to limit the number of districts in which Hispanics can elect candidates of their choice.

45.   Moreover, whether allocating 24 or 25 districts to Harris County, the population growth justifies the addition of at least one more Latino opportunity district in Harris County.

45.     According to the 2010 Census, Hidalgo County now has a population of 774,769.  In 2000, its population was counted at 569,463 persons by the U.S. Census Bureau. Thus, according to the Census Bureau, Hidalgo County grew by over 200,000 persons, or over 36%.  Hidalgo County is over 90% Hispanic.

46.     According to the 2010 Census, Cameron County now has a population of 406,220 persons.  In 2000, its population was counted at 335,227 persons by the U.S. Census Bureau.  Thus, according to the Census Bureau, Cameron County grew by over 70,000 persons. Cameron County is over 88% Hispanic.

47.     The total population of Cameron and Hidalgo Counties together is 1,180,989. Currently, only six Texas House districts are contained wholly within the boundaries of Hidalgo and Cameron Counties.  Since the ideal size for Texas House districts is 167,637 people, seven Texas House districts could be drawn within the boundaries of Hidalgo and Cameron Counties, if the State adheres to the requirements of Article III, § 26 of the Texas Constitution.  The 2010 Census demonstrates that a new Latino majority district could be drawn within the boundaries of Hidalgo and Cameron Counties. Instead, the State has chosen to violate Article III, § 26 to avoid drawing a new Latino majority district in South Texas, and has drawn Hispanic population from

Hidalgo and Cameron Counties into existing Hispanic majority Texas House districts based in other counties.

49.  Moreover, whether Article III, § 26 is adhered to or not, the population growth of Latinos in Hidalgo and Cameron Counties justifies and requires the creation of one additional Latino opportunity district in Hidalgo and Cameron Counties.

48.      Elsewhere across the State, the Defendants have chosen to enforce the provisions of Article III, § 26 in such a fashion as to limit the number of Latino majority districts, including in West Texas, and to even eliminate an existing majority Latino opportunity Texas House district in Nueces County.

49.      Defendants also have employed redistricting gerrymandering techniques such as packing and overpopulating minority Texas House and Congressional districts in order to minimize minority opportunity districts.

50.  As a result of the 2010 Census, the Texas Congressional delegation for the United States House of Representatives increased from 32 to 36 members.

51.  The increase in the Texas Congressional delegation was directly attributable to the growth in Latino and minority population growth in the State; yet the Defendants failed to increase the number of minority Congressional opportunity districts.

52.  The population growth of Latinos and minorities in Harris County justifies the creation of an additional minority-majority district in Harris County.

53.  The population growth of Latino and minority population in the Dallas/Tarrant County Metroplex justifies the creation of two additional minority opportunity districts in Dallas and Tarrant Counties.

54.   The population growth of Latino and minority population in South and Central Texas justifies the creation of an additional minority opportunity district in the South/Central Texas region.

53.     Latinos and African Americans in Texas continue to suffer the effects of historical discrimination in the areas of education, income, and housing.  In addition, primary elections in Texas continue the use of majority vote requirements.  Elections in Texas still require the use of place system and majority vote.  Primaries in Texas require a majority vote to secure election. In addition, racially polarized voting continues to infect elections at all levels of government.   Texas has a long history of discrimination against minorities in voting.  Finally, Latinos in Texas continue to be under-represented in the Texas House and the Texas delegation to the United States House of Representatives.

54.     The Governor called a special session of the Legislature, and expressly added Congressional redistricting to the special session. Although no Congressional redistricting plan was ever presented by the leadership of the House and the Senate during the regular session, the chairmen of the respective redistricting committees laid out identical Congressional redistricting plans on the day the Governor added redistricting to the special session call. The Texas House and Senate both passed S.B. 4, the Congressional redistricting map.  The Texas House Congressional plan altered the Senate plan, and the Texas Senate voted to concur in the House amendments to S.B. 4 on June 20, 2011.  A Congressional plan with 0.00% deviation that has been developed with the correct number of districts was signed by the Governor on July 18, 2011.

