**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| SHANNON PEREZ et al., | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § § | CIVIL ACTION NO. 5:11-CV-00360-OLG-JES-XR [Lead Case] |
| STATE OF TEXAS, *et al.*, | § § § | |
| *Defendants*. | § | |
| MEXICAN AMERICAN LEGISLATIVE CAUCUS, TEXAS HOUSE OF REPRESENTATIVES, (MALC), | § § § § | |
| *Plaintiff*, | § § § | CIVIL ACTION NO. 5:11-CV-00361-OLG-JES-XR [Consolidated Case] |
| v. | § § | |
| STATE OF TEXAS, *et al.*, | § § § | |
| *Defendants*. | § | |
| TEXAS LATINO REDISTRICTING TASK FORCE, *et al.*, | § § § | |
| *Plaintiffs*, | § § § | CIVIL ACTION NO. 5:11-CV-00490-OLG-JES-XR [Consolidated Case] |
| v. | § § | |
| RICK PERRY, In His Official Capacity as Governor of the State of Texas, | § § § § | |
| *Defendant*. | § | |

**DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

Defendants the State of Texas, Rick Perry, David Dewhurst, Joe Straus, and Hope Andrade respectfully move for a protective order under Rule 26(c)(1) to preserve the legislative privilege of witnesses called to testify in this case. Plaintiffs have noticed the depositions of four legislative staff members who worked for and with Members of the 82nd Texas Legislature ("Legislative Witnesses").[1] Without protection from the Court, these witnesses will likely face questioning on several subjects integral to the legislative process—in particular, the motives and purposes of the individual legislators that provided input on the redistricting plans enacted by the 82nd Texas Legislature.

Answering questions about the motives and purposes of legislators will invade the witness's legislative privilege and jeopardize the legislative indepedence that it fosters. Defendants therefore seek a protective order proscribing discovery on the issue of individual legislators' motives or purposes if the discovery is directed to witnesses who worked for, with, or as Members of the 82nd Texas Legislature, and if it is based on information or communications other than those contained in the journals and publicly-available reports and acts of the 82nd Legislature.

I. **The Legislative Privilege Applies to the Legislative Communications and Deliberations Integral to Enactment of the Redistricting Plans**

Both Texas and federal courts recognize a legislative privilege that protects anyone acting in a legislative capacity, including staff, from incurring civil liability for or testifying about legislative acts. *See Gravel v. United States*, 408 U.S. 606, 615-16 (1972); *In re Perry*, 60 S.W.3d 857, 860 (Tex. 2001). For actions founded on state law, the privilege derives from the

---

[1] The Legislative Witnesses are Jeff Archer (Counsel to Texas Legislative Council), Ryan Downton (Committee Counsel to the Texas House Redistricting Committee), Doug Davis (Counsel to the Senate Select Committee on Redistricting), and Gerardo Interiano (Counsel to the House Speaker).

Texas Constitution. *See Perry*, 60 S.W.3d at 859 ("Legislative immunity derives largely from the Speech and Debate Clauses of the Texas and federal constitutions."). The Federal Constitution's Speech and Debate Clause likewise confers a privilege to United States "Senators [,] Representatives," and legislative staff. *Gravel*, 408 U.S. at 614-15 (quoting U.S. CONST. art. I, § 6, cl. 1).

As to the reach of the Federal Speech and Debate Clause, this Circuit has long held that state legislators stand outside the sweep of its protections. *See Cole v. Gray*, 638 F.2d 804, 810 (5th Cir.1981) ("the Supreme Court has unequivocally ruled that the embrace of the clause does not extend to a state legislator"). Thus, for federal claims, state legislators and their staff may invoke a legislative privilege under the federal common law.[2] *Id.* at 510-11 ("The Court reaffirmed, however … that members of a state legislature are potentially immune from suits … on the theory that a common law absolute immunity from suit survived the passage of the Civil Rights Act of 1871."); *see also Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 405 (1979) (regional water board protected from civil liability).

Little separates the scope of protections provided under the constitutional and federal common law legislative privileges. *See, e.g.*, *Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 731–34 (1980); *Perry*, 60 S.W.3d at 859. This is so because "regardless of the level of government, the exercise of legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability." *See Bogan v. Scott-Harris*, 523 U.S.

