## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | |
|---|---|
| SHANNON PEREZ, HAROLD DUTTON, JR. and GREGORY TAMEZ, | )<br>)<br>) |
| *Plaintiffs* | )<br>) |
| v. | )  CIVIL ACTION NO.<br>)  SA-11-CA-360-OLG-JES-XR |
| STATE OF TEXAS; RICK PERRY, in his official capacity as Governor of the State of Texas; DAVID DEWHURST, in his official capacity as Lieutenant Governor of the State of Texas; JOE STRAUS, in his official capacity as Speaker of the Texas House of Representatives; HOPE ANDRADE, in her official capacity as Secretary of State of the State of Texas, | )  [Lead case]<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| *Defendants* | ) |
| MEXICAN AMERICAN LEGISLATIVE CAUCUS, TEXAS HOUSE OF REPRESENTATIVES (MALC), | )<br>)<br>) |
| *Plaintiffs* | )<br>) |
| v. | )<br>)  CIVIL ACTION NO. |
| STATE OF TEXAS; RICK PERRY, in his official capacity as Governor of the State of Texas; DAVID DEWHURST, in his official capacity as Lieutenant Governor of the State of Texas; JOE STRAUS, in his official capacity as Speaker of the Texas House of Representatives, | )  SA-11-CA-361-OLG-JES-XR<br>)  [Consolidated case]<br>)<br>)<br>)<br>)<br>)<br>) |
| *Defendants* | )<br>)<br>) |

| | |
|---|---|
| TEXAS LATINO REDISTRICTING TASK FORCE, JOEY CARDENAS, ALEX JIMENEZ, EMELDA MENENDEZ, TOMACITA OLIVARES, JOSE OLIVARES, ALEJANDRO ORTIZ, REBECCA ORTIZ, FLORINDA CHAVEZ, ARMANDO CORTEZ, CESAR EDUARDO YEVENES, GREGORIO BENITO PALOMINO, RENATO DE LOS SANTOS, GILBERTO TORRES, SOCORRO RAMOS, SERGIO CORONADO and CYNTHIA VALADEZ, <br><br> *Plaintiffs* <br><br> v. <br><br> RICK PERRY, in his official capacity as Governor of the State of Texas; HOPE ANDRADE, in her official capacity as Secretary of State of the State of Texas, <br><br> *Defendants* | CIVIL ACTION NO. <br> SA-11-CA-490-OLG-JES-XR <br> [Consolidated case] |

## SECOND AMENDED COMPLAINT OF PLAINTIFFS TEXAS LATINO REDISTRICTING TASK FORCE, ET AL.

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

I.
INTRODUCTION

1. Plaintiffs are an association and individual registered voters that seek, on behalf of themselves and their members, declaratory and injunctive relief to enforce the Fourteenth and Fifteenth Amendments to the United States Constitution and the Voting Rights Act of 1965.

2. Plaintiffs seek a declaratory judgment that the newly-enacted Texas congressional and Texas House of Representatives redistricting plans violate their civil rights because the

plans unlawfully dilute the voting strength of Latinos. Plaintiffs further seek a declaratory judgment that the newly-enacted Texas congressional and Texas House of Representatives redistricting plans discriminate against them on the basis of race and national origin. Plaintiffs seek a permanent injunction prohibiting the calling, holding, supervising or certifying of any future congressional or Texas House elections under the challenged redistricting plans. Plaintiffs seek the creation of congressional and Texas House redistricting plans that will not cancel out, minimize or dilute the voting strength of Latino voters in Texas. Plaintiffs further seek costs and attorneys' fees.

## II.
## JURISDICTION

3. Jurisdiction is based upon 28 U.S.C. 1343a (3) & (4) and upon 28 U.S.C. 1331 for causes of action arising from 42 U.S.C. 1973 and 1973c. Jurisdiction for Plaintiffs' claim for declaratory relief is based upon 28 U.S.C. 2201 and 2202. Jurisdiction for Plaintiffs' claims under the Fourteenth and Fifteenth Amendments to the U.S. Constitution is based upon 42 U.S.C. Section 1983 and 28 U.S.C. 1331. Jurisdiction for Plaintiffs' claim for attorney's fees is based on 42 U.S.C. Sections 1973l(e) and 1988. Venue is proper in this court under 28 U.S.C. 1391(b).

