UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SHANNON PEREZ, HAROLD DUTTON, JR. AND GREGORY TAMEZ, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| and | ) ) ) | |
| EDDIE BERNICE JOHNSON, SHEILA JACKSON-LEE, ALEXANDER GREEN, MEMBERS OF THE UNITED STATES CONGRESS | ) ) ) ) ) ) | CIVIL NO. SA-11-CA-360-OLG-JES-XR |
| *Plaintiff-Intervenors* | ) ) ) | |
| STATE OF TEXAS, ET AL., | ) ) ) | |
| Defendants. | ) ) ) | |
| MEXICAN AMERICAN LEGISLATIVE CAUCUS, | ) ) ) | |
| v. | ) ) | CIVIL NO. SA-11-CV-361-OLG-JES-XR |
| STATE OF TEXAS, ET AL. | ) ) ) | |
| TEXAS LATINO REDISTRICTING TASK FORCE | ) ) ) ) | |
| v. | ) ) | CIVIL No. SA-11-CV-490-OLG-JES-XR |
| RICK PERRY | ) | |

<u>**ORIGINAL COMPLAINT OF PLAINTIFF-INTERVENORS CONGRESSPERSONS EDDIE BERNICE JOHNSON, SHEILA JACKSON-LEE AND ALEXANDER GREEN**</u>

1.      This is an action to enforce Plaintiff-Intervenors' rights under the Fourteenth Amendment to the United States Constitution and under Section 2 of the Voting Rights Act, 42 U.S.C. § 1973 et seq. Plaintiff-Intervenors (Texas African-American Congressional Intervenors), voters and

members of the United States Congress, bring this action requesting declaratory and injunctive relief against the State of Texas to prevent the implementation of the proposed redistricting plan for Congressional districts in Harris, Fort Bend, Dallas and Tarrant Counties. The Congressional redistricting plan dilutes the voting strength of African-American voters, because in the totality of circumstances, African-American voters do not have an equal opportunity to elect candidates of their choice to Congress. If allowed to be implemented, this plan will undervalue the vote of Texas' African-American citizens and deny them fair representation in these governing bodies. Plaintiff-Intervenors seek the implementation of a Congressional redistricting plan that will not dilute the voting strength of African-American voters in Texas. Plaintiff-Intervenors also seek costs and attorneys' fees.

## I. JURISDICTION

2.  Plaintiff-Intervenors' complaint arises under the United States Constitution and federal statutes. This Court has jurisdiction over this action under 28 U.S.C. § § 1331, 1343(a)(3) and (4), and 1988.

3.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

4.  Plaintiff-Intervenors seek declaratory and injunctive relief pursuant to 28 U.S.C. § 2201 and 2202.

5.  Plaintiff-Intervenors request the convening of a three-judge court pursuant to 28 U.S.C. § 2284.

## II. PARTIES

6.  Plaintiff-Intervenors, the **AFRICAN-AMERICAN CONGRESSIONAL INTERVENORS**, are MEMBERS of the UNITED STATES CONGRESS and VOTERS. Since Texas has lost African-American Congressional representation in the past, it is vitally important

that African-American members of Congress participate as parties. Congresspersons Johnson and Jackson-Lee did in the last cycle and Congressman Green understands equally the need to participate this time.

7.     Congresswoman Eddie Bernice Johnson is an African-American who resides in Dallas Texas and represents CD 30. She has served in Congress since 1993. Congresswoman Johnson was the first African-American female Chairperson of a Congressional subcommittee. She is a former Chair of the Congressional Black Caucus and currently a member of the House Transportation and Infrastructure Committee, the Aviation, Highways and Transit, and Water Resources and Environment Subcommittees. Congressperson Johnson has worked zealously to represent her district where she ably represents African-American voters and a coalition of African-American and Latino voters.

8.     Congresswoman Sheila Jackson-Lee is in her ninth term in the United States Congress. She is a member of the Judiciary and Homeland Security Committees and is the founder and co-chair of the Congressional Children's Caucus. She has been a true advocate for immigration reform during her tenure in Congress and has worked zealously to represent her district, CD 18, where she ably represents African-American voters and a coalition of African-American and Latino voters.

9.     Congressman Alexander Green is in his fourth term in Congress. He is a member of the Financial Services Committee, the Sub-Committee on Capital Markets and Government Sponsored Enterprises and the Subcommittee on Domestic Monetary Policy and Technology. He is a former elected Judge and President of the Houston-NAACP and ably and zealously represents African-American voters and a coalition of African-American and Latino voters in CD

10.     Defendant is the State of Texas. The State of Texas is a political subdivision covered under the provisions of the Voting Rights Act and responsible for the actions of its officials with regard to state-wide redistricting.

