UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SHANNON PEREZ et al., | § § § § | |
| *Plaintiffs*, | | |
| MEXICAN AMERICAN LEGISLATIVE CAUCUS, TEXAS HOUSE OF REPRESENTATIVES, (MALC), | § § § § § § | |
| *Plaintiff*, | § § § | |
| TEXAS LATINO REDISTRICTING TASK FORCE, *et al.*, | § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § § | CIVIL ACTION NO. 5:11-CV-0360-OLG-JES-XR (Consolidated) |
| STATE OF TEXAS, *et al.*, | § § § | |
| *Defendants*. | § | |

**PLAINTIFF INTERVENOR LULAC FIRST AMENDED AND SUPPLEMENTAL COMPLAINT**

1.      This is a redistricting lawsuit.  This action is brought pursuant to Section 2 of the Voting Rights Act, 42 U.S.C. § 1973 *et seq*., Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c, and the Fourteenth and Fifteenth Amendments to the United States Constitution, 42 U.S.C. § 1983.  Plaintiff brings this action requesting declaratory and injunctive relief against the Defendants to challenge the redistricting plans adopted by the State of Texas for the Texas House of Representatives and United States House of Representatives.

2.      Plaintiff brings this action challenging the plan adopted by the State of Texas for Texas House of Representatives districts and  or United States House of Representatives districts (Congressional districts).  Texas grew by essentially four million persons during the past decade.  The White or Anglo population provided only ten percent of that increase.  Hispanic growth provided the lion's share of the Texas growth.

3.      Texas was apportioned four new congressional districts as a direct result of minority growth.  The Congressional redistricting plan adopted by the State Legislature provides no additional Districts where it is likely that Hispanic will be able to elect the candidate of their choice.  The same is true for the Texas House of Representatives.  In the case of the State House of Representatives the State went so far as to violate the clear Texas Supreme Court interpretation of the County line rule in the Texas Constitution to avoid the creation of a district in the Hidalgo and Cameron County area where Hispanics would be able to elect the representatives of their choice.  We will provide some examples of these claims of gerrymander.

4.      As the Court examines the Congressional Districts in the Harris area the Court will find that although the Anglo population actually declined in Harris County and Hispanic population exploded, the new Congressional District (36) in the Harris County area is heavily White or Anglo.  A district (14) combining the heavily Anglo areas of Jefferson County with Galveston is then attached to the heavily Anglo area of Southern Brazoria Count.  Much of the connection

making this district contiguous is open navigable water or a largely submerged sand bar

5.      The redistricting of the House of Representatives for Harris County actually reduced the members from Harris County from 25 to 24.  This reduction together with a clever gerrymander results in no additional Districts where Hispanics will be able to elect the representatives of their choice.  This in spite of the fact that the Anglo population of Harris County declined by more than 100,000 and the Hispanic population increased by almost 500,000.

6.      In the Dallas and Tarrant Counties the population growth is also overwhelmingly minority.  Yet a new Congressional District (33)  assigned to the area is an odd shaped district that starts in the heavily Anglo Southwestern portion of Wise County then takes in  heavily Anglo Parker County and the heavily Anglo Southwestern suburban area of Tarrant County.  It then makes a reach into the heavily minority mid cities area.

7.      The other Congressional Districts in Dallas Tarrant County follow a similar pattern.  District 26 includes a thin foot that extends from the heavily Anglo Denton County into the heart of the minority community of Fort Worth.  District 12 is a glove shaped district that wraps around District 12 and includes the balance of the minority community in Fort Worth.

8.      District 6 is a Cerberus includes the heavily Anglo Navarro County and Ellis County .

One head of the dog extends into the heavily minority North central and central Dallas County. The other head of the dog extends into the Southern heavily Anglo areas of Tarrant County.

9. Congressional District 5 is a District that starts in Cherokee County then combines four other heavily Anglo Counties with an arm extending into Dallas County and including much of the minority community of West central Dallas County.

10. Congressional Districts 24 and 32 are adjoining dog Shaped Districts that make up much of the population of the Northern portions of Tarrant and Dallas County. The legs of these two dogs are heavily minority while the balance is heavily Anglo.

11. All of the foregoing districts are examples of cracking in the state Congressional plan. On the other hand there are instances of packing. For example Congressional District 30 has been electing an African American member of Congress for more than 20 years. Under the plan in contention here, the Anglo population is reduced to only 13%.

12. In Harris County Congressional districts 9, 18, and 29 are in the range of 75 to 80% minority. District 18 has been electing an African American for more than 40 years. District 18 has been electing an African American who is the choice of the African American voters for almost 10 years. District 29 has been electing the choice of the minority voters since 1992.

