IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MARGARITA V. QUESADA, 875 Marquette Drive, San Antonio, Texas 78228; ROMEO MUNOZ, 4157 Astoria, Irving, Texas 75062;  MARC VEASEY, 8224 Longfellow Lane, Fort Worth, TX 76120; JANE HAMILTON, 1111 South Akard Street, Unit 310, Dallas, TX 75215; LYMAN KING, 2600 Piazza Court #5, Grand Prairie, TX  75054; JOHN JENKINS, 6723 Smallwood, Arlington, TX  76001; KATHLEEN MARIA SHAW, 812 Parkside Drive, Cedar Hill, TX 75104-3144; DEBBIE ALLEN, 1514 Pleasantville Drive, Houston, TX 77029; JAMAAL R. SMITH, Windriver Park Townhomes, 3901 Woodchase Drive Unit 36, Houston, TX 77042; SANDRA PUENTE, 608 Wainwright St., Houston, TX 77022,<br><br>                  Plaintiffs,<br><br>v.<br><br>RICK PERRY, in his official capacity as Governor of the State of Texas, and HOPE ANDRADE, in her official capacity as Secretary of State for the State of Texas,<br><br>                  Defendants. | No. SA-11-CA-360-OLG-JES-XR<br><br>Three-Judge Court |

## QUESADA PLAINTIFFS' FIRST AMENDED COMPLAINT

Plaintiffs MARGARITA V. QUESADA, ROMEO MUNOZ, MARC VEASEY, JANE HAMILTON, LYMAN KING, JOHN JENKINS, KATHLEEN MARIA SHAW, DEBBIE ALLEN, JAMAAL R. SMITH, and SANDRA PUENTE, allege:

## I. Introduction

1. On June 15, 2011, the Texas Legislature enacted Senate Bill 4 ("S.B. No. 4, as amended"), which purports to establish a new congressional redistricting plan for the State of Texas ("Plan C185" or the "State's Plan").

2. Plaintiffs file this action seeking declaratory and injunctive relief to prevent Defendants from using the State's Plan in any future elections. Plaintiffs bring this action pursuant to the United States Constitution and 42. U.S.C. § 1983, as well as 42 U.S.C. §1973 (Section 2 of the Voting Rights Act of 1965, as amended) and 42 U.S.C. § 1973c (Section 5 of the Voting Rights Act of 1965, as amended). The State's Plan would harm minority voters, including Plaintiffs, by reconfiguring every congressional district in the State. The injury to African-American and Hispanic voters throughout the State caused by the reconfiguration of the congressional districts is neither necessary nor justified.

3. The State's Plan violates Section 2 of the Voting Rights Act, 42 U.S.C. § 1973, by significantly minimizing the opportunities for African-American and Hispanic voters to participate in the political process and to elect Representatives of their choice.

4. The State's Plan was drawn to insure that population gains in minority communities from 2000 to 2010 did not afford minority voters increased electoral opportunity under the State's Plan. Though minority communities accounted for 90% of population growth between 2000 and 2010, and Texas received four additional congressional seats because of that explosive population growth, minorities only control one of the four new districts created under the State's

Plan. And though the Anglo population now comprises only 45% of Texas' total population, Anglos control 72% of Texas' congressional districts under the newly enacted map. This configuration constitutes an unlawful dilution of minority voting strength under Section 2 of the Voting Rights Act, and the Fourteenth and Fifteenth Amendments to the United States Constitution.

5. The State's Plan was drawn with the purpose, and has the effect, of minimizing and reducing the strength of minority populations in Texas. While the pre-2011 congressional map contains eleven effective minority opportunity districts, the State's Plan contains only ten such districts. Reducing the number of effective minority opportunity districts constitutes unlawful retrogression under Section 5 of the Voting Rights Act, Section 2 of the Voting Rights Act, and the Fourteenth and Fifteenth Amendments to the United States Constitution.

6. The State's proposed Congressional Redistricting Plan is a blatant partisan gerrymander in violation of Article I, Sections 2 and 4 of the United States Constitution, as well as the First Amendment to the United States Constitution, that is designed to ensure that Republicans continue to control the Texas Congressional Delegation and represent a number of congressional districts that far exceed their share of the electorate. The State's proposed Congressional redistricting plan also is a violation of the Elections Clause of the United States Constitution because it favors one class of candidates over another, disfavors a class of candidates to their detriment as compared to another class of candidates, and dictates electoral outcomes. That Republican leadership did not extend meaningful opportunities for meaningful and effective participation in

redistricting to those Representatives elected by communities of color and the general public is an affront to democratic values and is unconstitutional under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Excluding minority Representatives of choice from the redistricting process also violates Article I, Sections 2 and 4 of the United States Constitution, as well as the First Amendment to the United States Constitution.

