# DOCUMENT INFO

Filename:        RE: .msg

FOLDER#:        Straus072611\Outlook Data
File\Straus\DIS

# DOCUMENT INFO

| | |
|---|---|
| **From:** | Gerardo Interiano [ginteriano@gmail.com] |
| **Sent:** | Thursday, October 07, 2010 7:15 AM |
| **To:** | 'Smith, CLS' |
| **Subject:** | RE: |

Doubtful.  Denise, Lisa, and I are all getting trained just so that we are all familiar with the software so that we can help as needed but I think the goal is still to get a mapdrawer.  I'll call William today and walk him through that data. He may be able to just input those numbers into the document that I created for the congressional districts where we predicted their growth and just take those same formulas.  That might be the easiest.  Either way, I'll chat with him this afternoon.

**From:** Smith, CLS [mailto:CLS.Smith@mail.house.gov]
**Sent:** Thursday, October 07, 2010 7:06 AM
**To:** 'ginteriano@gmail.com'
**Subject:** Re:

Good to hear from u. Does red apple training mean u may be doing some map drawing?

Was actually going to call u today re census and redist. Wanted our intern over break to compute the 2010 projected pop of ea county. He wld start w 2000 data and find percentage incr in pop betw 2000 and 2008 and add 20 percent to that to determine estim 2010 pop. Then I wanted to input that and draw some rough maps knowing that lines in larger cos would come later but cld still estim how many people in each co in each dist.

Can u give william in dc access to the 2000 and 2008 co data by county.

**From:** Gerardo Interiano <ginteriano@gmail.com>
**To:** Smith, CLS
**Sent:** Thu Oct 07 07:49:39 2010
**Subject:**

Just wanted to check in and say hello.  Hope you're enjoying your week back in San Antonio.  Things are the office are going well but it's all been getting up and running.  I didn't even have a phone in my office until yesterday so it's been a ton of administrative stuff until now.  This morning I'm going to go do all of the RedAppl training so we'll see how that software goes but they don't have any of the data inputted until February / March.  The only thing I'll be able to play with is the 2000 census information.  And by the way today is Belinda Frisk's birthday...her email is bfrisk@gvtc.com.  I'll keep you posted as things get settled and look forward to seeing you sometime when you come up to Austin with Ashlee.

Gerardo A. Interiano
7509 Bonniebrook Dr.
Austin, Texas 78735
281-814-9575
ginteriano@gmail.com

# DOCUMENT INFO

Filename:        RE: Redistricting Resume.msg

FOLDER#:        Straus072611\Outlook Data
File\Straus\DIS

# DOCUMENT INFO

| | |
|---|---|
| **From:** | Gerardo Interiano [ginteriano@gmail.com] |
| **Sent:** | Thursday, October 14, 2010 10:34 PM |
| **To:** | 'Smith, CLS' |
| **Cc:** | 'Brown, Jennifer Y.' |
| **Subject:** | RE: Redistricting Resume |

Still trying to get an answer to the 2009 through 2010 estimates from the census.  I spoke
with Angela, who is their Congressional Affairs person, and she was going to follow up with
their number guys and I haven't heard back from her yet.   I followed up again today and will
let you know as soon as I hear back from her.

-----Original Message-----
From: Smith, CLS [mailto:CLS.Smith@mail.house.gov]
Sent: Friday, October 08, 2010 10:55 AM
To: 'ginteriano@gmail.com'
Subject: Re: Redistricting Resume

Also let me kno what census says re 09

----- Original Message -----
From: Gerardo Interiano <ginteriano@gmail.com>
To: Smith, CLS; Brown, Jennifer Y.
Sent: Fri Oct 08 09:40:50 2010
Subject: Redistricting Resume

Here's a resume that Denise wanted me to forward to you for a potential attorney for the
delegation. I dont know anything about this guy and have never met him but it might be worth
scheduling an appointment between you and him next time that you're in Austin or scheduling a
call.

From: Ryan Downton <Ryan.Downton@house.state.tx.us>
Date: October 4, 2010 9:53:18 AM CDT
To: Denise Davis <Denise.Davis@speaker.state.tx.us>
Subject: Ryan Downton Resume

Denise,

Thanks for taking the time to talk last week.  My resume is attached.
Please pass it along to Congressman Smith and anyone else who needs a lawyer in connection
with redistricting.
Thanks,

Ryan

# DOCUMENT INFO

Filename:        ACS 5 year estimates demographic
                 map.msg

FOLDER#:         Straus072611\Outlook Data
                 File\Straus\DIS

# DOCUMENT INFO

**From:** Eric Opiela [eopiela@ericopiela.com]
**Sent:** Thursday, December 16, 2010 12:39 AM
**To:** Gerardo Interiano; CLS Smith; onionboys@hotmail.com; Mike Hull
**Subject:** ACS 5 year estimates demographic map

Impressive data visualization tool based on Tuesday's ACS release by the New York times.
Includes Texas Data, select view more maps:

http://projects.nytimes.com/census/2010/explorer?hp?hp=

# DOCUMENT INFO

Filename:       another dem plan from swing state
                project.msg

FOLDER#:        Straus072611\Outlook Data
                File\Straus\DIS

# DOCUMENT INFO

| From: | Eric Opiela [eopiela@ericopiela.com] |
|---|---|
| Sent: | Friday, December 17, 2010 11:57 AM |
| To: | CLS Smith; Gerardo Interiano |
| Subject: | another dem plan from swing state project |
| Attachments: | Untitled-1.gif; Houston.gif; Dallas.gif; Central-TX.gif; Untitled-2.gif; printer-icon.GIF; email-icon.GIF |

## Texas 25R-9D-2 Non-Dummymander

by: curiousgeorge

*Thu Dec 16, 2010 at 5:36 PM EST*

Redistricting Texas was a bit of a chore.  To do this with an eye to how the GOP legislature might do so requires balancing a number of considerations.  These are at loggerheads with each other to some degree:

(1) A desire to protect new GOP incumbents Farenthold and Canseco;
(2) A desire to shore up increasingly vulnerable GOP incumbents in TX-10, TX-24 and TX-32
(3) Compliance with the VRA.

First, a primer on the VRA.  It does **not** require that a state with a 38 percent population have 38 percent of its districts be Hispanic opportunity districts.  It doesn't necessarily require any.

Instead, it requires only that distinct populations be given a reasonably compact district if it is possible to draw one.  This is a problem in Texas, where the Hispanic population is fairly subsumed within the anglo and African American populations.  West Texas has a fairly large Hispanic vote, but it is impossible to create anything approaching a minority majority district there — in fact, almost all of these districts have at least a 15% Hispanic population, but they can't be used to draw a compact district. In the 2006 Texas redistricting litigation, the district court found that Texas could support only 6 Hispanic opportunity districts (although I counted 7).  I don't think it has increased all that much recently.

There's a second complication in Texas, which is that there's a difference between the population and the voting population.  Both undocumented and documented workers count for census purposes, even though neither can vote.  In Texas this creates a substantial discrepancy between the numbers shown by census voting-age population (VAP), and the Citizen Voting Age Population (CVAP).  Throw in lower turnout among hispanics in general, and it gets very difficult to draw VRA districts.

The basic theory behind the map, therefore, is as follows.  Keep all the present Hispanic opportunity districts as close to the current lines as possible.  Anything that's around 60 percent Hispanic should be an Hispanic opportunity district (the district Court in 2006 seemed to accept that TX-25 would be an Hispanic opportunity district with 55% Hispanic population; it was struck down because it was not sufficiently compact to count as a VRA district).  If you can keep the white vote below 30% or so, that can change, although an African American population that starts to approach the Hispanic population can overwhelm it in a Dem primary.

I created something looking like an Hispanic opportunity district in the DFW area.  To illustrate just how difficult this is, you'll note that this and the 30th are now awfully close to electing an Anglo Democrat, and these lines are pretty convoluted.  It may well be that the VRA doesn't require any additional minority-majority districts in Texas, although drawing close to one in DFW is a good idea for shoring up GOP incumbents.

A few other notes.  I didn't know exactly where Blake Farenthold lived, so I drew his new district to where Farenthold Consulting was located.  The baconmander of Dallas county is avoidable with precise locations for the incumbents; because I didn't want to draw two Congressmen together, I kept the Dallas portions of their old districts more-or-less intact.

The centerpiece of the map is the 8-way split of Austin.  I don't know where Lloyd Doggett lives and I don't think it matters; he runs in a

1

58 percent McCain district no matter what.

I have to say, given what I did, I was pleasantly surprised that the districts look as regular as they do.  It might actually look better than the current map . . .

Without further adieu...

**curiousgeorge :: Texas 25R-9D-2 Non-Dummymander**



(1, Gohmert) 31% Obama/68% McCain, 70W/17B/11H (old 31O/69M, 68W/18B/13H) — Gohmert's district goes further South now, but retains the Tyler base.  Without the Dallas Baconmander, it could be made more compact.



(2, Poe) 40Obama/60McCain, 61W/13B/22H (old 40O/60M, 57/21/18) — This district grew 14 percent and has to shrink — it is now contained almost entirely within Harris County.  A leg goes down to Galveston and Texas City to take Democratic votes from the 14th to

offset the votes that district gains in Austin (cue ominous foreshadowing music).



(3, Johnson) 40Obama/59McCain, 65W/11B/16H (old 42O/57M, 56/10/21) -- This baconmander would be avoidable if I knew where Johnson resided (even better if he retired . . .). For now, it takes in its old portion of Dallas, and then extends out to rural North Texas. It is made slighly more Republican.

(4, Hall) 30O/70M, 75W/16B/7H (old 30/69, 75/10/11) – Because of the situation with the Third district, this has to be pretty grotesque. This one is also much easier if Hall retires, or with his precise location (as that would allow using some of Rockwall to shore up the third without putting it out in N Texas, which in turn would allow the 4th to keep its old shape.

