# Latino Task Force Closing Argument

# Claims

- Section 5 Enforcement Claim (preclearance)
- Vote Dilution
  - Section 2 of the Voting Rights Act
  - Disparate Impact Test
- Intentional Discrimination
  - Section 2 of the Voting Rights Act
  - 14th Amendment to the U.S. Constitution
    - Intentional vote dilution, or
    - Improper use of race in redistricting

# H100 Benchmark Nueces County



# H283 Adopted Plan Nueces County



# Gingles Preconditions

- 1. Minority population is sufficiently large and geographically compact to constitute a majority in a single-member district;

- 2. It is politically cohesive; and

- 3. In the absence of special circumstances, bloc voting by the White majority usually defeats the minority's preferred candidate.

*Gingles*, 478 U.S. at 50-51

# Gingles 1

- "Sufficiently large and geographically compact"
- *Bartlett v. Strickland*, 556 U.S. 1 (2009) (minority population must comprise 50% + 1 in order to satisfy Gingles 1)
- *Campos v. City of Houston*, 113 F.3d 544 (5th Cir. 1997) (citizen voting age population standard)

# H292 Task Force Proposed Nueces County



# Racially Polarized  Voting

The District Court's findings concerning black support for black candidates in the five multimember districts at issue here clearly establish the political cohesiveness of black voters. As is apparent from the District Court's tabulated findings, reproduced in Appendix A to opinion, *post,* p. ---, black voters' support for black candidates was overwhelming in almost every election. In all but 5 of 16 primary elections, black support for black candidates ranged between 71% and 92%; and in the general elections, black support for black Democratic candidates ranged between 87% and 96%.

In sharp contrast to its findings of strong black support for black candidates, the District Court found that a substantial majority of white voters would rarely, if ever, vote for a black candidate. In the primary elections, white support for black candidates ranged between 8% and 50%, and in the general elections it ranged between 28% and 49%. See *ibid.*

*Gingles*, 478 U.S. at 58-59

# The "Senate Factors"

- ■ 1. History of official discrimination that touched the right to vote;

- ■ 2. Racially polarized voting;

- ■ 3. History of voting practices or procedures that may enhance the opportunity for discrimination against the minority group;

- ■ 4. Candidate slating

- ■ 5. Effects of discrimination in such areas as education, employment and health, which hinder their ability to participate effectively in the political process;

- ■ 6. Racial appeals

- ■ 7. The extent to which minorities are elected to office

# Nueces County

- HD 33:  57.4% HCVAP

- HD 34:  57.1% HCVAP

- Dr. Engstrom found voting is racially polarized

- Dr. Tijerina found history of discrimination and legacy of past discrimination in Texas

- Lay witness and Nueces County resident Dr. Robert Bezdek testified regarding Nueces County Senate Factors

# Cameron and Hidalgo



# Cameron and Hidalgo

- HD 32:  85.6% HCVAP

- Dr. Engstrom found voting is racially polarized in South Texas

-  Dr. Tijerina found history of discrimination and legacy of past discrimination in Texas

- Lay witness and Cameron County resident Michael Seifert

- Lay witness Hidalgo County Judge Ramon Garcia

# The Voting Rights Act
## v.
## the Texas County Line Rule

- Creating districts required by the federal Voting Rights Act may result in several county splits in the Texas House plan.

Chairman Burt Solomons:

Q. I am asking you, in a situation where there is a conflict,

11 it is your understanding, in your mind, that the county line

12 rule governs in a conflict between the county line rule and

13 the creation of a Latino opportunity district pursuant to the

14 Voting Rights Act?

15 A. In my mind, I am going to follow the Texas Constitution on

16 the county line rule, yes.

Tr. 1594

# El Paso County

- Adopted Plan H283 creates HD 78 with less than 50% SSVR

- The remaining 4 districts in El Paso County have greater than 65% SSVR

- Dr. Engstrom found voting is racially polarized in El Paso County

- Dr. Tijerina found history of discrimination and legacy of past discrimination in Texas

- Lay witness and El Paso County resident Carmen Rodriguez

- Lay witness and El Paso County resident Sergio Coronado

# H283 HD78 Precinct Splits



# H283 HD78 Google Earth Overlay



# HD 78 in Plan H283



Hispanic Citizen Voting Age Population as a Percentage of Total Citizen Voting Age Population

Map layers

H283

Latino CVAP
- 25.00% and below
- 25.00% to 50.00%
- 50.00% to 75.00%
- 75.00% and above

Data Source: Texas Legislative Council 2011. H283 Block Equivalency File. ACS 2005-2009 5-year Estimates. Data is displayed at the Block Group level.

# Task Force Proposed HD 78



# H283 Creates No New Latino Opportunity Districts

- Districts 90 and 148 were already opportunity districts in the benchmark Plan H100

- Chairman Burt Solomons

24 Q. Okay. And you also testified in your deposition, didn't

25 you, that the changes that you made to Districts 90 and 148

1 were not intended to increase the number of Latino opportunity

2 districts but, rather, were intended to correct lines or to

3 increase the percentage numbers in those existing districts?

