**MALDEF**     Exhibit C to Perez Plaintiffs' Post Trial Brief
                                                            Page 1 of 2
Mexican American Legal Defense and Educational Fund

VIA FACSIMILE & ELECTRONIC MAIL

**San Antonio
Regional Office**
110 Broadway
Suite 300
San Antonio, TX 78205
*Tel:* 210.224.5476
*Fax:* 210.224.5382

April 27, 2011

The Honorable Burt Solomons
P.O. Box 2910
Austin, TX  78768-2910

**National Headquarters
Los Angeles
Regional Office**
634 S. Spring Street
Los Angeles, CA 90014
*Tel:* 213.629.2512
*Fax:* 213.629.0266

Dear Chairman Solomons,

I write to provide further information regarding Plan H153, the proposed redistricting plan for Texas State House of Representatives. Based on MADLEF's analysis, H153 is retrogressive and raises serious concerns under Section 5 of the federal Voting Rights Act.

The Voting Rights Act was enacted by Congress in 1965 to protect racial and ethnic minorities from discrimination in voting and is widely considered one of the most effective civil rights laws in American history. Texas is a covered jurisdiction under Section 5 of the Voting Rights Act, which requires federal review of election changes in covered jurisdictions and blocks changes that a covered jurisdiction cannot prove "neither ha[ve] the purpose nor will have the effect of denying or abridging the right to vote on account of race or color, or [because of membership in a language minority group]." *Riley v. Kennedy*, 553 U.S. 406, 412 (2008). Section 5 prohibits election changes that are "retrogressive," i.e. changes that "lead to a retrogression in the position of racial [or language] minorities with respect to their effective exercise of the electoral franchise." *Beer v. United States*, 425 U.S. 130, 141 (1976).

**Chicago
Regional Office**
11 East Adams Street
Suite 700
Chicago, IL 60603
*Tel:* 312.427.0701
*Fax:* 312.427.0691

Texas was responsible for 107 Section 5 objections interposed by the Department of Justice under Section 5 from 1982 through June 2006. Ten of these objections were aimed at blocking statewide voting changes that would discriminate against minority voters.

**Washington, D.C.
Regional Office**
1016 16th Street, NW
Suite 100
Washington, DC 20036
*Tel:* 202.293.2828
*Fax:* 202.293.2849

In the most recent round of statewide redistricting, the State adopted a redistricting plan for the Texas House of Representatives that fractured Latino populations across South and West Texas and resulted in the loss of Latino electoral control in four districts. When Texas submitted the plan for Section 5 preclearance, the DOJ objected to the Texas House plan, noting that the State had reduced by four the number of districts in which Latino voters would be able to elect their candidate of choice. See attached letter. Notably, the DOJ analysis did not turn solely on the number of districts in the plan that contained a majority of Spanish surnamed registered voters (SSVR). Although SSVR is a consideration in the retrogression analysis, the ultimate evaluation "depends on an examination of all the relevant circumstances, such as the ability of minority voters to elect their candidate of choice, the extent of the minority group's opportunity to participate in the political process, and the feasibility of creating a nonretrogressive plan. *Georgia v. Ashcroft*, 539 U.S. 461, 478 (2003), citing *Johnson v. De Grandy*, 512 U.S. 997, 1011-1012 (1994). As explained by the U.S. Supreme Court, "'No single statistic provides courts with a shortcut to determine whether' a voting change that retrogresses from the benchmark". *Georgia v. Ashcroft* at 461, citing *Johnson v. De Grandy*, at 1020-1021. Section 5 was amended by Congress in 2006 to ensure that voting changes reduce the ability of the minority community to elect their candidates of choice should not be precleared.

*Advancing Latino Civil Rights for over 40 Years*
www.maldef.org

Letter to The Honorable Burt Solomons
April 27, 2011
Page Two

In the current (benchmark) redistricting plan for Texas House of Representatives, Latinos comprise the majority of registered voters in 29 districts. Latinos comprise the majority of voting age population, but not the majority of registered voters, in an additional 7 districts (51, 78, 90, 103, 137, 144, 148). Plan H153 eliminates one district in which Latinos comprise the majority of registered voters (District 33). Plan H153 also raises the Latino population in two existing Hispanic voting age majority districts – 90 and 148. Our analysis of primary and general elections has led us to conclude that Districts 90 and 148 in the benchmark plan are districts in which Latino voters currently possess the ability to elect their candidates of choice. Adding Latino voters to Districts 90 and 148 does raise the SSVR but does not create new Latino opportunity districts that can offset the loss of District 33.

Thus Plan H153 reduces the number of districts in which Latinos can elect their candidates of choice. By contrast, the Texas House plan offered by the Texas Latino Redistricting Task Force adds Latino population to Districts 90 and 148 and also creates three additional Latino majority opportunity districts. In light of the significant growth in the Latino community since 2000, and the availability of redistricting plans that offer more equitable electoral opportunities for Texas Latinos, we believe that Plan H153 is retrogressive. Please feel free to contact me with any questions regarding this letter.

Sincerely,

Nina Perales
Director of Litigation

Encl.