# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SHANNON PEREZ, et al., | ) | |
| | ) | CIVIL ACTION NO. |
| *Plaintiffs*, | ) | SA-11-CA-360-OLG-JES-XR |
| | ) | [Lead case] |
| - and - | ) | |
| | ) | |
| EDDIE BERNICE JOHNSON, et al., | ) | |
| | ) | |
| - and - | ) | |
| | ) | |
| TEXAS STATE CONFERENCE OF NAACP BRANCHES, et al., | ) | |
| | ) | |
| *Plaintiff Intervenors*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RICK PERRY, et al., | ) | |
| | ) | |
| *Defendants*, | ) | |

| | | |
|---|---|---|
| MEXICAN AMERICAN LEGISLATIVE CAUCUS, TEXAS HOUSE OF REPRESENTATIVES (MALC), | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| - and - | ) | CIVIL ACTION NO. |
| | ) | SA-11-CA-361-OLG-JES-XR |
| HONORABLE HENRY CUELLAR, et al., | ) | [Consolidated case] |
| | ) | |
| *Plaintiff Intervenors*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STATE OF TEXAS, et al., | ) | |
| | ) | |
| *Defendants* | ) | |

| | | |
|---|---|---|
| TEXAS LATINO REDISTRICTING TASK FORCE, et al., | ) ) ) | CIVIL ACTION NO. SA-11-CA-490-OLG-JES-XR [Consolidated case] |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | |
| RICK PERRY, et al., | ) ) ) | |
| *Defendants*, | ) ) | |
| _____ | | |
| MARAGARITA v. QUESADA, et al., | ) ) ) | CIVIL ACTION NO. SA-11-CA-592-OLG-JES-XR [Consolidated case] |
| *Plaintiffs*, | ) ) | |
| v. | ) ) ) | |
| RICK PERRY, et al., | ) ) | |
| *Defendants*, | ) | |
| _____ | | |
| | ) | |
| JOHN T. MORRIS, | ) ) | CIVIL ACTION NO. SA-11-CA-615-OLG-JES-XR [Consolidated case] |
| *Plaintiff*, | ) ) | |
| v. | ) ) | |
| STATE OF TEXAS, et al., | ) ) ) | |
| *Defendants*, | ) | |
| _____ | | |

2

| | |
|---|---|
| EDDIE RODRIGUEZ, et al., ) | CIVIL ACTION NO. |
| ) | SA-11-CA-635-OLG-JES-XR |
| ) | [Consolidated case] |
| *Plaintiff*, ) | |
| ) | |
| v. ) | |
| ) | |
| STATE OF TEXAS, et al., ) | |
| ) | |
| *Defendants*. ) | |

## PLAINTIFFS' JOINT REPLY IN SUPPORT OF MOTIONS SEEKING TO REOPEN THE RECORD AND TO ADMIT SUPPLEMENTAL DOCUMENTARY AND TESTIMONIAL EVIDENCE

### INTRODUCTION

In order to assist the Court in reaching final judgment on their pending constitutional and section 2 claims, Plaintiffs[1] urge the Court to reopen the record to accept supplemental evidence related to the 2011 redistricting plans. As previously demonstrated, Plaintiffs' claims against the 2011 redistricting plans are not moot. *See* Dkt. 838 at 4-11; *see also* Dkt. 839 at 1-4. The appropriate action at this stage of the litigation is to complete the record by accepting supplemental evidence, consider final proposed final findings of fact and conclusions of law and issue final judgment on the Plaintiffs' claims related to the 2011 redistricting plans.

The evidence offered by Plaintiffs is relevant to the remaining claims before this Court, not cumulative of evidence already before the Court, and the introduction of the evidence does not result in undue prejudice to Defendants State of Texas, *et. al* ("Defendants" or "Texas"). Particularly with respect to email communications among the map-drawers, it is Plaintiffs who were prejudiced by Defendants' failure to produce the evidence during discovery in this case.

