# In the United States District Court
## for the
## Western District of Texas

SHANNON PEREZ, ET AL.          §
                               §
v.                             §          SA-11-CV-360
                               §
RICK PERRY, ET AL.             §

## ORDER

The United States has filed a motion to intervene in this action pursuant to Federal Rule of Civil Procedure 24. *See* docket no. 871.  Defendants oppose the intervention on two grounds: (1) the 2011 plan claims are moot, and (2) the United States has failed to satisfy the Rule 24 requirements for intervention because the motion is untimely and will cause undue delay and prejudice. *See* docket no. 877.  After careful consideration, the Court will grant the motion and permit the United States to intervene.

### Analysis

The United States moves to intervene in this action pursuant to Rule 24(b)(2)(A) or, alternatively, Rule 24(b)(1)(B) of the Federal Rules of Civil Procedure.  The proposed Complaint in Intervention is filed under § 2 and § 12(d) of the Voting Rights Act, asserts that Texas's 2011 redistricting plans were enacted with discriminatory intent and had a discriminatory impact, seeks to enforce the voting guarantees of the Fourteenth and Fifteenth Amendments to the United States Constitution, and seeks relief under § 3(c)  of the Voting Rights Act.

1

**A. Mootness**

Defendants' primary argument is that the motion to intervene should be denied "because this Court cannot provide any relief on claims against the 2011 plans" and the 2011 plan claims are moot. We have already concluded that the 2011 plan claims are not moot and that the parties can pursue relief under § 3(c) with regard to the 2011 plan claims. *See* docket no. 886. Accordingly, Defendants' opposition to intervention on the basis of mootness lacks merit.

**B. Rule 24(b)(2)(A)**

Rule 24(b)(2)(A) provides, "On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on: (A) a statute or executive order administered by the officer or agency." FED. R. CIV. P. 24(b)(2)(A). The D.C. Court of Appeals has said,

> It is a significant fact that the applicant for permissive intervention is a government official. Rule 24(b) was expressly amended in 1946 so as to permit intervention by a state or federal governmental official charged with administering a state statute or regulation on which any party relies for his claim or defense. The amendment was added to avoid 'exclusionary constructions' where public officials seek permission to intervene, and 'the amendment in effect expands the concept of 'claim or defense' insofar as intervention by a governmental officer or agency is concerned.' It is perhaps more accurate to say that it considers the governmental application with a fresh and more hospitable approach.
>
> . . .
>
> Even prior to the 1946 amendment, *SEC v. United States Realty & Improvement Corp.*, 310 U.S. 434, 60 S. Ct. 1044, 84 L. Ed. 1293 (1940), stressed that intervention to promote a relevant public interest is permissible when the public official charged with primary responsibility for vindicating that interest seeks to defend it.
>
> . . .
>
> While a public official may not intrude in a purely private controversy, permissive intervention is available when sought because an aspect of the public interest with

2

which he is officially concerned is involved in the litigation. Notwithstanding this public interest the official may be denied intervention in the exercise of a sound judicial discretion finding that intervention would unduly expand the controversy or otherwise lead to improvident delay or expense.

*Nuesse v. Camp*, 385 F.2d 694, 704-6 (D.C. Cir. 1967) (footnotes omitted).

Rule 24(b)(2)(A) requires a proposed governmental intervenor to: (1) be a federal or state governmental officer or agency; (2) administer the statute, executive order, or regulation at issue; (3) file a timely motion; and (4) not cause undue delay or prejudice to the original parties' rights, if allowed to intervene. *Coffey v. Comm'r*, 663 F.3d 947, 951 (8th Cir. 2011).

<u>1. government officer or agency who administers the statute at issue</u>

The first two requirements are not in dispute.  The United States, specifically the Attorney General, is charged by statute with enforcing and administering the Voting Rights Act.  The Attorney General is given authority to bring a civil action for preventive relief, including injunctive and other relief, whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by the Voting Rights Act.  42 U.S.C. § 1973j(d); *see also* 28 C.F.R. § 51.62(a) ("The Attorney General is authorized to bring civil actions for appropriate relief against violations of the Act's provisions, including Section 5.").  The Attorney General may institute proceedings to enforce the voting guarantees of the Fourteenth or Fifteenth Amendments and may seek relief under § 3(c).  42 U.S.C. §§ 1973j(d), 1973a(c).

