UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SHANNON PEREZ, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION NO. |
| | ) | 11-CA-360-OLG-JES-XR |
| v. | ) | [Lead case] |
| | ) | |
| STATE OF TEXAS, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION TO MODIFY THE COURT'S
LEGISLATIVE PRIVILEGE ORDER DATED AUGUST 1, 2011**

Defendants the State of Texas, Rick Perry, and John Steen (collectively, "Texas" or "Defendants") file this motion seeking a modification of the Court's order dated August 1, 2011 (ECF No. 102) regarding legislative privilege. In that order, the Court recognized the existence of the legislative privilege but established the following guidelines to govern the depositions of legislators and their staff taken during the five weeks between the date of the order and the beginning of trial on September 6, 2011: (1) the deponent was required to appear and testify at the deposition; (2) the deponent could invoke the privilege in response to certain questions, if applicable; (3) despite invoking the privilege, the deponent was required to answer all questions calling for the disclosure of privileged information; and (4) the deposition testimony was to remain under seal and could be submitted to the Court for *in camera* review, along with a motion to compel, if the party taking the deposition decided to use the testimony during the trial. *See* Order at 5-6 (Aug.

1

1, 2011), ECF No. 102. The exigencies that might have motivated this partial abrogation of the legislative privilege no longer exist. Texas therefore requests that the Court modify these procedures to permit legislative witnesses who have not yet waived the privilege regarding claims against the 2011 redistricting plans and those witnesses who may testify regarding the 2013 redistricting plans to refrain from disclosing privileged information after invoking the legislative privilege during depositions.[1]

Given the orderly nature of this litigation going forward, the unconventional procedures used in 2011 should not govern further discovery in this case for several reasons. First, the Court has scheduled trial for July 2014, leaving nearly seven months for the parties to conduct discovery and nearly nine months before trial for this Court to address any disputes regarding the assertion of legislative privilege. Second, the procedures imposed by this Court must be reevaluated in light of the new claims asserted against the 2013 redistricting plans. The 2013 redistricting plans were passed by different members of the Texas Legislature who have not had an opportunity to assert or waive legislative privilege. Legislators who may be called to testify regarding the 2013 redistricting plans should not be forced to reveal the substance of their privileged testimony based on an order that was originally intended to govern accelerated discovery on the now-repealed 2011 redistricting plans. Finally, the Court's order should be modified because compelling state

---

[1] To the extent discovery is sought against a legislative witness who has previously testified regarding claims against the 2011 redistricting plans and waived legislative privilege, that waiver will not be affected by the modification requested in this motion. With respect to those witnesses, Texas will continue to follow the procedures set forth in the Court's order. *See* Order at 5-6 (Aug. 1, 2011), ECF No. 102.

legislators to testify on privileged matters defeats the very purpose of the legislative privilege, which is to protect legislators from compelled disclosure of communications with other legislators, subjective motivations behind legislative acts, and mental impressions regarding pending legislation.

The parties have recently engaged in written discovery and have agreed to conduct depositions beginning January 15, 2014. If the 2011 litigation is any indication, communications between legislators and the subjective motivation behind the passage of redistricting plans will feature prominently in depositions of legislators and their staff. This information is clearly subject to legislative privilege. The manner in which the parties assert legislative privilege should therefore be resolved before depositions commence.

Absent waiver by the individual holder of the privilege, Texas will oppose any discovery efforts that seek to invade or circumvent legislative privilege. Accordingly, for the reasons stated below, Texas respectfully requests that the Court modify its order to permit witnesses to invoke the legislative privilege without disclosing privileged information.

