# In the United States District Court
# for the
# Western District of Texas

| | |
|---|---|
| SHANNON PEREZ, ET AL. § | |
| § | |
| v. § | SA-11-CV-360 |
| § | |
| RICK PERRY, ET AL. § | |

## ORDER

Before the Court are the Quesada Plaintiffs' Motion to Compel Discovery from the Defendants (docket no. 1012) and the Task Force and MALC Plaintiffs' Motion for Protective Order (docket no. 1024). The Quesada Plaintiffs seek to compel Defendants to answer certain interrogatories and produce documents related to development of the proposed compromise interim plan (later adopted by this Court as the interim plan) and the Texas Legislature's enactment of that plan in 2013. The Task Force and MALC Plaintiffs seek a protective order precluding the Quesada Plaintiffs from discovering compromise negotiations between certain Plaintiffs and Defendants regarding the proposed compromise plan. After careful consideration, the Court will grant in part and deny in part the Quesada Plaintiffs' motion and will grant the Task Force and MALC Plaintiffs' motion.

## Background

In January and February 2012, this Court directed the parties to confer to attempt to reach an agreement on interim maps to be used for the upcoming 2012 elections. Plan C226 was offered

1

by certain parties[1] as a proposed compromise interim map for Congress, and the Court adopted Plan C226 with minor non-substantive modifications (renamed as Plan C235) as an interim map on February 28, 2012. In 2013, the Texas Legislature enacted Plan C235 without modification as the State's Plan to govern future congressional elections.

In this litigation, the Quesada Plaintiffs assert that the Legislature enacted Plan C235 with a discriminatory purpose and in violation of the Voting Rights Act. They allege that the Texas Legislature enacted Plan C235 without change despite input from numerous parties informing them of remaining constitutional and statutory flaws in the plan.

On April 18, 2014, the Quesada Plaintiffs propounded eleven interrogatories on the State Defendants. The first eight interrogatories deal with the time period preceding the Court's adoption of the 2012 interim plan and include, in relevant part, the following:

> (1) Identify each and every action taken by the Defendants from December 1, 2011, to February 17, 2012, to "work with" any of the Quesada Plaintiffs or their counsel "in this action to develop interim plans[.]"
>
> (2) Identify each and every person who participated in any way in the drawing any of the district boundaries in Plan C235.[2]
>
> (3) Identify each communication regarding Plan C235 from January 1, 2012, to and including February 17, 2012, between the Defendants and any Member of the U.S. Congress (either past or present), their staff, or their representatives.

---

[1] Defendants state that they reached an agreement with Plaintiffs MALDEF, GI Forum, The Mexican American Bar Association of Texas, La Fe Policy Research and Education Center, Hispanics Organized for Political Education (HOPE), the National Organization for Mexican American Rights, Southwest Voter Registration Education Project, the William C. Velasquez Institute, Southwest Workers' Union, Texas Latino Redistricting Task Force, and Intervenor Congressman Henry Cuellar. Docket no. 1025 at 7 (citing Docket no. 605).

[2] The Quesada Plaintiffs and Defendants agree that the discovery propounded by the Quesada Plaintiffs regarding Plan C235 includes a request for information relating to C226, the compromise plan on which C235 was based.

(4) Identify each communication regarding Plan C235 from January 1, 2012, to and including February 17, 2012, between any Member of the Texas Attorney General's office and any Member of the U.S. Congress (either past or present), their staff, or their representatives.

(5) Identify each communication regarding Plan C235 from January 1, 2012, to and including February 17, 2012, between the Defendants and members of the Texas Legislature (either past or present) their staff, or their representatives.

(6) Identify each communication regarding Plan C235 from January 1, 2012, to and including February 17, 2012, between any Member of the Texas Attorney General's office and members of the Texas Legislature (either past or present) their staff, or their representatives.

(7) Identify each communication regarding Plan C235 from January 1, 2012, to and including February 17, 2012, between Defendants and any other parties or their counsel to this litigation.

(8) Identify each communication regarding Plan C235 from January 1, 2012, to and including February 17, 2012, between any Member of the Texas Attorney General's office and any other parties or their counsel to this litigation.

