IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| SHANNON PEREZ, *et al.*,<br><br>             Plaintiffs,<br><br>and<br><br>UNITED STATES of AMERICA,<br><br>             Plaintiff-Intervenor,<br><br>             v.<br><br>STATE OF TEXAS, *et al.*,<br><br>             Defendants. | Civil Action No. 5:11-cv-360<br>(OLG-JES-XR)<br>Three-Judge Court<br>[Lead Case] |
| MEXICAN AMERICAN LEGISLATIVE CAUCUS,<br>TEXAS HOUSE OF REPRESENTATIVES (MALC),<br><br>             Plaintiff,<br><br>             v.<br><br>STATE OF TEXAS, *et al.*,<br><br>             Defendants. | Civil Action No. 5:11-cv-361<br>(OLG-JES-XR)<br>Three-Judge Court<br>[Consolidated Case] |
| TEXAS LATINO REDISTRICTING TASK FORCE,<br>*et al.*,<br><br>             Plaintiffs,<br><br>             v.<br><br>RICK PERRY,<br><br>             Defendant. | Civil Action No. 5:11-cv-490<br>(OLG-JES-XR)<br>Three-Judge Court<br>[Consolidated Case] |

| | |
|---|---|
| MARGARITA V. QUESADA, *et al.*, <br><br>    Plaintiffs, <br><br>  v. <br><br>RICK PERRY, *et al.*, <br><br>    Defendants. | Civil Action No. 5:11-cv-592 <br>(OLG-JES-XR) <br>Three-Judge Court <br>[Consolidated Case] |
| JOHN T. MORRIS, <br><br>    Plaintiff, <br><br>  v. <br><br>STATE OF TEXAS, *et al.*, <br><br>    Defendants. | Civil Action No. 5:11-cv-615 <br>(OLG-JES-XR) <br>Three-Judge Court <br>[Consolidated Case] |
| EDDIE RODRIGUEZ, *et al.*, <br><br>    Plaintiffs, <br><br>  v. <br><br>RICK PERRY, *et al.*, <br><br>    Defendants. | Civil Action No. 5:11-cv-635 <br>(OLG-JES-XR) <br>Three-Judge Court <br>[Consolidated Case] |

**UNITED STATES' MEMORANDUM IN OPPOSITION TO**
**STATE DEFENDANTS' MOTION TO EXCLUDE DR. THEODORE ARRINGTON**

The United States offers Dr. Theodore Arrington's expert testimony to assist the Court in determining whether the Texas legislature had a discriminatory purpose when it drafted and enacted the 2011 State House and Congressional redistricting plans.[1] The State Defendants advance four arguments in their motion to exclude Dr. Arrington's testimony, *see* Defs.' Mem. at 5-12 (ECF No. 1057), each of which has been rejected by other courts.  First, the State Defendants argue that expert testimony concerning intent is not appropriate in voting rights litigation.  However, every court to consider the question has ruled to the contrary.  Second, the State Defendants contend that Dr. Arrington is not qualified.  Dr. Arrington has extensive redistricting and election administration experience, and—most critically—has been deemed qualified by federal courts to assess intent related to voting changes.  Third, the State Defendants argue that Dr. Arrington has no method for determining intent.  That is not true.  Dr. Arrington's methodology is a standard one used by political scientists evaluating the existence of discriminatory intent underlying changes in election law and is similar to the standard articulated by the Supreme Court in *Village of Arlington Heights v. Metropolitan Housing Development Corporation*, 429 U.S. 252 (1977).  Fourth, the State Defendants claim that Dr. Arrington's analysis is not relevant because it summarizes evidence already before the court.  The Defendants incorrectly fail to address the quantitative analysis performed by Dr. Arrington, as well as the application of social scientific principles to synthesize materials related to legislative processes, demographics, plan-drawing, voting patterns, alternative redistricting plans, and other information.  This Court should deny the State Defendants' motion to exclude his testimony.

---

[1] Pursuant to this Court's May 30, 2014 Order (ECF No. 1020), the State Defendants have reserved the right to challenge Dr. Arrington's report and testimony as it relates to Section 3(c).  *See* Defs.' Mem. at 1 n.1 (ECF No. 1057).  Accordingly, the United States has not addressed the applicability of Dr. Arrington's testimony to Section 3(c), but reserves the right to defend any future challenge.

