UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| SHANNON PEREZ; HAROLD DUTTON, JR.; GREGORY TAMEZ; SERGIO SALINAS; CARMEN RODRIGUEZ; RUDOLFO ORTIZ; NANCY HALL and DOROTHY DEBOSE<br><br>Plaintiffs<br><br>v.<br><br>STATE OF TEXAS; GREG ABBOTT, in his official capacity as Governor of the State of Texas; DAN PATRICK, in his official capacity as Lieutenant Governor of the State of Texas; JOE STRAUS, in his official capacity as Speaker of the Texas House of Representatives; CARLOS H. CASCOS, in his official capacity as Secretary of State of the State of Texas<br><br>Defendants | CIVIL ACTION NO.<br>**11-CA-360-OLG-JES-XR**<br>CONSOLIDATED ACTION<br>[Lead case] |

**O R D E R**

Pending before the Court is the Conditional Motion for Preliminary Injunction on Implementation of 2013 Redistricting Plans for 2016 Election Cycle (docket nos. 1319-1320) filed by the LULAC plaintiffs, NAACP plaintiffs, Perez plaintiffs, Quesada plaintiffs, and Rodriguez plaintiffs. The United States, MALC, Texas Latino Redistricting Task Force, and the Congresspersons did not join in the motion. Defendants filed a response in opposition (docket nos. 1321-1322) and the movants filed a reply (docket no. 1323). After reviewing the record, the parties' briefs, and the applicable law, the Court finds that status quo should not be altered and the motion for preliminary injunction should be DENIED. The 2016 elections will proceed as scheduled, without interruption or delay, under plans H358 and C235.

Plaintiffs seek to enjoin the implementation of the 2013 Texas House and Congressional redistricting plans (H358 and C235) for the 2016 elections. To prevail on their motion, the moving plaintiffs must satisfy the four part test for preliminary injunctive relief: (1) that they are likely to succeed on the merits; (2) that they are likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 374 (2008); *Texans for Free Enterprise v. Tex. Ethics Comm'n*, 732 F.3d 535, 536-37 (5th Cir. 2013); FED. R. CIV. P. 65.

This case began with legal challenges to redistricting plans H283 and C185, enacted by the 82nd Texas legislature and signed into law on June 17 and July 18, 2011. *See* docket no. 275. The undersigned three judge panel held an expedited bench trial on the merits of the claims against the 2011 plans in mid-September 2011. Docket nos. 301, 305, 309-311, 332, 336. However, the law in effect at that time precluded the Court from issuing a decision on the merits until there was a determination on Section 5 preclearance. At the end of September 2011, the Court enjoined implementation of the 2011 plans because they had not been precleared. Docket no. 380. In October 2011, the Court undertook the task of devising interim court drawn plans for the 2012 elections. At the end of November 2011, a majority of the Court adopted plans H302 and C220 as interim plans for the 2012 elections. Docket nos. 528, 544. Defendants appealed to the United States Supreme Court, which stayed implementation of the interim plans pending a decision. Docket no. 562. In January 2012, the Supreme Court vacated the orders implementing the interim plans, and remanded with instructions to redraw the plans under the following standards and guidelines: (1) for those districts being challenged under the Constitution and Section 2, the districts drawn by the State would not be altered except to the extent that plaintiffs could show a likelihood of success on the merits (i.e. the traditional preliminary injunction standard); and (2) for those districts being challenged under Section 5 in the District of Columbia, the State's plan would

not be altered unless there was a "reasonable probability" that the plan would fail to gain Section 5 preclearance; in other words, the Section 5 challenges were "not insubstantial." *Perez v. Perry*, 132 S. Ct. 934 (2012)(per curiam). Docket no. 575.

In February 2012, the Court resumed the process of devising a second set of interim court drawn plans, guided by the standards in the Supreme Court's opinion. After extensive hearings and briefing, and tremendous cooperation from parties on both sides, the Court adopted plans H309 and C235 as interim plans for the 2012 elections. Docket nos. 681-682; 690-691. None of the parties appealed. About six months later, the LULAC plaintiffs sought to stay implementation of the Congressional plan, but this Court and the Supreme Court both denied the request. Docket nos. 718, 722. Thus, plans were finally in place for the 2012 elections, but it was the third set of redistricting plans in eight months. Many of the deadlines for the federal, state, county, and local elections were altered during the 2012 election cycle and there was great uncertainty among election officials, candidates, and voters as a result of the change in redistricting plans. *See* docket nos. 486, 558, 683, 685, 689, 703.

