IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| SHANNON PEREZ, *et al.*, <br><br>　　　　　Plaintiffs, <br><br>and <br><br>UNITED STATES of AMERICA, <br><br>　　　　　Plaintiff-Intervenor, <br><br>　　　v. <br><br>STATE OF TEXAS, *et al.*, <br><br>　　　　　Defendants. | Civil Action No. 5:11-cv-360 <br> (OLG-JES-XR) <br> Three-Judge Court <br> [Lead Case] |
| MEXICAN AMERICAN LEGISLATIVE CAUCUS, TEXAS HOUSE OF REPRESENTATIVES (MALC), <br><br>　　　　　Plaintiff, <br><br>　　　v. <br><br>STATE OF TEXAS,  *et al.*, <br><br>　　　　　Defendants. | Civil Action No. 5:11-cv-361 <br> (OLG-JES-XR) <br> Three-Judge Court <br> [Consolidated Case] |
| TEXAS LATINO REDISTRICTING TASK FORCE, *et al.*, <br><br>　　　　　Plaintiffs, <br><br>　　　v. <br><br>GREG ABBOTT, <br><br>　　　　　Defendant. | Civil Action No. 5:11-cv-490 <br> (OLG-JES-XR) <br> Three-Judge Court <br> [Consolidated Case] |

| | |
|---|---|
| MARGARITA V. QUESADA, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> GREG ABBOTT, *et al.*, <br><br> Defendants. | Civil Action No. 5:11-cv-592 <br> (OLG-JES-XR) <br> Three-Judge Court <br> [Consolidated Case] |
| JOHN T. MORRIS, <br><br> Plaintiff, <br><br> v. <br><br> STATE OF TEXAS, *et al.*, <br><br> Defendants. | Civil Action No. 5:11-cv-615 <br> (OLG-JES-XR) <br> Three-Judge Court <br> [Consolidated Case] |
| EDDIE RODRIGUEZ, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> GREG ABBOTT, *et al.*, <br><br> Defendants. | Civil Action No. 5:11-cv-635 <br> (OLG-JES-XR) <br> Three-Judge Court <br> [Consolidated Case] |

**UNITED STATES' ADVISORY CONCERNING**
*HARRIS V. ARIZONA INDEPENDENT REDISTRICTING COMMISSION*

The United States submits this advisory pursuant to the Court's Order (ECF No. 1329) inviting briefing on the impact of *Harris v. Arizona Independent Redistricting Commission*, 136 S. Ct. 1301 (2016), on this case.

The Supreme Court's decision in *Harris* does not directly affect the United States' claim before this Court. The United States has alleged and proven intentional vote dilution, which was not at issue in *Harris*. Nonetheless, *Harris* recognizes that Arizona underpopulated particular legislative districts for the express purpose of preserving minority voters' ability to elect their preferred candidates. A redistricting tool that one state applies to preserve minority electoral opportunities as required by federal statute may be used by another to impermissibly dilute minority voting strength. Thus, *Harris* sheds light on Texas's manipulation of district populations in the 2011 House Plan, which is part of the cumulative evidence of a discriminatory purpose to minimize minority voting strength.

## I. THE UNITED STATES HAS ALLEGED AND PROVEN INTENTIONAL VOTE DILUTION, NOT MALAPPORTIONMENT.

In *Harris*, appellants challenged Arizona's legislative redistricting plan "on the ground that the plan's districts [were] insufficiently equal in population," in violation of the Equal Protection Clause of the Fourteenth Amendment. 136 S. Ct. at 1304. Specifically, appellants argued that although the Arizona plan had a total population deviation between the largest and smallest districts of less than ten percent, the plan was malapportioned because deviations between districts had an illegitimate purpose. *See id.* at 1307; *cf. Cox v. Larios*, 542 U.S. 947 (2004). Rejecting appellants' claim, the Supreme Court found no clear error in the district court's well-supported finding that "the population deviations [in Arizona] were primarily a result of good-faith efforts to comply with the Voting Rights Act" and that because such efforts

reflect a legitimate basis for population deviations, the Arizona plan complied with the Equal Protection Clause. *Harris*, 136 S. Ct. at 1309 (internal quotation marks and citation omitted).

The United States has alleged and proven that Texas adopted its 2011 Congressional Plan and 2011 House Plan with the illegitimate purpose of diluting minority voting strength in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, which enforces the voting guarantees of the Fourteenth and Fifteenth Amendments to the United States Constitution. U.S. Post-Trial Br. (ECF No. 1279); U.S. Compl. (ECF No. 907). Unlike appellants in *Harris*, the United States' claim here is intentional vote dilution on the basis of race and language minority status—not malapportionment.[1] Thus, *Harris* erects no barrier to the United States' claims here.

