# In the United States District Court for the Western District of Texas

| | | |
|---|---|---|
| SHANNON PEREZ, ET AL. | § | |
| | § | |
| v. | § | SA-11-CV-360 |
| | § | |
| GREG ABBOTT, ET AL. | § | |

## ORDER ON THE NAACP PLAINTIFFS' MOTION TO SUBSTITUTE PLAINTIFF INTERVENOR

On this date, the Court considered the NAACP's Motion to Substitute Plaintiff-Intervenor (Docket no. 1348), the State's Response (Docket no. 1350), and the NAACP's reply (Docket no. 1355). After careful consideration, the motion is DENIED.

### BACKGROUND

Dr. Juanita Wallace ("Dr. Wallace") was a resident of Dallas County who brought claims as one of the NAACP plaintiffs in this lawsuit, alleging various violations of her right to vote. Docket no. 900 at 4. She resided in CD30 and HD100. *Id*. Notably, she alleges a violation of 42 U.S.C. § 1983.[1]

Dr. Wallace passed away on September 4, 2016. Docket no. 1347 at 2. By its present motion, the NAACP seeks to substitute Juan Wallace ("Wallace"), Dr. Wallace's daughter and heir, as a plaintiff-intervenor in this

---

[1] The NAACP's live complaint alleges violations of the Voting Rights Act in addition to a cause of action under § 1983. For purposes of the present motion, the parties only address Dr. Wallace's § 1983 claim, but the following analysis would be the same even if the NAACP is bringing VRA claims separately from the § 1983 claim.

1

action. Docket no. 1348. None of the pleadings indicate where Wallace resides, but at the April 27 status conference, the NAACP indicated that she lives in Mesquite, Texas, which is outside of her mother's districts.

## DISCUSSION

Federal Rule of Civil Procedure 25(a)(1) provides "If a party dies *and the claim is not extinguished*, the court may order substitution of the proper party" (emphasis added). The parties dispute whether Dr. Wallace's § 1983 claim was extinguished upon her death. The Court finds that the claim was extinguished, making substitution inappropriate.

### I. Whether Dr. Wallace's claim survives her death depends on Texas state law, not federal common law.

Defendants cast this dispute as a simple one regarding Texas' state survivorship law. The NAACP argues that Texas law allows Dr. Wallace's claim to survive, and also invokes survivorship rules of federal common law.

Initially, the Court dispels of the NAACP's reliance on federal common law. The NAACP argues that

> [t]he Supreme Court held that notwithstanding [its prior ruling in *Robertson v. Wegmann*, 436 U.S. 584 (1978) that survival of actions brought pursuant to 42 U.S.C. § 1983 is to be determined by the law of the forum state], the deterrence goals of § 1983 may require a court to allow an action to survive the death of the Plaintiff even if the action would not survive under state law. *See Carlson v. Green*, 446 U.S. 14, 24–25 (1980). In holding that the Plaintiffs' claims survived under federal common law, the *Carlson* Court explained: "*Robertson* expressly recognized that to prevent frustrations of the deterrence goals of § 1983 . . .

2

> '[a] state official contemplating illegal activity must always be prepared to face the prospect of a § 1983 action being filed against him.'" . . .
>
> Thus, . . . if the Defendants' [sic] were correct that Dr. Wallace's claims do not survive under Texas state law, federal law considerations in the circumstances of this case would nonetheless mandate allowing the substitution of [Wallace].

Docket no. 1355 at 3–4 (citations and some alterations original) (quoting *Robertson*, 436 U.S. at 592).

This argument misreads *Carlson*, which was based on *Bivens*, not § 1983. The *Carlson* Court expressly relied on the fact that "*Bivens* actions are a creation of federal law" to reason that "the question whether [the estate's] action survived [the decedent's] death is a question of federal law." *Carlson*, 446 U.S. at 23. *Carlson* adopted the circuit court's reasoning that survival of a *Bivens* claim despite a state survival statute to the contrary was a "federal common law rule." *Id.* at 24.

Unlike a *Bivens* claim, for which the Supreme Court fashioned a federal common law rule for survivorship, § 1983 claims are governed by a statute that turns to state law survivorship rules. "In 42 U.S.C. § 1988, Congress 'quite clearly instructs [federal courts] to refer to state statutes' when federal law provides no rule of decision for actions brought under § 1983." *Bd. of Regents of Univ. of State of N. Y. v. Tomanio*, 446 U.S. 478, 484 (1980) (alterations original) (quoting *Robertson* and citing *Carlson*). According to the

3

Fifth Circuit, § 1988 "provides that state common law is used to fill the gaps in administration of civil rights suits," including those brought under § 1983. *Pluet v. Frasier*, 355 F.3d 381, 383–84 (5th Cir. 2004). For survival purposes, § 1988 requires that "a party must have standing *under the state wrongful death or survival statutes* to bring a claim under 42 U.S.C. §§ 1981, 1983, and 1988." *Id.* (emphasis added). Because § 1988 expressly directs the Court to Texas' survival statute, federal common law provides no basis for the survivorship of Dr. Wallace's claim. The Court now turns to whether Texas law allows the claim to continue.