55.     S.B. 4 makes substantial changes to the minority representation of the Congressional makeup of the Texas delegation to the United States House of Representatives.

12

56.     The current 27th District is anchored in Nueces County and represented by Congressman Farenthold. Before Rep. Farenthold's election, the 27th District had been represented by Solomon Ortiz, Sr. The geography of the old 27th District was made up of parts of Cameron and San Patricio Counties and all of Nueces, Willacy, Kleberg, and Kenedy Counties.

57.     The new 27th District joins Nueces County with heavily Anglo counties to its north: all of Refugio, Aransas, Calhoun, Matagorda, Jackson, Victoria, Wharton, and Lavaca Counties; and parts of San Patricio, Gonzales, Caldwell, and Bastrop Counties. Nueces County has a population of 340,223, of which 206,293 are Hispanic, or 60.635% of the population of the County. The Counties that Nueces has been combined with to form the new 27th District have a Hispanic population of only 39.92%, effectively diluting the voting strength of the Hispanics of Nueces County.

58.     The current map contains seven Congressional districts out of 32 that contain a Spanish Surname Voter Registration (SSVR) percentage of 50% or greater, meaning that 21.875% of the districts have SSVR majorities. S.B. 4, as passed by the Texas Legislature, contains only seven out of 36 districts with an SSVR majority. This means that only 19.4% of the districts in the redistricting map created by S.B. 4 have SSVR majorities.

59.     The map fails to create new majority-minority or minority opportunity districts in Tarrant, Dallas, and Harris Counties. The map also fails to create minority opportunity districts in East Texas, West Texas, or South Texas.

60.     The 23rd Congressional District is one of the largest in the country and has itself been the center of voting rights litigation in the past decade.  Since its reconfiguration respondent

to federal voting rights litigation in 2006, the candidate of choice of the minority community has won two of three elections (special 2006 election, 2008 general election).

61.     S.B. 4 radically alters the electoral prospects for the candidate of choice of the minority community without changing its demography drastically.  In 2008, a Latino candidate for United States Senate, Rick Noriega, won the 23rd District with 50.70% of the vote. Today, with the reconfigured 23rd District, candidate Noriega would lose with 47.70%. This portends diminished minority opportunities for this Congressional district.

62.     In the current plan, looking at a number of 2010 statewide races, the candidate of choice of the minority community consistently won 10 out of 32, or 31.25%, of the current Congressional districts. Also in the current plan, looking at a number of 2008 statewide elections, the candidate of choice of the minority community won 11 out of 32 districts, or 34.375%.  Reviewing these same elections in the districts created by S.B. 4, the candidate of choice of the minority community would have prevailed in only 10 districts in the 2010 elections and 11 districts in 2008. However, the Texas Congressional delegation increases by four seats to 36. This means that the candidate of choice of the minority community will only represent 27.8% of the districts as constituted during the midterm election year and 30.5% during the presidential election.  These reductions in voting power represent a retrogression of Latino voting strength.

## FIRST CLAIM FOR RELIEF – DISCRIMINATORY RESULT

63.     The allegations contained in paragraphs 1 through 62 are alleged as if fully set forth herein.

64.     Plaintiff's cause of action arises under Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973.  The State Defendants are in violation of the Voting Rights Act because the State Defendants: have failed provide sufficient Latino and minority opportunity