---

[2] Federal Rule of Evidence 501 provides: "the privilege of a witness … shall be governed by the principles of the common law as they may be interpreted by the courts of the United States." But, "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness … shall be determined in accordance with State law." FED. R. EVID. 501. Plaintiffs in this case have asserted claims implicating state and federal law, and Defendants may assert certain defenses founded on state law. Thus, it is unclear which jurisdiction will "suppl[y] the rule of decision" for each element of each claim and, consequently, which privilege law will apply. Nevertheless, as discussed *infra*, Defendants are entitled to a protective order under any conceivable standard.

44, 52 (1998). It is simply "'not consonant with our scheme of government for a court to inquire into the motives of legislators.'" *Id.* at 55 (quoting *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951)).

In accord with these principles, the Seventh Circuit very recently found "no reason why the [legislative] immunity protecting [Governor Blagojevich] from liability for his veto would not also protect [him] 'from the burden of defending [himself],' ... for [his] actions 'in the sphere of legitimate legislative activity.'" *Bagley v. Blagojevich*, --- F.3d ---, 2011 WL 1632045, at *17 (7th Cir. May 2, 2011) (internal citations omitted). Several other courts have also concluded that the federal common law legislative privilege encompasses an unqualifed privilege against testifying about legislative acts. *See, e.g., Schlitz v. Commonwealth of Virginia*, 854 F.2d 43, 46 (4th Cir. 1988) *overruled on other grounds by Berkley v. Common Council of City of Charleston*, 63 F.3d 295, 303 (4th Cir. 1995) (*en banc*); *Miles-Un-Ltd., Inc. v. Town of New Shoreham*, 917 F.Supp. 91, 98 (D.N.H. 1996) ("Effectuating the intentions of the legislative immunity doctrine, legislators acting within the realm of legitimate legislative activity, should not be required to be a party to a civil action concerning legislative activities, nor should they be required to testify regarding those actions"); *2BD Assocs. Ltd. Partnership v. County Commissioners of Queen Anne's County*, 896 F.Supp. 528, 531 (D. Md. 1995); *Suhre v. Board of Comm'rs*, 894 F.Supp. 927, 932 (W.D.N.C. 1995), *rev'd. on other grounds*, 131 F.3d 1083 (4th Cir. 1997); *Small v. Hunt*, 152 F.R.D. 509, 512 (E.D.N.C. 1994); *Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 297 (D. Md. 1992); *Sizeler Hammond Square Ltd. v. City of Hammond*, No. Civ. A. 99-1816, 1999 WL 615173, *2 (E.D. La. Aug.12, 1999).

Neither the Fifth Circuit nor the United States Supreme Court has defined the precise scope of protections that a state legislator may invoke against testifying in civil matters. But

even courts following a limited construction of the federal common law legislative privilege refuse to allow questioning as to legislative motive and intent.[3] *See Hobart v. City of Stafford*, No. 4:09-CV-3332, 2011 WL 1638606, at *26 (S.D. Tex. Apr. 29, 2011) ("Plaintiffs do not seek to inquire as to their motives or thought processes in the legislative process, but only 'the methods and processes by which the council delegated, reviewed, enforced, and/or ratified the policies and practices of the Stafford police.'"); *Kay v. City of Rancho Palos Verdes*, 2003 WL 25294710, at *3 (C.D. Cal. Oct. 10, 2003).

The United States Supreme Court has indicated, that absent "extraordinary circumstances," the privilege will bar questioning of state legislators. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 268 (1977). This is true even if proof of invidious legislative intent is an element of the plaintiffs' claims. *Id*. Thus, "[i]n some *extraordinary instances* the [council] members might be called to the stand at trial to testify concerning the purpose of the official action, although even then such testimony frequently will be barred by privilege." *Id.* (emphasis added); *accord Perry*, 60 S.W.3d at 861; *see also Dyas v. City of Fairhope*, No. 08-0232-WS, 2009 WL 3151879, at *9 (S.D.Ala. Sept. 24, 2009) ("The plaintiffs insist the Supreme Court has validated their demand for [questioning of council members] but it has done very nearly the opposite.").