## III.
## PLAINTIFFS

4. Plaintiff TEXAS LATINO REDISTRICTING TASK FORCE is an unincorporated association of individuals and organizations committed to securing fair redistricting plans for Texas. Organizational members of the Texas Latino Redistricting Task Force include Hispanics Organized for Political Education (HOPE), the Mexican American Bar Association of Texas, the National Organization for Mexican American Rights,

Southwest Voter Registration Education Project, the William C. Velasquez Institute, and Southwest Workers' Union. Individuals who are members of the Task Force member organizations include: Latino registered voters of Texas who are injured by the dilution of Latino voting strength statewide; Latino registered voters of Texas who reside in areas where Latino voting strength has been diluted by newly-enacted plans H283 and C185; and Latino registered voters of Texas who reside in areas where Latino-majority districts should have been created but were not in plans H283 and C185.

5. Plaintiff Joey Cardenas is Latino and a registered voter of Texas. He resides in Louise, Texas. In plans H283 and C185, Plaintiff Cardenas resides in Texas House District 85 and Congressional District 27.

6. Plaintiff Florinda Chavez is Latina and a registered voter of Texas. She resides in Austin, Texas. In plans H283 and C185, Plaintiff Chavez resides in Texas House District 49 and Congressional District 35.

7. Plaintiff Cynthia Valadez is Latina and a registered voter of Texas. She resides in Austin, Texas. In plans H283 and C185, Plaintiff Valadez resides in Texas House District 51 and Congressional District 35.

8. Plaintiff Emelda Menendez is Latina and a registered voter of Texas. She resides in San Antonio, Texas. In plans H283 and C185, Plaintiff Menendez resides in Texas House District 120 and Congressional District 28.

9. Plaintiff Alejandro Ortiz is Latino and a registered voter of Texas. He resides in San Antonio, Texas. In plans H283 and C185, Plaintiff Ortiz resides in Texas House District 116 and Congressional District 20.

10. Plaintiff Rebecca Ortiz is Latina and a registered voter of Texas. She resides in San Antonio, Texas. In plans H283 and C185, Plaintiff Ortiz resides in Texas House District 116 and Congressional District 20.

11. Plaintiff Armando Cortez is Latino and a registered voter of Texas. He resides in San Antonio, Texas. In plans H283 and C185, Plaintiff Cortez resides in Texas House District 119 and Congressional District 35.

12. Plaintiff Gregorio Benito Palomino is Latino and a registered voter of Texas. He resides in San Antonio, Texas. In plans H283 and C185, Plaintiff Palomino resides in Texas House District 118 and Congressional District 35.

13. Plaintiff Cesar Eduardo Yevenes is Latino and a registered voter of Texas. He resides in Corpus Christi, Texas. In plans H283 and C185, Plaintiff Yevenes resides in Texas House District 32 and Congressional District 27. Plaintiff Yevenes is injured by having the congressional district in which he resides, Congressional District 27, altered so that it is no longer a Latino opportunity district. Plaintiff Yevenes no longer resides in a congressional district in which he has the opportunity to elect his candidate of choice. Plaintiff Yevenes is further injured by having the House District in which he resides reconfigured so that it is no longer a Latino opportunity district. Plaintiff Yevenes resided in Texas House District 33 in the benchmark House plan. Plaintiff Yevenes no longer resides in a Texas House district in which he has the opportunity to elect his candidate of choice.

14. Plaintiff Jose Olivares is Latino and a registered voter of Texas. He resides in Corpus Christi, Texas. In plans H283 and C185, Plaintiff Olivares resides in Texas House District 34 and Congressional District 27. Plaintiff Olivares is injured by having the

congressional district in which he resides, Congressional District 27, altered so that it is no longer a Latino opportunity district. Plaintiff Olivares no longer resides in a congressional district in which he has the opportunity to elect her candidate of choice.