11.     Defendant Rick Perry is the duly elected and acting Governor of the State of Texas. Under Article IV, Section 1, of the Texas Constitution, he is the chief executive officer of the Defendant State of Texas. He is sued in his official capacity.

12.     Defendant David Dewhurst is the duly elected and acting Lieutenant Governor of Texas. Under Article IV, Section 16, of the Texas Constitution, he is the President of the Texas Senate. He is sued in his official capacity.

13.     Defendant Joe Strauss is the duly elected and acting Speaker of the Texas House of Representatives, and is the presiding officer over the Texas House of Representatives. He is sued in his official capacity.

14.     Defendant Hope Andrade is the duly appointed and acting Secretary State of the State of Texas. She is being sued in her official capacity.

### III. FACTS

15.     Section 2 of the Voting Rights Act of 1965, 42 U.S.C. 1973, applies nationwide and prohibits voting practices and procedures that result in the denial or abridgement of the right of any citizen to vote on account of race, color, or membership in a language minority group. Section 2 is a permanent provision of the federal Voting Rights Act.

12.     Section 2 of the Voting Rights Act of 1965, 42 U.S.C. 1973, applies nationwide and prohibits voting practices and procedures that result in the denial or abridgement of the right of any citizen to vote on account of race, color, or membership in a language minority group. Section 2 is a permanent provision of the federal Voting Rights Act.

13.	The total Texas population is 12% African-American according to the 2010 federal census. African-Americans comprise at least this percentage of the state's Citizen Voting Age population. Texas' African-American population is roughly equivalent to the total population of Mississippi, which has four representatives in the United States Congress.

14.	After the last decennial census, the Texas Congressional apportionment will increase from 32 representatives to 36 representatives, due to an overall population increase of 20.6% (more than twice the average rate of growth nationally). Approximately 89% of the population growth in Texas this past decade—growth that resulted in our State's right to four additional Congressional representatives—is a result of minority growth. Both Latino growth and African-American growth eclipsed Anglo growth in both percentage and raw numbers—Latino growth represented 65% of the state's population growth, the African-American population grew 22%, and the Anglo population grew just 4.2%. Texas is now a majority-minority state—only 45% of the state's total population is Anglo.

15.	Proportionally, African-Americans are underrepresented in the U.S. House of Representatives. Roughly proportional representation would require more than the three African-American opportunity districts that currently exist. Each of these Congresspersons receives many requests for assistance outside of their district because of the few African-American Congresspersons that are within the Texas delegation, even though the Texas' African-American population approximates that of Mississippi. The Congresspersons clearly have an interest, not only in Texas gaining another person who will work to advance the political interests of African-Americans statewide, but also in having plans that would permit them to be more effective by not marginalizing African-American voters in their districts or unnecessarily splitting communities of interest.

16.     Legislative efforts to draw Texas Congressional map also led to the drawing of Congressional Districts 9, 18 and 30 in such a way as to be unfair and undermine the ability of African-Americans to effectively participate in the political process in those areas and it has similar impact on Latinos in those areas who have acted in coalition with African-Americans to further the interests of both communities.

17.     The Congressional plans unnecessarily split communities of interest, delete important areas from the existing Congressional districts, and are designed to undermine or frustrate effective and long term voter coalitions in the area.  The plan is the result in whole or in part of intentional discrimination.

18.     The current Congressional redistricting plan does not include a Latino-majority congressional district in the Fort Worth area.

19.     The Latino population in Tarrant County is sufficiently geographically compact to comprise the majority of citizen voting age persons in a congressional district.

20.     A Congressional district can be created in the Fort Worth area that will afford Latino voters the opportunity to elect their candidate of choice.

21.     Elections in Texas continue to be racially polarized.

22.     African-Americans in Texas generally vote as a group and are politically cohesive.

23.     Latinos in Texas vote as a group and are politically cohesive.

24.     Latinos and African-Americans in Texas vote as a group and are politically cohesive. Latinos and African-Americans in CD 30, CD 9 and CD 18 vote as a group and are politically cohesive in ensuring the continued character of the districts. Latinos and African-Americans in Tarrant and Counties vote as a group and are politically cohesive.

25. Anglos in Texas generally vote as a group, are politically cohesive and vote sufficiently as a block to defeat the preferred candidate of Latino and African-American voters absent fair and equitable majority-minority single member districts. This has been documented by the Federal and State Courts, the US Commission on Civil Rights and by the US Congress.