13. The minority population of Dallas and Tarrant County is split into eight Congressional Districts. The minority community is packed into one district and cracked among seven others.

14. This is the cracking, packing and bizarrely shaped districts that are the hallmarks of gerrymandering. The concentration and splitting of racial and ethnic groups are the techniques that Section 2 of the Voting Rights Act was designed to eliminate.

15. Heavily Hispanic Nueces County comprises almost half a Congressional District just by itself. In the plan for District 27 Nueces County is combined with thirteen heavily Anglo counties. Hispanics make up half of the registered voters in Nueces County but in the range of 25% in the thirteen rural counties.

16. District 27 is the specific result of a Court Ordered interim plan in 1981 that was necessary because of a Voting Rights Act Objection. The basis of the objection was that the Hispanic population in the area was gerrymandered by cracking and packing.

17. There are similar factual situations elsewhere in the in the Congressional and House plans that will be shown to the Court.

18. As a result, there are no additional minority opportunity districts that could have and should have been included in the new redistricting plans for both the Texas House districts and

the Congressional districts. The plans adopted by the State failed to increase Hispanic and minority opportunity districts. Instead, the plans were developed to minimize and limit Hispanic and minority electoral opportunities. These plans, therefore, dilute the voting strength of Hispanic and minority voters of Texas in violation of Section 2 of the Voting Rights Act.

19. Moreover, since the challenged plans have not secured the required approval pursuant to Section 5 of the Voting Rights Act, they are not effective in law and violate Section 5 of the Voting Rights Act.

20. The State also failed to accommodate the undercount of the Hispanic population in the State's 2011 redistricting efforts. The 2010 Census severely undercounts Hispanics. The 2010 Census process and procedures resulted in substantial omissions of Hispanic population, particularly in the border region of Texas, including Cameron, Hidalgo, Starr, Webb, and El Paso Counties, as well as urban areas in Dallas and Houston. Defendant State of Texas and Defendants Perry, Dewhurst, and Straus (hereinafter collectively referred to as the "State Defendants") have used this data in the 2011 redistricting to determine the number of State House representatives that were apportioned to Texas Counties, as well as to determine compliance with the equal population requirements of the Texas and United States Constitutions. Use of this data, without accommodating for the undercount of Hispanic population, resulted in the undervaluing of the vote of Texas Hispanics and limiting the number of majority Hispanic

districts that can be drawn consistent with applicable constitutional and statutory requirements, resulting in a violation of Section 2 of the Voting Rights Act.

21.     Plaintiff also brings this action challenging the State House plan because the plan uses population variances to gain racial and partisan advantage in violation of the Fourteenth Amendment's one person, one vote principle.

22.     Plaintiff also challenge the current districts for the Texas House of Representatives and the United States House of Representatives in Texas and because they contain substantial population disparities in violation of the equal population requirements of the United States Constitution. The goal of the legislature in adopting the State House Districts was to stay under a 10% deviation rather than seek population equality among the state House districts. Since 1970 virtually all redistricting plans involving the Texas House have had deviations of 9.9%.

23.     Plaintiff also brings this action to challenge the manner in which the State Defendants are applying the redistricting requirement of the Texas Constitution regarding the Texas House of Representatives, embodied in Article III, § 26, commonly referred to as the "whole county rule."

24.     The State Defendants have completed the redistricting process. The Texas Legislature used the 2010 Census without modification, accommodation, or consideration of the undercount of the Hispanic population in adopting the plan for the Texas House districts. In addition, the State Defendants have enforced Article III, § 26, of the Texas Constitution in a manner that will

diminish Hispanic voting strength. Enforcement of Article III, § 26 in the manner now employed by the State has diminished the opportunity of Hispanic voters of Texas to participate in the political process by limiting the number of majority Hispanic districts that can be developed consistent with the requirements of the Voting Rights Act and the Fourteenth and Fifteenth Amendments of the United States Constitution. The State Defendants have also packed and cracked politically cohesive Hispanic and minority communities, resulting in fewer Hispanic majority districts. Moreover, the State Defendants have consistently overpopulated Hispanic majority districts and consistently under-populated majority Anglo districts to limit and diminish Hispanic voting strength. By diminishing and limiting Hispanic voting strength, the State Defendants violated Sections 2 and 5 of the Voting Rights Act and the one person, one vote principle.

25.     Plaintiff's complaint arises under the United States Constitution and federal statutes. This court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 1988.

## JURISDICTION AND VENUE

26.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

27.     Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

28.     Plaintiff requests that this three-judge court convened pursuant to 28 U.S.C. § 2284 continue to entertain this suit and grand the remedies sought by the Plaintiffs and their Intervenors.