## II. Jurisdiction and Venue

7. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 1357, and 2284; and pursuant to 42 U.S.C. §§ 1973c, 1973j(f). Plaintiffs' action for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201, 2202, and 2284, as well as by Rules 57 and 65 of the Federal Rules of Civil Procedure. Venue is proper pursuant to 28 U.S.C. §§ 1391(b).

## III. Parties

8. Plaintiffs are citizens and registered voters residing in the current congressional Districts 6, 9, 18, 20, 24, 26, 29, 30 and 33. Plaintiffs have standing to bring this action under 42 U.S.C. § 1983 to redress injuries suffered through the deprivation, under color of state law, of rights secured by the Voting Rights Act of 1965, as amended, 42 U.S.C. §§ 1973, 1973c, and by the United States Constitution.

9. Plaintiff MARGARITA V. QUESADA is an Hispanic citizen and a registered voter whose address is 875 Marquette Drive, San Antonio, Texas 78228. She resides in the current District 20 and under the State's Plan would reside in proposed District 20.

10. Plaintiff ROMEO MUNOZ is an Hispanic citizen and a registered voter whose address is 4157 Astoria, Irving, Texas 75062. He resides in current District 24 and under the State's Plan would reside in proposed District 24.

11. Plaintiff MARC VEASEY is an African-American citizen and a registered voter whose address is 8224 Longfellow Lane, Fort Worth, TX 76120. He resides in current District 26 and under the State's Plan would reside in proposed District 12. Defendant VEASEY is also the duly elected representative of District 95 in the Texas State House of Representatives.

12. Plaintiff JANE HAMILTON is an African-American citizen and a registered voter whose address is 1111 South Akard St., Unit 310, Dallas, TX 75215. Plaintiff HAMILTON resides in current District 30 and under the State's Plan would reside in proposed District 30.

13. Plaintiff LYMAN KING is an African-American citizen and a registered voter whose address is 2600 Piazza Court #5, Grand Prairie, TX 75054. Plaintiff KING resides in current District 24 and under the State's Plan would reside in proposed District 6.

14. Plaintiff JOHN JENKINS is an African-American citizen and a registered voter whose address is 6723 Smallwood, Arlington, Texas 76001. Plaintiff JENKINS resides in current District 6 and under the State's Plan would reside in proposed District 33.

15. Plaintiff KATHLEEN MARIA SHAW is an African-American citizen and registered voter whose address is 812 Parkside Drive, Cedar Hill, TX 75104-

3144. She resides in the current 24th Congressional District and under the State's Plan would reside in Congressional District 30.

16. Plaintiff DEBBIE ALLEN is an African-American citizen and a registered voter whose address is 1514 Pleasantville Drive, Houston, TX 77029. She resides in the current Congressional District 18 and under the State's Plan would reside in proposed District 18.

17. Plaintiff JAMAAL R. SMITH is an African-American citizen and a registered voter whose address is Windriver Park Townhomes, 3901 Woodchase Drive Unit 36, Houston, Texas 77042. He resides in the current Congressional District 9 and under the State's Plan would reside in proposed District 9.

18. Plaintiff SANDRA PUENTE is an Hispanic citizen and a registered voter whose address is 608 Wainwright Street, Houston, TX 77022. She resides in the current Congressional District 29 and under the State's Plan would reside in proposed District 29.

19. Defendant RICK PERRY is the Governor of the State of Texas and chief executive officer of the State of Texas. Defendant PERRY is sued in his official capacity.

20. Defendant HOPE ANDRADE is Texas Secretary of State. Defendant ANDRADE is sued in her official capacity. Defendant ANDRADE is responsible for administering and supervising the elections of United States Representatives from the State of Texas.

## IV. Facts

### *Reapportionment*

21. Every ten years, under 2 U.S.C. § 2a, the President of the United States must transmit to Congress a statement showing the number of persons in each state and the number of representatives to which the state is entitled. These figures are tabulated according to the federal decennial census.