(5, Hensarling) 39O/61M, 69W/13B/14H (old 36/63, 65/13/19) – Hensarling's district doesn't change all that much, though due to population growth it loses some heavily Republican rural portions. Still, he should have a nice home for the rest of the decade.

(6, Barton) 37O/63M, 68W/12B/15H (old 40O/60M, 58/15/21) – Normally I wouldn't have shored up a district, but Barton is a bit, um, controversial, so I thought he would want to know that his district would be safe through 2020.

(7, Culberson) 40O/59M, 62W/6B/24H (old 41O/58M, 59/8/23) -- This district retains much of its old territory. I made it a touch more Republican. I figured if Culberson got 56% of the vote while being outspent 2-1 in 2008, he was going to be pretty safe. My first time through I had this at 61 percent, but then my computer crashed before I wrote it up. So this could be improved.

(8, Brady) 31O/68M, 74W/6B/14H (old 26O/72M, 77/9/12) – This district is now entirely within Harris and Montgomery Counties, which should make Brady happy. It's a bit more Democratic, but I don't think he'll notice.

(9, Green) 74O/26M, 19W/34B/34H (old 77/23, 14/36/40) -- Al Green's district expands to pick up some more African American voters, and sheds some white voters to the 7th. Not much change here.



(10, McCaul) 40O/59M, 62W/12B/21H (old 44/55, 59/10/25) -- McCaul is one who could use some help – although in a terrible Republican year he beat back a stiff challenge handily. His district gets some more Houston suburban lovin', which ratchets it up a few notches.

(11, Conaway) 41O/59M, 64W/6B/26H (old 77M/24O, 61/4/33) -- This district retains its Midland base, but picks up a chunk of Austin to become quite a bit more Dem. Still – and this is important to remember for the rest of the map – 59%McCain is still roughly R+13, which should be enough to win throughout the decade.

(12, Granger) 35O/64M, 79W/4B/11H (old 36/63, 63/6/27) – Not a lot of changes here; drops some of its minority population to create the new 33rd.

(13, Thornberry) 23O/76M, 69W/6B/23H (old 23/76, 70/6/21). Not much you can do here – the district is Amarillo, and there isn't another Democratic hub within 500 miles of the place. Note, however, that the district is a quarter Hispanic. This is what I'm talking about re the problems of creating Hispanic majority districts here.

(14, Paul) 41O/58M, 57W/8B/32H (old 33O/66M, 59/9/27) Paul gets a chunk of Austin as well. It is a more Democratic district, but he should still be able to win pretty handily.



(15, Hinojosa) 66O/33M, 13W/0B/85H (old 60/40, 17/2/80) — This district has grown a lot, and so it shed some of the anglo counties to the north.  Hinojosa actually had a bit of a close call in '10, but that won't happen again in this district.

(16, Reyes) 68O/31M, 15W/3B/81H (old 66O/33M, 14/3/81) — No big changes here.

(17, Flores) 35O/64M, 67W/15B/15H (old 32O, 67M, 69/10/18) -- This district is a bit more Democratic, but its a ton of new territory, which should prevent a Chet Edwards comeback.

(18, Jackson Lee) 83O/16M, 19W/51B/26H, (old, 77O/22M, 16/38/42) — The original Texas minority-majority district, it sees its African American percentage increased substantially, as it shed white voters to the 7th and Hispanics to the 29th.

(19, Gonzales) 66O/33M, 22W/9B/66H (old 63/36, 21/6/70) -- I switched the 19th and 20th, because I'm colorblind and was having troubles with the 19th and 23rd.  This gives up some population to the 28th, which allowed me to do an ugly gerrymander that shored up the 21st to compensate for getting parts of Austin.

(20, Neugebauer) 27O/72M, 67W/6B/24H (old 27O, 72M, 61/5/32) -- Again, not much you can do with these voters.  In theory you could put this one into Travis County as well, but that would be greedy.  Also, note the 32 percent Hispanic population.

I really should have broken this into two pieces.

(21, Smith) 40O/58M, 70W/3B/23H (old district 40O/59M, 63W/7B/26H) -- Smith never had any troubles in his old district, so the addition of the Austin territory shouldn't hurt him.  It's not downtown Austin, so we're not talking heavily Dem stuff.

(22, Olson) 41O/58M, 60W/9B/22H (old district 41O/58M, 51W/13B/24H) -- this gets some of Austin as well.  But unless Olson gets himself indicted for money laundering and the GOP runs a write-in candidate with a hyphenated last name, he should be ok.

(23, Canseco) 47O/52M, 36W/2B/60H (old district 51O/48M, 29W/3B/66H) -- I think this is testing the outer limits of what you can do and still comply with the VRA here.  It should still be considered an Hispanic opportunity district though, although one that leans more to the right.  In a bad GOP year, it will probably elect a Democrat.

(24, Marchant) 38O/61M, 68W/6B/18H (old 44/55, 53/12/25) -- Marchant is another big winner from the creation of the 33rd.  A substantial increase in Republican performance here.

(25, Ducky) 43O/56M, 61W/5B/31H (old district 59O/39M, 51W/9B/37H) -- A small sliver into Corpus connects Farenthold to what is essentially a new South-Central Texas district.  I would have liked to have gotten the GOP percentage up a few more notches, since he is so weak, but it just isn't feasible.  This doesn't go much into downtown, so I don't think I picked up Dogget's residence.

(26, Burgess) 37O/62M, 77W/6B/11H (old district 41O/58M, 62/13/19) -- Burgess is another Dallas winner.  his district has seen massive growth, so this is quite a bit more compact.  He loses quite a bit of minority population to the 33rd.

(27, open) 53O/46M, 27W/2B/69H (old district 53O/46M, 25W/2B/71H) — Since the old district elected a very weak Republican once, I figured that I should keep it more-or-less intact if possible, on the off chance that it might do so again.  The only real change is that a few rural precincts are added, and three Corpus precincts are put into the 25th.

(28, Cuellar) 70O/30M, 11W/3B/85H (old district 56O/44M, 19W/1B/79H) -- This district gets a bigger chunk of Hispanic voters in San Antonio who are apparently MUCH more reliable Democratic votes than those on the border.  Cuellar may actually not be able to survive here.

(29, Green) 63O/36M, 20W/10B/67H (old district 62O/38M, 16/10/72) -- This remains an Hispanic opportunity district, which would probably still elect an Anglo Democrat.  Again, this illustrates just how tough it is to really create a Hispanic opportunity district here.

(30, Johnson) 79O/21M, 26W/44B/27H (old district 82/18, 17/39/41) -- This district has to become quite a bit whiter in order to help make the 33rd.  Still, Johnson should win the primary and the general.

(31, Carter) 40O/58M, 71W/7B/18H (old district 41/57, 63/12/19) -- Carter gets a little boost in Republican performance, but he was never really in any jeopardy in the first place.

(32, Sessions) 40O/59M, 69W/6B/19H (old district 46/53, 44/8/42) -- After a relatively close shave against a weak opponent in 2008, Sessions gets a big boost from creating the 33rd.  It is a bit ugly; in reality if I knew where Johnson and Hall lived, I'd probably push it more into the 3rd, push the 3rd more into the 4th, and have the 4th get a lot of this northern Collin County territory.  But I might inadvertantly put those guys in the same district, so you get what you get.

(33, new) 71O/29M, 25W/21B/50H Minority-majority district.  Its ugly, and it **still** might elect a white Democrat.  But its the best you can do and even if the GOP doesn't HAVE to draw it, it will probably still try to do so to shore up the other Reps.

(34, new) 39O/60M, 67W/11B/18H

(35, new) 35O/63M, 78W/5B/11H

(36,new) 37O/62M, 66W/17B/13H

Tags: Redistricting, Texas, (All Tags)
Print Friendly View 🖶  Send As Email 📧
Texas 25R-9D-2 Non-Dummymander | 12 comments
I thought that if
TX gets 4 more seats, it's very likely that 2 of those 4 will have to be VRA seats.

*NJ-01 (NJ-12 at college)*

by: *LookingOver* @ *Thu Dec 16, 2010 at 16:53:20 PM CST*

> **For the reasons curiousgeorge gives,**
> that is not necessarily so.
>
> by: *andgarden* @ *Thu Dec 16, 2010 at 17:11:17 PM CST*
> [ Parent ]

>> **Depends on a few things**
>> If Holder's DOJ plays hardball on VRA.  I know that the DOJ can't mandate a VRA district be made, but can they go to federal court over it?
>>
>> Also depends on what the census says to see where the growth is.
>>
>> *NJ-01 (NJ-12 at college)*
>>
>> by: *LookingOver* @ *Thu Dec 16, 2010 at 17:17:29 PM CST*
>> [ Parent ]

>>> **It's not just the DoJ that can go to court**
>>> It didn't in LULAC v. Perry, for example. I can pretty much guarantee you that the Supreme Court is not going to endorse requiring (and probably even allowing) anything that smells like a racial gerrymander.
>>>
>>> by: *andgarden* @ *Thu Dec 16, 2010 at 17:28:19 PM CST*

[ Parent ]

**Yeah, I know they won't allow that.**

*NJ-01 (NJ-12 at college)*

.........................................................................

by: *LookingOver* @ *Thu Dec 16, 2010 at 17:36:17 PM CST*
[ Parent ]

**seems about right**

Other than the fact that i absolutely HATE touch-point continuity for districts. It completely defeats the concept of continuity. But it happens, unfortunately.

*"A man who stands for nothing will fall for anything."*

.........................................................................

by: *OGGoldy* @ *Thu Dec 16, 2010 at 17:26:29 PM CST*

**heh**

Interesting, but I don't see them splitting Austin 8 ways. Travis county is only split 3 ways even under the current over-the-top gerrymander. I think the incumbents would likely balk at having so many unfamiliar constituents. For example, most of Conaway's new Austin people would probably have no idea who he is. He might have to worry about a primary challenge from, say, an Austin city council member or state legislator.