4 A. I believe that's what we did, yes.

Tr. 1600-1601

# Circumstantial Evidence of Intent

- The impact of the official action

- The historical background of the decision

- The specific sequence of events leading up to the challenged decision

- Departures from the normal procedural sequence

- Substantive departures

- The legislative or administrative history

- ***Village of Arlington Heights v. Metropolitan Housing Development Corp***, 429 U.S. 252 (1977)

# C100 Congressional Benchmark with Incumbent Label



# C100 Congressional Benchmark with HCVAP



# Latino Opportunity District

John Alford

Q. Now, you testified in your deposition that your definition
25 of a Latino opportunity district is one in which there is an
1 opportunity for Hispanics to constitute the majority of the
2 turned-out vote in the district and in which Hispanics are
3 sufficiently cohesive that when they vote cohesively they can
4 control the outcome of the district. Correct?
5 A. Sounds like a fair definition.

Tr. 1859-1860

# Latino Opportunity District

John Alford

19 Q. And you testified that if a district is majority Spanish
20 surname voter registration, and if Latinos are voting
21 cohesively and elects a Latino-preferred candidate the
22 majority of the time, you would classify it as a Latino
23 opportunity district, correct?
24 A. Correct.

Tr. 1860

# C100 Congressional Benchmark with Population Deviations



**C100 South Texas Congressional Districts: Population Deviations**

| District | Population | Deviation |
|----------|------------|-----------|
| 15 | 787,124 | 88,636 |
| 16 | 757,427 | 58,939 |
| 20 | 711,632 | 13,144 |
| 23 | 847,651 | 149,163 |
| 27 | 741,993 | 43,505 |

Total Over Population: **506,723**

Ideal Population: **698,488**

CD 16 +58,939
CD 23 +149,163
CD 20 +13,144
CD 15 +88,636
CD 28 +153,336
CD 27 +43,505

Data Source: Texas Legislative Council 2011. C100 Block Equivalency File (ftp://ftpgis1.tlc.state.tx.us/DistrictViewer/Congress/).



# C185 State Adopted Plan



# Nueces County Removed



# CD34 is a swap for CD27

- Dr. John Alford

JUDGE GARCIA: Right.

5 THE WITNESS: This time, it's -- the actual

6 appropriate comparison, this time, is 27. It is 27 that has

7 been flipped into a majority Anglo district, and the district

8 constructed in the same geog -- basic geography that is the

9 replacement district.

10 So although that is a new district, in the sense of

11 its number, it is one of the ones above 32, it is simply a

12 reconfigured District 27.

Tr. 1832

# Proposed C190



# CD 23  in Adopted Plan C185
# Not an Opportunity District

JUDGE GARCIA: All right. Go ahead.

2 JOHN ALFORD: So I don't think that the 23rd is any

3 more likely to perform than it was. I think it is probably

4 less likely to perform than it was, and so I certainly

5 wouldn't count and don't -- in all of this discussion, I

6 haven't counted the 23rd as an effective minority district in

7 the newly adopted plan, but it does remain a majority

8 district.

Tr. at 1839

5 A. I -- I don't count 23 as one of the seven performing

6 districts when I evaluate C-185.

Tr. at 1878

# CD35 is a swap for CD23

- Dr. John Alford

15 Q. Okay. Now, 35 would have been a swap for 23, wouldn't it?
16 A. Yes. And I guess certainly, it is not -- excuse me. It
17 is not a swap in the sense that we see in 27 and 34, where you
18 simply reconfigure adjacent districts, but in the sense that
19 there is some -- that there is something in the plan that I
20 think might address the weakness of 23, I think would be the
21 creation of 34.
22 Q. And so --
23 A. I'm sorry. 35. I'm sorry. The creation of 35.

Tr. 1875

# Intent

- Reducing the Latino electorate of a district to shore up the reelection chances of the incumbent "bears the mark of intentional discrimination that could give rise to an equal protection violation." *LULAC v. Perry*, 548 U.S. at 440

- Impermissible to use race to swap precincts in and out of a district to ensure low Latino turnout and create a façade. *Id.* at 441

# C190 CD 6



# Dallas-Ft. Worth

- CD 6:  50.4% HCVAP

- Latinos comprise the plurality of total population in Dallas County

- Rep. Lamar Smith advocated for a Latino majority district in DFW with 61% HVAP

- Dr. Engstrom found that voting is racially polarized in Dallas and Tarrant counties

- Lay witnesses Alex Jimenez and Hector Flores

# C190 Harris County



# Harris County

- Proposed Coalition District

- Latino population growth was almost 500k

- New CD29 is 57.1% B+HCVAP

- New CD36 is 50.1% HCVAP

- Lay witness Mary Ramos of Houston testified to Latino and African American coalitions in Houston



Data Source: Source: U.S. Census Bureau, Census 2000, Summary File 4, Table PCT 44; *Citizen Voting Age Population (CVAP) Special Tabulation From the 2005-2009 5-Year American Community Survey

# Key Cases

- *Thornburg v. Gingles*, 478 U.S. 30 (1986)

- *LULAC v. Perry*, 548 U. S. 399 (2006)

- *Garza v. County of Los Angeles*, 918 F.2d 763, 771 (9th Cir. 1990).

# Texas Population Growth by Race, 2000-2010