---

[1] Plaintiffs joining in this reply include: Shannon Perez, *et al.,* the Mexican American Legislative Caucus of the Texas House of Representatives, the Texas Latino Redistricting Task Force, *et al.,* Congressman Cuellar, Congresspersons Johnson, Jackson-Lee and Green, Texas State Conference of NAACP Branches, *et al.,* Margarita Quesada*, et al.,* National LULAC, *et al.,* and Eddie Rodriguez, *et al.*

3

Although Plaintiffs requested the communications between map-drawers, Defendants did not produce them; the appropriate remedy for the prejudice to Plaintiffs is to admit the evidence into the record at this time. *See* Dkt. 840 at 8 (Defendants conceding that email communications involving the map-drawers were not produced until the preclearance trial in the D.C. court).

## ARGUMENT

### I. REOPENING THE RECORD TO ADMIT SUPPLEMENTAL EVIDENCE THAT IS PROBATIVE WILL ASSIST IN RESOLUTION OF THE CLAIMS PENDING BEFORE THIS COURT

As explained in the Plaintiffs' responses to Defendants' motion to dismiss, the Plaintiffs' claims remain "live" and their interest in the outcome of the litigation has not changed merely because the Texas Legislature enacted redistricting plans that will take effect later this year. *See* Dkt. 838 at 4-5; *see also* Dkt. 839 at 1-4. Plaintiffs are entitled to final judgment and a ruling on the declaratory and injunctive relief they requested in their complaints. *See* Dkt. 838 at 5-7. As the Court considers final judgment on the pending constitutional and section 2 claims in this case, the Court should have before it all relevant evidence pertaining to these claims.

### A. The Documentary and Testimonial Evidence Offered by Plaintiffs Is Probative of the Claims Pending Before This Court and Not Cumulative of Other Evidence in the Case

The litigation in the U.S. District Court for the District of Columbia ("D.C. court") and before this Court concerns the same 2011 Texas redistricting plans. The claims in both cases, whether under section 2, section 5, or the 14th Amendment to the U.S. Constitution deal with the same issues of vote dilution and intentional racial discrimination. *See Reno v. Bossier Parish Sch. Bd.*, 520 U.S. 471, 488-89 (1997) (explaining that the *Arlington Heights* intentional discrimination analysis applies in cases brought under section 5 of the Voting Rights Act and in cases brought under the Equal Protection Clause). For this reason, both courts heard evidence on the redistricters' motivations and the redistricting plans' effect on the ability of minority voters to

elect their preferred candidates. Thus, the evidence from the D.C. trial offered here is highly relevant to and probative of the claims of vote dilution and intentional racial discrimination remaining before this Court.

As explained more fully in the explanations accompanying each offered exhibit, the email communications, maps, charts, and analyses offered as supplemental evidence by Plaintiffs provide direct and circumstantial evidence of intentional discrimination by redistricters in the 2011 redistricting plans.[2] *See, e.g.,* Dkt. 790-1 at 1-12 (Tabs 1-60). For example, the offered email between map-drawers Ryan Downton, Gerardo Interiano and Doug Davis, Dkt. 790-2 at Tab 44, in which Ryan Downton describes "[c]hanges made to keep the Black population together in District 12," provides evidence of the use of race to apportion population in the congressional districts in the Dallas-Ft. Worth area and rebuts the argument offered by Texas that redistricters were motivated by partisanship (not race) in drawing congressional boundaries in Dallas-Ft. Worth. In the same email, Mr. Downton also reveals the use of race to create the semblance of a Latino opportunity district in CD23 while ensuring the district only elected the Latino-preferred candidate in one of ten elections. *See* Dkt. 790-2 at Tab 44 ("Have it over 59% HCVAP, but still at 1-10."). Finally, the testimonial evidence offered by the Texas Latino Redistricting Task Force, *et al.* Plaintiffs ("Task Force Plaintiffs") puts Plaintiffs' documentary evidence into context, clarifies the meaning of certain terms used in the emails, and provides further explanation of the redistricters' thought process.