In addition, the Attorney General and the Department of Justice are responsible for administering § 5 of the Voting Rights Act.  28 C.F.R. Part 51 ("Procedures for the Administration of Section 5 of the Voting Rights Act of 1965, as Amended").  Procedures governing the administration of § 5 were implemented to "make clear the responsibilities of the Attorney General

3

under Section 5 and the interpretation of the Attorney General of the responsibility imposed on others" under § 5.  28 C.F.R. § 51.1(b).  The Supreme Court has recognized that the Attorney General has a "central role . . . in formulating and implementing" § 5 of the Voting Rights Act. *Lopez v. Monterey Cnty.*, 525 U.S. 266, 281 (1999) (alteration in original).  When a court grants relief under § 3(c), thereby requiring a state or political subdivision to obtain preclearance of any voting qualification prerequisite, standard, practice, or procedure, the state or political subdivision subject to § 3(c) may obtain preclearance by submitting the voting change to court or to the Attorney General.  28 C.F.R. § 51.8 ("Where a jurisdiction is required under Section 3(c) to preclear its voting changes, and it elects to submit the proposed changes to the Attorney General for preclearance, the procedures in this part will apply.").

   2. timeliness

   Courts have generally identified four factors to consider in evaluating whether a motion to intervene is timely: (1) the length of time the intervenor knew or should have known of his interest; (2) prejudice to the existing parties resulting from the intervenor's failure to apply for intervention sooner; (3) prejudice to the intervenor if his application for intervention is denied; and (4) the existence of unusual circumstances.  *Trans Chem. Ltd. v. China Nat'l Machinery Imp. & Exp. Corp.*, 332 F.3d 815, 822 (5th Cir. 2003); *see also Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001) ("The timeliness of a motion to intervene is assessed 'in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances.'").

   Defendants contend that the motion to intervene is "untimely on its face" given "that it has

been almost two years since the trial in this case." Docket no. 877 at 6. However, "[t]he [timeliness] analysis is contextual; absolute measures of timeliness should be ignored." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) ; *see also Stupak–Thrall v. Glickman*, 226 F.3d 467, 475 (6th Cir. 2000) ("The absolute measure of time between the filing of the complaint and the motion to intervene is one of least important of [the relevant] circumstances."). Further, "[t]he requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner. Federal courts should allow intervention where no one would be hurt and greater justice could be attained." *Espy*, 18 F.3d at 1205; *Clinton*, 255 F.3d at 1250.

Thus, it is not simply the bare length of time that must be considered, but the interest sought to be protected and the length of time that the would-be intervenor was aware of that interest. Defendants contend that the United States has the same interest it has always had, that it "has been aware of and at times has even participated in this litigation," and "[t]he claims DOJ now asserts could have been brought and tried with the similar claims brought by the other plaintiffs in this case." Docket no. 877 at 6. The United States, on the other hand, argues that its interest in this litigation concerning the 2011 plans going forward lies in the application of § 3(c). The Court agrees with the United States.

Although the proposed Complaint in Intervention asserts claims under § 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments, the United States' interest lies primarily in the § 3(c) relief tied to those claims, and its effect on the United States' administration of § 5. Prior to the decision in *Shelby County*, there was no need for consideration of § 3(c) because the State of Texas was automatically covered by § 5. Although the United States could have attempted

to intervene to assert the underlying §2 and constitutional claims prior to *Shelby County*, it could not have sought § 3(c) relief, and its interest in the application and administration of § 5 with regard to Texas was clearly delineated by the § 4(b) coverage formula.   Thus, before *Shelby County*, the United States' interest was focused on the § 5 litigation in the D.C. Court, and the United States could rely on the Plaintiffs here to adequately pursue the § 2 and constitutional claims, with input from the United States as it deemed necessary.

However, after *Shelby County*, circumstances changed significantly, since §3(c) became an issue for the first time.   The parties recognize the importance of the § 3(c) claims.   Certain Plaintiffs "posit that this particular VRA claim will be critical in resolving the issues in this litigation."  Docket no. 788 at 2.   Plaintiffs' and Defendants' briefing on § 3(c) illustrates the fact that issues concerning the proper construction and application of §3(c) are unsettled and highly disputed.  And the parties recognize that "there is limited judicial guidance available on the application of Section 3(c)." Docket no. 788 at 9.   The United States has a direct interest in the construction and application of § 3(c) that was not present until after the *Shelby County* ruling.   Therefore, the interest that the United States seeks to protect is not the same interest that was present from the inception of the litigation.