**ARGUMENT & AUTHORITIES**

**A. State Legislators Enjoy A Common-Law Privilege Against Testimony and Discovery Regarding The Legislative Process.**

In a federal action based upon federal question jurisdiction, federal privilege law controls. *See, e.g., Gilbreath v. Guadalupe Hosp. Found. Inc.*, 5 F.3d 785, 791 (5th Cir. 1993) (applying federal privilege law in federal question case). Federal Rule of Evidence 501 provides the applicable standard for privileges:

> The common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise:
>
> - The United States Constitution;
> - a federal statute; or
> - rules prescribed by the Supreme Court

FED. R. EVID. 501. The Supreme Court has long recognized a legislative privilege that protects anyone acting in a legislative capacity, including staff, from incurring civil liability for or testifying about legislative acts. *See, e.g., Gravel v. United States*, 408 U.S. 606, 615-16 (1972). For members of Congress and their staffs, this privilege is grounded in Article I of the United States Constitution. *See* U.S. CONST. art. I, § 6, cl. 1. While State legislators lie beyond the reach of the Speech or Debate Clause, they hold a similar (though less expansive) privilege under federal common law. *See Supreme Court of Virginia v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 731-32 (1980). The rationale behind such legislative privileges is that "[r]egardless of the level of government, the exercise of legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability." *See Bogan v. Scott-Harris*, 523 U.S. 44, 52 (1998); *see also id.* at 55 (noting that it is not "'consonant with our scheme of government for a court to inquire into the motives of legislators'") (quoting *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951)).

Because "judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government," a decision to "plac[e] a decisionmaker on the stand" is "usually to be avoided." *Village of Arlington Heights v. Metropolitan Development Corp.*, 429 U.S. 252, 268 n.18 (1977) (citations and internal quotation marks omitted). The same rule applies

when a litigant asserts that a state law was enacted with a racially discriminatory purpose—he cannot compel testimony from state legislators absent "extraordinary instances." *Id.* at 268. And even when an "extraordinary instance[]" allows a court to compel testimony from state legislators, their testimony "frequently will be barred by privilege." *Id.*

The state legislative privilege is not always co-extensive with the constitutional privilege protected by the Speech or Debate Clause. In *United States v. Gillock*, 445 U.S. 360 (1980), for example, the Supreme Court rejected a state legislator's efforts to invoke legislative privilege in a federal criminal prosecution, even as the Court acknowledged that the Constitution's Speech or Debate Clause would have extended an evidentiary privilege to that legislator had he been serving in Congress. *Id.* at 366-75. But the core of the constitutional privilege established in the Speech or Debate Clause informs the scope of the common-law privilege available to state legislators. *See Tenney*, 341 U.S. at 372-76. And inter-legislator communications fall within the core of the evidentiary privilege protected by the Speech or Debate Clause. *See Jewish War Veterans v. Gates*, 506 F. Supp. 2d 30, 52 (D.D.C. 2007) (holding that the Speech or Debate Clause "affords a testimonial (or 'non-disclosure') privilege pursuant to which Members cannot be required either to produce documents or to answer questions, whether in a deposition or on the witness stand").

Numerous courts have recognized that the common-law legislative privilege

likewise protects state legislators from testifying about legislative acts.[2] The U.S. District Court for the District of Columbia recently confirmed that the legislative privilege can be invoked in Voting Rights Act cases even where proof of invidious purpose is an element of the plaintiff's claims. In *Texas v. Holder*, the United States moved to compel deposition testimony and the production of documents from Texas legislators. Texas sought to withhold this evidence, arguing that its production would violate legislative privilege. Guided by the reasoning in *Arlington Heights*, the court shielded all evidence relating to "legislative acts" and found that legislative privilege objections were appropriately asserted as to questions that sought "evidence regarding a legislator's motivations with respect to a bill (*e.g.*, why a legislator voted a particular way, why a legislator supported or opposed different amendments, why a bill sponsor included different language in various Voter-ID bills, what factual information a legislator did or did not consider in supporting or