Interrogatories nine through eleven seek information concerning actions taken by the Texas Legislature in 2012 and 2013 to address any factual findings of the District Court for the District of Columbia in the preclearance litigation and all data and analyses that did not exist in 2011 but that were considered by Defendants in 2013.

Four days later, on April 22, the Quesada Plaintiffs served Rule 34 Requests for Production on the State of Texas, Governor Rick Perry, Secretary of State Nandita Berry, the Texas Democratic Party, and the Texas Republican Party. Those requests include,

(1) All documents and tangible things relating to Plan C235, including all communications sent to or received by you from any source between January 1, 2012 and March 31, 2012.

(2) All documents and tangible things relating to Plan C235, including all communications sent to or received by you from any source between January 1, 2013 and July 1, 2013.

> (3) All documents and tangible things relating to any calculations, reports, audits, estimates, projections, or other analyses done by you, commissioned by you, or in your possession, custody, or control, relating to Plan C235 from January 1, 2012 to the present.
>
> (4) All documents and tangible things identified by Defendants in their Answers to the Quesada Plaintiffs' First Set of Interrogatories, served on April 18, 2014.

"You and your" was defined to mean "State of Texas, the Texas Legislature, members of the Texas Legislature, staff members of members of the Texas Legislature, the Texas Legislative Council, employees and staff members of the Texas Legislative Council, the Defendant Governor, employees and staff members of the Office of the Texas Governor, the Defendant Texas Secretary of State, employees and staff members employed by the office of the Defendant Secretary of State, the Chairperson of the Defendant Texas Democratic Party, and of the Chairman of the Defendant Texas Republican Party, as well as all agents, representatives, attorneys, experts, and other persons acting or purporting to act on behalf of any of the aforementioned in this paragraph."

Defendants the State of Texas, Rick Perry, and Nandita Berry produced some documents but objected to the interrogatories and requests for production, and on May 27, the Quesada Plaintiffs moved to compel responses and production from these Defendants. The Quesada Plaintiffs assert that the State "has failed to produce any of the information or communications sought by the Quesada Plaintiffs with regard to who developed the interim plan, how the congressional district lines were drawn, or why the lines were drawn the way they were."

In response to the Quesada Plaintiffs' motion, the Task Force and MALC Plaintiffs filed a a Motion for Protective Order (docket no. 1024) seeking to protect communications exchanged among certain Plaintiffs and the State of Texas when this Court directed the parties to negotiate regarding the 2012 interim maps. These Plaintiffs argue that the information sought by the Quesada

Plaintiffs regarding settlement communications among Defendants and other Plaintiffs and their counsel is not relevant and is subject to a protective order. The Task Force and MALC Plaintiffs further contend that the information sought is unreasonably cumulative and should have been obtained from Henry Cuellar and Francisco Canseco, who authored almost all of the configuration of CD33 in the interim plan.[3]

The Defendants also filed a response in opposition (docket no. 1025), arguing that negotiations that resulted in the proposed compromise plan are irrelevant and that documents and information that reveal those negotiations would be inadmissible under Federal Rule of Evidence 408. With regard to discovery related to the Legislature's 2013 enactment of Plan C235, Defendants state that they have produced public information in response to the discovery, and "[a]ny additional, non-public information regarding the Legislature's consideration and enactment of the 2013 congressional plan is either held by third parties or subject to the Defendants' claims of privilege, including deliberative-process privilege and attorney-client privilege." Defendants assert that they have not yet produced a privilege log for these documents and that resolution of privilege issues is not ripe at this time.