I. **LEGAL STANDARD**

A witness may provide expert opinion testimony if he is "qualified as an expert by knowledge, skill, experience, training, or education," Fed. R. Evid. 702; if his testimony is "relevant and reliable," *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999); and if his testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue," *Daubert v. Merrell Dow Pharm. Inc.,* 509 U.S. 579, 591 (1993).  Expert testimony is presumed admissible, and district courts have broad discretion to admit expert testimony.  *Martinez v. Porta*, 601 F. Supp. 2d 865, 866 (N.D. Tex. 2009).

The Fifth Circuit takes a liberal view towards the admissibility of expert testimony—particularly in bench trials—and regards most challenges to reliability or relevance as challenges to weight rather than admissibility.  *See, e.g.*, *Huss v. Gayden*, 571 F.3d 442, 453 (5th Cir. 2009) (citing *Daubert*, 509 U.S. at 596); *see also Whitehouse Hotel L.P. v. Comm'r*, 615 F.3d 321, 330 (5th Cir. 2010) (noting that in a bench trial "there is no risk of tainting the trial by exposing the jury to unreliable evidence"); *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000) (same). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking . . . evidence." *Daubert*, 509 U.S. at 596.

II. **ARGUMENT**

Dr. Arrington's credentials as a social scientist are extensive.  His opinions are based on voluminous facts and data and the reliable application of accepted methods to those facts and data.  Perhaps more critically, his testimony will assist this Court in determining a central issue here—whether the 2011 House and Congressional redistricting plans were created or enacted with discriminatory purpose.  Therefore, his testimony should be admitted.

2

### A. Legislative Purpose Is a Proper Subject of Expert Testimony.

Courts in voting rights cases routinely admit expert testimony concerning discriminatory intent and the history of discrimination in voting. *See, e.g.*, *Hunt v. Cromartie*, 526 U.S. 541, 547-48 (1999) (discussing intent evidence); *Hunter v. Underwood*, 471 U.S. 222, 229 (1985) (same); *United States v. Blaine Cnty.*, 363 F.3d 897, 912-13 (9th Cir. 2004) (same); *Garza v. Cnty. of Los Angeles*, 918 F.2d 763, 767 n.19 (9th Cir. 1990) (same); *United States v. Brown*, 494 F. Supp. 2d 440, 452 & n.13 (S.D. Miss. 2007) (crediting purpose evidence offered by Dr. Arrington), *aff'd*, 561 F.3d 420 (5th Cir. 2009).[2]  Courts have found expressly that such experts may satisfy the requirements of Rule 702. *See, e.g.*, *Bone Shirt v. Hazeltine*, 336 F. Supp. 2d 976 (D.S.D. 2004).

Dr. Arrington's analysis in this case is based on the analysis of legislative purpose that he offered during the earlier trial over these same redistricting plans in the D.C. District Court, under Section 5 of the Voting Rights Act. During that litigation, Texas brought a challenge to the admission of Dr. Arrington's analysis that is nearly identical to the instant motion, and the D.C. Court denied the State's motion in relevant part. Trial Tr. at 6, *Texas v. United States*, No. 11-cv-1303 (D.D.C. Jan. 17, 2012) (Ex. A) [hereinafter "Tex. v. U.S. Tr."].  While limiting expert testimony on the "state of mind" of individual legislators, the court allowed Dr. Arrington to testify to what he "infer[red] or deduce[d] were the reasons behind Texas redistricting from the application of [his] expertise to a set facts, actions and consequences." *Id*. at 8.[3]  The D.C.

---

[3] Dr. Arrington has offered no testimony concerning individual legislators' subjective intent or state of mind in this case. The State Defendants' claim that Dr. Arrington engages wholly or even substantially in considering the state of mind of any particular Texas legislator grossly mischaracterizes his clear testimony. *See, e.g*., Arrington Decl. ¶¶ 36, 67 (explaining that the 2011 redistricting plans failed to account for minority population growth, were enacted to limit minority participation in the political process, and were drawn using race a proxy for partisanship, among other things). Moreover, a permissible inquiry into discriminatory purpose may "occasionally" touch on "the subjective 'intent,'

3

Court held that Dr. Arrington's testimony would reflect his "own opinions as to purpose not the 'actual' intention of someone else." *Id.*  Moreover, the D.C. District Court determined that his testimony regarding "purpose as evidenced by actions and consequences that [were] deduced from [his] analysis . . . will offer specialized knowledge to help the trier of fact understand complex evidence as contemplated by Rule 702 A." *Id.*[4]  In turn, the D.C. District Court relied on Dr. Arrington's testimony to support its finding of a discriminatory purpose.  *See Texas v. United States*, 887 F. Supp. 2d 133, 161, 198, 200-02, 219 (D.D.C. 2012) (three-judge court), *vacated and remanded on other grounds*, 133 S. Ct. 2885 (2013).