In August 2012, the D.C. district court issued its preclearance decision on the 2011 plans. *Texas v. United States*, 887 F. Supp. 2d 133 (D.D.C. 2012), *vacated and remanded*, 133 S. Ct. 2885 (2013). On June 23, 2013, the 83rd Texas legislature adopted plans H358 and C235 and the bills were signed into law on June 26, 2013. On June 25, 2013, the U.S. Supreme Court issued its decision in *Shelby County, Alabama v. Holder*, 133 S. Ct. 2612 (2013), holding the coverage formula in Section 4(b) of the Voting Rights Act unconstitutional and thus relieving the State of Texas from its legal obligation to seek preclearance under Section 5. Thus, the 2013 plans are not subject to Section 5 preclearance.

In September 2013, the Court granted plaintiffs leave to amend and/or supplement their pleadings to assert claims against the 2013 redistricting plans under Section 2 and the Constitution, and to assert relief under Section 3(c) of the Voting Rights Act. Docket no. 886. At the same time, the Court denied defendants' request to dismiss the 2011 claims as moot. *Id.* In its September 2013 order,

3

the Court also held that there was insufficient time for a full, fair, and final review of all issues prior to the 2014 elections and the 2013 plans (H358 and C235) could be used on an interim basis for the 2014 elections. *Id.* The Court explained as follows:

> Plan C235 was adopted by the Court as the interim plan for the districts used to elect representatives in 2012 to the United States House of Representatives. Docket no. 681. The Court adopted the plan after making the requisite preliminary findings as required by the Supreme Court's decision in *Perry v. Perez.* Docket no. 691. When the Texas Legislature met during special session, it adopted Plan C235 in its entirety without any changes. Thus, to the extent that *Perry v. Perez* requires the Court to conduct a preliminary injunction analysis (i.e., likelihood of success on the merits), it has already done so. And to the extent that *Perry v. Perez* requires the Court to defer to the policy judgment of the Texas Legislature, it has done so.
>
> Plan H309 was adopted by the Court as the interim plan for the districts used to elect representatives to the Texas House of Representatives in 2012. Docket no. 682. The Court adopted Plan H309 after making the requisite preliminary findings as required by the Supreme Court's decision in *Perry v. Perez.* Docket no. 690. When the Texas Legislature met during special session, it made slight changes to Plan H309, and newly enacted Plan H358 incorporated those changes. The changes to the Texas House plan affect very small portions of Tarrant, Dallas, Harris, and Webb counties. Of the 150 districts in the Texas House map, the lines of only 14 districts shifted slightly. Of those 14 districts, the loss or gain of registered voters is minimal. Because the changes to the Texas House plan were so minimal, only one new legal challenge arose. That challenge, brought by the Latino Task Force, is a claim that the Hispanic voting strength in HD 90 has been diluted.
>
> Again, to the extent that *Perry v. Perez* requires the Court to defer to the policy judgments of the Texas Legislature, it has done so. And the Court has already conducted a preliminary injunction analysis of Plaintiffs' legal challenges, with the exception of the new challenge to HD 90.
>
> To fully comply with the mandate in *Perry v. Perez*, the Court has conducted a preliminary review of the new challenge to HD 90 and is unable to conclude that the Latino Task Force is likely to succeed on the merits of its claim.

Docket no. 886, pp. 22-24.

The Court also noted that Section 5, previously an impediment to implementation of the enacted plans, was no longer an obstacle. And while some plaintiffs are requesting equitable relief under Section 3(c) of the Voting Rights Act, coverage under Section 3(c) is not triggered unless or until the Court finds that the requirements of that section have been met and equitable relief is appropriate. *See* 42 U.S.C.

4

1973a.[1]  Thus, the Court allowed the 2014 elections to proceed under the 2013 redistricting plans on an interim basis.

Thereafter, the parties continued litigating the claims relating to the 2011 and 2013 plans.  Due to the number of claims, the complexity of the issues, and the volume of evidence, the Court decided to hold a second trial on the claims against 2011 plans and then make a final determination on those claims before proceeding to trial on the claims against the 2013 plans.  Docket nos. 1052, 1123.  The Court held its second trial on the merits of the claims against the 2011 House plan (H283) and Congressional plan (C185) in July and August 2014.  Docket nos. 1166-1171, 1192, 1209, 1212-1217, 1243.  The parties continued to supplement the record after trial, and filed their post trial briefs and proposed findings of fact and conclusions of law.  The Court has been working diligently and has made substantial progress toward resolution of the claims on the 2011 plans; however, it has not yet reached a final decision.  Trial on the merits of the claims against the 2013 plans has not been scheduled, and legal challenges to the 2013 plans will not be resolved before the 2016 election cycle.