## II. THE UNITED STATES' CLAIM ONLY REQUIRES PROOF THAT RACIAL DISCRIMINATION WAS A MOTIVATING FACTOR.

*Harris* established a standard of proof for malapportionment claims with comparatively minor population deviations, but the United States need not meet the *Harris* standard to prove its intentional vote dilution claims. Specifically, *Harris* requires plaintiffs bringing a malapportionment claim against a legislative plan with an overall population deviation of less than 10 percent to prove that the deviation "reflects the predominance of illegitimate reapportionment factors." *Id.* That predominance requirement, however, does not apply to an intentional vote dilution claim. Like the Equal Protection claim recognized in *Shaw v. Reno*, 509 U.S. 630 (1993), a malapportionment claim is analytically distinct from a claim of intent to injure based on race or ethnicity. *Cf. Miller v. Johnson*, 515 U.S. 900, 911 (1995). As in all other claims of intentional racial discrimination in other contexts, "racial discrimination need only be one purpose, and not even a primary purpose" for a redistricting plan to violate Section

---

[1] MALC and the Perez Plaintiffs assert malapportionment claims against the 2011 House Plan. *See, e.g.*, Jt. Perez and NAACP Br. (ECF No. 1303); MALC Proposed Findings of Fact and Conclusions of Law 45 (ECF No. 1275); Perez Post-Trial Br. 5-9 (ECF No. 1263); MALC 3d Am. Compl. ¶ 81 (ECF No. 897).

2. *United States v. Brown*, 561 F.3d 420, 433 (5th Cir. 2009).  As a result, while this Court must undertake the "inherently difficult[]" task of measuring factors that account for district boundaries, *Harris*, 136 S. Ct. at 1307, there is no need to compare the relative weight of those factors or to determine that a particular purpose was dominant, primary, or predominant, *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265-66 (1977).   The presence of a discriminatory purpose underlying the 2011 Congressional Plan and 2011 House Plan establishes a violation of the Voting Rights Act.

**III.     *HARRIS* ILLUSTRATES THE UTILITY OF POPULATION DEVIATIONS TO IMPACT MINORITY ELECTORAL OPPORTUNTIES.**

Beyond setting standards for malapportionment claims, *Harris* demonstrates how population deviations may be used to impact the opportunity of minority voters to elect their preferred candidates.  Recognizing that "almost all the Democratic-leaning districts [in the Arizona plan] are somewhat underpopulated and almost all the Republican-leaning districts are somewhat overpopulated," the Court held that these deviations were nonetheless "explained by the [Arizona Independent Redistricting] Commission's efforts to maintain at least 10 ability-to-elect districts."  *Harris*, 136 S. Ct. at 1310.  The Court further illustrated:

> The Commission may have relied on data from its statisticians and Voting Rights Act expert to create districts tailored to achieve preclearance in which minority voters were a larger percentage of the district population. That might have necessitated moving other voters out of those districts, thereby leaving them slightly underpopulated.

*Id.*  But of course, a redistricting mechanism that can be used in a permissible manner to preserve minority voting opportunities as required by statute may also be used deliberately to diminish opportunities for minority voters to elect their preferred candidates.  *Compare White v. Regester*, 412 U.S. 755, 767, 769 (1973) (mandating the division of Dallas County and Bexar County to create minority opportunity districts needed to cure invidious discrimination), *with LULAC v.*

3

*Perry*, 548 U.S. 399, 424, 440 (2006) (describing the division of Webb County in a manner that thwarted Latino political mobilization). Thus, nothing in *Harris* suggests that population deviations cannot serve as a piece of evidence that proves discriminatory purpose. In this case, alongside other direct and circumstantial evidence presented at trial, the State's use of population deviations in Hidalgo, Nueces, and Dallas counties helps prove that Texas enacted the 2011 House Plan with a discriminatory purpose. *See Arlington Heights*, 429 U.S. at 266-68.