## II. Under Texas law, Dr. Wallace's § 1983 claim does not survive her death.

The Texas Survival Statute provides that "[a] cause of action for personal injury to the health, reputation, or person of an injured person does not abate because of the death of the injured person or because of the death of a person liable for the injury." TEX. CIV. PRAC. & REM. CODE § 71.021(a). Thus, Dr. Wallace's claim is not extinguished and her daughter may be substituted in this action only if her cause of action is for "personal injury to [her] health, reputation, or person." The Court holds that Dr. Wallace's § 1983 voting rights claim is not such a claim.

Some courts have more broadly recognized that § 71.021 allows certain civil rights claims to survive, particularly in the employment context. *See,*

4

*e.g., Upton Cty., Tex. v. Brown*, 960 S.W.2d 808, 818 (Tex. App.—El Paso 1997, no pet.) (permitting survival of a § 1983 First Amendment retaliation claim for damages under § 71.021); *Hamilton v. Rogers*, 573 F. Supp. 452, 452 (S.D. Tex. 1983) (permitting survival of Title VII claims for damages under § 71.021). But the NAACP does not provide any authority to show that a violation of one's voting rights is a "personal injury to [Dr. Wallace's] health, reputation, or person" within the meaning of the statute, and the Court has found none.[2]

Importantly, § 71.021 has only been extended to constitutional claims seeking relief that can be meaningfully granted, such as constitutional claims for damages. But where, as here, a voting rights plaintiff seeks prospective injunctive relief based on a likelihood of future or continued injury, the decedent cannot obtain relief. In this regard, *Hamilton* is illustrative. There, the plaintiff brought a Title VII action for racial discrimination against his

---

[2] The NAACP quotes the following language from *Caine v. Hardy*, 943 F.2d 1406, 1411 (5th Cir. 1991) (en banc): "[I]t is easy to conclude that all § 1983 actions are actions 'for the *recovery of damages* for the commission of an injury to the person' within the scope of [a comparable Mississippi survival statute]." 943 F.2d at 1411 (emphasis added). There are several problems with applying this logic to this case. Initially, this language appears to be dicta—before stating its rule, the Fifth Circuit analogized the specific employment law claim at issue to a wrongful discharge claim, which it found was covered by the survival statute. *Id*. at 1410. Even if this statement is not dicta, this Court is skeptical that the Fifth Circuit could have intended to pronounce such a broad, bright-line rule. Finally, and most importantly, the Fifth Circuit spoke only of claims "for the recovery of damages." *Id*. at 1411. As will be made clear, the Texas survival statute applies differently to claims for damages (as in *Caine*) than claims for injunctive relief (as here). Indeed, the *Caine* court specifically drew this distinction—"Obviously, [the deceased plaintiff's] quest for reinstatement of his medical privileges does not survive his death. Whether his prayer for money damages survives, on the other hand, is not such an easy question." *Id*. at 1410.

employer, seeking monetary and injunctive relief,[3] but died while the action was pending. *Hamilton*, 573 F. Supp. at 452–53. On a motion substitute the administratrix of the decedent's estate, the court focused on § 71.021 because "Texas does not have a survival statute tailored to cover the civil rights guaranteed under Texas law, and no reported case has examined the survival of civil rights under Texas law." *Id*. at 453–54. The court allowed substitution only for the decedent's damages claims, and denied the motion to substitute as to the claims for injunctive relief because "the injunctive relief requested cannot be fashioned in a manner to benefit plaintiff's successors." *Id*. at 454. As mentioned, the Fifth Circuit in *Caine v. Hardy* drew a similar distinction while interpreting Mississippi's survival statute. *See* 943 F.2d at 1410 ("Obviously, [the deceased plaintiff's] quest for [injunctive relief in the form of] reinstatement of his medical privileges does not survive his death. Whether his prayer for money damages survives, on the other hand, is not such an easy question."). Here, Dr. Wallace sought only injunctive relief in the challenged districts where she resided. Dr. Wallace did not seek damages. Even if the Court were to order relief in Dr. Wallace's districts, Dr. Wallace cannot obtain or benefit from that relief due to her passing, just as the deceased plaintiffs in *Hamilton* and *Caine* could not have possibly benefitted post mortum from the injunctive relief that they sought. This logic is

---

[3] "Plaintiff requested a preliminary and permanent injunction to enjoin the defendants from continuing to abridge plaintiff's rights." *Hamilton*, 573 F. Supp. at 454 n. 2.

6

particularly forceful in this case, as Dr. Wallace's daughter does not reside in the challenged districts, such that even she cannot directly benefit from the relief that her mother sought.

## CONCLUSION

For the foregoing reasons, the NAACP's Motion to Substitute Plaintiff-Intervenor (Docket no. 1348) is DENIED.

It is so ORDERED.

SIGNED this 1st day of May, 2017.

_____/s/_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE
ON BEHALF OF THE PANEL