districts in H. B. 150 and S. B. 4 in the face of racial bloc voting; employed redistricting gerrymandering techniques such as packing and cracking of minority communities to limit and avoid drawing Latino and minority opportunity districts in H. B. 150 and S. B. 4; used redistricting criteria, such as the "whole county" rule in an inconsistent and unjustifiable pretext to limit and avoid drawing Latino and minority opportunity districts in H. B 150;, failed to consider the effect of the undercount of Latinos as contained in the 2010 Census and proceeded with the 2011 redistricting, using the 2010 Census without modification or accommodation for the undercount of Latinos with regard to H. B. 150. The failure of the Defendants to draw additional Latino and minority opportunity districts in H. B. 150 and S. B. 4; the Defendants use of racial gerrymandering techniques such as cracking and packing Latino and minority population to limit the number of Latino and minority opportunity districts drawn in H. B. 150 and S. B. 4; the Defendants' use of redistricting criteria unevenly and as a pretext to limit the number of Latino opportunity districts in H. B. 150; and use of the 2010 Census without accommodation for the undercount of Latino population all work together to result in a violation of the rights of Plaintiff as secured by Section 2 of the Voting Rights Act, 42 U.S.C. § 1973.

## SECOND CLAIM FOR RELIEF – INTENTIONAL DISCRIMINATION AND DISCRIMINATORY EFFECT

65.     The allegations contained in paragraphs 1 through 62 are alleged as if fully set forth herein.

66.     The election practices and procedures used to apportion Texas House districts statewide, and in particular to Nueces, Harris, Dallas, Tarrant, Cameron, and Hidalgo Counties and West Texas, was done in such a fashion and with the intent to disadvantage Latino  voters and resulted in a discriminatory effect on Latino voters in Texas.  Based on the totality of the

circumstances, the political process used by the State Defendants to allocate Texas House seats to Texas Counties, and Nueces, Harris, Dallas, Tarrant, Hidalgo, and Cameron Counties and West Texas in particular, violates the rights of Latino voters in violation of Section 2 of the Voting Rights Act as well as the Fourteenth and Fifteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

67.     In addition, the Texas House districting plan adopted by the Texas House of Representatives has a total or top to bottom deviation of 9.9%.  This deviation was achieved by overpopulating Latino majority districts, to avoid drawing new Latino majority districts and to gain political advantage.  Therefore, the manipulation of the population deviation to 9.9% has a discriminatory effect on Latino voters and violates Section 2 of the Voting Rights Act, 42 U.S.C. § 1973.

## THIRD CLAIM FOR RELIEF – ONE PERSON, ONE VOTE

68.     The allegations contained in paragraphs 1 through 62 are alleged as if fully set forth herein.

69.     Currently redistricting plans for the Texas House of Representatives and United States House of Representatives exceed permissible population variances between the least populated district and the most populated district. The implementation of such variances or deviations from ideal population by Defendants Perry, Dewhurst, and Straus violate the rights of all voters and persons as guaranteed by the one person, one vote principle embodied within the Fourteenth Amendment of the United States Constitution  and protected by 42 U.S.C. § 1983.

70.     In addition, the Texas House districting plan adopted by the Texas Legislature has a total or top to bottom deviation of 9.9%.  This deviation was achieved by overpopulating

Latino majority districts, to avoid drawing new Latino majority districts and to minimize the opportunity of Latino voters to participate in the political process.  There is no legal justification for maintaining a deviation of 9.9% when there is such an impact on Latino voting strength. This 9.9% deviation violates the one person, one vote principle of the Fourteenth Amendment of the United States Constitution as protected by 42 U.S.C. § 1983.

73.     With respect to the first, second, and third claims for relief, this is also an action for declaratory judgment and preliminary and permanent injunctive relief instituted pursuant to 42 U.S.C. § 1973, 42 U.S.C. § 1983, and 28 U.S.C. § 2001.

74.     With respect to the first, second, and third  claims for relief, Plaintiff seeks a declaration that the actions of the State Defendants in the 2011 redistricting cycle violate their rights as secured by the Voting Rights Act and the Fourteenth and Fifteenth Amendments of the United States Constitution.  Plaintiff also seeks to enjoin any further use of the current plans for the Texas House and  United States House of Representatives, as well as the 2011 plans adopted for the Texas House of Representatives and for the United States House of Representatives.

## FOURTH CLAIM FOR RELIEF – SECTION 5

75**.**     The allegations contained in paragraphs 1 through 62 are alleged as if fully set forth herein.