Giving testimony at a deposition imperils the legislative privilege because the testimony could work a waiver. As a general rule, the Supreme Court has determined that, short of an

---

[3] Courts that narrowly construe the federal common law legislative privilege extend *United States v. Gillock*, 445 U.S. 360, 373 (1980) beyond the criminal context that dictated its outcome. *Gillock* involved an attempt by a state legislator to suppress all evidence of his legislative activities under a broad reading of the legislative privilege. *Id.* at 362. The Court concluded "that although principles of comity command careful consideration, our cases disclose that where important federal interests are at stake, as in the enforcement of federal criminal statutes, comity yields." *Id.* at 373. Unlike regulating criminal activity, there is no federal enforcement interest in regulating the core legislative functions of state legislators.

express renunciation, the privilege is very difficult to waive. *United States v. Helstoski*, 442 U.S. 477, 491, 493 (1979). Thus, in *Helstoski*, the Court held: "waiver can be found only after explicit and unequivocal renunciation of the protection. The ordinary rules for determining the appropriate standard of waiver do not apply in this setting …." *Id.* at 491. In support, the Court observed that "[t]he Speech or Debate Clause was designed neither to assure fair trials nor to avoid coercion. Rather, its purpose was to preserve the constitutional structure of separate, coequal, and independent branches of government …. [A]ny lesser standard would risk intrusion by the Executive and the Judiciary [into legislative matters]." *Id*. Notwithstanding these broad protections, the Fourth Circuit has concluded that county commissioners could waive their legislative privilege by voluntarily testifying during depositions, without objection, on their motives for certain acts. *Alexander v. Holden*, 66 F.3d 62, 68 n.4 (4th Cir. 1995).

Without a protective order, there is little doubt that Plaintiffs here would question the Legislative Witnesses about the motive and intent of individual legislators in enacting the challenged plans.[4] This would invade the core of the legislative privilege and is plainly inconsistent with it. Worse still, providing testimony on motive and intent could work a waiver. Balanced against this hardship are the lengthy legislative record and public statements of legislative officials from which Plaintiffs could collect evidence of legislative intent. Under these circumstances, a protective order is appropriate to preserve legislative independence and the privilege that safeguards it.

## II.   Courts Commonly Grant Protective Orders to Protect Privileges

Rule 26(c)(1) accords discretion to courts so that they may fashion appropriate orders to prevent burdensome discovery. *See* FED. R. CIV. P. 26(c)(1). A protective order may, among

---

[4] There is no doubt that enactment of a redistricting plan, the communications and deliberations preceding enactment, and the motives animating enactment are protected "legislative acts" under the legislative privilege. *See Gravel*, 408 U.S. at 624-25; *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991).

other things, "forbid[] inquiry into certain matters, or limit[] the scope of disclosure or discovery to certain matters." *Id.* 26(c)(1)(D). The moving party must show "[g]ood cause and a specific need for protection." *Ferko v. NASCAR*, 218 F.R.D. 125, 133 (E.D. Tex. 2003). Courts commonly find that protecting privileges and protections merits issuance of a protective order. *See, e.g., id.* at 144; *see also In re Harwood* 403 B.R. 445, (Bankr. W.D. Tex. 2003) (protective order issued to protect work product). Some courts go so far as to quash subpoenas to protect a recognized privilege. *See RE/MAX Int'l v. Century 21 Real Estate Corp.*, 846 F. Supp. 910, 911 (D. Colo. 1994).

As already discussed *supra*, responding to questions that invade the legislative privilege will work hardship by disregarding the privilege and potentially effecting a waiver. Moreover, Plaintiffs will likely seek testimony on the purpose and intent of individual legislators—matters at the core of the legislative privilege. Against this hardship is the extensive public legislative record from which Plaintiffs can obtain evidence of legislative purpose and intent. Good cause and the balance of interests therefore favors a protective order that "forbid[s] inquiry into certain matters [and] limit[s] the scope of disclosure or discovery to certain matters." FED. R. CIV. P. 26(c)(1)(D).

### III. Conclusion and Prayer for Relief

For these reasons, the Defendants respectfully pray that the Court enter a protective order that proscribes discovery on the issue of individual legislators' motives or purposes if the discovery is directed to witnesses who worked for, with, or as Members of the 82nd Texas Legislature, and if it is based on information or communications other than those contained in the journals and publicly-available reports and acts of the 82nd Legislature.

Dated: July 21, 2011                           Respectfully Submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

BILL COBB
Deputy Attorney General for Civil Litigation

DAVID C. MATTAX
Director of Defense Litigation

J. REED CLAY, JR.
Special Assistant and Senior Counsel
to the Attorney General

/s/ *David J. Schenck*
DAVID J. SCHENCK
Deputy Attorney General for Legal Counsel
Texas Bar No. 17736870

MATTHEW H. FREDERICK
Special Counsel to the Attorney General
Texas Bar No. 24040931

ANGELA V. COLMENERO
Assistant Attorney General
Texas Bar No. 24048399

ANA MARIE JORDAN
Assistant Attorney General
Texas Bar No. 00790748

P.O. Box 12548, Capitol Station
Austin, TX 78711-2548
(512) 936-1342
(512) 936-0545 (fax)