15. Plaintiff Tomacita Olivares is Latina and a registered voter of Texas. She resides in Corpus Christi, Texas. In plans H283 and C185, Plaintiff Olivares resides in Texas House District 34 and Congressional District 27. Plaintiff Olivares is injured by having the congressional in which she resides, Congressional District 27, altered so that it is no longer a Latino opportunity district. Plaintiff Olivares no longer resides in a congressional district in which she has the opportunity to elect her candidate of choice.

16. Plaintiff Renato De Los Santos is Latino and a registered voter of Texas. He resides in Dallas, Texas. In plans H283 and C185, Plaintiff De Los Santos resides in Texas House District 104 and Congressional District 6. Plaintiff De Los Santos and is injured by the failure to create a Latino-majority congressional district in the Dallas-Ft. Worth area that would provide him the opportunity to elect his candidate of choice to Congress.

17. Plaintiff Alex Jimenez is Latino and a registered voter of Texas. He resides in Fort Worth, Texas. In plans H283 and C185, Plaintiff Jimenez resides in Texas House District 95 and Congressional District 12. Plaintiff Jimenez is injured by the failure to create a Latino-majority congressional district in the Dallas-Ft. Worth area that would provide him the opportunity to elect his candidate of choice to Congress.

18. Plaintiff Gilberto Torres is Latino and a registered voter of Texas. He resides in Uvalde County, Texas. In plans H283 and C185, Plaintiff Torres resides in Texas House District 80 and Congressional District 23 and is injured by having the congressional district in which he resides, Congressional District 23, altered so that it is no longer a Latino

opportunity district. Plaintiff Torres no longer resides in a congressional district in which he has the opportunity to elect his candidate of choice.

19. Plaintiff Socorro Ramos is Latina and a registered voter of Texas. She resides in Socorro, Texas. In plans H283 and C185, Plaintiff Ramos resides in Texas House District 75 and Congressional District 23. Plaintiff Ramos resided in Congressional District 16 in the benchmark congressional plan. Plaintiff Ramos is injured by having the congressional district in which she resides reconfigured so that she is now located in District 23, which is not a Latino opportunity district. Plaintiff Ramos no longer resides in a congressional district in which she has the opportunity to elect her candidate of choice.

20. Plaintiff Sergio Coronado is Latino and a registered voter of Texas. He resides in Canutillo, Texas. In plans H283 and C185, Plaintiff Coronado resides in Texas House District 78 and Congressional District 16. Plaintiff Coronado is injured by having the House District in which he resides configured so that it does not offer Latino voters the opportunity to elect their candidate of choice. Plaintiff Coronado does not reside in a Texas House district in which he has the opportunity to elect his candidate of choice.

21. All plaintiffs are injured by the dilution of Latino voting strength statewide in plans H283 and C185.

## IV.
## DEFENDANTS

22. Defendant RICK PERRY is sued in his official capacity as Governor of Texas. Defendant PERRY is the Chief Executive Officer of the State of Texas.

23. Defendant HOPE ANDRADE is sued in her official capacity as Secretary of State of Texas. Defendant Andrade is the State's election officer and as such is responsible for

overseeing the conduct of elections within the State.

## V.
## FACTS

24. According to the 2010 Census, the population of Texas is 25,145,561 with a Latino population of 9,460,921 (38%). The Latino voting age population of Texas is 34% of the total voting age population. The Latino citizen voting age population of Texas is 25% of the total citizen voting age population.

25. According to the 2010 Census, Latinos comprised approximately 65% of total population growth in Texas between 2000 and 2010.

26. The current (benchmark) redistricting plan for the Texas House of Representatives was ordered into effect on November 28, 2001 by the U.S. District Court for the Eastern District of Texas in *Balderas v. Texas* (No. 6:01CV158).