## IV. CAUSES OF ACTION

26. The allegations contained in paragraphs 1-25 are alleged as if fully set forth herein.

27. The current Congressional redistricting plan violates Section 2 of the Voting Rights Act, as amended, 42 U.S. § 1973.  This plan results in a denial or abridgement of the right to vote of Plaintiff-Intervenors and their African-American constituents on account of their race, color, or ethnicity, by having the effect of canceling out or minimizing their individual voting strength as minorities in Texas. The state's proposed Congressional redistricting plan, passed by the Texas Legislature, does not afford Plaintiff-Intervenors or their African-American constituents an equal opportunity to participate in the political process and to elect representatives of their choice, and denies Plaintiff-Intervenors and their African-American constituents the right to vote in elections without discrimination of race, color, or previous condition of servitude in violation of 42 U.S.C. § 1973.

### Count II

28. The allegations contained in paragraphs 1-25 are alleged as if fully set forth herein.

29. The Congressional redistricting plan adopted by the Texas Legislature was developed in such a way and with the intent to disadvantage African-American and other minority voters. This intentional discrimination is in violation of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

### Count III

30. The allegations contained in paragraphs 1-25 are alleged as if fully set forth herein.

31. The current plan in place for the Congressional districts exceeds permissible population variances between the least populated and the most populated districts. The enforcement of such a plan by the Defendants violates the rights of all voters as guaranteed by the one person, one vote principle embodied within the Fourteenth Amendment of the U.S. Constitution, as protected by 42 U.S.C. § 1983.

32. There are no enforceable alternative plans currently in place.

33. The plans adopted by the Texas Legislature for the United States Congress, Texas House and Texas Senate have not yet received the necessary preclearance required by Section 5 of the Voting Rights Act, 42 U.S. C. § 1973c. These plans therefore cannot be implemented unless and until it receives Section 5 preclearance.

34. The plans adopted by the Texas Legislature for the United States Congress, Texas House and Texas Senate violate Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973, and thus cannot be implemented.

## V. BASIS FOR EQUITABLE RELIEF

35. Plaintiff-Intervenors have no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for declaratory judgment and injunctive relief is their only means of securing adequate redress from all of the Defendants' unlawful practices.

36. Plaintiff-Intervenors will continue to suffer irreparable injury from all of the Defendants' intentional acts, policies, and practices set forth herein unless enjoined by this Court.

## VI. REQUEST FOR THREE JUDGE COURT

37. Plaintiff-Intervenors request a three-judge trial court pursuant to 28 U.S.C. § 2284.

## VII. ATTORNEYS' FEES

38. In accordance with 42 U.S.C. Section 1973-1(e) and 1988, Plaintiff-Intervenors are entitled to recover reasonable attorney's fees, expenses and costs.

## VIII. PRAYER

39. Plaintiff-Intervenors respectfully pray that this Court enter Judgment granting:

   A. A declaratory judgment that State Defendants' actions violate the rights of Plaintiff-Intervenors as protected by Section 2 of the Voting Rights Act, 42 U.S.C. § 1973 et seq., and the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983;

   B. Preliminary and permanent injunctive relief requiring State Defendants, their successors in office, agents, employees, attorneys, and those persons acting in concert with them and/or at their discretion – to develop a Congressional redistricting plan that does not dilute African American and minority voting strength for the United States House of Representatives, and enjoining and forbidding the use of the current Congressional redistricting plan;

   C. If need be, adopt an interim electoral plan for the 2012 elections for United States Congress;

   D. An order of this Court retaining jurisdiction over this matter until all Defendants have complied with all orders and mandates of this Court;

   E. An order requiring Defendants to pay all costs including reasonable attorneys' fees; and

   F. Such other and further relief as the Court may deem just and proper.

Respectfully Submitted,

**Law Offices of Gary L. Bledsoe & Associates**

By:      /s/ Gary L. Bledsoe
Gary L. Bledsoe
State Bar No.: 02476500
316 West 12th Street, Suite 307
Austin, Texas 78701
Telephone: (512) 322-9992
Facsimile: (512) 322-0840
*Attorney for the Plaintiff-Intervenors*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of July, 2011 a true and correct copy of Plaintiff-Intervenors' Complaint was delivered to Plaintiffs and Defendants via the United States District Court, Western Division of Texas, San Antonio Division, ECF system.

 /s/ Gary L. Bledsoe
Gary L. Bledsoe