## II.  PARTIES

29.     Plaintiff-Interrvenor, **LEAGUE OF LATIN AMERICAN CITIZENS,** hereinafter **LULAC,** is the oldest and largest national Hispanic civil rights organization. **LULAC** is a non-profit organization with presence in most of the fifty states and Puerto Rico. LULAC has chapters in most counties in Texas and individual members in almost all of the counties. LULAC has long been active in representing Hispanic's and other minority interests in all regions of the state.   Since 1971, LULAC has filed well over one hundred (100) lawsuits on behalf of Hispanic voters in the State of Texas and has been successful in virtually all of them. LULAC has participated as an original Plaintiff or as a Plaintiff-Intervenor in all state wide redistricting suits for the past forty (40) years.

30.     Plaintiff-Intervenor, Gabriel Y. Rosales, is a member of LULAC Council 4819 and a registered voter, with his address at 231 One Oak, San Antonio, TX 78228.

31.     LULAC adopts and incorporate by reference as if fully set out herein all of those paragraphs of their original Complaint in Intervention setting out and identifying the balance of the named plaintiffs.

32     Defendant is the State of Texas.  The State of Texas is a political subdivision covered under the provisions of the Voting Rights Act and responsible for the actions of its officials with regard to state-wide redistricting.

32.    The named Defendants, Rick Perry is the duly elected and acting Governor of the State of Texas; David Dewhurst is duly elected and acting Lieutenant Governor of Texas and , Joe Straus is the duly elected and acting Speaker of the Texas House of Representatives .  They are each sued in their official capacities.

33.    Plaintiff-Intervenor LULAC adopts by reference as if fully set out herein  all statements and factual allegations contained in paragraphs 17-62 of the Second Amended Complaint filed by the Mexican American Legislative  Caucus et. al.

## FIRST CLAIM FOR RELIEF – DISCRIMINATORY RESULT

34. The allegations contained or adopted by reference in the foregoing paragraphs are realleged as if fully set forth herein.

35.    Plaintiff's cause of action arises under Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973.  The State Defendants are in violation of the Voting Rights Act

because the State Defendants: have failed provide sufficient Hispanic and minority opportunity districts in the face of racial bloc voting; employed redistricting gerrymandering techniques such as packing and cracking of minority communities to limit and avoid drawing Hispanic and minority opportunity districts; used redistricting criteria, such as the "whole county" rule in an inconsistent and unjustifiable pretext to limit and avoid drawing Hispanic and minority opportunity districts; failed to consider the effect of the undercount of Hispanics as contained in the 2010 Census and proceeded with the 2011 redistricting, using the 2010 Census without modification or accommodation for the undercount of Hispanics. The failure of the Defendants to draw additional Hispanic and minority opportunity districts in; the Defendants use of racial gerrymandering techniques such as cracking and packing Hispanic and minority population to limit the number of Hispanic and minority opportunity districts; the Defendants' use of redistricting criteria unevenly and as a pretext to limit the number of Hispanic opportunity districts; and use of the 2010 Census without accommodation for the undercount of Hispanic population all work together to result in a violation of the rights of Plaintiff as secured by Section 2 of the Voting Rights Act, 42 U.S.C. § 1973.

## SECOND CLAIM FOR RELIEF
## INTENTIONAL DISCRIMINATION AND DISCRIMINATORY EFFECT

36.     The allegations contained or adopted by reference in the foregoing paragraphs are realleged as if fully set forth herein.

37. The election practices and procedures used to apportion Texas Congressional and House districts statewide, and in particular to Nueces, Harris, Dallas, Tarrant, Cameron, and Hidalgo Counties and West Texas, was done in such a fashion and with the intent to disadvantage Hispanic voters and resulted in a discriminatory effect on Hispanic voters in Texas. Based on the totality of the circumstances, the political process used by the State Defendants to allocate Texas House seats to Texas Counties, and Nueces, Harris, Dallas, Tarrant, Hidalgo, and Cameron Counties and West Texas in particular, violates the rights of Hispanic voters in violation of Section 2 of the Voting Rights Act as well as the Fourteenth and Fifteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

38. In addition, the Texas House districting plan adopted by the Texas House of Representatives has a total or top to bottom deviation of 9.9%. This deviation was achieved by overpopulating Hispanic majority districts, to avoid drawing new Hispanic majority districts and to gain political advantage. Therefore, the manipulation of the population deviation to 9.9% has a discriminatory effect on Hispanic voters and violates Section 2 of the Voting Rights Act, 42 U.S.C. § 1973.

**THIRD CLAIM FOR RELIEF – ONE PERSON, ONE VOTE**

39. The allegations contained or adopted by reference in the foregoing paragraphs are realleged and incorporated by reference as if fully set forth herein.