22. On or about December 21, 2010, the Secretary of Commerce of the United States reported to the President of the United Sates the tabulation of population for each of the fifty states, including the State of Texas, as determined in the 2010 decennial census.

23. Under 13 U.S.C. § 141, commonly referred to as "Public Law 94-171," the Secretary of Commerce was required, by April 2, 2011, to complete, report, and transmit to each state the detailed tabulations of population for specific geographic areas within each state. States ordinarily use the P.L. 94-171 data to redraw Congressional districts.

24. The United States Bureau of the Census delivered to Texas Governor Rick Perry and the leaders of the Texas legislature the official Census 2010 Redistricting Data Summary File pursuant to P.L. 94-171.

25. Because of demographic changes recorded in the 2010 U.S. census, Texas received four additional congressional districts during this reapportionment. The four additional seats give Texas a total allotment of 36 congressional seats.

26. The Demographic changes that occurred in Texas and were recorded in the 2010 U.S. census were driven by explosive growth in the state's Hispanic and African-

American populations. Hispanic growth was responsible for 65% of the state's population growth, and non-Anglo population accounted for approximately 90% of the State's overall population growth.

27. Today, Texas is a majority-minority state; only 45% of its total population is Anglo.

### *The Voting Rights Act*

28. On September 25, 1975, the Voting Rights Act of 1965 was extended and amended to cover the State of Texas. State and political subdivisions covered by the Act must comply with certain procedures under the Act, as amended, 42 U.S.C. 1973(c). Among them is the Section 2 requirement that states show that any new redistricting plan does not dilute the voting strength of minority communities. Where minority communities have diminished opportunity to elect candidates of their choice, their voting strength has been diluted, and so unlawfully abridged under the Act.

29. On September 25, 1975, the Voting Rights Act of 1965 was extended and amended to cover the State of Texas. State and political subdivisions covered by the Act must comply with certain procedures under the Act, as amended, 42 U.S.C. 1973(c). Among them is the Section 5 preclearance requirement that certain States and political subdivisions must show that any new redistricting plan "does not have the purpose and will not have the effect of denying or abridge the right to vote on account of race or color . . . ." To make this showing, Texas must demonstrate that those drafting its redistricting plan did not possess racially

discriminatory intent, and that the adopted plan does not cause a retrogressive effect of minority voting strength.

### *Redistricting Procedure*

30. The State's Plan was developed without any meaningful input from the minority population's representatives of choice or the general public. During regular legislative session, only one hearing on congressional redistricting was convened in House committee and only one hearing was convened in Senate committee. No plan was presented in either hearing. Thus, there were no opportunities for members of the general public or representatives of communities of color to have any input into the development of the State's Plan.

31. Legislators who represent communities of color were not permitted to discuss the plan with Republican leadership until after that leadership had already agreed to a map. Governor Perry signaled that this exclusion was intentional in discussions with a Texas Tribune reporter. On May 28, 2001, the Tribune reported that Governor Perry would only call legislators back "when they get to an agreed bill."

32. Minority Members of the House and Senate, and minority Members of the two legislative redistricting committees, never saw the plan until it was made public on Tuesday, May 31, 2011.

33. Despite the absence of meaningful participation for officials representing minority communities, the Texas Legislature enacted the plan into law on June 15, 2011.

### *The Current Map*

34. The current thirty-two-district map had eleven districts in which minority voters had successfully elected candidates of choice within the past decade.

35. Of the eleven minority opportunity districts, seven were effective Hispanic opportunity districts. Those Districts are: 15th – Hinojosa; 16th – Reyes; 20th – Gonzales; 23rd – Canseco; 27th – Farenthold; 28th – Cuellar; and the 29th – G. Green.

36. Although Districts 23 and 27 did not elect the Hispanic candidate of choice in the 2010 election, they did elect the Hispanic candidate of choice in every previous election under their current configuration.

37. Of the eleven existing minority opportunity districts, three are effective African-American opportunity districts. Those Districts are: 9th – A. Green; 18th – Jackson Lee; and the 30th – Johnson.

38. Of the eleven existing minority opportunity districts, one district allows a coalition of minority voters and like-minded Anglo voters to elect a candidate of choice. That District is the 25th – Doggett.