*41, Ind, CA-05*

.........................................................................

by: *sacman701* @ *Thu Dec 16, 2010 at 18:16:12 PM CST*

**Austin split**

You can actually do much the same thing splitting Austin 4 ways between 10, 21, 25 and the new Austin district the census requires, and running them out to rural counties. I just thought that this way was more fun.  :-)  In a lot of ways its better because you don't have so many districts competeing for heavily R SE Texas counties.

.........................................................................

by: *curiousgeorge* @ *Thu Dec 16, 2010 at 20:51:55 PM CST*
[ Parent ]

**Very nice**

I have a fairly similar one that also seeks to shore up Canseco and Farenthold, but I'm a little less aggressive, as I ceded an Austin seat to Doggett. I did mess with Cuellar a little bit, knocking the district down to 52-48 Obama without changing the racial stats much. My new districts are similar to yours: one Hispanic-influence seat in DFW, a much more Democratic redux of the current Ortiz district, an exurban seat in DFW, and a safe GOP seat in Galveston.

*19, M, MA-03*

.........................................................................

by: *MassGOP* @ *Thu Dec 16, 2010 at 19:21:15 PM CST*

**Thanks for posting this map**

I appreciate the effort its stunning in a lot of ways. I nearly always have some sort of comments so here goes.

1. I know "No Child left Behind" was a Bush brainchild and a variation of a Texas plan but is Farenthold deserving of a brand new CD? Why do I have an idea that Nueces county will be left intact and we will see Farenthold in the 27th that is nearly like the current one? My thinking is that the GOP would rather have a potential superstar like Hensarling or McCaul or someone who will be able advance republican ideals.  Plus Farenthold will represent 5% of the primary vote and would likely lose a primary.  I don't see it and you heard it here 1st.

2. My spider sense, however, tells me that Canseco will secure a seat very close to this arrangement.  He is a man of substance and someone who could make inroads with the hispanic voters of his district.  The GOP will want to keep him.

3. Not sure about the 8 way split of Travis county.  Truely amazing what computers can do.  I am old enough to remember IBM punch cards with 80 rows plus sorting machines.  So this tech stuff is amazing.

I will let others sort of the particulars of this map.  I am thinking 25-11 for the GOP in Texas with one of those 11 being Farentholds.  Three D districts in Harris/ Fort Bend plus two in Dallas Ft Worth (one hispanic new).  Then Doggett in Travis.  That's six.  Then El Paso/ San Antone plus 3 Valley seats.  That's assuming Canseco's district will stand as VRA at 65%.

---

by: _rdelbov_ @ _**Thu Dec 16, 2010 at 19:37:51 PM CST**_

**Where is the racial data coming from?**
If you drew the map with the Special Test Data turned on (to get Presidential percentages), then your racial data will be out of whack.  My understanding is that the special data uses the 2000 census for its racial data, not more recent estimates. See here.

If you drew the map with and without the special data in order to get both the presidential percentages and the more accurate racial percentages, then ignore this comment.

_29, male, MI-11 (previously VA-08). Evangelical, postconservative, green._

---

by: _borodino21_ @ _**Thu Dec 16, 2010 at 20:30:01 PM CST**_

> **Yeah**
> There's no way around that.  My understanding, though, is that you still get a % increase, ie if the precinct was 50% Hispanic with 100 people in 2000 and then in 2010 it was 110, you get the extra 5 people.  Obviously in some places the percentages will increase as well in 2010, but the differences probably aren't substantial enough to make a huge difference (we're talking about going from 35% to 38% statewide).
>
> ---
>
> by: _curiousgeorge_ @ _**Thu Dec 16, 2010 at 20:50:10 PM CST**_
> [ Parent ]

# DOCUMENT INFO

Filename:         pena.msg

FOLDER#:          Straus072611\Outlook Data
                  File\Straus\DIS

# DOCUMENT INFO

| | |
|---|---|
| **From:** | Eric Opiela [eopiela@ericopiela.com] |
| **Sent:** | Monday, December 20, 2010 8:09 AM |
| **To:** | Gerardo Interiano |
| **Subject:** | pena |
| **Attachments:** | hidalgo_aaron.png; red_hidalgo.png |

I know he's not running agian and all tat, but here's the dems best efforts at drawing a republican seat for pena in hidalgo:

http://gregsopinion.com/?p=9288

# Why We'll Have Aaron Peña to Kick Around After 2012

» Rio Grande Guardian: GOP: Peña party switch alters redistricting equation
» Beaumont Enterprise: Ritter's switch helps him, but may benefit region in redistricting too

It's marginally comforting to know that I'm not the only one who reads political stories these days and asks "What does this mean for redistricting?" In particular, Aaron Peña's party switch really forces the issue for two reasons: a) he's on the redistricting committee – and I wouldn't be shocked if he's chairing it in January; and b) it's not hard to draw a GOP-leaning district in Hidalgo County. That said, I'm a bit skeptical that even Peña could draw two districts that remain in GOP hands through the next decade. Doing so would put Peña at severe risk of being unelected in his first "re-election campaign" as a Republican. That's possible because more low-propensity voters tend to come out for Presidential campaigns and the issue set for those voters in South Texas is likely to favor Dem candidates a bit more.

Ritter's situation is very different. His district is already GOP-leaning. So his switch just means that the map-makers won't have to distort Jefferson County to make way for more Republicans. Had he not switched, in other words, you might have seen another district slice through Jefferson County, limiting the amount of friendly real estate for Ritter to peel off swing votes. The remainder of Ritter's district might then have headed north to include an already GOP-leaning county full of new voters who aren't familiar with Ritter and might be less willing to give him a personal vote. Now, none of that matters. They can pretty much scratch Jefferson County off their list of things to worry about.

Back to Hidalgo, there are two poorly kept secrets available to one and all: the two districts referenced in the Guardian are heavily Democratic; and they both contain some large pockets of GOP growth. In other words: the reason they're so Democratic is because they mask the GOP growth within the county. Hard to blame gerrymandering on that, too. The main reason for the change has been development during the decade. So the visibility of GOP possibility wasn't entirely clear as the LRB drew the lines in 2001, though they did seem to make a slight effort to make Veronica Gonzalez' HD41 as GOP-tilting as possible. You can see from the election results that it gave a slight nod to two GOP statewides in 2002 and trended even more GOP friendly over the decade. Here's the 2010 red/blue map of White-Perry results for Hidalgo County, with the residences of Aaron Peña and Veronica Gonzalez pinpointed:



The northern GOP precincts are more sparsely populated (4 precincts with a combined total of less than 1,000 Registered Voters) and I'm doubtful that they can even be the basis for which the county GOP bases its dream scenario of two GOP seats in the county. So don't let the size of them mislead you. The core of the population is in the lower third of the county. This is merely to show how the GOP precincts of Hidalgo County are obfuscated by the overall district boundaries. Factor in population growth, and you can suddenly build a district in a more compact manner. This means those GOP boxes are now likely to be enough of a population for Republicans to elect Peña in 2012.

What would that end up looking like? The district you see below went 55–44 for John McCain in 2008 and 51–48 for Bill White in 2010. Basically, it takes the GOP-friendliest portions of Veronica Gonzales' district and reaches into the Precinct 14 that Aaron Peña resides in. Granted, it's not out of the question that he can plan a move in order to stave off that addition (the precincts needed for including PCT14 are more Dem-friendly). Based on the current census estimates, it doesn't look as if this draft is far from being the basis of Peña's dream district. If anything, I suspect there may be a precinct or two that can be shed from this outline if the population growth turns out to be big enough.



So, for all the talk about ideology and being taken for granted, what party switches really come down to is personal protection. It's clear from the 2001 map that the LRB wanted to make the most GOP-friendly district they could and came up just short. This time around, everyone knows it's possible. And that includes Aaron Peña. It's faulty to look at his existing district and conclude that there's no way he can get re-elected. It's equally faulty to assume that, just because it's South Texas, that any GOP candidate it toast. For all the self-interest involved, Peña was seeing the red-blue situation above from a ground level and acted on that, together with the likelihood that either he could get drawn out, or Veronica Gonzalez would get drawn out. Right now, Gonzalez is the first victim of redistricting unless she plans to move somewhere else in the county. As for Peña … he'll be looking at getting re-elected to the Legislature as a Republican for the next decade. And probably being quite successful at it.

# DOCUMENT INFO

Filename:        Fwd: .msg

FOLDER#:        Straus072611\Outlook Data
File\Straus\DIS

| | |
|---|---|
| **From:** | Eric Opiela [eopiela@ericopiela.com] |
| **Sent:** | Tuesday, December 21, 2010 11:00 AM |
| **To:** | Gerardo Interiano; Doug Davis |
| **Subject:** | Fwd: |

Here's your new ideal congressional pop.

Eric

Begin forwarded message:

**From:** Eric Opiela <eopiela@ericopiela.com>
**Date:** December 21, 2010 10:51:30 AM CST
**To:** "Smith, CLS" <CLS.Smith@mail.house.gov>
**Cc:** "Brown, Jennifer Y." <Jennifer.Y.Brown@mail.house.gov>
**Subject: Re:**

Total Texas Population:

25,145,561

Total Ideal Population per Texas Congressional District:

698,488

Texas Gain +4

Total Texas Seats 36

On Dec 21, 2010, at 10:49 AM, Smith, CLS wrote:

Great. No edits.

Also what is the pop of tx cong dists. Assume close to 710.