Moreover, although Plaintiffs offered maps of districts and various charts during trial in this case, that does not make additional, different maps and charts offered in the D.C. court

---

[2] Defendants' argument that the Court should deny Plaintiffs' motion on the theory that Plaintiffs are offering the proposed supplemental exhibits to support their claims against the 2013 redistricting plans is misplaced. *See* Dkt. 840 at 6. Plaintiffs' motion makes clear that Plaintiffs seek admission of the supplemental evidence because it is relevant to the challenges to the 2011 redistricting plans – the same plans challenged in this Court and the D.C. court. *See* Dkt. 789 at 4.

5

irrelevant to this case.  *See Old Chief v. United States*, 519 U.S. 172, 179 (1997) (concluding that relevant evidence may not be excluded simply because other relevant evidence is already present in the record; inadmissibility must rest on other grounds).  The evidence Plaintiffs seek to admit is not cumulative of the evidence in this case; it is supplemental and probative of the issues of vote dilution and intentional discrimination pending before this Court.

The thematic maps of districts at issue in the 2011 redistricting plans show, among other things, the concentration of population by race, split precincts, and the division of voters by race between districts and provide relevant and additional analysis of redistricters' intent in the drawing of the 2011 district boundaries.  These thematic maps are important to summarize and present the more detailed technical data contained in reports generated by the Texas Legislative Council.  For example, a shaded map of CD26 shows how the "lightning bolt" of CD26 split numerous precincts to separate Latinos from African Americans and pull Tarrant County's Latino-majority neighborhoods into a congressional district anchored in Anglo-majority Denton County.  *See* Dkt. 789-2 at Tab 15.  A related chart lists split precincts in CD26, synthesizing information provided in a report generated by the Texas Legislative Council.  *See* Dkt. 789-2 at Tab 18 (Texas Legislative Council report) and Tab 19 (Task Force summary of TLC data for CD26).

The testimony offered by the Task Force Plaintiffs also is not cumulative of testimony that was or could have been developed at trial in this case, but rather was carefully selected to illuminate the supplemental documentary evidence.  For example, the offered testimony of map-drawers Gerardo Interiano and Ryan Downton provides further information regarding Texas's effort to apportion Latinos into and out of CD23 for the purpose of diluting Latino voting strength, as initially described in an email between Eric Opiela and Mr. Interiano (Dkt. 789-2 at

Tab 4). *See* Dkt. 834 at 6-7.  The offered testimony could not have been elicited during trial in this Court, because the email was not produced to Plaintiffs until after the trial.  *Compare* Dkt. 849 at 8 ("[T]he Task Force Plaintiffs had every opportunity in this Court to develop the record and elicit the necessary testimony from Gerardo Interiano, Ryan Downtown . . . .") *with* Dkt. 840 at 8 (Defendants conceding that email communications involving the map-drawers were not produced until the preclearance trial in the D.C. Court).

### B. Plaintiffs Sought to Supplement the Court's Record With All Reasonable Speed Following the Preclearance Decision of the D.C. Court

Plaintiffs made Defendants and this Court aware of potentially relevant evidence from the *Texas v. United States* litigation beginning in January 2012.  Texas is not correct in asserting that "Plaintiffs never once attempted to supplement the record," Dkt. 840 at 9, prior to the pending motion.  For example, on January 19, 2012, the Shannon Perez, *et al.* Plaintiffs ("Perez Plaintiffs") filed an advisory with this Court alerting Defendants and the Court to the exhibit at Tab 4 in Plaintiffs' joint filing -- the previously discussed email exchange between legislative staffers Eric Opiela and Gerardo Interiano regarding CD 23.  *See* Dkt. 574 at 3 (Perez Plaintiffs' advisory to the Court).  *Compare* Dkt. 574-1 *with* Dkt. 789-2 at Tab 4.  At that time, the Perez Plaintiffs further explained that "in the event of further proceedings in this cause" they would seek additional testimonial evidence from Gerardo Interiano regarding the exhibit.  *See* Dkt. 574 at 4.