Further, the United States timely moved to intervene to protect its interest in the litigation of § 3(c) issues (and their effect on the application of § 5 preclearance) once its interest became apparent.   The Supreme Court issued the decision in *Shelby County* on June 25, 2013.   At the July 1, 2013 status conference, Plaintiffs indicated for the first time their intent to pursue relief under § 3(c).   Pursuant to the Court's order, Plaintiffs filed their motions for leave to amend pleadings on or about July 12.   The parties filed their initial advisories concerning § 3(c) on July 22, and the

6

United States filed an Advisory regarding § 3(c) on July 25, 2013.  The parties then filed responses to the initial briefing on August 5.  Plaintiffs and Defendants have taken very different positions concerning almost all aspects of the proper construction and application of § 3(c).  In addition, Defendants disagree with the United States' position concerning § 3(c), as demonstrated by Defendants' August 5 response to the United States' advisory.  *See* docket no. 842.  The United States filed this motion to intervene on August 22.[1]

The United States' request comes less than two months after the decision in *Shelby County*, which significantly changed the posture of this litigation and first triggered the possibility of § 3(c) relief.  In addition, the motion was filed only seventeen days after the parties completed their briefing regarding the application of § 3(c) to this case.  The motion to intervene was filed shortly after it became clear that a significant dispute exists concerning the application of § 3(c) and before this Court has made any substantive determinations on those disputes.  *See Heaton v. Monogram Credit Card Bank*, 297 F.3d 416, 423 n.9 (5th Cir. 2002) (citing *Edwards v. City of Houston*, 78 F.3d 983, 1000-01 (5th Cir. 1996) (lapses of as much as five months not unreasonable)(citing cases)).

Although other Plaintiffs are pursuing § 3(c) relief, the United States is entitled to participate by asserting its own claims, rather than having these important issues litigated to its exclusion.  "To deny intervention would deprive [the United States] of the opportunity to exercise 'the legal rights

---

[1] Although some Plaintiffs here are attempting to pursue § 3(c) relief in the D.C. Court, the United States has stated in the D.C. Court that this Court would be the better venue to address § 3(c) relief. *See* United States Response to Intervenors' Motion for Leave, Texas v. United States, No. 1:11-cv-1303 (D.D.C. Aug. 31, 2012) (docket no. 248).  This position is based on the statutory text of §3(c), which permits relief "in any proceeding instituted by the Attorney General or an aggrieved person under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment in any State . . . ." 42 U.S.C. § 1973a(c).  The D.C. Court proceeding was instituted by the State of Texas.

7

associated with formal intervention, namely the briefing of issues, presentation of evidence, and ability to appeal.'" *Heaton*, 297 F.3d at 424; *see also id.* at 424 (the *stare decisis* effect of an adverse judgment constitutes a sufficient impairment to compel intervention). Rule 24(b)(2)(A), unlike Rule 24(a),[2] contains no express requirement that the proposed intervenor's interests not be adequately represented by the existing parties, though this factor may be considered by the Court in exercising its discretion. Although at this time the claims asserted by the United States and the existing Plaintiffs are the same, there is no guarantee that their positions will align throughout this litigation. This has been demonstrated by the D.C. Court litigation, in which the Department of Justice took different positions from the Plaintiffs on some issues. Thus, the United States' interests are not adequately represented and the United States may be prejudiced by the denial of intervention. *See Heaton*, 297 F.3d at 425 (noting that, although government agency and private party's interests appeared to share common ground, they may diverge in the future given that the government must represent the public interest, and this was enough to show lack of adequate representation).

In addition, the United States' interest is not identical to Plaintiffs' interest. Plaintiffs are voters who seek to have the Court order Texas subject to preclearance under § 5 based on a finding of intentional discrimination. Thus, they are seeking to protect their interests as voters and members of minority groups. The United States, in contrast, will be responsible, along with any court who orders § 3(c) relief, for administering § 5 preclearance ordered under § 3(c). With the demise of §

---

[2] Rule 24(a) provides, "Intervention of Right. On timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." FED. R. CIV. P. 24(a).