---

[2] *See, e.g., Schlitz v. Commonwealth of Virginia*, 854 F.2d 43, 46 (4th Cir. 1988) ("Where, as here, the suit would require legislators to testify regarding conduct in their legislative capacity, the doctrine of legislative immunity has full force."); *Florida v. United States*, 886 F. Supp. 2d 1301, 1304 (N.D. Fla. 2012) ("[T]he legislators have a federal legislative privilege—at least qualified, if not absolute—not to testify in this civil case about the reasons for their votes. The privilege is broad enough to cover all the topics that the intervenors propose to ask them and to cover their personal notes of the deliberative process."); *Miles-Un-Ltd., Inc. v. Town of New Shoreham*, 917 F. Supp. 91, 98 (D.N.H. 1996) ("Effectuating the intentions of the legislative immunity doctrine, legislators acting within the realm of legitimate legislative activity, should not be required to be a party to a civil action concerning legislative activities, nor should they be required to testify regarding those actions"); *2BD Assocs. Ltd. P'ship v. County Comm'rs of Queen Anne's County*, 896 F. Supp. 528, 531 (D. Md. 1995) ("[T]he effect of the [common-law legislative privilege] doctrine is twofold; it protects [state] legislators from civil liability, and it also functions as an evidentiary and testimonial privilege. . . . [I]f immunity from civil liability attaches to a given action, then such testimonial immunity applies as well."); *Suhre v. Board of Comm'rs*, 894 F. Supp. 927, 932 (W.D.N.C. 1995) ("Because the commissioners are entitled to legislative immunity, they are protected from testifying concerning their motives for refusing to remove the [Ten Commandments display]. . . . Where the defense of the case would require the commissioners to testify about their legislative conduct and their motives, legislative immunity precludes the suit."), *rev'd on other grounds*, 131 F.3d 1083 (4th Cir. 1997); *Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 297 (D. Md. 1992) ("Legislative immunity not only protects state legislators from civil liability, it also functions as an evidentiary and testimonial privilege. . . . The immunity enjoyed by legislative staff derives from the individual legislators themselves: to the extent a legislator is immunized, his staffers are likewise 'cloaked.'").

opposing a bill, etc.) and questions about legislative acts legislators engaged in with respect to a bill (*e.g.*, voting, drafting, debating, information gathering, etc.)." Order at 11, No. 12-167-RMC-DST-RLW (D.D.C. June 5, 2012), ECF No. 167. Further, the court rejected the United States' argument that there were "extraordinary instances" supporting the abrogation of the legislative privilege merely because the lawsuit was a preclearance case under the Voting Rights Act. *Id.* at 4.

To the extent Plaintiffs or Plaintiff-Intervenors seek discovery from legislators regarding their legislative conduct and motives, there can be no question that the witnesses are entitled to invoke the legislative privilege.

### B. Requiring Legislators To Reveal The Substance Of Privileged Communications And Subjective Mental Impressions In Depositions Defeats The Purpose Of The Legislative Privilege.

The procedures set forth in this Court's order, which require legislative witnesses to reveal the substance of privileged matters even if they invoke legislative privilege, should be modified because their departure from the customary protection of testimonial and evidentiary privileges threatens to undermine the legislative privilege entirely. Consider the attorney-client privilege. When a litigant seeks discovery on a subject that is covered by the attorney-client privilege, a party is entitled to invoke the privilege and is not compelled to answer the discovery. During written discovery, a party invoking the attorney-client privilege is not required to produce the privileged documents to the opposing counsel under seal. *See, e.g.*, FED. R. CIV. P. 26(b)(5)(A) (permitting a party to "withhold information otherwise discoverable by claiming the information is privileged"). Nor is a deponent forced to respond to a question that implicates the attorney-client

7

privilege once an objection has been made during the deposition. *See, e.g.*, FED. R. CIV. P. 30(c)(2) (permitting an instruction not to answer "when necessary to preserve a privilege"). To the extent a litigant believes a witness has improperly asserted the attorney-client privilege, he can file a motion to compel. But at no time during this process does the requesting party have immediate and unfettered access to privileged matters.