## Analysis

**A. Discovery related to the 2012 proposed compromise Plan C226**

The Quesada Plaintiffs characterize the first eight interrogatories as generally seeking information "regarding how the interim plan was crafted and who participated in its creation." These Plaintiffs assert a need to discover who drew the lines in the compromise plan, why they drew

---

[3] The Court notes, as do the Quesada Plaintiffs, that the discovery is not limited to CD33 or the Dallas area.

the lines the way that they did, and whether they expressed any motivations in drawing the lines. The Quesada Plaintiffs note that their claims require them to prove discriminatory purpose, and they argue that communications concerning redistricting plans may contain evidence of discriminatory intent. They contend that no discovery about the interim plan has ever taken place and that information regarding who drew the lines, why they drew the lines the way they did, or whether those who drew the lines expressed their motivation in any communications when the plan was being developed is highly relevant because the Legislature adopted the plan in 2013 without any changes. Plaintiffs further argue that even if Rule 408 applies, they do not seek to use evidence concerning the interim plan as evidence of liability, but only to interpret the plan or to show improper motive or bias, and therefore Rule 408 permits the discovery.

> Rule 408 provides:
>
> (a) Prohibited Uses. Evidence of the following is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
>
> (1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and
>
> (2) conduct or a statement made during compromise negotiations about the claim--except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.
>
> (b) Exceptions. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Defendants contend that communications and documents related to the negotiation of the proposed congressional plan (Plan C226) are evidence of "conduct or a statement made during compromise negotiations" sought to prove the validity of Plaintiffs' claim. Accordingly, Defendants contend that

communications among (1) Defendants and Quesada Plaintiffs or their counsel (Interrog. No. 1); (2) Defendants and members of Congress or their staff (Interrog. No. 3); (3) Members of the OAG and members of Congress and their staff (Interrog. No. 4); (4) Defendants and members of the Texas Legislature and their staff (Interrog. No. 5); (5) Members of OAG and members of the Texas Legislature or their staff (Interrog. No. 6); (6) Defendants and other parties or their counsel (Interrog. No. 7); and (7) Members of OAG and other parties or their counsel (Interrog. No. 8) related to Plan C226 are privileged under Rule 408. They also assert that RFP 1 (all communications between January 1 and March 31, 2012 regarding the interim plan) and RFP 3 (any analyses conducted by the State of the interim plan from January 1, 2012 to present) encompass such privileged information.

By its plain terms, Rule 408 covers only "furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim" and "conduct or a statement made during compromise negotiations about the claim" and only when offered to prove or disprove the validity or amount of a disputed claim or to impeach. The Court holds that the proposed compromise plan offered to the Court -- Plan C226 -- was in the nature of a compromise within the meaning of Rule 408 such that negotiations concerning the development and presentation of Plan C226 are protected by Rule 408. Therefore, to the extent the Quesada Plaintiffs seek information regarding what was said during the negotiations regarding Plan C226 in order to demonstrate improper motive by Defendants in enacting either the 2011 or the 2013 plan, such use would be barred by Rule 408.

The Quesada Plaintiffs contend that they are entitled to probe the State's assertion that Plan C226 fairly addressed all of the parties' claims, and that such information is relevant because the

State had to know and consider the effect of the district lines on minority voters when making representations to the Court. However, rather than asking Defendants to answer interrogatories or provide documents demonstrating how the plan addressed claims or why certain lines were drawn a specific way, Plaintiffs' interrogatories broadly ask for communications regarding the compromise plan during compromise negotiations. Although such communications might be relevant, they are protected by Rule 408. And although Plaintiffs contend that the evidence falls within an exception to Rule 408 for improper motive or bias, Plaintiffs have not demonstrated a need or purpose for discovery concerning communications about the compromise plan other than to prove the Defendants' improper motive (and therefore, liability) on the claims in this litigation.

The Quesada Plaintiffs also argue that Rule 408 would apply only to the Task Force and Congressman Cuellar's claims because those were the only parties to settlement negotiations. However, courts have taken different views on this issue. *Dahlgren v. First Nat'l Bank of Holdredge*, 533 F.3d 681, 699 (8th Cir. 2008) ("This textual limitation has led our sister circuits to differ somewhat on whether Rule 408 applies to evidence of compromises or offers to compromise claims by third parties."); *Towerridge, Inc. v. T.A.O., Inc*., 111 F.3d 758, 770 (10th Cir. 1997) ("Rule 408 does not require the exclusion of evidence regarding the settlement of a claim different from the one litigated, though admission of such evidence may nonetheless implicate the same concerns of prejudice and deterrence of settlements which underlie Rule 408."); *Hudspeth v. C.I.R.*, 914 F.2d 1207, 1213 (9th Cir. 1990)("Rule 408 does apply to situations where the party seeking to introduce evidence of a compromise was not involved in the original compromise.").