### B.  Dr. Arrington Is Qualified.

Dr. Arrington's knowledge, skill, experience, training, and education undoubtedly meet Rule 702's requirements.  As even the State Defendants recognize, Dr. Arrington "is a political scientist with specialized expertise in districting and voting processes."  Defs.' Mem. at 5.  Dr. Arrington was a professor of political science at the University of North Carolina at Charlotte for 37 years, from 1973 until 2010, and he was the chair of the university's political science department for 18 years.  Arrington Decl. ¶ 5 (Ex. D).  While a professor, he taught courses including voting behavior, political parties, research methodology, and interest groups, among other subjects.  *Id*.  Most of his extensive written and published works (including 37 refereed articles, numerous papers, two monographs, and one co-edited volume) concern the effects of

---

'motive,' or 'actual purpose' of government actors." *Grossbaum v. Indianapolis-Marion Cnty. Bldg. Auth.,* 100 F.3d 1287, 1292 & n.3 (7th Cir. 1996).  In addition, Dr. Arrington's analysis of the evidence is readily distinguishable from impermissible expert testimony concerning individual criminal or fraudulent intent.  *See* Defs.' Mem. at 8 (collecting cases).

[4] Other nearly identical challenges to intent experts in voting cases also have been rejected recently.  *See* Minute Order, *Texas v. Holder*, No. 12-cv-128 (D.D.C. July 3, 2012) (denying the State's motion to exclude expert intent testimony) (Ex. B); Order, *South Carolina v. United States*, No. 12-cv-203 (D.D.C. Aug. 22, 2012) (ECF No. 226) (denying South Carolina's motion to exclude Dr. Arrington's intent testimony) (Ex. C).

4

party and race on voting behavior. *Id.* ¶ 6. He also recently published a detailed analysis of the redistricting process in the United States. *Id.*

Dr. Arrington's qualifications also include hands-on experience with the redistricting process, having served as the appointed expert for the Special Master charged with drawing New York State's state legislative and congressional districts in 1992, as the co-chair of the Mecklenburg County Governance Committee that designed a new set of county commissioner electoral districts in 1992, as a consultant for numerous elected and appointed bodies tasked with redistricting during the 2001 redistricting cycle in Connecticut, Illinois, North Carolina, and South Carolina, and as a member for 12 years of the Charlotte/Mecklenburg Board of Elections. *Id.* ¶ 4; Arrington Curriculum Vitae at 11-17 (Ex. E).

Dr. Arrington also has been retained as an expert witness in more than 40 voting rights lawsuits and has given trial testimony in more than 20 of them. Dr. Arrington's expert testimony has included analysis of questions of intent. *Brown*, 494 F. Supp. at 452 & n.13 (crediting Dr. Arrington's analysis in finding intentional discrimination); Tex. v. U.S. Tr. at 6 (order allowing Dr. Arrington to offer opinion testimony as to discriminatory purpose); *South Carolina v. United States*, No. 12-cv-203 (D.D.C. Aug. 22, 2012) (Ex. C) (same). Defendants' motion attempts to discredit Dr. Arrington because he "has only done an intent analysis in three of the 40 cases in which he has testified as an expert." Defs.' Mem. at 6. That argument is beside the point. Experts are not qualified under the Federal Rules of Evidence based on the number of times they have testified before a court, but rather based on their knowledge, skill, experience, training, or education. Fed. R. Evid. 702. Based on his extensive academic and practical experience with voting rights issues and his expertise in assessing redistricting plans, Dr. Arrington undoubtedly meets Rule 702's expert qualification standard.

5

### C. Dr. Arrington's Methodology is Sound.

The State Defendants challenge Dr. Arrington's testimony on the basis that he has no reliable method and "merely recites the *Arlington Heights* factors." Defs.' Mem. at 5-6. This argument directly contradicts applicable precedent and misrepresents Dr. Arrington's testimony.