While movants' concerns about the upcoming 2016 elections are understandable, they must meet all four legal requirements for preliminary injunctive relief.  After due consideration, the Court find that movants have not shown a likelihood of success on the merits or that the threatened injury outweighs the harm that will come from delaying the election and altering the district lines once again.

A.   Likelihood of success on the merits:

To reiterate, plan C235 was adopted by the Court in 2012 after making the requisite preliminary findings as required by the Supreme Court in *Perry v. Perez*.  Docket no. 691.  When the 83rd Texas Legislature met during special session, it adopted Plan C235 in its entirety without any changes.  Thus, the plan that movants seek to enjoin is the product of the Court's preliminary injunction analysis.

---

[1] Editorially transferred to 52 U.S.C. § 10302.

Movants have not shown that scrutinizing the same plan under the same preliminary injunction analysis would produce a different outcome today.

Likewise, the Court adopted plan H309 in 2012 after making the requisite preliminary findings as required by the Supreme Court in *Perry v. Perez*. Docket no. 690. When the 83rd Texas Legislature met during special session, it made slight changes to Plan H309, and newly enacted Plan H358 incorporated those changes. The only change that led to a new legal challenge was the change to HD 90, and that challenging party, Latino Task Force, is not a movant herein. Thus, the parts of plan H309 being challenged by the movants are the product of the Court's prior preliminary injunction analysis, and they have not shown that applying the same analysis today would produce a different result.

Movants assert that "[o]nce liability for [the 2011] plans is declared under the Constitution and Section 2, it is clear that the interim remedy adopted by the Court in 2012 and enacted by the State in 2013 (with only a modest variation in the House plan) fail to fully remedy the violations." Docket no. 1319, p. 3. However, the Court has not made a final decision on whether violations exist in the 2011 plans. A full and final remedy, after resolution of the merits, may differ from the plans that arose from the Court's preliminary analysis. But that is not the standard that applies for purposes of the instant motion.

Movants also claim they have demonstrated that the 2011 plans were enacted for an invidious racial purpose and the Court should invoke the bail-in provisions of Section 3 and require preclearance of the 2013 plans before allowing them to be used for any election. However, invoking the bail-in provisions of Section 3(c) requires a prior determination on the merits of the constitutional claims, and not just a preliminary analysis under rule 65.

     B.    The balance of harm/threatened injury:

As the defendants have noted, the 2016 election cycle has already begun. The filing period for the office of precinct chair opened on September 15, 2015. The filing period for all other offices opens

6

on November 14, 2015.[2]  Even if movants could show a likelihood of success on the merits, the Court must balance the need to protect voting rights that may be affected by the 2013 plans with the need to avoid the adverse effect on voting rights that comes with delay and confusion during election time.  If the Court enjoined the 2013 enacted plans and imposed yet another set of interim plans for the 2016 election, the shifting district and precinct lines would leave candidates in limbo, voters confused, and election officials with the burden of implementing new maps in a timely manner with very limited resources.  It would be extremely difficult to implement new interim plans without tremendous interruption to the 2016 election schedule.  The balance of equities does not tip in movants' favor.

For these reasons, the Conditional Motion for Preliminary Injunction on Implementation of 2013 Redistricting Plans for 2016 Election Cycle (docket nos. 1319-1320) filed by the LULAC plaintiffs, NAACP plaintiffs, Perez plaintiffs, Quesada plaintiffs, and Rodriguez plaintiffs is DENIED.  The Court ORDERS that the 2013 enacted plans for the United States House of Representatives (C235) and the Texas House of Representatives (H358) are to be used as interim plans for the 2016 elections.  The plans are being used on an interim basis only, and nothing in this order should be construed as a ruling on the merits of any claims, causes of action, requests for relief, or defenses that have been asserted in this consolidated action.

IT IS SO ORDERED this 6th day of November, 2015.

_____/s/_____  _____/s/_____
JERRY E. SMITH                       ORLANDO L. GARCIA
UNITED STATES CIRCUIT JUDGE          UNITED STATES DISTRICT JUDGE

_____/s/_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[2] http://www.sos.state.tx.us/elections/voter/2016-important-election-dates.shtml