In Hidalgo County, population deviations are strong cumulative circumstantial evidence of a discriminatory strategy. District 41 had a population of 160,238, which was 7,399 less than the ideal district size. In fact, District 41 was the *only* district in Hidalgo County below the ideal district size and contained 15,145 fewer people than District 39, the most populous district in the County. U.S. Proposed Findings of Fact and Conclusions of Law (U.S. PFOF) ¶¶ 430-432 & tbl.2 (ECF No. 1278). District 41 also had the highest Anglo voting-age population (VAP) share among the four Hidalgo County districts and a Spanish-Surnamed voter registration (SSVR) rate 19.2 percentage points lower than the next most Anglo district in the County. U.S. PFOF ¶¶ 427-429. This strongly suggests that Texas drew District 41 to include as many Anglo voters as could be found in Hidalgo County and then—once there were no concentrations of Anglo voters left to add—ceased adding additional Hispanic population that might have preserved Hispanic voters' electoral opportunity in the district. U.S. PFOF ¶¶ 422, 430. Critically, Texas excluded heavily Hispanic portions of precincts that favored Republicans, which further reduced the District's population and cannot be explained on partisan grounds. U.S. PFOF ¶¶ 433, 437-439, 445, 458-462. Together with the exclusion of Hispanic-preferred representatives from the Hidalgo County districting process, removal of the incumbent's residence from District 41, open disregard for the general policy against splitting precincts, and the contradictory testimony

offered by Ryan Downton and Representative Aaron Peña concerning the origin of the racially divided precinct splits, this evidence proves that Texas intended to reduce or eliminate Hispanic voters' ability to elect their preferred candidate in District 41 of the 2011 House Plan.  U.S. PFOF ¶¶ 419-471.

A similar population deviation pattern appears in Nueces County.  The 2011 House Plan divided Nueces County into two districts: overpopulated District 34, a heavily Hispanic district with a population of 173,149, and adjacent underpopulated District 32, a district with majority-minority VAP but an Anglo registered voter-majority and a population of 167,074.  U.S. PFOF ¶¶ 484-486; U.S. Ex. 374 at 2.  By excluding additional Hispanic voters from District 32, Texas furthered its aim to eliminate the preexisting opportunity for Hispanic voters to elect their preferred candidates from two districts in Nueces County.  U.S. PFOF ¶¶ 477, 482-493.  *Harris* separately supports a finding of intentional vote dilution in Nueces County because—in concluding that Arizona made a "good-faith effort[] to comply with the Voting Rights Act"—the Court specifically noted that Arizona followed the advice of its "Voting Rights Act specialist." 136 S. Ct. at 1309.  In contrast, Texas decided, against the advice of the Texas Legislative Council, to prioritize the Texas County Line Rule, Tex. Const. art. III, § 26, over the Voting Rights Act.  Alongside proof that House District 32 is oddly configured to exclude potential Hispanic candidates (both Democrat and Republican), this evidence cumulatively proves that Texas intended to eliminate Hispanic voters' ability to elect their preferred candidates from two Nueces County house districts.  U.S. PFOF ¶¶ 472-493.

In western Dallas County, Texas maximized the population deviation in three districts (House Districts 103, 104, and 105) to prevent the emergence of another district in which minority voters could elect their candidates of choice.  House Districts 103 and 104—both

unnecessarily packed with Hispanic voters—were also overpopulated, with District 103 precisely 5.0 percent over the ideal district size.  U.S. PFOF ¶¶ 524, 534-535, 540; *see also Harris*, 136 S. Ct. at 1308 (holding that Section 5 analysis may "count as ability-to-elect districts 'crossover' districts in which white voters combine their votes with minorities").  While Hispanic voters were on the precipice of electing minority candidates of choice in another district in western Dallas County under the 2001 redistricting configuration, U.S. PFOF ¶¶ 519-522, the 2011 House Plan increased the Anglo VAP share of House District 105 by five percentage points, restoring Anglo voting strength that had eroded over the prior decade of demographic change.  U.S. PFOF ¶¶ 521, 529, 531-532; *cf. LULAC v. Perry*, 548 U.S. at 440-41.  Texas split precincts in House District 105 to keep the more Anglo portions and excise some Hispanic neighborhoods.  U.S. PFOF ¶¶ 531-532, 536-539.  With Districts 103 and 104 at or near the maximum deviation, however, there was a limit to state's ability to shed Hispanic voters from District 105 into Districts 103 and 104.  So instead, Texas added additional Anglo areas to dilute Hispanic electoral influence.  Specifically, Texas also drew a narrow extension from the core of District 105 south towards less Hispanic areas and then expanded the District outward to capture Anglo voters.  U.S. PFOF ¶ 532.  Adding these Anglo areas increased the population of District 105 to 4.8 percent above the ideal district size.  U.S. PFOF ¶ 541.  This evidence establishes that it is more likely than not that Texas intentionally eliminated an emerging Hispanic electoral opportunity.