76.     The plan adopted by the Texas Legislature for the Texas House of Representatives, H.B. 150, and the plan adopted for Congressional districts, S.B. 4, have not received the necessary approval required by Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c.  H.B. 150 and S.B. 4, therefore, violate Section 5 of the Voting Rights Act.

## BASIS FOR EQUITABLE RELIEF

79.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for declaratory judgment and injunctive relief is their only means of securing adequate redress from all of the Defendants' unlawful practices.

80.     Plaintiff will continue to suffer irreparable injury from all of the Defendants' intentional acts, policies, and practices set forth herein unless enjoined by this Court.

## PRAYER

Plaintiff respectfully prays that this Court enter Judgment granting Plaintiff:

A.     A declaratory judgment that State Defendants' actions violate the rights of Plaintiff as protected by Section 2 and Section 5 of the Voting Rights Act, 42 U.S.C. § 1973 *et seq.* and that the actions of Defendants Perry, Dewhurst, and Straus violate the rights of Plaintiff as protected by the Fourteenth and Fifteenth Amendments to the United States Constitution and 42 U.S.C. § 1983;

B.     Preliminary and permanent injunctive relief requiring the State Defendants, their successors in office, agents, employees, attorneys, and those persons acting in concert with them and/or at their discretion to develop redistricting plans that do not dilute Latino and minority voting strength for the Texas House of Representatives and the United States House of Representatives, and also enjoining and forbidding the use of the current Congressional and State House redistricting plans.

C.     An order requiring all Defendants to comply with Section 2 and comply with the Section 5 preclearance requirements of the Voting Rights Act;

E.     The costs of this suit and reasonable attorneys fees and litigation expenses, including expert witness fees and expenses, pursuant to 42 U.S.C. §§ 1973l(e) and 1988.

F.      An order of this Court retaining jurisdiction over this matter until all Defendants have

complied with all orders and mandates of this Court; and

G.      Such other and further relief as the Court may deem just and proper.

DATED:  July 19, 2011                              Respectfully Submitted,


                                                   _____/s/ Jose Garza_____
                                                   JOSE GARZA
                                                   State Bar No. 07731950
                                                   Law Office of Jose Garza
                                                   7414 Robin Rest Dr.
                                                   San Antonio, Texas 78209
                                                   (210) 392-2856
                                                   garzpalm@aol.com

                                                   JOAQUIN G. AVILA
                                                   LAW OFFICE
                                                   P.O. Box 33687
                                                   Seattle, Washington 98133
                                                   State Bar No. 01456150
                                                   (206) 724-3731
                                                   (206) 398-4261 (fax)
                                                   jgavotingrights@gmail.com

                                                   Ricardo G. Cedillo
                                                   State Bar No. 04043600
                                                   Mark W. Kiehne
                                                   State Bar No. 24032627
                                                   DAVIS, CEDILLO & MENDOZA, INC.
                                                   McCombs Plaza, Suite 500
                                                   755 E. Mulberry Avenue
                                                   San Antonio, Texas  78212
                                                   Tel.: (210) 822-6666
                                                   Fax: (210) 822-1151
                                                   rcedillo@lawdcm.com
                                                   mkiehne@lawdcm.com
                                                   lclark@lawdcm.com

                                                   **ATTORNEYS FOR MEXICAN
                                                   AMERICAN LEGISLATIVE CAUCUS,
                                                   TEXAS HOUSE OF REP. (MALC)
                                                   CAUSE NO. 5:11-CV-361-OLG-JES-XR**

19

**CERTIFICATE OF CONFERENCE**

I hereby certify that pursuant to L.R. CV 7h I have conferred with counsel for the Defendants and have been informed that Defendants do not oppose this motion.

_/s/ Jose Garza_____
Jose Garza

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been sent by the Court's electronic notification system and United States certified mail return receipt requested on July 19, 2011, to counsel of record in each of the cases referenced above.

____/s/ Jose Garza_____
Jose Garza