**ATTORNEYS FOR THE STATE OF TEXAS, RICK PERRY, DAVID DEWHURST, JOE STRAUS, AND HOPE ANDRADE**

## CERTIFICATE OF CONFERENCE

I hereby certify that on July 21, 2011, the parties held a conference call to discuss Defendants' Motion for Protective Order. Prior to the conference call, Defendants circulated a draft Motion for Protective Order to all counsel of record. Each Plaintiff participating in the conference call is opposed to the relief sought in Defendants' Motion for Protective Order. The conference call participants also agreed to a briefing schedule in which Defendants would file their Motion for Protective Order by July 22, 2011, Plaintiffs would respond by July 29, 2011, and Defendants would reply by August 3, 2011.

For the purposes of the attached Motion for Protective Order, Defendants assume that all Plaintiffs who received the draft Motion for Protective Order, but who did not participate in the conference call, are opposed to the relief sought in Defendants' Motion for Protective Order. The following Plaintiffs participated in the July 21, 2011 conference call:

   Chad Dunn
   David Richards
   Jose Garza
   Nina Perales
   Robert Wilson

   */s/ David J. Schenck*
   DAVID J. SCHENCK
   Deputy Attorney General for Legal Counsel

**DEFENDANTS' MOTION FOR
PROTECTIVE ORDER**                                                                                             **PAGE 9**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been sent via the Court's electronic notification system on July 21, 2011, to:

DAVID RICHARDS
Richards, Rodriguez & Skeith LLP
816 Congress Avenue, Suite 1200
Austin, TX 78701
(512) 476-0005
Email: davidr@rrsfirm.com

RICHARD E. GRAY, III
Gray & Becker, P.C.
900 West Avenue, Suite 300
Austin, TX 78701
(512) 482-0061
Email: rick.gray@graybecker.com
**ATTORNEY FOR PLAINTIFFS SHANNON PEREZ, HAROLD DUTTON, JR., AND GREGORY TAMEZ**

JOSE GARZA
Law Office of Jose Garza
7414 Robin Rest Dr.
San Antonio, Texas 78209
(210) 392-2856
Email: garzpalm@aol.com
**ATTORNEY FOR MEXICAN AMERICAN LEGISLATIVE CAUCUS, TEXAS HOUSE OF REPRESENTATIVES**

ROLANDO L. RIOS
Law Offices of Rolando L. Rios
115 E Travis Street
Suite 1645
San Antonio, TX 78205
(210) 222-2102
Email: rrios@rolandorioslaw.com
**ATTORNEY FOR U.S. CONGRESSMAN HENRY CUELLAR**

CHAD W. DUNN
Brazil & Dunn
FM 1960 West, Suite 530
Houston, Texas 77068
(281) 580-6310 ATTORNEYS FOR
Email: chad@brazilanddunn.com
**ATTORNEY FOR TEXAS DEMOCRATIC PARTY and BOYD RICHIE**

LUIS ROBERTO VERA, JR.
Law Offices of Luis Roberto Vera, Jr. & Associates
1325 Riverview Towers
111 Soledad
San Antonio, Texas78205-2260
(210) 225-3300
Email: lrvlaw@sbcglobal.net

GEORGE JOSEPH KORBEL
Texas Riogrande Legal Aid, Inc.
1111 North Main
San Antonio, TX 78213
(210) 212-3600
Email: gkorbel@trla.org
**ATTORNEY FOR LEAGUE OF UNITED LATIN AMERICAN CITIZENS**

NINA PERALES
Mexican American Legal Defense and Education Fund
110 Broadway, Suite 300
San Antonio, TX 78205
(210) 224-5476
Email: nperales@maldef.org

ROBERT W. WILSON
Gale, Wilson & Sanchez, PLLC
115 East Travis Street Suite 1900
San Antonio, TX 78205
(210) 222-8899
Fax: 210/222-9526
Email: rwwilson@gws-law.com
**ATTORNEYS FOR PLAINTIFFS TEXAS LATINO REDISTRICTING TASK FORCE, JOEY CARDENAS, ALEX JIMENEZ, EMELDA MENENDEZ, TOMACITA OLIVARES, JOSE OLIVARES, ALEJANDRO ORTIZ, AND REBECCA ORTIZ**

*/s/ David J. Schenck*
DAVID J. SCHENCK
Deputy Attorney General for Legal Counsel