27. The newly-enacted redistricting plan for the Texas House of Representatives (Plan H283) was signed into law by Defendant PERRY on June 17, 2011.

28. The current (benchmark) congressional redistricting plan was ordered into effect on August 4, 2006 by the U.S. District Court for the Eastern District of Texas in *LULAC v. Perry* (No. 2:03-00354).

29. The newly-enacted redistricting plan for Texas congressional districts (Plan C185) was signed into law by Defendant PERRY on July 19, 2011.

30. The historical background of Texas House and congressional redistricting includes federal court orders revising the most recent redistricting plans, enacted in 2001 and 2003 respectively, to cure violations of the federal Voting Rights Act.

31. The Legislature's adoption of plans C185 and H283 included departures from the normal procedural sequence and substantive departures from the factors usually considered important by the Legislature in redistricting.

32. During the 82nd Legislature's Regular and Special Sessions, Latino and African American legislators serving on the House and Senate Redistricting Committees were excluded by legislative leadership from the process of drawing and negotiating plans C185 and H283.

33. During the 82nd Legislature's Regular and Special Sessions, Latino and African American residents of Texas were denied the opportunity to analyze and comment on plans C185 and H283. The House and Senate Redistricting Committees did not hold public hearings following the public release of plans C185 and H283 and prior to voting on plans C185 and H283.

34. Despite the dramatic growth of the Latino population in Texas since 2000, Plan H283 contains one fewer Latino opportunity district when compared to the benchmark Texas House plan. Under Plan H283, Latinos have lost voting strength in Texas.

35. Plan H283 dilutes Latino voting strength statewide by "packing" Latino voters in El Paso, Cameron, Hidalgo and Nueces counties. Plan H283 fails to create at least three additional Latino-majority House districts that afford Latinos the opportunity to elect their preferred candidate.

36. The significant growth of the Latino population in Texas since 2000 allowed Texas to gain some, if not all of its four new congressional districts. Despite the growth of the Latino population, and the critical role it played in securing the four new congressional districts, Plan C185 contains the same number of Latino opportunity districts when compared to the benchmark congressional plan. Plan C185 dilutes Latino voting strength

        statewide by "packing" and "fracturing" Latino voters in South Texas, Houston and the Dallas-Fort Worth metroplex.

37.    For example, Plan C185 removes Nueces County, and its more than 200,000 voting-age Latinos, from the South Texas configuration of congressional districts and strands them in a district stretching northward in order to prevent Nueces County Latinos from electing their candidate of choice. In addition to stripping Latinos out of the South Texas configuration of congressional districts, Plan C185 altered Congressional District 23 to prevent Latinos from having the opportunity to elect their candidate of choice. Plan C185 fails to create nine Latino-majority congressional districts that afford Latinos the opportunity to elect their preferred candidate.

38.    In the benchmark congressional plan, Latinos have the opportunity to elect their preferred candidate in 22% (7 of 32) of the state's congressional districts. In Plan C185, Latinos have the opportunity to elect their preferred candidate in 19% (7 of 36) of the state's congressional districts. Thus, despite their growth, in Plan C185 Latinos have lost voting strength in Texas.

39.    On September 25, 1975, Section 5 of the Voting Rights Act of 1965 was extended and amended to cover the State of Texas. State and political subdivisions covered by the Act must comply with certain specific procedures. Among them is the requirement that all qualifications, prerequisites, standards practices, or procedures with respect to voting different from those in effect on November 1, 1972 must be determined, either by the United States District Court for the District of Columbia or the United States Attorney General, not to have the purpose or effect of denying or abridging the right to vote on account of race, color or membership in a language minority group.

40. The State of Texas is a covered jurisdiction subject to the requirements of Section 5 of the Voting Rights Act, as amended, 42 U.S.C. § 1973c. No Texas statewide redistricting plan is legally enforceable prior to receiving federal preclearance.

41. On July 27, 2006, President George W. Bush signed into law the Voting Rights Act Reauthorization and Amendments Act of 2006, which extended Section 5 for 25 years.