40.     Currently redistricting plans for the Texas House of Representatives and United States House of Representatives exceed permissible population variances between the least populated district and the most populated district. The implementation of such variances or deviations from ideal population by Defendants Perry, Dewhurst, and Straus violate the rights of all voters and persons as guaranteed by the one person, one vote principle embodied within the Fourteenth Amendment of the United States Constitution and protected by 42 U.S.C. § 1983.

41.  In addition, the Texas House districting plan adopted by the Texas Legislature has a total or top to bottom deviation of 9.9%.  This deviation was achieved by overpopulating Hispanic majority districts, to avoid drawing new Hispanic majority districts and to minimize the opportunity of Hispanic voters to participate in the political process and elect the representatives of their choice.  There is no legal justification for maintaining a deviation of 9.9% when there is such an impact on Hispanic voting strength.  This 9.9% deviation violates the one person, one vote principle of the Fourteenth Amendment of the United States Constitution as protected by 42 U.S.C. § 1983.

42.     With respect to the first, second, and third claims for relief, this is also an action for declaratory judgment and preliminary and permanent injunctive relief instituted pursuant to 42 U.S.C. § 1973, 42 U.S.C. § 1983, and 28 U.S.C. § 2001.

43. With respect to the first, second, and third claims for relief, Plaintiff seeks a declaration that the actions of the State Defendants in the 2011 redistricting cycle violate their rights as secured by the Voting Rights Act and the Fourteenth and Fifteenth Amendments of the United States Constitution. Plaintiff also seeks to enjoin any further use of the current plans for the Texas House and United States House of Representatives, as well as the 2011 plans adopted for the Texas House of Representatives and for the United States House of Representatives.

## FOURTH CLAIM FOR RELIEF – SECTION 5

44. The allegations contained or adopted by reference in the foregoing paragraphs are realleged and incorporated by reference as if fully set forth herein.

45. The plan adopted by the Texas Legislature for the Texas House of Representatives, H.B. 150, and the plan adopted for Congressional districts, S.B. 4, have not received the necessary approval required by Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c. H.B. 150 and S.B. 4, therefore, violate Section 5 of the Voting Rights Act.

## BASIS FOR EQUITABLE RELIEF

46. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for declaratory judgment and injunctive relief is their only means of securing adequate redress from all of the Defendants' unlawful practices.

47.     Plaintiff will continue to suffer irreparable injury from all of the Defendants' intentional acts, policies, and practices set forth herein unless enjoined by this Court.

# PRAYER

Plaintiff respectfully prays that this Court enter Judgment granting Plaintiff:

A.      A declaratory judgment that State Defendants' actions violate the rights of Plaintiff as protected by Section 2 and Section 5 of the Voting Rights Act, 42 U.S.C. § 1973 *et seq*. and that the actions of Defendants Perry, Dewhurst, and Straus violate the rights of Plaintiff as protected by the Fourteenth and Fifteenth Amendments to the United States Constitution and 42 U.S.C. § 1983;

B.      Preliminary and permanent injunctive relief requiring the State Defendants, their successors in office, agents, employees, attorneys, and those persons acting in concert with them and/or at their discretion to develop redistricting plans that do not dilute Hispanic and minority voting strength for the Texas House of Representatives and the United States House of Representatives, and also enjoining and forbidding the use of the current Congressional and State House redistricting plans.

C.      An order requiring all Defendants to comply with Section 2 and comply with the Section 5 preclearance requirements of the Voting Rights Act;

D.      The costs of this suit and reasonable attorneys fees and litigation expenses, including expert witness fees and expenses, pursuant to 42 U.S.C. §§ 1973l(e) and 1988.

E.      An order of this Court retaining jurisdiction over this matter until all Defendants have fully complied with the Court's Orders.

DATED:  July 27th  2011                     Respectfully Submitted,

                                            Luis RobertoVera, Jr.
                                            LULAC National General Counsel
                                            SBN:  20546740
                                            THE LAW OFFICES OF LUIS ROBERTO
                                            VERA, JR & ASSOCIATES
                                            1325 Riverview Towers
                                            111 Soledad
                                            San Antonio, Texas 78205-2260
                                            210-225-3300 office  210-225-2060 fax
                                            lrvlaw@sbcglobal.net


                                            /s/ Luis Roberto Vera, Jr._____
                                            Luis RobertoVera, Jr.

                                            Attorneys for the Plaintiff-Intervenor

**CERTIFICATE OF SERVICE**

I certify that on this July 27th 2011 a true and correct copy of Plaintiff-Intervenors Complaint was delivered by first class mail to Plaintiff attorney Jose Garza and to Defendants via the Texas Secretary of State for Texas and also, Plaintiff and Defendant will receive a copy via the federal court ECF system/

                                            /s/ Luis Roberto Vera, Jr._____
                                            Luis Roberto Vera, Jr.