### *The State's Proposed Map, Viewed Statewide*

39. Under the State's Proposed Congressional Plan, Anglo voters control 72% of Texas' congressional districts and three of the four new congressional districts.

40. Under the State's Plan, only ten districts give minority voters an effective opportunity to elect candidates of choice, one less than the previous plan. This is so despite the four additional congressional seats that Texas received as a direct result of the explosive population growth in Texas's minority communities.

41. Under the State's Plan, Districts 34 and 35 are not new Hispanic opportunity districts, as State officials have claimed.

42. District 34 replaces an existing effective Hispanic opportunity district, District 27. District 34 was drawn in the State's Plan apparently because alterations to District 27 shifted control of the District from Latino voters to Anglo voters.

43. District 35 replaces District 23, which was transformed from an effective Hispanic opportunity district to an Anglo-controlled district by including high turnout Anglo precincts into the district. The shift was effected by exchanging selected precincts in Bexar and El Paso Counties, and by extending District 23 across the Franklin Mountains into the west side of El Paso.  Election data illustrate that, under the State's Plan, District 23 will no longer permit Hispanic voters to elect their preferred candidate of choice.

44. Even if the State's Map had maintained the number of minority opportunity districts at eleven, doing so despite the addition of four new congressional seats in the face of the dramatic population growth constitutes unlawful retrogression and dilution.  Minority voters in Texas under the pre-2011 plan were able to elect their preferred candidate of choice in 11 of the 32 districts (or 34.4%) of the districts. Even if the State of Texas had maintained all eleven of these effective minority districts, minorities would only be able to elect their preferred candidate of choice in 11 of 36 districts (or 30.5%).  Under the State's Plan, minority voters will only be able to elect the candidate of choice in ten congressional districts, or 27.7% of the districts.

### *The State's Proposed Congressional Map, Viewed Regionally*

45. The State's proposed Congressional Plan creates egregious electoral disparities in North Texas. In the Dallas-Ft. Worth region, comprised of Dallas and Tarrant

Counties, 2.1 million Hispanics and African-Americans comprise 52% of the population. The State's Plan only provides these minority communities with the opportunity to elect one candidate of their choice out of eight congressional districts in this region of the State, or 12.5% of the locality's representatives. None of the five districts that include all or part of Tarrant County provides an effective electoral opportunity for Hispanics or African-Americans. The under-representation of minority voters in the Dallas-Ft. Worth region is stark given that the area lost 156,742 Anglos between 2000 and 2010, while gaining 600,000 Hispanics and African Americans during that period, according to the 2010 Census. Under the State's Plan, Anglos comprise 41.2% of the Dallas Fort Worth region but control 87.5% of the congressional districts in that area.

46. Under the State's Congressional Plan, some of the Dallas-Fort Worth area's 1.4 million Hispanics are packed into District 30 while the rest of the Hispanic population in that region is fractured among seven different congressional districts. Splits of the Hispanic population occur between Districts 6 and 30 and in addition, other Hispanic neighborhoods are shifted into heavily Anglo Districts 5, 24, 26, 32 and 33; and African-American voters in the Dallas-Fort Worth region are fractured among Districts 3, 12, and 26. To effect this disenfranchisement and dilution of minority voters, the State's Plan twists electoral boundaries into incoherent configurations.

47. The State's Congressional Plan does not increase the number of effective Hispanic opportunity districts in South Texas. The previous map contained six effective Hispanic opportunity districts in the South Texas-border region: 15th –

Hinojosa; 16th – Reyes; 20th – Gonzales; 23rd – Canseco; 27th – Farenthold; 28th – Cuellar. Under the State's Map, District 27 becomes a Coastal Bend and rural district that is controlled by Anglo voters; and District 23's Latino voting strength is diluted in much the same fashion as found unconstitutional by the Supreme Court in *LULAC v. Perry*: District 23 has been transformed from an effective Hispanic opportunity district to an Anglo-controlled district by including high turnout Anglo precincts into the district. District 35 was purportedly created as a newly created effective Hispanic opportunity district to offset the loss of District 23.

48. The State's Congressional Plan shows utter disregard for communities of interest in the South Texas region. In San Antonio and El Paso, radically altered congressional district lines shift Hispanic population into new districts. These shifts sever Latino voters from their existing elected representatives of choice and disperse minority populations across new districts. In San Antonio, minority populations are split across Districts 20, 29, and 35. In El Paso, the minority population is split along the District 23 line.