# DOCUMENT INFO

Filename:       Re: Fwd:.msg

FOLDER#:      Straus072611\Outlook Data
File\Straus\DIS

| | |
|---|---|
| **From:** | Eric Opiela [eopiela@ericopiela.com] |
| **Sent:** | Tuesday, December 21, 2010 12:24 PM |
| **To:** | ginteriano@gmail.com |
| **Subject:** | Re: Fwd: |

no

On Dec 21, 2010, at 12:22 PM, Gerardo Interiano wrote:

Were you expecting that letter from Chisum?

Sent via BlackBerry by AT&T

**From:** Eric Opiela <eopiela@ericopiela.com>
**Date:** Tue, 21 Dec 2010 10:59:49 -0600
**To:** Gerardo Interiano<ginteriano@gmail.com>; Doug Davis<onionboys@hotmail.com>
**Subject:** Fwd:

Here's your new ideal congressional pop.

Eric

Begin forwarded message:


**From:** Eric Opiela <eopiela@ericopiela.com>
**Date:** December 21, 2010 10:51:30 AM CST
**To:** "Smith, CLS" <CLS.Smith@mail.house.gov>
**Cc:** "Brown, Jennifer Y." <Jennifer.Y.Brown@mail.house.gov>
**Subject: Re:**


Total Texas Population:

25,145,561

Total Ideal Population per Texas Congressional District:

698,488


Texas Gain +4

Total Texas Seats 36

1

On Dec 21, 2010, at 10:49 AM, Smith, CLS wrote:

Great. No edits.

Also what is the pop of tx cong dists. Assume close to 710.

# DOCUMENT INFO

Filename:        Interesting idea by Dems gaming Peña
                 district.msg

FOLDER#:         Straus072611\Outlook Data
                 File\Straus\DIS

# DOCUMENT INFO

| From: | Eric Opiela [eopiela@ericopiela.com] |
|---|---|
| Sent: | Thursday, December 23, 2010 2:07 PM |
| To: | CLS Smith; Gerardo Interiano |
| Subject: | Interesting idea by Dems gaming Peña district |
| Attachments: | aaron_cd_full-e1293125009860.png; aaron_cd_closeup-e1293125099224.png |

Even though we know it ain't true, this is an idea put together by Democrat blogger Greg Wythe on how to draw a congressional district for Aaron Peña.

# Why We'll Have Aaron Peña To Kick Around After 2012 – In Congress

**Greg's Opinion**12/23/10 11:50 AM gregwythe 2011 Redistricting aaron peña texas redistricting

If Aaron Peña is looking to create himself a Congressional District, here's how it might be done (*click 'em to big 'em on the photos*) ...



The green monster in the middle of South Texas is 53-46 McCain and 60% Hispanic. There's a lot of game theory into what it might take to pull this off. I think the biggest are selling Blake Farenthold and Ron Paul on shifting their districts east of their respected bases (Nueces County and Brazoria). For the safe construction of a GOP seat, I see two critical elements of it and one very likely element of it. The critical ones are: a) dip into the most GOP friendly parts of Hidalgo & Cameron and not much further; and b) sidestep Jim Wells County. The very likely seems to be that you'd want the district to pick up some of the swing-GOP areas along the southern rim of Bexar County. That may blunt the possibility of another southern San Antonio district being created that allows for another run by Ciro Rodriguez. The fact that the district is sufficiently Hispanic in population should mean that it would pass muster through the courts.

A closeup of the Hidalgo-Cameron portions show what's needed to gerrymander this one:



The remainder of Hidalgo-Cameron (the purple district) is 73-26 Obama and 90% Hispanic. I'm not sure if that'll represent a problem with packing, but it's sufficient to keep re-electing Ruben Hinojosa for a long time to come. Ironically, the real loser in this situation would be McAllen since it gets split three ways. It loses at the expense of the smaller towns around it being represented by Peña (Edinburg), Hinojosa (Mercedes) and Cuellar (Laredo).

I obviously didn't map this out to a full 36 districts and there's several open questions about what this fragment of a map would mean mostly for Quico Canseco (though the NW Bexar area is left for him). The other tangential districts, I think, have easier solutions. But where a NW Bexar district goes without bumping into Lamar Smith (the delegation leader) and the West Texas districts which will look to add territory as they move east, I don't pretend to have an answer for yet. Like I said, there's a lot of game theory involved in terms of defining what's possible and that means a lot of variables to solve for.

This is just a hypothetical to show what's possible if Aaron Peña were to want to draw a GOP-favored Congressional District. To say the least, such a district could still lure in a strong Democratic challenger who could make up the 5-or-so points needed to win the district. From a Republican side, there's only one person who I think could pull off a win: Aaron Peña. Anyone else risks that 5-point margin that local Hispanic Dems are known to make up in a normal year.

# DOCUMENT INFO

Filename:        Hispanic-Majority Districts: Boon or
                 Burden for Democrats? -
                 NYTimes.com.msg

FOLDER#:         Straus072611\Outlook Data
                 File\Straus\DIS

**From:**     Eric Opiela [eopiela@ericopiela.com]
**Sent:**     Friday, December 24, 2010 6:46 AM
**To:**       CLS Smith; Gerardo Interiano; Doug Davis
**Subject:**  Hispanic-Majority Districts: Boon or Burden for Democrats? - NYTimes.com

Interesting look by NYT's Nate Silver on tradeoffs involved in meeting the VRA in Texas
Congressional Districting this cycle.

http://fivethirtyeight.blogs.nytimes.com/2010/12/23/hispanic-majority-districts-boon-or-burden-for-democrats/

Sent from my iPad=

# DOCUMENT INFO

Filename:       Hotline On Call Interview with Matt
                Angle.msg

FOLDER#:        Straus072611\Outlook Data
                File\Straus\DIS

# DOCUMENT INFO

| From: | Eric Opiela [eopiela@ericopiela.com] |
|---|---|
| Sent: | Tuesday, January 04, 2011 1:08 PM |
| To: | CLS Smith; Gerardo Interiano; Doug Davis |
| Subject: | Hotline On Call Interview with Matt Angle |
| Attachments: | share.gif |

# Redistricting Q&A: Matt Angle

By **Jeremy P. Jacobs**
January 4, 2011 | 1:49 PM

✿ Share

Welcome back to *Hotline On Call*'s Redistricting Q&A feature, where we sit down with some of the people most involved in the reapportionment process. Over the holiday break, we brought you interviews with Georgia Rep. **Lynn Westmoreland** -- who is leading the Republican efforts - and California Rep. **Mike Thompson**-- who is doing the same for Democrats.

We now bring you our chat with veteran Texas Democratic strategist **Matt Angle**. As a longtime aide to former Democratic Congressional Campaign Committee Chair **Martin Frost** (Texas), Angle had a front row seat to former House Majority Leader **Tom DeLay**'s (R) redistricting efforts following the 2000 census. Angle now heads the Lone Star Project and is heavily involved in Texas redistricting once again. On a snowy day in Washington, Angle looked back on his battles with DeLay and walked us through where Texas' four new seats should go.

**The Hotline:** Are Democrats more prepared this go around than they were in 2000?

**Matt Angle:** From a technical standpoint, yes. The National Committee for An Effective Congress does a lot of the technical work and is outstanding. And I don't think there's any question that they've stayed right up even with the curve and are technically in a position to provide Democrats with whatever they need on a national standpoint.

I think that Democrats have the legal resources that are certainly as good as we had in the past and probably better. I think if there's any way in which we are not as prepared, it's just from the nuts and bolts politics of redistricting. Doing the type of work that needs to be done with member delegations, so that they understand the make-up of their state both politically. There hasn't been much of that done.

**The Hotline:** How did the 2010 election results affect Democrats' planning?

**MA:** Well, we lost so many state legislatures and lost so many members of Congress. What's left in a lot of states are just the safe members and so their natural incentive for a fair map -- to drive for a fair map -- is not as strong as it would be if there were other members in the state who have to have a marginal district to survive.

When **Martin Frost** [was in charge of the process for Democrats], he had a personal incentive because of his own district and because he was in a state full of marginal members. And he felt not only a need to protect himself but to protect his delegation. The real feud between DeLay and Martin wasn't about anything other than DeLay didn't like the fact that so many Democrats held marginal districts in Texas.

**The Hotline:** You mention DeLay and Frost. What are some of the mistakes or pitfalls from that whole process that Democrats could learn from this time?

**MA:** I gotta tell you, probably the most important thing that we've never done well enough and we're not doing it now, is creating trusting alliances with minority advocacy groups early on. Because in Texas and in most places in the South, the only way Republicans can maximize their electoral strength is to undermine the voting strength of blacks and Hispanics. And if Anglos are the ones making that case, making that argument, it's not as effective as if African-Americans and Hispanics are making it.

And if I had to go back, I think that for the most part Democrats made a ferocious fight, particularly in Texas. If you reconfigure that battle, we had two things happen. One is as Democrats we didn't fully anticipate how adamant and how far the Republicans would go to get a maximized map and they didn't realize how ferociously we would fight back. And things escalated, escalated, escalated.

**The Hotline:** Texas is slated to gain four seats and population growth has been in the urban areas mostly. If you had your way, where would you draw the new districts?

**MA:** Where the population growth is not nearly as important as who it is. So what I would do is with all four districts I would use them to repair and improve the voting strength of people of color. Texas clearly should get two additional Hispanic districts. I believe those can be drawn in north Texas -- in Dallas -- and I believe the other can be drawn in the San Antonio to Austin corridor. And then I believe the other two districts should be used to realize the voting strength for minorities.

**The Hotline:** Is that one way Democrats will be able to challenge maps? Because of Voting Rights Act violations?

**MA:** I'm not a lawyer, but I think that Voting Rights Act would require half of what I said. I think the Voting Rights Act would probably require that two of the new districts are Hispanic and Hispanic districts that have been lost to Republicans -- the 23rd [where **Francisco Canseco** won] and the 27th [where **Blake Farenthold** won] -- at worst don't get any less Hispanic. They should stay the way they are and it might require them to be plussed up a little bit [with more Hispanics].