In February 2012, following trial in the D.C. court, this Court requested briefs and findings of fact on issues relating to new interim plans and specified that the parties could rely on evidence from the D.C. proceedings.  *See* Dkt. 598 at 2 ("The proposed findings of fact must include references to the records in this case and the D.C. court case, and any portions of the D.C. record that the parties wish to rely upon will need to be filed either as an appendix or under

7

separate notice of filing,"). In response, the Task Force Plaintiffs submitted an appendix to their brief identifying as relevant many emails that the Task Force Plaintiffs now seek to introduce formally into the record.[3]

Finally, also in February 2012, because of their relevance to this Court's consideration of pending claims, the Quesada Plaintiffs filed the trial transcripts from *Texas v. United States* with this Court. *See* Dkt. 597-1 through 597-16. Thus, Plaintiffs consistently made Defendants and the Court aware of the relevance of the evidence now offered for supplementation and moved to include the evidence in this record with all reasonable speed following issuance of the preclearance decision on the 2011 redistricting plans, when this Court was finally able to consider final judgment on the merits of Plaintiffs' claims under section 2 and the Constitution.[4]

### C. Defendants Are Not Prejudiced by the Introduction of Supplemental Evidence Where They Have Had the Opportunity to Cross-Examine the Proponent on the Same Issues for Which the Evidence Is Being Offered

As explained above, both this Court and the D.C. court requested and heard evidence on the redistricting process, the motivations of redistricters and the effect of the 2011 plans on

---

[3] *Compare* Dkt. 638-11 *with* Dkt. 789-2 at Tab 2; *compare* Dkt. 638-10 *with* Dkt. 789-2 at Tab 4; *compare* Dkt. 638-13 *with* Dkt. 789-2 at Tab15; *compare* Dkt. 638-14 *with* Dkt. 790-2 at Tab 44; *compare* Dkt. 638-9 *with* Dkt. 790-3 at Tab 54; *compare* Dkt. 638-12 *with* Dkt. 790-3 at Tab 58.

[4] This Court's ability to reach a final judgment on Plaintiffs' intentional discrimination and section 2 claims was effectively stayed until the U.S. Supreme Court decided *Shelby Cnty., Ala. v. Holder*, 133 S. Ct. 2613 (2013), and subsequently vacated the decision of the D.C. court denying Defendants' preclearance of the 2011 redistricting plans, *Texas v. United States*. 887 F. Supp. 2d133 (D.D.C. 2012), *vacated on jurisdictional grounds*, 133 S. Ct. 2612 (2013). Texas chose judicial over administrative preclearance and further delayed resolution of the remaining claims in this litigation by appealing the D.C. court's decision. Because of Texas's delay tactics, the resolution of the remaining issues in this case has dragged on through another Texas Legislative session and the 2013 redistricting plans were passed. Despite this development, and following such delay, Texas cannot now complain that at the very moment that the Task Force Plaintiffs are able to seek final resolution of their claims they are too late to do so. In the Court's order establishing a schedule for drafting interim plans following trial in September 2011, this Court specifically stated:

> "[T]he law precludes this Court from issuing a final decision on the merits until there has been a determination on preclearance under Section 5 of the Voting Rights Act. . . . *Because this Court cannot resolve the merits of this case until there is a determination on preclearance, its hands are tied. Although the Court will continue to review the evidence and post-trial submissions, it must remain in a holding pattern until the D.C. Court has spoken*.

Dkt. 385 at 4-5 (emphasis added). Upon final resolution of the section 5 preclearance claim, Plaintiffs moved expeditiously to supplement the record and continue to the final judgment stage of this case.