4(b), the construction and application of § 3(c) will have broad consequences for the United States and its role in administering § 5 preclearance going forward. The United States is entitled to protect that interest by being a party in this litigation construing § 3(c), rather than having the issues decided to its exclusion. This is the type of interest for which Rule 24(b)(2)(A) allows intervention.

Last, the Court finds no prejudice to the existing parties from the United States' failure to apply for intervention sooner. As noted, the United States quickly moved to intervene once its interest in § 3(c) became apparent. Because the Court is permitting Plaintiffs to amend their complaints and assert requests for relief under § 3(c), as well as reopening the record and setting a new timetable for all parties to marshal evidence and conducting hearings related to the 2011 plans and related § 3(c) relief, the existing parties will suffer no prejudice based on the timing of the motion to intervene. Accordingly, the Court finds that the motion to intervene is timely.

### 3. undue delay or prejudice

The Court next considers whether the intervention itself will cause undue delay or prejudice to adjudication of the original parties' rights. The United States asserts that intervention will not cause undue delay or prejudice, as this litigation has entered a distinct new phase and this Court has not made any substantive determinations regarding § 3(c) or rendered a final judgment on the 2011 plan claims. In addition, the United States asserts that it "does not seek to relitigate the trial that has already been conducted," but seeks "to present evidence in any evidentiary hearing conducted pursuant to a request for Section 3(c) relief."

Defendants assert that intervention will cause undue delay and prejudice to the existing parties. Defendants note that the proposed Complaint in Intervention includes claims for violations of the Fifteenth Amendment, yet all Fifteenth Amendment claims have previously been adjudicated.

Defendants further contend that "[i]ntervention by DOJ raises the very real threat of prejudice to the parties in the form of additional delay" because "[n]ew claims from a new party will unnecessarily complicate the litigation and require the parties to divert time and resources away from expeditiously resolving the litigation in order to preserve election deadlines." Docket no. 877 at 9.

While any intervention could potentially cause delay, Rule 24(b) requires the Court to consider whether the intervention will cause "undue delay" or "prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b). "Undue" means not normal or appropriate. *Appleton v. Comm'r of Internal Revenue*, 430 F. App'x 135, 138 (3d Cir. 2011) (citing Webster's II New Riverside University Dictionary 1259 (1988)). "[A]ny introduction of an intervener in a case will necessitate its being permitted to actively participate, which will inevitably cause some 'delay.'" *Appleton*, 430 F. App'x at 138. However, there is no indication that allowing intervention by the United States would cause undue delay.

To the extent Defendants note that the proposed Complaint in Intervention asserts claims under the Fifteenth Amendment, such a claim would not cause undue delay given that the existing Plaintiffs have also pursued such claims and the Court has already made a ruling on the Fifteenth Amendment claims. *See* docket no. 275. That same ruling can be applied to the new Fifteenth Amendment claims asserted by the United States, resulting in no undue delay, yet preserving the issue for appeal. Defendants' other argument governing the existence of a new party is true of any intervention, and fails to demonstrate how the intervention would cause undue delay. Given that the Court is already reopening the record and allowing Plaintiffs to present additional evidence, any submission of evidence by the United States at the same time would not cause undue delay. Nor have Defendants demonstrated that any prejudice to the adjudication of their rights would result.

10

Accordingly, the Court finds that permitting intervention would not cause undue delay or prejudice to the existing parties.

**Conclusion**

The Court finds that the United States' Motion to Intervene (docket no. 871) has merit and should be GRANTED.

SIGNED on this 24th day of September, 2013.

__/s/_____
ORLANDO L. GARCIA
UNITED STATES DISTRICT JUDGE

__/s/_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

JERRY E. SMITH, Circuit Judge, dissenting:

There is nothing to be gained from permitting intervention by the United States at this stage of the proceedings, and there is substantial chance that the presence of the U.S. will interfere with "the just, speedy, and inexpensive determination"[1] of this matter. The motion does not meet the requirements of the rule, and even if it did, this court should exercise its almost unlimited discretion to deny intervention.