The same process, which serves to protect the communications subject to the attorney-client privilege from disclosure, must apply to the assertion of legislative privilege in this case. Asserting legislative privilege will prove meaningless if Plaintiffs and Plaintiff-Intervenors are nevertheless provided the nature and substance of privileged communications or mental impressions. Forcing legislators to reveal their mental impressions and subjective motivations regarding the 2011 or 2013 redistricting legislation in the face of a legislative privilege objection runs counter to the Supreme Court's admonition in *Arlington Heights* that even when an "extraordinary instance[]" requires state legislators to testify, their testimony "frequently will be barred by privilege." 429 U.S. at 268. This is because requiring individual legislators to testify under oath and submit to cross-examination on matters that are clearly protected by legislative privilege is a line that should seldom if ever be crossed, as it offends the dignity and autonomy of legislative bodies. *See id*. at 268 n.18 ("[J]udicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government."). If litigants can compel individual legislators or their staff to reveal privileged matters simply by alleging that a state law was enacted with an

8

impermissible purpose, then state lawmakers and their staff will be chilled from engaging in the communications necessary to perform their jobs properly. *Cf. United States v. Nixon*, 418 U.S. 683, 705 (1974); *Gravel*, 408 U.S. at 616-17 (noting that "it is literally impossible . . . for Members of Congress to perform their legislative tasks without the help of aides and assistants; that the day-to-day work of such aides is so critical to the Members' performance that they must be treated as the latter's alter egos").

Further developments in the law regarding legislative privilege also require this Court to adopt procedures that serve to protect the privilege. In *Texas v. Holder*, the court recognized the existence of a state legislative privilege, but refused to issue a blanket protective order that would preemptively shield legislators and their staff from discovery. *See* Order at 1-2, *Texas v. Holder*, No. 12-167-RMC-DST-RLW (D.D.C. April 20, 2012), ECF No. 84. Although the court required legislative witnesses to produce non-privileged documents and sit for depositions, it refused to allow the defendants to question those legislative witnesses regarding their subjective intent or motivation behind the legislative action. *Id*. The requesting party could file a motion to compel so that the "precise scope of the privilege" could be determined, *id*. at 3, but the Court did not allow the defendants to force the legislators to respond to questions after invoking legislative privilege.

Consistent with the contours of the privilege recognized by the district court in *Texas v. Holder*, this Court should permit legislators and their staff to assert legislative privilege in depositions when asked to provide testimony regarding: (1)

9

the subjective intent or motivation behind legislative acts; (2) a legislator's mental impressions of pending legislation, including proposed amendments; (3) a legislator's thought process in considering proposed legislation; (4) a legislator's investigative efforts undertaken for the purpose of informing consideration of pending legislation; and (5) communications about pending legislation. If a litigant makes such an inquiry and the privilege is invoked, the legislator or staff member should not be forced to answer the question or reveal the privileged communication. *See, e.g., United States v. Helstoski*, 442 U.S. 477, 489 (noting that the Speech or Debate "Clause protects against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts") (internal quotation marks omitted); *Jeff D. v. Otter*, 643 F.3d 278, 288-90 (9th Cir. 2011); *Butnick v. McLean*, 76 F.3d 611, 613 (4th Cir. 1996); *Jewish War Veterans*, 506 F. Supp. 2d at 47. This is the only way to effectively safeguard the communications and mental impressions that the legislative privilege exists to protect.

### C. New Procedures For Asserting Legislative Privilege Are Necessary In Light Of The Claims Asserted Against The 2013 Redistricting Plans And The Amended Scheduling Order.