The circumstances of this case weigh in favor of exclusion as to all Plaintiffs. *See* Wright, et al., FEDERAL PRAC. & PROC. § 5306 ("Hence, it seems preferable to make the meaning of 'claim'

8

turn on whether the result of the interpretation is likely to discourage parties from entering into compromise negotiations and whether the exclusion of the evidence of compromise would be fair in the case before the court."). Although Defendants may not have conferred with all Plaintiffs and not all Plaintiffs agreed with the proposed compromise plan, the plan was intended to compromise *all* of the Plaintiffs' claims (at least for purposes of interim relief), including even the United States' retrogression assertions. Accordingly, the Court rejects this argument on these facts.

Therefore, the motion to compel is denied insofar as Plaintiffs seek information protected by Rule 408. Specifically as to Interrogatory No. 1, actions taken by Defendants to "work with" the Quesada Plaintiffs to develop a compromise plan would fall within Rule 408. The Court further notes that this request does not seek relevant information and is cumulative insofar as the Quesada Plaintiffs should already possess knowledge of what actions were taken by the State to "work with" them to develop interim plans. The motion to compel is further denied as to Interrogatory No. 7 and Interrogatory No. 8, since communications between Defendants and the OAG and other parties and counsel concerning Plan C226/C235 would be privileged under Rule 408. The Task Force and MALC Plaintiffs' motion for protective order is granted.

The motion to compel with regard to Interrogatories No. 3 through No. 6 is granted in part. Plaintiffs seek communications among and between Defendants, Congress, the OAG, and the Legislature regarding the compromise plan between January 1, 2012 and February 17, 2012. Such communications are privileged if they were part of or in furtherance of settlement negotiations. Therefore, internal memoranda, communications, and analyses performed in furtherance of the compromise plan are privileged, regardless of whether they were communicated to Plaintiffs. *See, e.g.*, *E.E.O.C. v. UMB Bank Fin. Corp.*, 558 F.3d 784, 791 (8th Cir. 2009) ("The spirit of the Rule,

as recognized by several circuits and as set forth in the commentary to the Rule, supports the exclusion of certain work product, internal memos, and other materials created specifically for the purpose of conciliation, even if not communicated to the other party."); *Affiliated Mfrs. v. Alum. Co. of Am.*, 56 F.3d 521 (3d Cir. 1995) (internal memoranda properly excluded when prepared for use in discussion of settlement); *Blue-J, Inc. v. Kemper CRA Group*, 916 F.2d 637 (11th Cir. 1990) (accountant's evaluation of claims as part of settlement negotiations properly excluded); *Ramada v. Rauch*, 644 F.2d 1097 (5th Cir. 1981) (court affirmed the trial court's refusal to permit the introduction of an architect's report prepared to facilitate settlement negotiations).[4]

However, communications and analyses unrelated to the settlement negotiations are not privileged under Rule 408. It appears undisputed that Plan C226 is similar to and derives from Plan C216, the plan submitted by Congressmen Cuellar and Canseco (and authored by Scott Yeldell). *See* docket no. 642 at 4. To the extent Defendants possess or control responsive documents or information or engaged in communications that pertain to Plan C216 but were not part of compromise negotiations, such documents and communications would not be covered by Rule 408. Further, it is undisputed that Plan C226 was submitted to the Court as a proposed compromise plan on February 6. *See* docket no. 605 (State's advisory of non-opposition to Plan C226); docket no. 606 (Task Force advisory that it agreed to Plan C226); docket no. 610 (Congressman Cuellar's advisory supporting Plan C226). It seems highly unlikely that any compromise negotiations related

---

[4] The Quesada Plaintiffs note that we are dealing with discovery here and not admissibility at trial. However, "[a]lthough it is true that documents need not be admissible in court to be discoverable under 26(b)(1), it generally is not an abuse of discretion for a district court to deny discovery when the intended use of a document would be prohibited at trial." *Gov't of Ghana v. Pro Energy Servs.*, 677 F.3d 340, 344-45 (8th Cir. 2013).

to Plan C226 continued beyond that date. Therefore, requested communications about Plan C226/C235 after February 6 would not appear to be privileged under Rule 408 unless they refer to conduct or statements made during compromise negotiations or were for the purpose of presenting the compromise plan to the Court.[5] Therefore, the motion to compel responses to Interrogatories three through six is denied but only to the extent that communications were made during or in furtherance of compromise negotiations. Otherwise, the motion is granted.