Expert testimony is reliable if it employs scientifically valid reasoning or methodology that is properly applied to the facts of the case. *Daubert*, 509 U.S. at 592-93. As Dr. Arrington explained in his expert declaration, political scientists assess the purposes underlying governmental actions by examining the historical background of the enactment, the balance of power within the legislature at the time of the enactment, the degree to which legislative procedure and traditions are altered during the bill's progress, the sequence of events that led to the bill's passage, and the expected effect of the law after implementation. Arrington Decl. ¶ 8. The fact that Dr. Arrington's analysis coincides with the factors set forth by the Supreme Court for determining discriminatory intent in *Arlington Heights*, 429 U.S. at 266-68, does not diminish the methodology as State Defendants erroneously argue, Defs.' Mem. at 6, but rather bolsters the commonly accepted methodology. And while Dr. Arrington concludes that evidence exists that the legislature intended to discriminate against minority voters, he does not draw any conclusions as to the legal implications of these findings. Arrington Decl. ¶¶ 36, 67; *cf. Loeffel Steel Prods. v. Delta Brands*, 372 F. Supp. 2d 1104, 1122 (N.D. Ill. 2005) (noting that an expert may also consider and rely upon his own experience over the course of his career and his own examination and observations of pieces of evidence in a case).

The State Defendants further argue that Dr. Arrington's analysis "does not meet the best practices of academic social science research." Defs.' Mem. at 6. In support of their arguments, State Defendants cite the declaration of their own expert, Dr. Harvey Tucker, a political scientist

6

who has never participated as an expert witness in a trial before, is unfamiliar with voting rights law, and is generally unfamiliar with the standards for expert reports written for voting-related litigation.  Rebuttal Report of Dr. Theordore Arrington ¶ 18 (Ex. F) [hereinafter "Arrington Rebuttal"]; Harvey Tucker Dep. at 57:25-59:1, May 6, 2014 (Ex. G) ["hereinafter Tucker Dep."].  Moreover, Dr. Tucker was retained by Texas to rebut Dr. Arrington's analysis of Texas's persistent history of discrimination in voting, which supports the United States' request for relief under Section 3(c) of the Voting Rights Act.  Dr. Tucker does not address Dr. Arrington's analysis of the 2011 House and Congressional plans, which is the subject of the State Defendant's motion to exclude.  *See supra* note 1.  Indeed, Dr. Tucker admitted that he did not read the first half of Dr. Arrington's report that concerns discriminatory purpose.  Tucker Dep. at 16:14-18:7 (stating that he had not read any portion of Dr. Arrington's report prior to the portion concerning Section 3(c) relief).

Dr. Arrington did not "ignore research . . . that contradicts some of the premises of his Declaration," Defs.' Mem. at 6, and Dr. Tucker has no basis to make this assertion.  Dr. Tucker admitted that he did not read the articles cited in his rebuttal Declaration, and therefore has no basis to opine on whether they contradict Dr. Arrington's conclusions.  Tucker Dep. at 132:23-138:2 (stating that he read only the abstracts and conclusions of articles cited in his rebuttal report).  In contrast, Dr. Arrington explained that he read and considered all of the articles cited by Dr. Tucker but concluded that none of the articles contradicted the findings in his Declaration.  Arrington Rebuttal ¶¶ 19-20.  Dr. Arrington explained that he had not cited every academic article available because expert reports, unlike academic or journal articles, do not typically include a detailed review of all of the literature available on a particular topic.[5]  *Id*.

---

[5] The State Defendants also incorrectly assert that Dr. Arrington is unaware of the literature on intent. Defs.' Mem. at 5-6. Dr. Arrington explained in his deposition that he previously had provided a

7

The State Defendants further argue that Dr. Arrington presents "incorrect or misleading information" in his Declaration and assert that he "intentionally left out of his report" an analysis of the objections under Section 5 of the Voting Rights Act per year for years after 2004.  Defs.' Mem. at 6-7.  This is not true.  Dr. Arrington explains that the data for his analysis of *nationwide* objections was obtained from a report prepared by the National Commission on the Voting Rights Act, which covered only the period from 1982-2004.  Arrington Decl. ¶¶ 79-80; Arrington Rebuttal ¶ 25.  While analyzing and compiling the objections in *Texas*, however, Dr. Arrington reviewed court decisions, Department of Justice objection letters, and statistical reports that spanned the time period from 1975 through 2013.