### IV.    VOTING RIGHTS ACT COMPLIANCE DOES NOT EXPLAIN DEVIATIONS IN THE 2011 HOUSE PLAN.

Texas cannot plausibly argue that its use of population deviations in the 2011 House Plan—and specifically in Hidalgo County, Nueces County, and western Dallas County—"were primarily a result of good-faith efforts to comply with the Voting Rights Act," *cf. Harris*, 136 S.

6

Ct. 1309, let alone wholly driven by nondiscriminatory motives. In each case, the State packed minority voters into overpopulated districts to negate explosive minority population growth or make up for slow growth in Anglo communities, rather than, *e.g.*, underpopulating districts with concentrations of minority voters to preserve their electoral opportunities. *See* Part III, *surpa*. Overall, the 2011 House Plan reduced the number of districts in which minority voters could elect their candidates of choice. *See* Order (ECF No. 690).

For the foregoing reasons, the United States respectfully submits that to the extent that *Harris* has any bearing on this case, it provides further support for the United States' claim that the 2011 House Plan intentionally diluted the votes of Texas's minority citizens.

Date:  May 10, 2016

                                                        Respectfully submitted,

| | |
|---|---|
| RICHARD L. DURBIN, JR.<br>United States Attorney<br>Western District of Texas | VANITA GUPTA<br>Principal Deputy Assistant Attorney General<br>Civil Rights Division<br><br>*/s/ Daniel J. Freeman*<br>T. CHRISTIAN HERREN, JR.<br>TIMOTHY F. MELLETT<br>JAYE ALLISON SITTON<br>DANIEL J. FREEMAN<br>PATRICK M. HOLKINS<br>Attorneys<br>Voting Section, Civil Rights Division<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20530<br>(202) 305-4355 |

**CERTIFICATE OF SERVICE**

  I hereby certify that on May 10, 2016, I served a true and correct copy of the foregoing via the Court's ECF system on the following counsel of record:

David R. Richards
Richards Rodriguez & Skeith, LLP
davidr@rrsfirm.com

Richard E. Grey III
Gray & Becker, P.C.
rick.gray@graybecker.com

*Counsel for Perez Plaintiffs
and Plaintiff-Intervenors Pete Gallego and
Filemon Vela Jr.*

Luis Roberto Vera, Jr.
Law Offices of Luis Roberto Vera, Jr. &
 Associates
lrvlaw@sbcglobal.net
George Joseph Korbel
Texas Rio Grande Legal Aid, Inc.
gkorbel@trla.org

*Counsel for Plaintiff League of United Latin
American Citizens*

John T. Morris
johnmorris1939@hotmail.com

*Pro Se Plaintiff*

Nina Perales
Marisa Bono
Nicolas Espiritu
Mexican American Legal Defense
 and Education Fund
nperales@maldef.org
mbono@maldef.org
nespiritu@maldef.org

Mark Anthony Sanchez
Robert W. Wilson
Gale, Wilson & Sanchez, PLLC
masanchez@gws-law.com
rwwilson@gws-law.com

*Counsel for Plaintiff Latino Redistricting
Task Force*

Jose Garza
Law Office of Jose Garza
garzpalm@aol.com

Mark W. Kiehne
Ricardo G. Cedillo
Davis, Cedillo & Mendoza
mkiehne@lawdcm.com
rcedillo@lawdcm.com

Joaquin G. Avila
Seattle University School of Law
avilaj@seattleu.edu

Cynthia B. Jones
Jones Legal Group, LLC
jones.cynthiab@gmail.com

*Counsel for Plaintiff Mexican American
Legislative Caucus*

Karen M. Kennard
City of Austin Law Department
karen.kennard@ci.austin.tx.us

Max Renea Hicks
Law Office of Max Renea Hicks
rhicks@renea-hicks.com

Manuel Escobar, Jr.
Manuel G. Escobar Law Office
escobarm1@aol.com

Marc Erik Elias
Abha Khanna
Perkins Coie LLP
akhanna@perkinscoie.com
melias@perkinscoie.com

S. Abraham Kuczaj, III
Stephen E. McConnico
Sam Johnson
Scott Douglass & McConnico, LLP
akuczaj@scottdoug.com
smcconnico@scottdoug.com
sjohnson@scottdoug.com