42. Section 2 of the Voting Rights Act of 1965, 42 U.S.C. 1973, applies nationwide and prohibits voting practices and procedures that result in the denial or abridgement of the right of any citizen to vote on account of race, color or membership in a language minority group. Section 2 is a permanent provision of the federal Voting Rights Act.

The Benchmark Texas Congressional Redistricting Plan

43. There are 32 districts in the benchmark congressional redistricting plan for Texas. Seven of the congressional districts in the benchmark plan are Latino-majority and offer Latinos the opportunity to elect their candidate of choice.

44. Following the 2010 Census, Texas was apportioned 36 congressional districts.

45. The benchmark congressional redistricting plan contains 7 districts in which Latinos have the opportunity to elect their preferred candidate to Congress.

The Legislature's Congressional Redistricting Plan (C185)

46. Plan C185 contains 36 congressional districts and contains an overall population deviation of one.

47. Plan C185 contains 7 districts in which Latinos have the opportunity to elect their preferred candidate to Congress.

48. Plan C185 does not include a Latino-majority congressional district in the Dallas-Ft. Worth area.

49. The Latino population of Dallas and Tarrant counties is sufficiently geographically compact to comprise the majority of the citizen voting age persons in a congressional district.

50. A congressional district can be created in the Dallas-Ft. Worth area that will afford Latino voters the opportunity to elect their candidate of choice.

51. Plan C185 includes only six congressional districts located in the southern and western portion of the state that offer Latinos the opportunity to elect their candidate of choice.

52. The Latino population of Texas is sufficiently geographically compact to comprise the majority of citizen voting age persons in at least seven congressional districts located in the southern and western portion of the state.

53. Seven congressional districts can be created in the southern and western portion of the state that offer Latino voters the opportunity to elect their candidate of choice.

54. Plan C185 includes one Latino-majority congressional district in Harris County.

55. The Latino population of Harris County is sufficiently geographically compact to comprise the majority of citizen voting age persons in one congressional district and the majority of voting age persons in a second congressional district. The Latino and African American population of Harris County is sufficiently geographically compact to comprise the majority of citizen voting age persons in one congressional district.

56. Two congressional districts can be created in Harris County that will afford Latino voters the opportunity to elect their candidate of choice.

57. Latinos in Texas, including the areas in which Latino-majority congressional districts can be created, are politically cohesive.

58. Anglos (White Non-Hispanics) vote sufficiently as a bloc to enable them --in the absence of special circumstances, such as the Latino candidate running unopposed --usually to defeat the Latino voters' preferred candidates in Texas, including the areas in which Latino-majority congressional districts can be created.

59. Plan C185 interacts with social and historical conditions to cause an inequality in the opportunity of Latino voters to elect representatives of their choice as compared to Anglo voters.

Texas House of Representatives Plan (H283)

60. Plan H283 contains a total of 150 House districts. In Plan H283, 34 House districts contain a majority Latino voting age population and 30 House districts contain a majority Latino citizen voting age population.

61. Plan H283 contains fewer districts in which Latinos have the opportunity to elect their candidate of choice when compared to the benchmark Texas House redistricting plan. Plan H283 offers less opportunity for Latinos to elect their preferred candidates to the Texas House of Representatives when compared to the benchmark plan.

62. The Latino population of Texas is sufficiently geographically compact to comprise the majority of citizen voting age persons in at least 33 Texas House districts.

63. At least 33 Texas House districts can be created in the state that offer Latino voters the opportunity to elect their candidate of choice.

64. Latinos in Texas, including the areas in which Latino-majority Texas House districts can be created, are politically cohesive.

65. Anglos vote sufficiently as a bloc to enable them --in the absence of special circumstances, such as the Latino candidate running unopposed --usually to defeat the

Latino voters' preferred candidates in Texas, including the areas in which Latino majority Texas House districts can be created.

66. Plan H283 interacts with social and historical conditions to cause an inequality in the opportunity of Latino voters to elect representatives of their choice as compared to Anglo voters.