49. The State's Congressional Plan also does not fairly reflect the Hispanic population growth in Harris County. Between 2000 and 2010, Harris County lost 82,000 Anglos, gained 552,000 Hispanics, and added over 134,000 African-Americans. Despite this minority population growth and Anglo population loss, the State's Plan fractures the minority community and does not afford them with any new opportunities to effectively participate in the political process. In addition to District 29, the State's Plan in the Harris County area significantly

alters other congressional district lines, splitting Hispanic communities across Districts 7, 9, and 18.

50. The State's Congressional Plan effects egregious district splits in Travis County. Under the State's Plan, Travis County is divided into five districts—Districts 10, 17, 21, 25, and 35—none of which contains a majority of Travis County residents. District 10 remains dominated by suburban Harris County voters, and includes part of the African-American community in Northeast Austin. District 17 submerges a majority-minority portion of Travis County into a Waco-based congressional district. District 21 enters Travis County from the South, pulling the Capitol and University of Texas into a district controlled by suburban Bexar County. And District 25 now stretches 200 miles, capturing part of Travis County into a congressional district that stretches north to include two precincts in Tarrant County.

51. In addition to diluting the voting strength of Travis County voters and the coalition of minority and Anglo voters who have elected their preferred candidate of choice to Congress (Rep. Doggett), the State's Plan also disregards local precincts in the area. For example, Travis County Commissioner's Precinct one, which contains most of the County's African-American population, is split between four of the congressional districts.

52. The State's Plan also splits all four rural counties immediately east and southeast of Austin, and splits Hays County three ways.

### *Alternative Congressional Redistricting Plans*

53. Statewide, alternative plans show that three or four new minority opportunity districts can be drawn within the confines of accepted traditional redistricting principles. These alternatives create new effective minority opportunity districts without adversely impacting any of the existing minority opportunity districts. One such plan, "Fair Texas" PlanC121, creates three new effective minority opportunity districts. Under the Fair Texas Plan, which was offered in both the House and Senate during the legislative session but rejected, there are nine districts in which Hispanics have an effective opportunity to elect their preferred candidate of choice, and four districts in which African Americans have an effective opportunity to elect their preferred candidate of choice. A second alternative creates four new districts by locating a tenth Hispanic opportunity District in Harris County.

54. Statewide, the Fair Texas Plan creates two additional Hispanic opportunity Districts and preserves all seven existing Hispanic opportunity districts. One of these additional districts is located in Dallas and Tarrant Counties, while the other is located in the South Texas-border region, between the Rio Grande and South Central Texas. The Fair Texas Plan also creates an additional African-American opportunity district in the Dallas-Tarrant Counties region.

55. In the Dallas-Ft. Worth region, where the Anglo population comprises 41.2% of the area but controls 87.5% of the congressional districts, alternative plans (including the Fair Texas Plan) created a new minority opportunity district that is

over 70% Hispanic and will provide Hispanic voters with an effective opportunity to elect their preferred candidate of choice.

56. The State's proposed congressional redistricting Plan, in the Dallas-Fort Worth region, contains only one African American district confined to Dallas County only (CD30 – Eddie Bernice Johnson), even though the City of Fort Worth in Tarrant contains the third largest concentration of African-American citizens in Texas and Dallas County and Tarrant County combined contain over 781,254 African American residents. Alternative plans (including the Fair Texas Plan) created a new minority opportunity Congressional District in Dallas-Fort Worth that would provide African-American citizens the opportunity to elect their candidate of choice.

## Count 1

57. Plaintiffs reallege the facts set forth in paragraphs 1 through 56, above.

58. The State's proposed Congressional Plan violates Section 2 of the Voting Rights Act, 42 U.S.C. § 1973, in that, under the totality of the circumstances, Plaintiffs and minority voters are denied an equal opportunity to participate effectively in the political process and to elect candidates of their choice to the U.S. House of Representatives. The State's Congressional Plan also violates Section 2 of the Voting Rights Act, 42 U.S.C. §1973, because, under the totality of circumstances, Plaintiffs and minority voters are denied an equal opportunity to participate effectively in the political process and to have any meaningful or significant influence in elections for Members of Congress in Texas.