**The Hotline:** How do you think Republicans will go about drawing the map? Where will they put the districts?

**MA:** I think their starting place will be to try to hold their districts. And they'll do that by keeping the minority percentage the same, but putting in high-voting Anglo-Republicans. High turnout Republicans. What they did this time is they won because you had high turnout among Anglos who vote straight-ticket Republican.

And then they will draw a new Hispanic district in Dallas County and just say that that's a new Hispanic district. Because you can draw it there and not hurt any incumbent. Then they'll draw some kind of Hispanic district, or at least I'll call it a "Hispanic district" from Austin, South. But rather than leave the rest of Travis County for Rep. **Lloyd Doggett** (D), they'll break up Travis County into three or four pieces.

So Doggett will face a tough race. Either they'll get rid of him by putting him a Republican district or they'll make him run in a Hispanic district. Doggett's been elected in a Hispanic district before; maybe he can do it again. But it keeps Democrats from netting up seats. So then, in effect, what they will have done is created three new Republican districts.

# DOCUMENT INFO

Filename:        Cameron County legislators vie for new
                 congressional seat.msg

FOLDER#:         Straus072611\Outlook Data
                 File\Straus\DIS

| | |
|---|---|
| **From:** | Eric Opiela [eopiela@ericopiela.com] |
| **Sent:** | Sunday, January 09, 2011 12:45 PM |
| **To:** | CLS Smith; Gerardo Interiano; Doug Davis |
| **Subject:** | Cameron County legislators vie for new congressional seat |

# Cameron County legislators vie for new congressional seat

Comments 0

January 08, 2011 9:19 PM

By EMMA PEREZ-TREVINO, The Brownsville Herald

Population growth reflected in the 2010 Census means that Texas will be gaining four seats in the U.S. House of Representatives — and Cameron County legislators in Austin are vowing to get one of new seats for the county or at least for the Rio Grande Valley.

The 82nd Texas Legislature convenes Tuesday and during the upcoming session is expected to redraw the U.S. congressional districts. The issue is certain to spark debate.

At present, District 27 Rep. Blake Farenthold, R-Corpus Christi, and District 15 Rep. Ruben Hinojosa, D-Mercedes, represent Cameron County in the U.S. House.

In a Texas House and Senate that Republicans control, Democrats are ready to take the matter to the highest level if that is what it takes to ensure that the lines are redrawn to reflect the growth in population in the Hispanic and African-American communities.

"Our Democratic numbers may be down in our state Legislature, but we are not out. Democrats cannot and will not allow our voices to be silenced in this critical process, and we will fight for a fair and legal plan from the Legislature to the Legislative Redistricting Board, to the Justice Department and the courts," Texas Democratic Party Chairman Boyd L. Richie said recently in a press statement.

Members of Cameron County's delegation in Austin — state Sen. Eddie Lucio Jr., D-Brownsville, and Reps. Rene O. Oliveira, D-Brownsville, Eddie Lucio III, D-San Benito, and J. M. Lozano, D-Kingsville — are sure to unite to fight for a new congressional seat based in Cameron County or the Valley.

"My first priority will be to advocate strongly for a second Valley-based congressional district," Sen. Lucio said. "We live in one of the fastest-growing regions of one of the fastest-growing states. I will work to ensure that the vibrant growth of South Texas is reflected by an equal amount of growth in political representation."

Oliveira wants a congressional district to be specifically based in Cameron County. "I will fight for a Cameron County-based congressional district. It is long overdue and given our increases in population, Cameron County doesn't need to be divided between two congressional districts," Oliveira said.

Lucio III said that regardless of November election results, "we will fight for a redistricting map that is fair and adheres to the Voting Rights Act and constitutional requirements."

"Even though the House will have the largest Republican majority in modern history, the minority population growth over the last decade will make it very difficult for them to draw a map that will hold all of the seats they gained in November," Lucio III said.

1

Lozano pointed out that Cameron County is part of the tremendous population growth the Rio Grande Valley has generated. "This growth enabled the state of Texas to gain four new U.S. congressional seats in the upcoming redistricting," he said.

"I will work with Cameron County to ensure that it gets its well-deserved congressional seat anchored in Cameron County," Lozano said.

# DOCUMENT INFO

Filename:        Redistricting to mean less representation
                 for West Texas.msg

FOLDER#:         Straus072611\Outlook Data
                 File\Straus\DIS

| From: | Eric Opiela [eopiela@ericopiela.com] |
| Sent: | Sunday, January 09, 2011 1:06 PM |
| To: | CLS Smith; Gerardo Interiano; Doug Davis; Eric Opiela |
| Subject: | Redistricting to mean less representation for West Texas |

# Redistricting to mean less representation for West Texas

Posted: Saturday, January 8, 2011 10:20 pm | *Updated: 10:21 pm, Sat Jan 8, 2011.*

**By Kathleen Thurber**

**Reporter-Telegram | 1 comment**

However the lines are drawn following the legislative session that starts on Tuesday, area lawmakers say redistricting will mean at least one thing for West Texas: change.

And while they say those shifts won't come in a loss of representatives for Midland or Odessa, each agree Midland and Odessa's state House and Senate districts will have to grow by thousands of constituents in order to get close to the ideal population needed."It's always a contentious item," said Sen. Kel Seliger, R-Amarillo, chair of the Senate Redistricting Committee.

However, while the process in the past has created fierce battles between parties, incited lawsuits and, in 2003, resulted in lawmakers fleeing the state to avoid reaching the quorum necessary for a vote, Seliger said he'll insist their maps are dictated purely by the Census numbers provided.

"We'll do what we need to do based on the numbers and the law, by fairness," Seliger said.

That doesn't mean the Republican-led Senate will go out of its way to create a map intentionally favoring Democrats, Seliger said. But, they won't be drawing a "Republican map" either.

Whether passing maps through the House and Senate without attracting lawsuits and infighting obviously remains to be seen, especially because some have all but promised to contest the maps. Experts, though, are optimistic.

"This time in Austin there is more harmony than there was 10 years ago and I think that the legislators on both sides will be working together as they should," said David Guinn, professor of law at Baylor University who has advised the state and counties on the redistricting process for decades.

State maps

With an estimated 4.3 million additional people living in Texas, according to 2010 Census data released thus far, each lawmaker in Austin will have to represent more people.

Rep. Tom Craddick said because most of that growth has happened in other parts of the state, West Texas will see losses. However, because counties can't be split and Midland and Ector counties both boast populations of more than 100,000, he said his and Rep. Tryon Lewis' districts should remain.

"We'll lose," Craddick said. "West Texas is going to probably lose two to three state representatives and part of a Senate seat."

Seliger said he anticipates his district still will include Amarillo, Midland and Odessa but that it will also encompass more and more smaller counties that will help him get to that higher citizen count needed to justify a seat.

Lewis said the districts that consist of mostly small counties without a larger epicenter that will likely "get squeezed" because they simply don't have the people to necessitate representation. For Midland and Odessa, districts will need to become larger and encompass additional small counties that previously fell under someone else's purview.

Guinn said it's an issue of concern for farmers, ranchers and others who don't want to see representation leave West Texas. The interests of citizens and therefore lawmakers in Dallas-Fort Worth, Houston and San Antonio simply are different than in counties without large cities.

1

But, Guinn said, redistricting is done to better allow for each warm body in the state to get fair representation. And since there continues to be a mass shift in population from rural areas to metropolitan regions, representation has to follow the trends.

"You've got plenty of cattle but you don't have enough people," Guinn said, repeating an explanation he offered the Southwest Cattle Raisers Association. "That's what one vote, one body is about."

In the state Senate, districts will have to grow from having populations in the high 600,000s to closer to 800,000. For his District 31 position, Seliger said that growth will mean an increase from the present 26 counties he represents to more than 35 counties.

In the state House, if each member represented about an even share they would need around 167,000 individuals in their district. Craddick's present district includes about 155,000, according to past Census figures.

"Districts just have to get larger," Lewis said. "The districts centered around Midland-Odessa will have to get larger and include more counties."

Congressional seats

Because of its population growth, Texas will gain four congressional seats during the redistricting process.

At this point, Seliger said it appears those positions will fall in the Rio Grande Valley, in Harris County and near the Dallas area.

With the additions, Lewis said he anticipates none of the existing districts, including Rep. Mike Conaway's, will have to shift dramatically and instead will simply add some constituents like is being done at the state level.

Of the 32 congressional seats presently held by Texans, Republicans occupy 20 spots. Because of the state's conservative makeup, that number could grow after seats are added, Seliger said.

Others, though, have speculated that may not be the case if maps are drawn in what they describe as a fair way. Dallas County has voted Democratic in recent years both in national and local elections. Plus, some argue, much of the population growth over the last decade has come from Hispanics — a group that doesn't always vote for conservatives.

Luis Vera, national council for League of United Latin American Citizens, said whoever they vote for, Hispanics in Texas should receive much of the new representation because they're the ones who've contributed to the population surge.

"We protect the Latino interest," he said, adding many recently have voted for Republicans. "If you're the majority in an area you should have the opportunity."

The process

As chair of the Senate redistricting committee, Seliger has filed three place holder bills that mirror the present districts. Then when data comes in, he said they'll replace those bills with the newly proposed lines.

"Those are place holder bills just as an efficiency measure. Those bills are short four million people," Seliger said.

Similar bills are filed in the House since both groups have to draw maps for their own body as well as for Congress and the State Board of Education.

The U.S. Census Bureau is required to provide state redistricting committees a population count broken down by counties and voting blocks by April 1. Seliger said officials have indicated they'll work to provide figures as early as February since the Legislature must finish and vote on its map by the end of May.

Citizens will get to provide their input both through public hearings and computers being made available in the Capitol where they can tinker with the lines themselves, Seliger said.