8

minority voters' ability to elect their candidate of choice. *See supra* I. A. These issues are relevant to questions of vote dilution and intentional discrimination before both courts. To the extent the offered evidence references retrogression, the evidence is still relevant to the question of intentional racial discrimination. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977) ("The impact of the official action whether it 'bears more heavily on one race than another,' may provide an important starting point [in the intentional discrimination analysis]." (citing *Washington V. Davis*, 426 U.S. 229, 242 (1976))). Thus, Defendants' refrain that Plaintiffs' motion should be denied because Defendants are prejudiced by the inability to examine witnesses with respect to the testimony or documents being offered for supplementation "in the context of the legal issues in this case" has no basis. *See* Dkt. 840 at 10; Dkt. 849 at 7. The legal standards applicable to vote dilution and intentional racial discrimination are the same in this Court and the D.C. Court. Thus, in the D.C. trial, Defendants had ample opportunity to cross-examine witnesses and respond to evidence in the context of Plaintiffs' claims here.

Furthermore, as Defendants themselves concede, "some of the exhibits Plaintiffs proffer – namely, the email communications involving the mapdrawers – were not produced until the preclearance trial in the D.C. Court," Dkt. 840 at 8. Defendants should have, but didn't, produce this evidence in response to discovery requests in this case. *See* Ex. 1 (deposition notices and requests for production of documents for Doug Davis, Ryan Downton, and Gerardo Interiano). Thus, it is Plaintiffs who suffered prejudice because of Defendants' non-disclosure of this evidence in time for trial in this case and the appropriate redress for this prejudice would be to admit the evidence into the record at this time. FED. R. CIV. P. 37(d)(1)(A)(ii) (a court may order sanctions if "a party, after being properly served with . . . a request for inspection under Rule 34, fails to serve its answers, objections or written response."); *see, e.g., Rozier v. Ford Motor Co.*,

573 F.2d 1332, 1345 (5th Cir. 1978) (holding that defendant's "wrongful withholding of information prevented [plaintiff] from fully and fairly presenting her case," ultimately requiring a new trial).

In the interest of efficiency, and to avoid relevancy disputes, the Task Force Plaintiffs carefully selected only testimony offered in the D.C. court that addressed pending claims in this Court and that further explains the documentary evidence offered by the Plaintiffs. To the extent Defendants claim prejudice because Plaintiffs did not offer additional testimony for supplementation into the record, the proper solution is not to exclude the relevant testimony offered by Plaintiffs, but to allow Defendants the opportunity to cross-designate testimony they believe responds to Plaintiffs' evidence, since Defendants had the opportunity to question witnesses on the documentary evidence and in response to testimony elicited by Plaintiffs in the D.C. court.

## II. THE EVIDENCE PLAINTIFFS SEEK TO INTRODUCE IS ADMISSIBLE

Defendants may not now object to the admissibility of the exhibits offered for supplementation when they already agreed to their admissibility in the D.C. trial. *See* Trial Tr., *Texas v. United States*, No. 1:11-cv-1303 Jan 26AM, p. 81:4-17 ("MR. MORTARA [counsel for Texas]: Your Honor, as to the DOJ, we've reviewed their list and we have no objections. . . . MR. MELLETT: Your Honor, I wanted to represent to you that we had a joint exhibit list, this was the United States and intervenors together.").

A party seeking to object to the admissibility of evidence has fourteen (14) days after the opposing party discloses its evidence to do so. *See* FED. R. CIV. P. 26(a)(3)(B). Here, Defendants had the opportunity during the D.C. trial to object to the admission of any of the exhibits offered by Plaintiffs to supplement this Court's record, but Defendants did not do so.

10

Because Defendants did not timely object, they have waived all objections, except for those made under Fed. R. Evid. 402 and 403 or unless the failure to object is excused by the Court for good cause. *See* FED. R. CIV. P. 26(a)(3)(B).