I can understand the desire of my conscientious colleagues to make sure that every party with a putative interest is adequately heard and that every relevant point of law and pertinent fact is considered. I also appreciate that some may view the

---

[1] FED. R. CIV. P. 1.

United States as the "800-pound gorilla" that cannot be turned away.  But the interests of justice, including the worthy goals my colleagues pursue, are being, and can be, fully served without the formal intervention of the United States.  I respectfully dissent.

## I.  The request to intervene is not "timely" as required.

The rule requires that intervention be timely.  This motion, to the contrary, is more than two years late.

On the question of timeliness, the government's motion is doomed by the fact that in October 2011, it asserted a stake in these proceedings by filing a "Statement of Interest of the United States Under Section 5 of the Voting Rights Act of 1965." There, the government claimed that "[t]his case" (as described separately from the three-judge proceeding in the District of Columbia).  The government further alleged that, as it stood in 2011, this case

> presents important questions regarding Section 5 . . . .  The Attorney General has primary responsibility for enforcing this preclearance requirement . . . .  Moreover, the United States has a particular interest in the redistricting plans at issue in this case . . . .  The Court will need to ensure that any plans it adopts comply with both Section 2 and Section 5.

Despite that strong statement, the United States made no effort to intervene.

Nothing relevant has changed in the intervening two years.  The United States still claims it has a duty to enforce the Act.  In its 2011 Statement of Interest, it presented its "position that both the Congressional and State House plans were drawn with discriminatory purpose."  Now, it seeks to impose a preclearance requirement

based on that same claim of discriminatory intent. The fact that the theory is now pursued through Section 3(c) instead of the now-defunct Section 4(b) is irrelevant. The alleged interest of the U.S. is the same: to block implementation of legislatively enacted redistricting plans by showing discriminatory purpose.

The government forfeited its claim to any permissive intervention when it failed to request intervention in 2011. It made the same contentions then as now: that it is obliged to enforce the Act, that that enforcement was affected by the proceedings that began in 2011, and that preclearance should be required because of biased intent underlying the 2011 plans. Nothing has changed, and nothing is new. The United States is hopelessly tardy and therefore does not meet the requirement of Rule 24(b) that intervention may be granted only "[o]n timely motion." Whether in terms of forfeiture, waiver, untimeliness, or even laches,[2] the United States has knowingly forgone the opportunity to participate in these proceedings as a formal party.

## II.  No reason is shown why intervention would help.

That should end the matter: The plain text of the rule forbids untimely intervention. But even if this motion were "timely," we should exercise our extremely broad discretion to deny the intervention. "[I]t is wholly discretionary with the court whether

---

[2] The doctrine of laches applies in Voting Rights Act cases pending before three-judge district court panels. *Lopez v. Hale Cnty., Tex.*, 707 F. Supp. 547, 550 (N.D. Tex. 1992) (three-judge Voting Rights panel), *aff'd mem.*, 506 U.S. 1042 (1993).

to allow intervention under Rule 24(b)."[3] "[T]he court's discretion is equally applicable . . . when a governmental agency or officer seeks to intervene."[4] Therefore, neither a governmental actor in general, nor the United States or the Attorney General in particular, has a special claim under the rule or applicable caselaw.[5]

Even aside from tardiness, U.S. intervention impedes the proceedings and is totally unnecessary. "Additional parties always take additional time that may result in delay and that thus may support the denial of intervention."[6] "The decision regarding whether to grant permissive intervention is always subject to the inherently discretionary considerations of equity and judicial economy."[7]

This litigation is being ably prosecuted by private attorneys representing individuals and organizations almost too numerous to list. The attorneys are expert in all aspects of redistricting and constitutional law and have had experience, including extensive redistricting litigation in Texas, that extends back several decades. The United States cannot point to any aspect of this litigation in which, in the past two-plus years, the attorneys have not superbly presented the claims of minority citizens

---

[3] 7C CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE § 1913, at 476 (3d ed. 2007).

[4] *Id.* at 478.

[5] This is to be distinguished from the "statutory *right* of the United States to intervene in any case in which the constitutionality of a federal statute affecting the public interest is questioned." 6 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 24.02[2][a], at 24-9 (3d ed. 2013) (emphasis added). There is no such claim here.

[6] 7C WRIGHT ET AL., *supra*, § 1913, at 481.