Given that the Court's prior order was issued the day before depositions were scheduled to begin and approximately one month before the scheduled trial on the 2011 redistricting plans, the Court and the parties obviously faced extraordinary time constraints. The parties, however, are not under the same scheduling deadlines here. The parties have nearly seven months to conduct discovery, they have already initiated written discovery, and they are scheduled to begin depositions on January 15, 2014. This is more than enough time for witnesses to

10

assert legislative privilege in response to questions asked during depositions and for Plaintiffs and Plaintiff-Intervenors to file any necessary motions to compel.

Likewise, the process this Court created in its prior order must be reconsidered now that Plaintiffs and Plaintiff-Intervenors are challenging the 2013 Congressional and House redistricting plans. The 2013 redistricting plans were passed by different members of the Texas Legislature who have not yet had a chance to invoke or waive legislative privilege. These legislators should not be forced to reveal their mental impressions or the substance of communications protected by legislative privilege to Plaintiffs and Plaintiff-Intervenors under seal based on an order that was issued before the 2013 redistricting legislation ever came into existence.

## CONCLUSION

For the reasons stated above, the Court should grant Defendants' motion to modify the order dated August 1, 2011 regarding legislative privilege.

Dated: November 22, 2013                    Respectfully submitted,

                                                           GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID C. MATTAX
Deputy Attorney General
for Defense Litigation

J. REED CLAY, JR.
Special Assistant and Senior Counsel
to the Attorney General

   /s/ Patrick K. Sweeten             
PATRICK K. SWEETEN
Chief, Special Litigation Division
Texas State Bar No. 00798537

ANGELA COLMENERO
Assistant Attorney General

MATTHEW H. FREDERICK
Assistant Solicitor General

P.O. Box 12548, Capitol Station
Austin, TX 78711-2548
(512) 463-0150
(512) 936-0545 (fax)

**ATTORNEYS FOR THE STATE OF TEXAS, RICK PERRY, AND JOHN STEEN**

**CERTIFICATE OF CONFERENCE**

On November 4, 2014, the parties conducted a Rule 26(f) conference and discussed the assertion of legislative privilege in depositions. The State proposed a modification of the Court's August 2011 Order to allow for contemporaneous assertions of privilege at depositions with accompanying instructions to refrain from disclosing privileged testimony. The Plaintiffs and Plaintiff-Intervenors, with the exception of the United States, informed Texas that they were opposed this process. The United States informed Texas that it takes no position on the proposal as it relates to 2013 witnesses but opposes the proposal to the extent it relates to 2011 witnesses.

                                                              /s/ Patrick K. Sweeten
                                                              PATRICK K. SWEETEN
                                                              Chief, Special Litigation Division

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this filing was sent on November 22, 2013, via the Court's electronic notification system and/or email to the following counsel of record:

DAVID RICHARDS
Richards, Rodriguez & Skeith LLP
816 Congress Avenue, Suite 1200
Austin, TX 78701
512-476-0005
davidr@rrsfirm.com

RICHARD E. GRAY, III
Gray & Becker, P.C.
900 West Avenue, Suite 300
Austin, TX 78701
512-482-0061/512-482-0924 (facsimile)
Rick.gray@graybecker.com
**ATTORNEYS FOR PLAINTIFFS PEREZ, DUTTON, TAMEZ, HALL, ORTIZ, SALINAS, DEBOSE, and RODRIGUEZ**

JOSE GARZA
Law Office of Jose Garza
7414 Robin Rest Dr.
San Antonio, Texas 78209
210-392-2856
garzpalm@aol.com

MARK W. KIEHNE
RICARDO G. CEDILLO
Davis, Cedillo & Mendoza
McCombs Plaza
755 Mulberry Ave., Ste. 500
San Antonio, TX 78212
210-822-6666/210-822-1151 (facsimile)
mkiehne@lawdcm.com
rcedillo@lawdcm.com

JOAQUIN G. AVILA
P.O. Box 33687
Seattle, WA 98133
206-724-3731/206-398-4261 (facsimile)
jgavotingrights@gmail.com