To the extent RFP 1, RFP 3, and RFP 4 seek communications or analyses conducted in furtherance of compromise negotiations as discussed above, the motion to compel is denied. Otherwise, the motion to compel is granted.

Interrogatory No. 2 asks Defendants to identify who participated in any way in drawing any of the district boundaries in Plan C235 (C226). Neither party expressly addresses whether such identification is covered by Rule 408. Defendants' advisory (docket no. 605) stated that Plan C226 was developed in conjunction with the Texas Latino Redistricting Task Force and also reflects the input of other plaintiffs with whom the State did not reach agreement. Defendants have failed to demonstrate that the privilege applies to Interrogatory No. 2 and information concerning who participated in drawing the plan is relevant to Plaintiffs' claims. Therefore the motion to compel is granted as to Interrogatory No. 2.

**B. Discovery related to the Legislature's adoption of Plan C235 in 2013**

The Quesada Plaintiffs seek to discover in Interrogatories 9 through 11 "information that the State considered in drawing the 2013 plan when the State Legislature made the decision to enact the

---

[5] The Court adopted the compromise plan (as Plan C235) on February 28. Communications and analyses made in furtherance of presentation of the compromise plan to the Court before February 28 would also be privileged.

interim plan without change," including what data Defendants considered, whether the State had done any analysis, and whether the State considered the D.C. Court's findings. RFP No. 2 seeks any communications about Plan C235 between January 1, 2013 and July 1, 2013. And RFP No. 3 seeks analyses conducted by the State of the interim plan from January 1, 2012 to present.

As noted, Defendants state that they have produced public information in response to these discovery requests, and will provide privilege logs concerning any additional, non-public information regarding the Legislature's consideration and enactment of the 2013 congressional plan. Defendants also state that they will supplement responsive, non-privileged documents on behalf of the 23 legislators that the Office of the Attorney General ("OAG") represents.

The Court notes that Defendants have had since April 18 to respond to the interrogatories and since April 22 to respond to requests for production and produce a privilege log. The State asserts that the privilege log is not due until July 6 based on the ESI agreement, but notes that it intends to produce it at an earlier, unspecified date. The Quesada Plaintiffs state that they have not signed the ESI Agreement and are not bound by it, and that Defendants' privilege log was due May 22, 2014. The Court finds that Defendants have not waived their privileges by failing to produce a privilege log at this point. However, the Court orders Defendants to supplement the production with information from the 23 legislators and with any non-privileged information responsive to the discovery and to produce a privilege log to the Quesada Plaintiffs within seven days of this Order.

**Conclusion**

The Quesada Plaintiffs' motion to compel (docket no. 1012) is GRANTED IN PART AND DENIED IN PART as discussed herein. The Court finds that Rule 408 is applicable to

communications and conduct related to the compromise negotiations for the interim plan (Plan C226, adopted as Plan C235) and that the Quesada Plaintiffs have not demonstrated that an exception applies. Accordingly, the motion to compel is denied to the extent the discovery seeks information concerning conduct or communications made during settlement negotiations, as discussed herein, and the Task Force and MALC Plaintiffs' motion (docket no. 1024) is GRANTED. The Quesada Plaintiffs' motion to compel is otherwise granted, and Defendants shall respond and produce a privilege log within seven days of this Order. Plaintiffs shall have three days to move to compel production of any of the documents in the log.

It is so ORDERED this 5th day of June, 2014.

__/s/_____
ORLANDO L. GARCIA
UNITED STATES DISTRICT JUDGE
[*on behalf of the three judge panel*]