The State Defendants imply that Dr. Arrington's analysis is flawed because he did not review tens of thousands of pages of preclearance documents submitted by Texas jurisdictions from 1975 to 2013.  Defs.' Mem. at 6.  The purpose of Dr. Arrington's review was to consider Texas's history of discrimination in voting; he did not attempt to opine on whether the Department of Justice's objections were proper.  Arrington Decl. ¶69; *see also* Theodore Arrington Dep. at 296:1-5, May 8, 2014 (Ex. H) [hereinafter "Arrington Dep."] (explaining that he is not an attorney and unable to substitute his expertise for that of either the Department of Justice or the D.C. District Court.).  Moreover, even if the State Defendants' arguments were correct, they would go to the weight to be afforded Dr. Arrington's testimony, not its admissibility.  *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 354 (5th Cir. 2007) (failure to rely on or consider the "best" or "most recent" or "all" the evidence available goes to the weight and credibility, not the admissibility, of an expert's opinions).

---

bibliography of "published or written works related to how to determine the intent of a legislature or a legislative body."  Arrington Dep. at 67:19-68:25; *see also* "Selected References on Intent," attached to the Declaration of Dr. Theodore Arrington in *South Carolina v. United States,* No. 12-cv-203 (D.D.C.) (Ex. I).

### D.  Dr. Arrington's Testimony is Relevant.

Dr. Arrington's testimony is admissible because it will assist the Court in resolving a material factual question while also remaining well within the confines for admissible expert testimony.  It is well-settled that expert witnesses may provide opinion testimony about any relevant factual issue in a case, including outcome-determinative factual disputes.  Fed. R. Evid. 704(a) ("An opinion is not objectionable just because it embraces an ultimate issue."); *In re Actos Products Liab. Litig.,* 12-cv-00064, 2014 WL 120973 at *13 (W.D. La. Jan. 10, 2014). The relevancy requirement ensures that the expert testimony will actually "assist the trier of fact to understand the evidence or to determine a fact in issue."  *Daubert*, 509 U.S. at 589.  Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.

Dr. Arrington's testimony will be helpful to this Court.  In reaching his opinions, he not only has synthesized data, analyzed redistricting plans, examined written reports, and reviewed academic literature and record evidence, but he also has drawn on his vast redistricting experience.  Dr. Arrington is uniquely qualified to analyze the effect and purpose of legislative redistricting plans that split precincts, overpopulate districts, and diminish minority voting strength, among other things.  Indeed, it would be virtually impossible for someone with no voting-related expertise to conduct a similar analysis and offer the same reasoned and reliable testimony that Dr. Arrington will provide in this case.

The State Defendants' assertion that Dr. Arrington's testimony is irrelevant and nothing more than a "mere summary of evidence already before the court," Defs.' Mem. at 10, is specious and wholly without merit.  During the Section 5 trial in the D.C. District Court, the

9

three-judge panel emphasized that the value of expert analysis lies in a political scientist's ability to place this information in the context of "demographics, registration records, voting patterns, alternative redistricting plans and the like with respect to multiple voting districts across the expanse of Texas." *Id*. at 7; *see also Brown v. Entm't Merchants Ass'n*, 131 S. Ct. 2729, 2769 (2011) (Breyer, J., dissenting) (noting that most judges lack "social science expertise"); *Major v. Treen*, 700 F. Supp. 1422, 1437 (E.D. La. 1988) (distinguishing "talents as an attorney" from "talents as a political scientist" in Voting Rights Act litigation).

Dr. Arrington's testimony will provide this Court with the same "context" described by the D.C. District Court. Far from merely reciting "verbatim accounts of emails and the Texas legislative record," Defs.' Mem. at 11, Dr. Arrington's testimony will provide the Court with a sophisticated assessment of the redistricting plans based on the context in which they were drafted. *See, e.g.*, Arrington Decl. ¶¶ 22-24 (illustrating Texas's dual standard for defining Hispanic opportunity districts); *id*. ¶¶ 26-29 (explaining how Texas cracked concentrations of Hispanics to diminish their voting strength); *id.* ¶¶ 28, 31-32 (explaining the precision with which precincts were split and how these splits are unexplainable on grounds other than race); *id*. ¶¶ 40-48 (discussing the effect and purpose behind the State's disparate treatment of the county line rule); *id*. ¶¶ 49-53 (explaining the effect and purpose of restricting Hispanic representation in Dallas County in the 2011 House plan, including an analysis of split precincts); *id*. ¶¶ 57-59 (explaining the effect and purpose of the pattern of population deviations in the 2011 House plan).