David Escamilla
Travis County Ass't Attorney
david.escamilla@co.travis.tx.us

*Counsel for Rodriguez Plaintiffs*

Gerald Harris Goldstein
Donald H. Flanary, III
Goldstein, Goldstein and Hilley
ggandh@aol.com
donflanary@hotmail.com

Paul M. Smith
Michael B. DeSanctis
Jessica Ring Amunson
Jenner & Block LLP
psmith@jenner.Com
mdesanctis@jenner.Com
jamunson@jenner.Com

J. Gerald Hebert
Law Office of Joseph Gerald Hebert
hebert@voterlaw.com

Jesse Gaines
Law Office of Jesse Gaines
gainesjesse@ymail.com

*Counsel for Quesada Plaintiff-Intervenors*

Rolando L. Rios
Law Offices of Rolando L. Rios
rrios@rolandorioslaw.com

*Counsel for Plaintiff-Intervenor Henry Cuellar*

Gary L. Bledsoe
Law Office of Gary L. Bledsoe
garybledsoe@sbcglobal.net

Victor L. Goode
NAACP
vgoode@naacpnet.org

Robert Notzon
Law Office of Robert Notzon
robert@notzonlaw.com

Anita Sue Earls
Allison Jean Riggs
Southern Coalition for Social Justice
allison@southerncoalition.org
anita@southerncoalition.org

*Counsel for Plaintiff-Intervenor Texas State Conference of NAACP Braches*

Chad W. Dunn
K. Scott Brazil
Brazil & Dunn
chad@brazilanddunn.com
scott@brazilanddunn.com

*Counsel for Plaintiff-Intervenor Texas Democratic Party*

John K. Tanner
John Tanner Law Office
3743 Military Rd. NW
Washington, DC 20015

*Counsel for Plaintiff-Intervenor Texas Legislative Black Caucus*

Hector De Leon
Benjamin S. De Leon
De Leon & Washburn, P.C.
hdeleon@dwlawtx.com
bdeleon@dwlawtx.com

Eric Christopher Opiela
Eric Opiela PLLC
eopiela@ericopiela.com

Christopher K. Gober
Michael Hilgers
Gober Hilgers PLLC
cgober@goberhilgers.com
mhilgers@goberhilgers.com

James Edwin Trainor, III
Beirne, Maynard & Parsons, LLP
ttrainor@bmpllp.com

Joseph M. Nixon
Beirne Maynard & Parsons LLP
jnixon@bmpllp.com

*Counsel for Plaintiff-Intervenors Joe Barton et al.*

Scott Keller
Matthew Frederick
Angela V. Colmenero
Ana M. Jordan
Jennifer Settle Jackson
Adam Bitter
William T. Deane
Summer R. Lee
Michael B. Neill
Office of the Texas Attorney General
scott.keller@texasattorneygeneral.gov
matthew.frederick@
texasattorneygeneral.gov
angela.colmenero@
texasattorneygeneral.gov
ana.jordan@oag.state.tx.us
jennifer.jackson@texasattorneygeneral.gov
adam.bitter@texasattorneygeneral.gov
bill.deane@texasattorneygeneral.gov
summer.lee@texasattorneygeneral.gov
michael.neill@texasttorneygeneral.gov

*Counsel for Defendants State of Texas and Greg Abbott and Defendant-Intervenors David Dewhurst, Joe Strauss, and John Steen*

Donna Garcia Davidson
Donna G. Davidson Law Firm
donna@dgdlawfirm.com

Frank M. Reilly
Potts & Reilly, LLP
reilly@pottsreilly.com

*Counsel for Defendant-Intervenors Steve Munisteri*

Kent M. Adams
Lewis, Brisbois, Bisgaard, & Smith LLP
kadams@lbbslaw.com

*Counsel to Defendant-Intervenor Sarah M. Davis*

Clarkson F. Brown
Bexar County District Attorney's Office,
101 W Nueva, Suite 5049
San Antonio, TX 78205
(210) 335-2150
clarkb@bexar.org

*Counsel for Amicus Curiae Bexar County*

Ned Bennet Sandlin
Texas Municipal League
bennett@tml.org

*Counsel for Amicus Curiae Texas Municipal League*

Manuel A. Pelaez-Prada
Pelaez Prada, PLLC
mpp@lonestaradr.com

*Counsel for Amicus Curiae San Antonio Hispanic Chamber of Commerce*

*/s/ Daniel J. Freeman*
DANIEL J. FREEMAN
Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice
Room 7123 NWB
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
daniel.freeman@usdoj.gov