67. Plans C185 and H283 operate to dilute the voting strength of Latinos in the State of Texas.

49. At all times relevant herein, Defendants have acted under color of State law.

## VI.
## CAUSES OF ACTION

### COUNT 1

*Equal Protection Clause of the 14th Amendment to the U.S. Constitution*

50. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

51. Plans C185 and H283 discriminate against Plaintiffs on the basis of race and national origin in violation of the 14th Amendment to the U.S. Constitution.

### COUNT 2

*15th Amendment to the U.S. Constitution*

52. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

53. Plans C185 and H283 discriminate against Plaintiffs on the basis of race and national origin in violation of the 15th Amendment to the U.S. Constitution.

## COUNT 3

*Section 2 of the Voting Rights Act*

54. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

55. Plans C185 and H283 result in a denial or abridgement of the right to vote of individual plaintiffs and organizational plaintiff's members on account of their race, color, or ethnicity, by having the effect of canceling out or minimizing their individual voting strength as minorities in Texas. Plans C185 and H283 do not afford individual plaintiffs and organizational plaintiff's members an equal opportunity to participate in the political process and to elect representatives of their choice, and denies individual plaintiffs and organizational plaintiff's members the right to vote in elections without distinction of race, color or previous condition of servitude in violation of 42 U.S.C. Section 1973.

## COUNT 4
*Section 5 of the Voting Rights Act*

56. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

57. Plans C185 and H283 have not received the necessary preclearance required by Section 5 of the Voting Rights Act, 42 U.S.C. Section 1973c. They therefore cannot be implemented unless and until they receive Section 5 preclearance.

## VII.
## REQUEST FOR THREE JUDGE COURT

58. Plaintiffs request a three-judge trial court pursuant to 28 U.S.C. Section 2284.

## VII.
## ATTORNEYS' FEES

59. In accordance with 42 U.S.C. Sections 1973-1(e) and 1988, Plaintiffs are entitled to recover reasonable attorney's fees, expenses and costs.

## IX.
## PRAYER

60. WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that this Court:

    (a) assume jurisdiction of this action and request a three-judge panel pursuant to 28 U.S.C. Section 2284;

    (b) issue a declaratory judgment finding that Plans C185 and H283 illegally and unconstitutionally dilute the voting strength of Latino voters in Texas and are unlawful, null and void;

    (c) permanently enjoin Defendants from calling, holding, supervising or certifying any elections under Plans C185 and H283. Plaintiffs have no adequate remedy at law other than the judicial relief sought herein, and unless the Defendants are enjoined from using Plans C185 and H283, individual plaintiffs and organizational plaintiffs' members will be irreparably harmed by the continued violation of their statutory and constitutional rights;

    (d) set a reasonable deadline for state authorities to enact or adopt redistricting plans for congressional and Texas House districts that do not dilute, cancel out or minimize the voting strength of Latino voters;

    (e) if state authorities fail to enact or adopt valid redistricting plans by the Court's deadline, order new redistricting plans for congressional and Texas House districts that do not dilute, cancel out or minimize the voting strength of Latino voters;

    (f) adjudge all costs against Defendants, including reasonable attorneys fees;

    (g) retain jurisdiction to render any and all further orders that this Court may

    (h) grant any and all further relief to which Plaintiffs may show themselves to be entitled.

DATED: July 19, 2011Respectfully submitted,

MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND

*/s/ Nina Perales*_____
Nina Perales
Texas Bar No. 24005046
Marisa Bono
Texas Bar No. 24052874
Rebecca M. Couto
California Bar No. 248019
110 Broadway, Suite 300
San Antonio, TX 78205
(210) 224-5476
FAX (210) 224-5382

**Certificate of Service**

The undersigned counsel hereby certifies that she has electronically submitted for filing a true and correct copy of the above and foregoing in accordance with the Electronic Case Files System of the Western District of Texas on the 19th day of July, 2011.

*/s/ Nina Perales*___
Nina Perales