**Count 2**

59. Plaintiffs reallege the facts set forth in paragraphs 1 through 56, above.

60. The State's proposed Congressional Plan violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because it intentionally discriminates against African-American and Hispanic persons by denying Plaintiffs and minority voters an equal opportunity to participate in the political process, to elect candidates of their choice to the U.S. House of Representatives, and to have any meaningful or significant influence in elections for Members of Congress in Texas.

**Count 3**

61. Plaintiffs reallege the facts set forth in paragraphs 1 through 56, above.

62. The State's Plan violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because several of its districts – including, at a minimum Districts 6, 9, 18, 20, 24, 26, 29, 30 and 33 – are racial gerrymanders, drawn with excessive and unjustified use of race and racial data.

**Count 4**

63. Plaintiffs reallege the facts set forth in paragraphs 1 through 56, above.

64. The State's proposed Congressional Redistricting Plan is a blatant partisan gerrymander in violation of Article I, Sections 2 and 4 of the United States Constitution, as well as the First and Fourteenth Amendments to the United States Constitution, that is designed to ensure that Republicans continue to control the Texas Congressional Delegation and represent a number of congressional districts that far exceed their share of the electorate. In drawing the proposed

Congressional Redistricting Plan, the State violated the First and Fourteenth Amendments to the United States Constitution by applying partisan classifications in an invidious manner and in a way unrelated to any legitimate legislative objective. The State's proposed Congressional Plan is an intentional partisan gerrymander that thwarts majority rule and is an affront to basic democratic values.

65. The State's proposed Congressional redistricting plan also violates Article I, Sections 2 and 4 of the United States Constitution because it favors one class of candidates over another, disfavors a class of candidates to their detriment as compared to another class of candidates, and dictates electoral outcomes. That Republican leadership did not extend meaningful opportunities for meaningful and effective participation in redistricting to those Representatives elected by communities of color and the general public is an affront to democratic values and is unconstitutional under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Excluding minority Representatives of choice from the redistricting process also violates Article I, Sections 2 and 4 of the United States Constitution, as well as the First Amendment to the United States Constitution.

**Count 5**

66. Plaintiffs reallege the facts set forth in paragraphs 1 through 56, above.
67. The State's Plan cannot be administered because S.B. 4, as amended, has not been precleared pursuant to Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c.

**V. Prayer for Relief**

WHEREFORE, Plaintiffs respectfully pray that this Court:

1. Assume jurisdiction of this action.

2. Issue a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rules of Civil Procedure Rule 57, declaring that the State's Plan for Texas's 2011 congressional redistricting: dilutes the voting strength of minority voters in violation of Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973, and in violation of the Equal Protection Clause; is an unconstitutional political gerrymander in violation of the First and Fourteenth Amendments to the United States Constitution and Article I of the United States Constitution; and cannot be administered pursuant to Section 5 of the Voting Rights Act, as amended, 42 U.S.C. § 1973c.

3. Issue preliminary and permanent injunctions enjoining the Defendants, their agents, employees, and those persons acting in concert with them, from enforcing or giving any effect to the proposed congressional district boundaries as drawn in the 2011 Plan, including enjoining Defendants from conducting any elections for the U.S. House of Representatives based on the 2011 Plan.

4. Make all further orders as are just, necessary, and proper to ensure complete fulfillment of this Court's Declaratory and injunctive orders in this case.

5. Issue an order requiring Defendants to pay Plaintiffs' costs, expenses and reasonable attorneys' fees incurred in the prosecution of this action, as authorized by the Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988

6. Grant such other and further relief as it seems is proper and just.

Respectfully Submitted,

GERALD H. GOLDSTEIN
State Bar No. 08101000
DONALD H. FLANARY, III.
State Bar No. 24045877
Goldstein, Goldstein and Hilley
310 S. St. Mary's Street
29th Floor Tower Life Bldg.
San Antonio, Texas 78205
Phone: (210) 226-1463
Fax: (210) 226-8367

BY: */s/ Gerald H.Goldstein*
       Gerald H. Goldstein

PAUL M. SMITH
MICHAEL B. DESANCTIS
JESSICA RING AMUNSON
Jenner & Block LLP
1099 New York Ave., N.W.
Washington, D.C. 20001
Tel: (202) 639-6000
Fax: (202) 639-6066

J. GERALD HEBERT
191 Somervelle Street, #405
Alexandria, VA 22304
(703) 628-4673

JESSE GAINES
PO Box 50093
Ft Worth, TX 76105
(817) 714-9988