If district lines aren't approved in the Senate and House or if Gov. Perry vetoes what's passed, the state's five-member redistricting board will meet within 90 days of the close of the session and create its own maps.

The lieutenant governor, speaker of the house, attorney general, comptroller and land commissioner — all Republicans — make up the board, which is why some lawmakers have said Democrats may be more than willing to pass maps during the session when they at least have some say.

2

The U.S. Department of Justice also must approve the maps comply with the Voting Rights Act and if Congressional maps aren't passed by the state, the U.S. courts will take up the issue.

"As far as what we can control, I think that the state House and state Senate will approve and pass maps," Lewis said.

Beyond that, it's anyone's guess as to what, if any issues, will arise this go around, lawmakers said.

# DOCUMENT INFO

Filename:       Fwd: Minnesota Malapportionment
                Lawsuit.msg

FOLDER#:        Straus072611\Outlook Data
                File\Straus\DIS

# DOCUMENT INFO

| | |
|---|---|
| **From:** | Eric Opiela [eopiela@ericopiela.com] |
| **Sent:** | Friday, January 14, 2011 12:46 PM |
| **To:** | CLS Smith; Gerardo Interiano |
| **Subject:** | Fwd: Minnesota Malapportionment Lawsuit |
| **Attachments:** | MN_11_CV_93_Complaint_D.Minn.01-12-11.pdf |

I would not be surprised if this tactic was not also employed in Texas shortly. What this enables the party filing the suit to do is to file their own plan with the court, and failing the legislature acting in the regular session, proceed to move the court to adopt their plan.  Something to keep an eye on.

Eric

Begin forwarded message:

> **From:** "Wattson, Peter (GOV)" <Peter.Wattson@state.mn.us>
> **To:** "redistrict-l@ncsl.org" <redistrict-l@ncsl.org>
> **Cc:** "paul.bary@ncsl.org" <paul.bary@ncsl.org>, "Capra, Vinni L (OET)"
> <Vinni.Capra@state.mn.us>
> **Subject: Minnesota Malapportionment Lawsuit**
>
> The first known Minnesota redistricting lawsuit (perhaps the first in the country?), Britton v.
> Ritchie, No. 11 CV 93 PJS/AJB (D. Minn. Jan. 12, 2011), has been filed in federal district court
> by attorney Alan W. Weinblatt.  It alleges that the current legislative and congressional districts
> are out of population balance, as shown by the 2010 census, and asks the court to enjoin the
> Secretary of State and county auditors from holding the 2012 elections based on those districts
> and, if the State fails to enact valid redistricting plan by the end of "the current legislative
> session," for the court to order the parties to submit proposed legislative and congressional plans
> to the court for its consideration.
> A copy is attached.
> Peter S. Wattson
> Counsel to the Governor
> 130 Capitol
> St. Paul, MN 55155
> 651-201-3415
> peter.wattson@state.mn.us

1

# DOCUMENT INFO

Filename:     MN_11_CV_93_Complaint_D.Minn.01-12-11.pdf

FOLDER#:     Straus072611\Outlook Data File\Straus\DIS

# DOCUMENT INFO

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Minnesota

| | |
|---|---|
| Audrey Britton, et al. | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 11-CV93 PJS/AJB |
| Mark Ritchie, Secretary of State of Minnesota, et al. | ) |
| _____ | ) |
| *Defendant* | ) |

### SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

    Attorney General Lori Swanson
    1400 Bremer Tower
    445 Minnesota Street
    St. Paul, MN 55101

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Alan W. Weinblatt
                        Weinblatt & Gaylord, PLC
                        111 East Kellogg Blvd, Suite 300
                        St. Paul, MN 55101
                        651-292-8770

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT    RICHARD D. SLETTEN

Date: 1/12/11

*Signature of Clerk or Deputy Clerk*

Rec'd 1/13/11

# UNITED STATES DISTRICT COURT

## FOR THE

## DISTRICT OF MINNESOTA

Audrey Britton, David Bly,
Cary Coop, and John McIntosh,
individually and on behalf of all
citizens of Minnesota similarly situated,

          Plaintiffs,

vs.                                   **COMPLAINT**

Mark Ritchie, Secretary of
State of Minnesota, Rachel Smith,
Hennepin County Elections Manager,
Fran Windschitl, Rice County Auditor,
Cindy Geis, Scott County Auditor,
Robert Hiivala, Wright County
Auditor, individually and on behalf
of all Minnesota county chief
election officers,

          Defendants.

Plaintiffs, for their cause of action against Defendants, state and allege as follows:

## JURISDICTION:

1.     This Court has subject matter jurisdiction over this action based upon the provisions of 42 U.S.C. §§ 1983 and 1988 as well as 28 U.S.C. § 1343(a)(3)(4) and 28 U.S.C. § 2201.

<u>PARTIES:</u>

2.      Plaintiffs are citizens and qualified voters of the United States of America and of the State of Minnesota residing in various counties, legislative districts and congressional districts in the State of Minnesota as shown on Exhibit "A" which is attached hereto and incorporated herein by reference.

3.      Plaintiffs bring this action individually and as representatives of all of the citizens of the State of Minnesota who are similarly situated, as being currently denied Equal Protection of the Laws and Due Process of Law, as further alleged herein.

4.      Defendant Mark Ritchie is the duly elected and acting Secretary of State of the State of Minnesota whose duties under Minnesota Statutes Chapters 200 through 211B inclusive, charge him, in his official capacity, with the duties of keeping records of state elections, giving notice of such elections, receiving filings for office, preparing ballots and instructions to voters, distributing election laws of the State of Minnesota, receiving election returns, furnishing blank election ballots and forms, furnishing certificates of elections in multi-county legislative districts and Congressional Districts and statewide elections, membership on the Minnesota State Canvassing Board and various other election duties.

5.      Defendant Rachel Smith is the Elections Manager for Hennepin County, Minnesota, whose duties under Minnesota Statutes Chapters 200 through 211B inclusive, charge her, in her official capacity, with the duties of keeping records of state elections, giving notice of such elections, receiving filings for office, preparing ballots and instructions to voters, distributing election laws, receiving election returns, furnishing blank election ballots and forms, furnishing certificates of elections in Hennepin County legislative districts and congressional districts.

2

6.     Defendant Cindy Geis  is the duly elected County Auditor and chief election officer for Scott County, Minnesota, whose duties under Minnesota Statutes Chapters 200 through 211B inclusive, charge her, in her official capacity, with the duties of keeping records of state elections, giving notice of such elections, receiving filings for office, preparing ballots and instructions to voters, distributing election laws, receiving election returns, furnishing blank election ballots and forms, furnishing certificates of elections in Scott County legislative districts and congressional districts.

7.     Defendant Fran Windschitl is the duly elected County Auditor and chief election officer for Rice County, Minnesota, whose duties under Minnesota Statutes Chapters 200 through 211B inclusive, charge him, in his official capacity, with the duties of keeping records of state elections, giving notice of such elections, receiving filings for office, preparing ballots and instructions to voters, distributing election laws, receiving election returns, furnishing blank election ballots and forms, furnishing certificates of elections in Rice County legislative districts and congressional districts.

8.     Defendant Robert Hiivala is the duly elected County Auditor and chief election officer for Wright County, Minnesota, whose duties under Minnesota Statutes Chapters 200 through 211B inclusive, charge him, in his official capacity, with the duties of keeping records of state elections, giving notice of such elections, receiving filings for office, preparing ballots and instructions to voters, distributing election laws, receiving election returns, furnishing blank election ballots and forms, furnishing certificates of elections in Wright County legislative districts and congressional districts.

3

## COUNT I:

## LEGISLATIVE MALAPPORTIONMENT

9.    This case arises under the Fourteenth Amendment, Section 1, to the Constitution

of the United States which provides in pertinent part:

> '¹No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The provisions thereof guaranty to the citizens of each state the right to vote in State and

Federal elections and that the vote of each citizen shall be equally effective with any

other vote cast in such election. A state statute and/or court order which enforces or

effects an apportionment which invidiously discriminates against citizens in highly

populous legislative districts and prefers other voters in the least populous legislative

districts violates the above quoted constitutional provision.

10.    This case also arises under the Fifth Amendment of the Constitution of the United

States, which provides in pertinent part: "No person shall … be deprived of life, liberty

or property without due process of law."

11.    The current Minnesota legislative apportionment system established by a five (5)

member Special Redistricting Panel in Zachman v. Kiffmeyer, Civil File No. CO-01-160

(Final Order dated March 19, 2002) effects a legislative apportionment which invidiously

discriminates against citizens in the most highly populous legislative districts, including

4

Plaintiffs, and prefers other citizens in the least populous legislative districts in violation

of the Fifth and Fourteenth Amendments to the United States Constitution.


12.     This case also arises under Article IV, Section 2 of the Minnesota State

Constitution, which provides:

> The number of members who compose the senate and house of representatives
> shall be prescribed by law. The representation in both houses shall be apportioned
> equally throughout the different sections of the state in proportion to the
> population thereof.


13.     This case also arises under Article IV, Section 3 of the Minnesota Constitution

provides:

> At its first session after each enumeration of the inhabitants of this state made by
> the authority of the United States, the legislature shall have the power to prescribe
> the bounds of congressional and legislative districts. Senators shall be chosen by
> single districts of convenient contiguous territory. No representative district shall
> be divided in the formation of a senate district. The senate districts shall be
> numbered in a regular series.


14.     Plaintiffs are citizens of the United States and of the State of Minnesota and have

the rights conferred by the above provisions of the United States Constitution and the

Minnesota Constitution to have the entire membership of the Minnesota Legislature

apportioned and elected on the basis of the 2010 Federal Census.


15.     The intent and the purpose of the above referenced provisions of the Minnesota

Constitution is to require that the members of the Minnesota Legislature be elected by the

people of the State of Minnesota on a basis of equal representation of the individual

citizens of the state. Therefore, all Minnesota State Senators and Representatives must be equally apportioned throughout the state in districts which are arranged in population according to the number of inhabitants thereof as shown by the 2010 Federal Census.