If the Court excuses Defendants' failure to timely object to the proffered exhibits, the exhibits are nonetheless admissible. The supplemental evidence offered by Plaintiffs is both relevant to the pending claims before this Court and not cumulative of evidence already before the Court. *See supra* I. A. Defendants' objections to the authenticity of any email communications submitted as supplemental exhibits are unfounded because Defendants already conceded that they have no authenticity objections to any exhibits that were produced by Defendants. *See* Trial Tr., *Texas v. United States*, No. 1:11-cv-1303 Jan 26AM, p. 83:3-11 ("MR. MORTARA [counsel for Texas]: Your Honor, we don't have authenticity objections to the exhibits that were produced by us. The documents that were produced by us. I think this is going to be fine. Ms. Couto [counsel for Task Force Plaintiffs] can send us the documents. We'll take a very quick look. I think she should just submit them and if we post hoc have a problem, we'll let you know, but as certain as Pete Gallegos [sic] getting reelected we will not have a problem with these documents."). Defendants also did not object to the authenticity of any exhibits as they were being offered at trial before the D.C. court, denying Plaintiffs the opportunity to establish a foundation for each exhibit with a live witness at the time it was offered. If Texas now wishes to challenge the previously accepted exhibits, it is Texas that would be causing a "procedural disruption," (*see* Dkt. 840 at 11, Dkt. 849 at 7), requiring Plaintiffs to recall witnesses in this Court just to establish the conceded authenticity of the exhibits offered for supplementation. Plaintiffs provide specific responses to the individualized hearsay, authenticity, and foundation objections in Exhibit 2.

## CONCLUSION

For the foregoing reasons, and for those set forth in Plaintiffs' joint motion for leave to reopen the record to provide supplemental documentary evidence (Dkt. 789) and the Task Force Plaintiffs' motion for reconsideration of a portion of the Court's recent order on supplementation of the record regarding testimonial evidence (Dkt. 834), Plaintiffs respectfully request that the Court reopen the record and admit the supplemental documentary and testimonial evidence offered by Plaintiffs.

Dated: August 21, 2013                    Respectfully submitted,


                                          */s/ Nina Perales*
                                          Nina Perales
                                          Karolina J. Lyznik
                                          MALDEF
                                          110 Broadway Street, #300
                                          San Antonio, TX 78205
                                          (210) 224-5476
                                          Fax: (210) 224-5382

                                          Robert W. Wilson
                                          Mark Anthony Sanchez
                                          Gale, Wilson & Sanchez, PLLC
                                          115 East Travis, 19th Floor
                                          San Antonio, TX 78205
                                          (210) 222-8899
                                          Fax: (210) 222-9526

                                          COUNSEL FOR PLAINTIFFS TEXAS LATINO
                                          REDISTRICTING TASK FORCE, RUDOLFO
                                          ORTIZ, ARMANDO CORTEZ, SOCORRO
                                          RAMOS, GREGORIO BENITO PALOMINO,
                                          FLORINDA CHAVEZ, CYNTHIA VALADEZ,
                                          CESAR EDUARDO YEVENES, SERGIO
                                          CORONADO, GILBERTO TORRES, RENATO
                                          DE LOS SANTOS, JOEY CARDENAS, ALEX

>JIMENEZ, EMELDA MENENDEZ, TOMACITA OLIVARES, JOSE OLIVARES, ALEJANDRO ORTIZ, AND REBECCA ORTIZ

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that she has electronically submitted a true and correct copy of the above and foregoing via the Court's electronic filing system on the 21st day of August, 2013.  The undersigned counsel hereby certifies that she caused a true and correct copy of the above and foregoing to be mailed and/or facsimile to the persons listed below by the close of the next business day.

>*/s/ Karolina J. Lyznik*
>Karolina J. Lyznik

David Escamilla
Travis County Asst.  Attorney
P.O.  Box 1748
Austin, TX 78767
Fax: (512) 854-4808