[7] 6 MOORE, *supra*, § 24.10[1], at 24-63.

14

and organizations to vindication of their rights under the Voting Rights Act and the Constitution.

Nor does the U.S. even try to suggest ways in which it might present claims differently from the manner in which they will be pursued during the remainder of this process. The two judges in the majority admit that "at this time the claims asserted by the United States and the existing Plaintiffs are the same." Moreover, the U.S. has pointed to no additional or different evidence that it would present after intervention. It is well settled that

> [i]ntervention will be denied if the movant will not make any unique contribution to the evidence presented at trial. If a potential intervenor will essentially repeat the same sort of testimony given by existing parties, intervention is counterproductive because it will only clutter and prolong the litigation unnecessarily."[8]

"In deciding on a motion for permissive intervention, a court will consider whether the movant's input is likely to make a significant and useful contribution to the development of the underlying factual and legal issues or, alternatively, is likely to be counterproductive."[9] Importantly, "[c]ourts are understandably reluctant to grant permissive intervention to a movant when interests are already fully represented by one of the existing parties."[10]

In this regard, my majority colleagues make, out of whole cloth, an argument for

---

[8] *Id.* § 24.10[2][b], at 24-67.

[9] *Id.* at 24-66 (citing *LULAC v. Clements*, 884 F.2d 185, 189 (5th Cir. 1989)).

[10] *Id.* § 24.10[2][c], at 24-68.

intervention that the United States does not even suggest.  The majority says that "[t]he United States . . . will be responsible . . . for administering § 5 preclearance ordered under § 3(c) . . . .  The United States is entitled to protect that interest by being a party in this litigation construing § 3(c), rather than having the issues decided to its exclusion."  The government, to the contrary, does not even remotely hint that the issues could be decided incorrectly or inadequately if it is not allowed to intervene.  To the same effect, the majority says that "there is no guarantee that [the positions of the United States and the existing plaintiffs] will align throughout this litigation."  The government makes no such assertion of misalignment.  In short, the majority makes arguments for the U.S. that the government, which has the burden on this motion, has not even advanced.

### III.  There is a middle ground by allowing *amicus curiae* status.

Short of opening the gates to allow the United States to appear as a formal party, this court could allow it to participate as *amicus curiae*.  "If the court determines to deny intervention altogether, it is common practice to allow the applicant to file a brief amicus curiae, but even this sometimes is denied."[11]

> Amicus status allows the movant to present legal argument, and, in some cases, to call and cross-examine witnesses.  Participation as an amicus curiae, rather than as a party, is appropriate if a person cares about the legal principles that apply to a dispute but has no personal, legally protectable interest in the litigation.

---

[11] 7C WRIGHT ET AL., *supra*, § 1913, at 495-97.

[T]he opportunity to participate effectively in the action as an amicus curiae may mitigate against a movant's ability to demonstrate inadequate representation of its interests.[12]

The majority, however, does not even mention this alternate middle ground or discuss why *amicus* status would be insufficient if, as the majority claims, the United States has an important point of view that must be heard.[13]

## IV.  Summary.

Again with appreciation for my colleagues' careful consideration of this significant motion, I respectfully urge that the request of the United States to intervene should be denied.  It does not meet the rule's mandatory timeliness requirement.  And even if it had been filed timely, the United States, which has the burden on its motion, has shown no reason why or how the administration of justice would be expedited or improved by its participation as a party.

To the contrary, adding yet another party only imposes an unnecessary burden on these proceedings.  Even if some input from the United States were deemed potentially helpful, the court should explore the safer and less disruptive measure of *amicus curiae* status.

There is a comical old saying that "I'm from the Government, and I'm here to

---

[12] 6 MOORE ET AL., *supra*, § 24.23[2], at 24-103.

[13] Another possibility is that, instead of granting unfettered intervention, a court "may specify the conditions on which it will allow the applicant to become a party."  7C WRIGHT ET AL., *supra*, § 1913, at 494-95; *accord* 6 MOORE ET AL. § 24.23[1].

help." Although there are many instances in which participation by the United States is required, necessary, or helpful, this is not one of those times. I respectfully dissent from the well-meaning decision to grant intervention.


___/s/_____
JERRY E. SMITH
UNITED STATES CIRCUIT JUDGE