GERALD H. GOLDSTEIN
DONALD H. FLANARY, III
Goldstein, Goldstein and Hilley
310 S. St. Mary's Street
San Antonio, TX 78205-4605
210-226-1463/210-226-8367 (facsimile)
ggandh@aol.com
donflanary@hotmail.com

PAUL M. SMITH, MICHAEL B. DESANCTIS, JESSICA RING AMUNSON
Jenner & Block LLP
1099 New York Ave., NW
Washington, D.C. 20001
202-639-6000

J. GERALD HEBERT
191 Somervelle Street, # 405
Alexandria, VA 22304
703-628-4673
hebert@voterlaw.com

JESSE GAINES
P.O. Box 50093
Fort Worth, TX 76105
817-714-9988
gainesjesse@ymail.com
**ATTORNEYS FOR PLAINTIFFS QUESADA, MUNOZ, VEASEY, HAMILTON, KING and JENKINS**

LUIS ROBERTO VERA, JR.
Law Offices of Luis Roberto Vera, Jr.
1325 Riverview Towers
San Antonio, Texas 78205-2260
210-225-3300
lrvlaw@sbcglobal.net
GEORGE JOSEPH KORBEL
Texas Rio Grande Legal Aid, Inc.

14

**ATTORNEYS FOR MEXICAN AMERICAN LEGISLATIVE CAUCUS**

NINA PERALES
MARISA BONO
Mexican American Legal Defense
and Education Fund
110 Broadway, Suite 300
San Antonio, TX 78205
210-224-5476/210-224-5382 (facsimile)
nperales@maldef.org
mbono@maldef.org

MARK ANTHONY SANCHEZ
ROBERT W. WILSON
Gale, Wilson & Sanchez, PLLC
115 East Travis Street, Ste. 1900
San Antonio, TX 78205
210-222-8899/210-222-9526 (facsimile)
masanchez@gws-law.com
rwwilson@gws-law.com
**ATTORNEYS FOR TEXAS LATINO REDISTRICTING TASK FORCE, CARDENAS, JIMENEZ, MENENDEZ, TOMACITA AND JOSE OLIVARES, ALEJANDRO AND REBECCA ORTIZ**

JOHN T. MORRIS
5703 Caldicote St.
Humble, TX 77346
281-852-6388
johnmorris1939@hotmail.com
**JOHN T. MORRIS, PRO SE**

MAX RENEA HICKS
Law Office of Max Renea Hicks
101 West Sixth Street Suite 504
Austin, TX 78701
512-480-8231/512/480-9105 (facsimile)
**ATTORNEY FOR PLAINTIFFS CITY OF AUSTIN, TRAVIS COUNTY, ALEX SERNA, BEATRICE SALOMA, BETTY F. LOPEZ, CONSTABLE BRUCE ELFANT, DAVID GONZALEZ, EDDIE RODRIGUEZ, MILTON GERARD WASHINGTON, and SANDRA SERNA**

1111 North Main
San Antonio, TX 78213
210-212-3600
korbellaw@hotmail.com
**ATTORNEYS FOR INTERVENOR-PLAINTIFF LEAGUE OF UNITED LATIN AMERICAN CITIZENS**

ROLANDO L. RIOS
Law Offices of Rolando L. Rios
115 E Travis Street, Suite 1645
San Antonio, TX 78205
210-222-2102
rrios@rolandorioslaw.com
**ATTORNEY FOR INTERVENOR-PLAINTIFF HENRY CUELLAR**

GARY L. BLEDSOE
Law Office of Gary L. Bledsoe
316 W. 12th Street, Ste. 307
Austin, TX 78701
512-322-9992/512-322-0840 (facsimile)
garybledsoe@sbcglobal.net
**ATTORNEY FOR INTERVENOR-PLAINTIFFS TEXAS STATE CONFERENCE OF NAACP BRANCHES, TEXAS LEGISLATIVE BLACK CAUCUS, EDDIE BERNICE JOHNSON, SHEILA JACKSON-LEE, ALEXANDER GREEN, HOWARD JEFFERSON, BILL LAWSON, and JUANITA WALLACE**