## III.   CONCLUSION

For the reasons above, this Court should deny the State Defendants' motion.

Date: June 25, 2014

Respectfully submitted,

ROBERT L. PITMAN  
United States Attorney  
Western District of Texas

JOCELYN SAMUELS  
Acting Assistant Attorney General  
Civil Rights Division

*/s/ Michelle A. McLeod*  
T. CHRISTIAN HERREN, JR.  
TIMOTHY F. MELLETT  
BRYAN L. SELLS  
JAYE ALLISON SITTON  
DANIEL J. FREEMAN  
MICHELLE A. MCLEOD  
ERIN M. VELANDY  
Attorneys, Voting Section  
Civil Rights Division  
U.S. Department of Justice  
NWB Room 7149  
950 Pennsylvania Avenue, N.W.  
Washington, D.C. 20530  
Telephone: (202) 305-0115  
Facsimile: (202) 307-3961  
Michelle.McLeod@usdoj.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 25, 2014, I served a true and correct copy of the foregoing via the Court's ECF system on the following counsel of record:

David R. Richards
Richards Rodriguez & Skeith, LLP
davidr@rrsfirm.com

Richard E. Grey III
Gray & Becker, P.C.
rick.gray@graybecker.com

*Counsel for Perez Plaintiffs
and Plaintiff-Intervenors Pete Gallego and
Filemon Vela Jr.*

Luis Roberto Vera, Jr.
Law Offices of Luis Roberto Vera, Jr. &
   Associates
lrvlaw@sbcglobal.net
George Joseph Korbel
Texas Rio Grande Legal Aid, Inc.
gkorbel@trla.org

*Counsel for Plaintiff League of United Latin
American Citizens*

John T. Morris
johnmorris1939@hotmail.com

*Pro Se Plaintiff*

Nina Perales
Marisa Bono
Nicolas Espiritu
Mexican American Legal Defense
   and Education Fund
nperales@maldef.org
mbono@maldef.org
nespiritu@maldef.org

Mark Anthony Sanchez
Robert W. Wilson
Gale, Wilson & Sanchez, PLLC
masanchez@gws-law.com
rwwilson@gws-law.com

*Counsel for Plaintiff Latino Redistricting
Task Force*

Jose Garza
Law Office of Jose Garza
garzpalm@aol.com

Mark W. Kiehne
Ricardo G. Cedillo
Davis, Cedillo & Mendoza
mkiehne@lawdcm.com
rcedillo@lawdcm.com

Joaquin G. Avila
Seattle University School of Law
avilaj@seattleu.edu

Cynthia B. Jones
Jones Legal Group, LLC
jones.cynthiab@gmail.com

*Counsel for Plaintiff Mexican American
Legislative Caucus*

| | |
|---|---|
| Karen M. Kennard<br>City of Austin Law Department<br>karen.kennard@ci.austin.tx.us<br><br>Max Renea Hicks<br>Law Office of Max Renea Hicks<br>rhicks@renea-hicks.com<br><br>Manuel Escobar, Jr.<br>Manuel G. Escobar Law Office<br>escobarm1@aol.com<br><br>Marc Erik Elias<br>Abha Khanna<br>Perkins Coie LLP<br>akhanna@perkinscoie.com<br>melias@perkinscoie.com<br><br>S. Abraham Kuczaj, III<br>Stephen E. McConnico<br>Sam Johnson<br>Scott Douglass & McConnico, LLP<br>akuczaj@scottdoug.com<br>smcconnico@scottdoug.com<br>sjohnson@scottdoug.com<br><br>David Escamilla<br>Travis County Ass't Attorney<br>david.escamilla@co.travis.tx.us<br><br>*Counsel for Rodriguez Plaintiffs* | Gerald Harris Goldstein<br>Donald H. Flanary, III<br>Goldstein, Goldstein and Hilley<br>ggandh@aol.com<br>donflanary@hotmail.com<br><br>Paul M. Smith<br>Michael B. DeSanctis<br>Jessica Ring Amunson<br>Jenner & Block LLP<br>psmith@jenner.Com<br>mdesanctis@jenner.Com<br>jamunson@jenner.Com<br><br>J. Gerald Hebert<br>Law Office of Joseph Gerald Hebert<br>hebert@voterlaw.com<br><br>Jesse Gaines<br>Law Office of Jesse Gaines<br>gainesjesse@ymail.com<br><br>*Counsel for Quesada Plaintiff-Intervenors*<br><br>Rolando L. Rios<br>Law Offices of Rolando L. Rios<br>rrios@rolandorioslaw.com<br><br>*Counsel for Plaintiff-Intervenor Henry Cuellar* |