16.     On information and belief, the United States Federal Census taken as of April 2010 shows that the Minnesota state legislative districts as established by the Special Redistricting Panel in Zachman v. Kiffmeyer, Civil File No. CO-01-160 (Order dated March 19, 2002), are now unequally apportioned; that despite the compilation of said Census the State of Minnesota has failed and neglected, and unless otherwise ordered, will continue to fail and neglect to reapportion the legislative districts in the State of Minnesota; and that the present apportionment of the state legislative districts is no longer based upon any logical or reasonable formula but is arbitrary and capricious.

17.     Based upon the April 2010 Federal Census, the ideal population for each Minnesota State House of Representatives district is 39,581.5.  The ideal population for each Minnesota State Senate district is 79,163.

18.     These Plaintiffs are residents, citizens and voters of certain legislative districts in the State of Minnesota, the population of which has increased since the last Federal Census at a rate greater than the state population as a whole.

19.     The unequal population of the Minnesota House of Representatives districts and the Minnesota State Senate districts deprives Plaintiffs and all other citizens of the highly populated districts of the rights guaranteed to them by the Fourteenth Amendment to the

6

United States Constitution, including the rights of Due Process of Laws and the Equal Protection of the Laws. It further deprives them of the rights guaranteed to them by the above quoted provisions of the Minnesota State Constitution.

20.     The plaintiffs are informed and believe and, therefore, allege that the Legislature of the State of Minnesota will not pass a law reapportioning itself in conformity with the United States Constitution and the Constitution of the State of Minnesota during the 2011 Legislative Session.  The plaintiffs further allege on information and belief that the defendants intend to and will, unless sooner restrained by an order of this Court, conduct the election for the 2013 Minnesota State Legislature during the year 2012 on the basis of the senatorial and representative districts determined by the Special Redistricting Panel in the case of Zachman v. Kiffmeyer, Case File No.  CO-01-160 (Order dated March 19, 2002) and that until there is a legislative reapportionment, defendants will continue to do so in subsequent elections for members of the Minnesota State Legislature.

21.     Plaintiffs further allege that they intend to and will vote in the state primary and general elections to be held in 2012 and thereafter for candidates for Minnesota State Senate and Minnesota House of Representatives; and that said elections conducted in accordance with final order of the Special Redistricting Panel in the case of Zachman v. Kiffmeyer, Case File No.  CO-01-160 (Order dated March 19, 2002) will continue to deprive plaintiffs of their rights guaranteed under the Constitution of the United States and the Constitution of the State of Minnesota.

22.     In the absence of reapportionment of the legislative districts of the State of Minnesota in conformance with the Minnesota Constitution, any action of these defendants in conducting an election of the members of the Minnesota Legislature in accordance with the districts ordered by the Special Redistricting Panel in the case of Zachman v. Kiffmeyer, Case File No.  CO-01-160 (Order dated March 19, 2002) will continue to deprive plaintiffs of their constitutional rights in that:

7

(a)    They are and will be arbitrarily deprived of their liberty and property without Due Process of Law, and are and will be arbitrarily deprived of the Equal Protection of the Laws in violation of the Fourteenth Amendment to the Constitution of the United States.

(b)    They are and will be in substantial measure, disenfranchised and deprived of their rights and privileges, all in violation of Article I, Section 2 of the Minnesota Constitution.

(c)    They are and will be deprived of equally apportioned congressional districts of the Minnesota Legislature as guaranteed by Article IV, Section 2 and Article IV, Section 23 of the Minnesota Constitution.

(d)    Their right to vote, as guaranteed by Article VII, Section 1 of the Minnesota Constitution, is and will continue to be abridged, diluted and infringed.

23.    By reason of the failure of the Legislature of the State of Minnesota to reapportion the legislative districts of the state in conformity with the Minnesota Constitution, thus violating the above cited constitutional rights of these plaintiffs and of all other members of the class of citizens and voters whom they represent, a justiciable controversy exists.

COUNT II:

CONGRESSIONAL REDISTRICTING

24.    Plaintiffs reallege paragraphs 1 through 8 hereof.

25.    This case arises under the Fourteenth Amendment, Section 1 of the Constitution of the United States, which provides in pertinent part:

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny any person within its jurisdiction equal protection of the laws.

8

The provisions thereof guaranty to the citizens of each state the right to vote in State and Federal elections and that the vote of each citizen shall be equally effective with any other vote cast in such elections.  A state statute and/or court order which enforces or effects an apportionment, which invidiously discriminates against citizens in highly populous congressional districts and prefers other citizens in the least populous congressional districts violates the above quoted constitutional provision.

26.     Article 4, Section 3 of the Minnesota State Constitution provides:

> At its first session after each enumeration of the inhabitants of this state made by the authority of the United States, the legislature shall have the power to prescribe the bounds of congressional and legislative districts.

27.     Plaintiffs are citizens of the United States and of the State of Minnesota, and have the rights conferred by the above provisions of the United States Constitution and the Minnesota Constitution to have all Representatives in Congress from the State of Minnesota apportioned and elected on the basis of the 2010 Federal Census.  The intent and purpose of the aforesaid provision of the Minnesota Constitution is to require that Representatives in Congress be elected by the people of the State of Minnesota on a basis of equal representation of the individual electors in the state and that the Minnesota Representatives in Congress from the State of Minnesota must be equally apportioned throughout the state in districts which are arranged in proportion to the number of inhabitants therein.

28.     On information and belief, the United States Federal Census taken as of April

2010 shows that the congressional districts as established by the Court in Zachman et al

v. Kiffmeyer et al, Civil File No. CO-01-160 (Order dated March 19, 2002), and

Minnesota Statutes Sections 2.742 through 2.812 are now unequally apportioned; that

despite the compilation of said Census, the Minnesota Legislature has failed and

neglected to reapportion lawfully the congressional districts in the State of Minnesota;

and the present apportionment of the congressional districts is not based upon any logical

or reasonable formula whatsoever, but is arbitrary and capricious.


29.     Based upon the April, 2010 Federal Census, the ideal population for each

congressional district in Minnesota is 662,990.


30.     The unequal representation effected by the congressional districts created and

ordered by the Court in Zachman et al v. Kiffmeyer et al, Civil File No. CO-01-160

(Order dated March 19, 2002), deprives plaintiffs and all other citizens of the highly

populated congressional districts of the rights guaranteed to them by the Fourteenth

Amendment to the Constitution of the United States including their rights of Due Process

of Law and the Equal Protection of the laws.  It further deprives them of their rights as

guaranteed by the above quoted provisions of the Minnesota State Constitution.

31.     The plaintiffs are informed and believe and, therefore allege, that the Legislature

of the State of Minnesota will adjourn without reapportioning the state's congressional

districts in conformity with the United States Constitution and the Constitution of the

State of Minnesota during the 2011 legislative session.  The plaintiffs further allege on

the information and belief that all of the Defendants intend to and will, unless sooner

restrained by an order of this Court, conduct the next election for Representatives in

Congress during the year 2012, on the basis of the current congressional districts and that

until there is a congressional reapportionment, Defendants will continue to do so in

subsequent elections of Representatives in Congress.

32.     Plaintiffs further allege that they intend to and will vote in the state primary and

general election in 2012 and thereafter for candidates for Representatives in Congress;

and that said elections conducted in accordance with the present congressional districts

will continue to deprive Plaintiffs and the class that they represent of their rights

guaranteed under the above cited provisions of the Constitution of the United States and

of the Constitution of the State of Minnesota.

33.     In the absence of reapportionment of the congressional districts of the State of

Minnesota in conformity with the United States Constitution, any action of these

Defendants in conducting an election for Representatives in Congress in accordance with

the present districts has deprived and will continue to deprive Plaintiffs of their

constitutional rights in that:

(a) They are and will be arbitrarily deprived of liberty and property without Due Process of Law, and are and will be arbitrarily deprived of the Equal Protection of the Laws in violation of the Fourteenth Amendment to the Constitution of the United States.

(b) They are and will be in substantial measure disenfranchised and deprived of their rights and privileges, all in violation of Article 1, Section 2 of the Minnesota Constitution.

(c) They are and will be deprived of equally apportioned congressional districts as guaranteed by Article 4, Section 3 of the Minnesota Constitution.

(d) Their right to vote, as guaranteed by Article 7, Section 1 of the Minnesota Constitution, is and will continue to be abridged, diluted and infringed.

34.    By reason of the failure of the Legislature of the State of Minnesota to reapportion the congressional districts of the state in conformity with the United States and Minnesota Constitutions, thus violating the constitutional rights of these plaintiffs and of all other members of the class of citizens and voters whom they represent, a justiciable controversy exists.

WHEREFORE, Plaintiffs respectfully pray that:

1.    This Court declare the rights of these Plaintiffs pursuant to 28 U.S.C. § 2201, to wit:

(a)    That the present legislative apportionment of the State of Minnesota as ordered by the court in <u>Zachman et al v. Kiffmeyer et al,</u> Civil File No. CO-01-160 (Order dated March 19, 2002) and in Minnesota Statutes §2.043 through 2.703 has deprived and continues to deprive plaintiffs and all citizens of the State of Minnesota similarly situated in underrepresented districts of their liberty and property without Due Process of law and has denied and continues to deny plaintiffs and all citizens of the State of Minnesota similarly situated in underrepresented districts of the Equal Protection of the law all in violation of the Fourteenth Amendment to the Constitution of the United States; and

(b)    That the present plan of congressional apportionment as ordered by the court <u>Zachman et al v. Kiffmeyer et al,</u> Civil File No. CO-01-160 (Order dated March 19, 2002) Minnesota Statute §§ 2.742 through 2.812 deprives plaintiffs and the class they represent of Due Process of Law and Equal Protection of the Law all in violation of the Fourteenth Amendment to the Constitution of the United States.