VICTOR L. GOODE
Asst. Gen. Counsel, NAACP
4805 Mt. Hope Drive
Baltimore, MD 21215-5120
410-580-5120/410-358-9359 (facsimile)
vgoode@naacpnet.org
**ATTORNEY FOR TEXAS STATE CONFERENCE OF NAACP BRANCHES**

15

STEPHEN E. MCCONNICO
SAM JOHNSON
S. ABRAHAM KUCZAJ, III
Scott, Douglass & McConnico
One American Center
600 Congress Ave., 15th Floor
Austin, TX 78701
512-495-6300/512-474-0731 (facsimile)
smcconnico@scottdoug.com
sjohnson@scottdoug.com
akuczaj@scottdoug.com
**ATTORNEYS FOR PLAINTIFFS CITY OF AUSTIN, TRAVIS COUNTY, ALEX SERNA, BALAKUMAR PANDIAN, BEATRICE SALOMA, BETTY F. LOPEZ, CONSTABLE BRUCE ELFANT, DAVID GONZALEZ, EDDIE RODRIGUEZ, ELIZA ALVARADO, JOSEY MARTINEZ, JUANITA VALDEZ-COX, LIONOR SOROLA-POHLMAN, MILTON GERARD WASHINGTON, NINA JO BAKER, and SANDRA SERNA**

KAREN M. KENNARD
2803 Clearview Drive
Austin, TX 78703
(512) 974-2177/512-974-2894 (facsimile)
karen.kennard@ci.austin.tx.us
**ATTORNEY FOR PLAINTIFF CITY OF AUSTIN**

DAVID ESCAMILLA
Travis County Asst. Attorney
P.O. Box 1748
Austin, TX 78767
(512) 854-9416
david.escamilla@co.travis.tx.us
**ATTORNEY FOR PLAINTIFF TRAVIS COUNTY**

ROBERT NOTZON
1507 Nueces Street
Austin, TX 78701
512-474-7563/512-474-9489 (facsimile)
robert@notzonlaw.com

ALLISON JEAN RIGGS
ANITA SUE EARLS
Southern Coalition for Social Justice
1415 West Highway 54, Ste. 101
Durham, NC 27707
919-323-3380/919-323-3942 (facsimile)
anita@southerncoalition.org
**ATTORNEYS FOR TEXAS STATE CONFERENCE OF NAACP BRANCHES, EARLS, LAWSON, WALLACE, and JEFFERSON**

DONNA GARCIA DAVIDSON
PO Box 12131
Austin, TX 78711
512-775-7625/877-200-6001 (facsimile)
donna@dgdlawfirm.com

**ATTY FOR DEFENDANT STEVE MUNISTERI**

CHAD W. DUNN
K. SCOTT BRAZIL
Brazil & Dunn
4201 FM 1960 West, Suite 530
Houston, TX 77068
281-580-6310/281-580-6362 (facsimile)
chad@brazilanddunn.com
scott@brazilanddunn.com
**ATTORNEYS FOR INTERVENOR-DEFS TEXAS DEMOCRATIC PARTY and BOYD RICHIE**

16

ROBERT L. PITMAN, JOCELYN SAMUELS, T. CHRISTIAN HERREN, JR., TIMOTHY F. MELLETT, BRYAN SELLS, JAYE ALLISON SITTON
DANIEL J. FREEMAN
MICHELLE A. MCLEOD
U.S. Department of Justice
Civil Rights Division, Voting Rights
Room 7254 NWB
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
 (202) 305-4355; (202) 305-4143
**ATTORNEYS FOR THE
UNITED STATES**

   /s/   Patrick K. Sweeten
PATRICK K. SWEETEN