Gary L. Bledsoe
Law Office of Gary L. Bledsoe
garybledsoe@sbcglobal.net

Victor L. Goode
NAACP
vgoode@naacpnet.org

Robert Notzon
Law Office of Robert Notzon
robert@notzonlaw.com

Anita Sue Earls
Allison Jean Riggs
Southern Coalition for Social Justice
allison@southerncoalition.org
anita@southerncoalition.org

*Counsel for Plaintiff-Intervenor Texas State Conference of NAACP Braches*

Chad W. Dunn
K. Scott Brazil
Brazil & Dunn
chad@brazilanddunn.com
scott@brazilanddunn.com

*Counsel for Plaintiff-Intervenor Texas Democratic Party*

John K. Tanner
John Tanner Law Office
3743 Military Rd. NW
Washington, DC 20015

*Counsel for Plaintiff-Intervenor Texas Legislative Black Caucus*

Hector De Leon
Benjamin S. De Leon
De Leon & Washburn, P.C.
hdeleon@dwlawtx.com
bdeleon@dwlawtx.com

Eric Christopher Opiela
Eric Opiela PLLC
eopiela@ericopiela.com

Christopher K. Gober
Michael Hilgers
Gober Hilgers PLLC
cgober@goberhilgers.com
mhilgers@goberhilgers.com

James Edwin Trainor, III
Beirne, Maynard & Parsons, LLP
ttrainor@bmpllp.com

Joseph M. Nixon
Beirne Maynard & Parsons LLP
jnixon@bmpllp.com

*Counsel for Plaintiff-Intervenors Joe Barton et al.*

David Mattax
Patrick K. Sweeten
Angela V. Colmenero
Matthew Frederick
Ana M. Jordan
Jennifer Settle Jackson
Adam Bitter
William T. Deane
Summer R. Lee
Michael B. Neill
Office of the Texas Attorney General
david.mattax@oag.state.tx.us
patrick.sweeten@texasattorneygeneral.gov
angela.colmenero@
texasattorneygeneral.gov
matthew.frederick@
texasattorneygeneral.gov
ana.jordan@oag.state.tx.us
jennifer.jackson@texasattorneygeneral.gov
adam.bitter@texasattorneygeneral.gov
bill.deane@texasattorneygeneral.gov
summer.lee@texasattorneygeneral.gov
michael.neill@texasttorneygeneral.gov

*Counsel for Defendants State of Texas and Rick Perry and Defendant-Intervenors David Dewhurst, Joe Strauss, and John Steen*

Donna Garcia Davidson
Donna G. Daviddson Law Firm
donna@dgdlawfirm.com

Frank M. Reilly
Potts & Reilly, LLP
reilly@pottsreilly.com

*Counsel for Defendant-Intervenors Steve Munisteri*

Kent M. Adams
Lewis, Brisbois, Bisgaard, & Smith LLP
kadams@lbbslaw.com

*Counsel to Defendant-Intervenor Sarah M. Davis*

Clarkson F. Brown
Bexar County District Attorney's Office,
101 W Nueva, Suite 5049
San Antonio, TX 78205
(210) 335-2150
clarkb@bexar.org

*Counsel for Amicus Curiae Bexar County*

Ned Bennet Sandlin
Texas Municipal League
bennett@tml.org

*Counsel for Amicus Curiae Texas Municipal League*

Manuel A. Pelaez-Prada
Pelaez Prada, PLLC
mpp@lonestaradr.com

*Counsel for Amicus Curiae San Antonio Hispanic Chamber of Commerce*

*/s/ Michelle A. McLeod*
MICHELLE A. McLEOD
Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice
NWB Room 7149
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Michelle.McLeod@usdoj.go