(c)    That the present plan of Congressional districts, as ordered by the court in <u>Zachman et al v. Kiffmeyer et al,</u> Civil File No. CO-01-160 (Order dated March 19, 2002), and §§2.742 through 2.812, unlawfully impairs the rights of the plaintiffs and the class they represent as guaranteed by Article 4, Section 3, and Article 1, Section 2 of the Minnesota Constitution.

(d)    That the decision of the Special Redistricting Panel in <u>Zachman et al v. Kiffmeyer et al,</u> Civil File No. CO-01-160 (Order dated March 19, 2002), and Minnesota Statute §§2.043 through 2.703 unlawfully impairs the rights of the plaintiffs and the class they represent as guaranteed by Article I, Section 2 and Article 4, Sections 2 and 3 of the Minnesota Constitution.

13

2.  The Court issue a permanent injunction and judgment decreeing that the plan of the legislative apportionment set forth in <u>Zachman et al v. Kiffmeyer et al,</u> Civil File No. CO-01-160 (Order dated March 19, 2002), and Minnesota Statute §§2.043 through 2.703 may not hereafter be used as a valid plan of legislative apportionment.

3.  The Court permanently restrain defendants and the class of persons they represent from receiving nominations and petitions for legislative office, from issuing certificates of nominations and elections, and from all further acts necessary to the holding of elections for members of the Minnesota Legislature in the districts set out and described in <u>Zachman et al v. Kiffmeyer et al,</u> Civil File No. CO-01-160 (Order dated March 19, 2002), and Minnesota Statutes §§2.043 through 2.703 until such time as the legislature passes and the governor approves legislation reapportioning the state legislative districts in accordance with the Constitution of Minnesota and the Due Process and Equal Protection clauses of the United States Constitution.

4.  The Court issue its permanent injunction and judgment decreeing that the plan of congressional apportionment set forth in Minnesota Statutes §§2.043 through 2.703 and §§2.742 through 2.812 and as set forth in <u>Zachman et al v. Kiffmeyer et al,</u> Civil File No. CO-01-160 (Order dated March 19, 2002), may not hereafter be used by Defendants as a valid plan and scheme of congressional apportionment.

5.  The Court permanently restrain the defendants and the class of persons they represent from receiving nominations and petitions for Congressional office, from issuing certificates of nomination and elections, and from all further acts necessary to the holding of elections for members of Congress in the districts to the decree of the Court in <u>Zachman et al v. Kiffmeyer et al,</u> Civil File No. CO-01-160 (Order

14

dated March 19, 2002) until such time as the legislature passes and the Governor approves legislation reapportioning the eight (8) Minnesota Congressional districts in accordance with the Constitution of Minnesota and the Due Process and Equal Protection clauses of the United States Constitution.

6.   That this Court notify the Governor and Legislature of the State of Minnesota that it will retain jurisdiction of this action and, upon the failure of the State of Minnesota to adopt constitutionally valid plans of congressional redistricting and legislative reapportionment, prior to the end of the current legislative session, the Court will issue an Order requesting the parties hereto to submit proposed plans of congressional redistricting and legislative reapportionment for the Court's consideration.

7.   The Court order defendants to pay to plaintiffs, pursuant to 42 U.S.C. §1988 and Minn. Stat. §555.08, their reasonable attorneys fees and expenses, expert fees, costs and other expenses incurred in prosecuting this action.

8.   For such other and future relief as is just in the circumstances.

WEINBLATT & GAYLORD, PLC

Dated: January 11, 2011           s/Alan W. Weinblatt
                                  Alan W. Weinblatt (#115332)
                                  Jay Benanav (#0006518)
                                  Jane L. Prince (#0388669)
                                  Attorneys for Plaintiffs
                                  111 East Kellogg Boulevard, Suite 300
                                  St. Paul, MN 55101
                                  Telephone: (651) 292-8770
                                  Facsimile:  (651) 223-8282
                                  alan@weglaw.com

15

## Exhibit A

|  | Congressional District | Legislative District |
|---|---|---|
| Audrey Britton | 3 | 43A (Hennepin County) |
| David Bly | 2 | 25B (Rice County) |
| Cary Coop | 2 | 25B (Scott County) |
| John McIntosh | 6 | 19B (Wright County) |

16

# DOCUMENT INFO

Filename:       More on the Minn. Dem. Redist.
                Lawsuit.msg

FOLDER#:        Straus072611\Outlook Data
                File\Straus\DIS

# DOCUMENT INFO

**From:**       Eric Opiela [eopiela@ericopiela.com]
**Sent:**       Friday, January 14, 2011 7:34 PM
**To:**         CLS Smith; Gerardo Interiano
**Subject:**    More on the Minn. Dem. Redist. Lawsuit

# Minnesota Political Map Lawsuit Filed

January 14, 2011 5:26 PM

**ST. PAUL, Minn. (AP) —** The once-a-decade fight over Minnesota's political map has made its way into federal court.

Four Democrats, including a former legislator, have filed a lawsuit in U.S. District Court seeking to involve the courts in the redistricting process because they fear lawmakers will not redraw the map fairly.

Every 10 years political district boundaries are redrawn to conform to population changes revealed by the census. Minnesota retained all eight of its congressional seats, but the lines of those and the 201 state legislative districts will certainly shift anyway. The exercise matters because the resulting districts can give one party a distinct advantage. It also can affect which party holds legislative majorities and sets the policy agenda.

The lawsuit names state and local elections officials as defendants. The Legislature and governor have the most direct role in redistricting, though past efforts to come up with a new map have usually wound up before the courts.

Plaintiff lawyers raise concerns about the ability of politicians to do the mapmaking fairly, citing portions of the state and U.S. constitutions related to equal representation.

"The plaintiffs are informed and believe, and therefore, allege that the Legislature of the State of Minnesota will not pass a law reapportioning itself in conformity the United States Constitution and the Constitution of the State of Minnesota during the 2011 Legislative session," the lawsuit reads.

The lawsuit, which initially was filed Wednesday, seeks an injunction that would invalidate the current political map, and it asks that a judge require state leaders to submit proposed redistricting plans to the court if they can't agree on a joint proposal.

Former state Rep. David Bly, a Northfield Democrat, is among the plaintiffs but all have connections to the Democratic-Farmer-Labor Party. Their lawyer, Alan Weinblatt, has long represented Democrats.

The Republican-controlled Legislature is in the early stages of the process, but hope to pass a bill this year with reshaped districts. That map will go to Dayton for approval.

Weinblatt said Friday that history shows that harmony among the stakeholders of different parties will be difficult to achieve. He said he wants the court to "give the legislature a reasonable amount of time to cure the problem" but be ready to step in if they can't.

Michael Brodkorb, the deputy chairman of the Minnesota Republican Party, said the GOP is committed to "a fair and open redistricting plan."

"Based on Minnesota's long history of litigious redistricting processes, today's lawsuit filed by four Minnesota Democrats isn't surprising," he said.

Rep. Sarah Anderson and Sen. Geoff Michel, who lead the respective redistricting committees, didn't immediately respond to requests for comment on Friday.

# DOCUMENT INFO

Filename:          Re: Eric and I were trying to get a hold of
                   you.msg

FOLDER#:           Straus072611\Outlook Data
                   File\Straus\DIS

# DOCUMENT INFO

**From:**       Gerardo Interiano [ginteriano@gmail.com]
**Sent:**       Tuesday, January 18, 2011 4:53 PM
**To:**         jybblb2@aol.com
**Cc:**         eopiela@ericopiela.com
**Subject:**    Re: Eric and I were trying to get a hold of you


Spoke to Eric.  Here is the schedule for the two days.  The meetings are scheduled with the
Chiefs of Staff but I suspect that some Members may be present if they are in town.

Thursday
3:00 - Flores
3:45 - Farenthold
4:30 - LS
5:30 - Canseco

Friday
8:45 - Poe
9:30 - Hensarling
10:15 - Hinojosa
11:00 - Carter

On Tue, Jan 18, 2011 at 2:25 PM,  <jybblb2@aol.com> wrote:
> If you could call one of us so we can conference each other in I would
> appreciate it.
>
>

# DOCUMENT INFO

Filename:        Re: Eric and I were trying to get a hold of
                 you.msg

FOLDER#:         Straus072611\Outlook Data
                 File\Straus\DIS

**From:**        Eric Opiela [eopiela@ericopiela.com]
**Sent:**        Tuesday, January 18, 2011 5:18 PM
**To:**          Gerardo Interiano
**Cc:**          jybblb2@aol.com
**Subject:**     Re: Eric and I were trying to get a hold of you

I think I will skip out on the meeting with Ruben Hinojosa, even though I'm his constituent,
I don't think it would be appropriate for me to meet with him considering my role.

Jennifer, are there any problems (for me) meeting with any others?

Eric


On Jan 18, 2011, at 4:52 PM, Gerardo Interiano wrote:

> Spoke to Eric.  Here is the schedule for the two days.  The meetings
> are scheduled with the Chiefs of Staff but I suspect that some Members
> may be present if they are in town.
>
> Thursday
> 3:00 - Flores
> 3:45 - Farenthold
> 4:30 - LS
> 5:30 - Canseco
>
> Friday
> 8:45 - Poe
> 9:30 - Hensarling
> 10:15 - Hinojosa
> 11:00 - Carter
>
> On Tue, Jan 18, 2011 at 2:25 PM,  <jybblb2@aol.com> wrote:
>> If you could call one of us so we can conference each other in I
>> would appreciate it.
>>
>>

1

# DOCUMENT INFO

Filename:        Re: Eric and I were trying to get a hold of you.msg

FOLDER#:        Straus072611\Outlook Data File\Straus\DIS