UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| SHANNON PEREZ, et al. § | |
| § | |
| *Plaintiffs* § | |
| § | CIVIL ACTION NO. |
| v. § | 5:11-CV-0360-OLG-JES-XR |
| § | [Lead Case] |
| STATE OF TEXAS, et al. § | |
| § | |
| *Defendants* § | |

## PEREZ PLAINTIFFS' TRIAL BRIEF

The Perez Plaintiffs hereby submit their Trial Brief as follows:

1. Perez Plaintiffs have jointly filed initial disclosures in conjunction with the MALC parties and accordingly adopt the MALC Plaintiffs filing of their bench brief. We do not plan to call any separate witnesses and will rely upon the expert and fact witnesses and trial exhibits presented by MALC.

2. We challenge in this proceeding certain portions of HB358 as set forth below:

3. Perez Sixth Amended Complaint (Doc. No. 960, p.5, ¶ 27) identifies five counties in which legislative districts are challenged: Dallas, Harris, Fort Bend, Tarrant and Bell. With respect to standing, without repeating unnecessarily, we represent individual minority voters in each of these counties. We also represent LULAC in challenging HB358. The Mendoza Declaration (Doc. No. 1342), which has been received by the Court, establishes that LULAC has councils in Killeen, Fort Bend, Dallas, Harris and Tarrant Counties and that "multiple members of LULAC who are eligible voters in each of the Congressional and State Legislative Districts involved in this litigation." The Court has previously found that the Mendoza Declaration establishes requisite standing (Doc. No. 1365, p. 120.)

4.     Preliminarily, we note before a county by county analysis that the Court has construed our pleadings to be limited to claims of intentional discrimination in violation of Section 2 VRA and the Fourteenth Amendment. Although we would like to present claims of effect violations of §2, we will adopt the arguments put forth by MALC and the NAACP making those claims. The Court has found intentional discrimination in four of the counties we have in issue. The Court has also concluded "that §2 can require the creation of minority coalition districts." (Doc. No. 1365, pp. 8 and 16). It seems axiomatic that when a system is infected with intentional discrimination, it must be disestablished and a constitutional replacement installed.

5.     In the individual counties listed below, we list the fact findings and evidence the Court detailed in Doc. No. 1364. We will rely on those findings and the evidence that undergirds them in the upcoming trial, as well as the expert reports of Ed Martin (Joint Ex. 5) and George Korbel (Perez Ex. 133).

   1) Downton admitted using block-level racial shading in Dallas County. His denial of using elsewhere is not credible. Used block-level racial shading in Harris County. (Doc. 1364, p 7, ¶ 35)

   2) Mapdrawers' denial of Opiela input not credible. Evidence that "nudge" factor used. (Doc. 1364, p. 12, ¶ 61)

   3) Interiano's denial of using turnout data was not credible. (Doc. 1364, p. 12, ¶ 62)

   4) Interiano's testimony that he did not know how to use racial shading not credible. (Doc. 1364, p. 13, ¶ 63)

   5) Lichtman stated Plan H232 submitted in session created 8 additional minority districts – three in Dallas County, three in Harris County, one in Tarrant County, and one in Ft. Bend County). (Doc. 1364, p. 16, ¶ 86)

   6) Kousser noted almost all Latino Democrat districts overpopulated. (Doc. 1364, p. 20, ¶ 98)

**Harris County**

   7) Calvert testified that Asians have coalesced. (Doc. 1364, p. 79, ¶ 410)

8)   Multi-ethnic coalition elected Vo. (Doc. 1364, p. 81, ¶ 426)

9)   The coalition also elected school board members. (Doc. 1364, p. 81, ¶ 427)

10)  Republicans decided to preserve four Anglo/Republican districts in East Harris County – HDs 127, 128, 129, 144 – pushed population westward adversely affecting minorities. (Doc. 1364, p. 84, ¶ 437)

11)  Democrats told to leave Republican districts alone; Democrats told they could not alter Anglo portion of map. (Doc. 1364, p. 92-93, ¶ 466)

12)  Murray opined that, to prevent HD144 from becoming minority opportunity district and to shore up Republicans, three Anglo precincts were added and eight precincts (minority population) were removed. (Doc. 1364, p. 96, ¶ 479)

13)  Murray opined that mapdrawers used unnecessarily packing of Hispanics into HDs 140, 143, 145 and 148. (Doc. 1364, p. 97, ¶ 483)

14)  "It is possible to preserve HD148, HD137 and HD149… and create an additional Latino opportunity district, as was done in the Court's interim plan…HD144 in eastern Harris County." (Doc. 1364, p. 98, ¶ 486)

15)  Arrington testified "coalition districts are effective." (Doc. 1364, p. 101, ¶ 499)

16)  Engstrom found "Latinos are very cohesive in their candidate preference for Democratic Latino candidates in general elections and that is shared by African Americans in these elections." (Doc. 1364, p. 101, ¶ 500)

17)  "Engstrom found racially polarized voting in Harris County." (Doc. 1364, p. 101, ¶ 501)

18)  "HD144…was reconfigured to protect the Anglo Republican..." (Doc. 1364, p. 103, ¶ 509)

**Fort Bend County**

19)  Korbel testified that HD27 is "packed with minorities and the remaining minority population is cracked among the other districts…" Doc. 1364, p. 105, ¶ 525)

20)  Brischetto found high degree of racial polarized voting; found African Americans, Asians and Latinos very cohesive. (Doc. 1364, p. 107, ¶ 533)

**Dallas County**

21)  Precincts split on basis of race in Dallas HDs 103, 104 and 105. (Doc. 1364, p. 14, ¶ 75)

22) Three districts in East Dallas, HDs 101, 102 and 113 "had become majority-minority VAP." (Doc. 1364, p. 109, ¶ 547)

23) Downton used racial shading. (Doc. 1364, p. 111, ¶ 557)

24) Anchia displeased with overpopulation. (Doc. 1364, p. 112, ¶ 559)

25) Downton used racial shading when drawing HD105. (Doc. 1364, p. 113, ¶ 561)

26) HD105 divides the cities of Grand Prairie and Irving, splits 22 precincts. (Doc. 1364, p. 113, ¶ 563)

27) Arrington testified overpopulation of minority districts prevented creation of additional minority district. (Doc. 1364, p. 118, ¶ 586)

28) Martin opined that "two effective eastern/northeastern Dallas County majority-minority districts…HD101…and HD102…were eliminated by splitting minority population into five Anglo districts." (Doc. 1364, p. 120, ¶ 597)

29) Engstrom concluded that "in the general elections, Latinos were very cohesive in their support for Latino candidates…and that preference was shared by African-Americans. (Doc. 1364, p. 123, ¶ 605)

30) Juanita Wallace testified "that Black and Latino voters work together to elect candidates." (Doc. 1364, p. 124, ¶ 609)

31) Raul Magdaleno testified to the coalition in Dallas between Latinos and African-Americans. (Doc. 1364, p. 124, ¶ 610)

32) H283 eliminates emerging minority districts. (Doc. 1364, p. 125, ¶ 617)

**Tarrant County**

33) "These increases in SSVR were not made to enhance minority voting opportunity but to offset the loss of HD33…" (Doc. 1364, p. 10, ¶ 49)

34) History of HD93 – 53% Black + Hispanic VAP; HD93 elected Democrat in 2006 and 2008; went Republican in 2010. (Doc. 1364, p. 125, ¶ 620)

35) Murray testified that Tarrant County had very substantial minority growth, and had as many as four districts where minority coalitions had been able to elect candidates of choice; new plan locks in 9-2 ratio. (Doc. 1364, p. 130, ¶ 638)

36) Korbel testified that HD93 is one of the least compact districts in the plan. (Doc. 1364, p. 131, ¶ 640)

37) Burnam testified HD93 meanders and prevents creation of a third minority district. (Doc. 1364, p. 131, ¶ 641)

38) Engstrom testified Latino candidates received solid support from Latinos; in general elections African-American voters supported Latino candidates. (Doc. 1364, p. 131, ¶ 644)

39) Engstrom found African Americans strongly supportive of Latino candidates in general. (Doc. 1364, p. 132, ¶ 645)

40) Guerra testified about "black brown coalitions" in Tarrant County. (Doc. 1364, p. 133, ¶ 649)

**Bell County**

41) HD54 included all of Lampasas and Burnett Counties and almost all of the City of Killeen. (Doc. 1364, p. 136, ¶ 668)

42) HD54 was overpopulated by 28,815 persons; minorities accounted for more than 70% of growth in Bell and Lampasas Counties. (Doc. 1364, p. 136, ¶ 670)

43) Minority population of Bell County is divided between two districts. (Doc. 1364, p. 138, ¶ 682)

44) Aycock's assertion that it was more important to keep Lampasas County together…as a community of interest…than it was to keep the City of Killeen together as a community of interest, is not credible. (Doc. 1364, p. 138, ¶ 683)

45) In the race between Aycock (R) and Brown (D), almost 9 out of 10 Anglo voters supported Aycock, while 8 out of 10 Latino voters, 9 out of 10 black voters, and 7 out of 10 Asian voters supported Brown. (Doc. 1364, p. 140, ¶ 689)

46) Phyllis Louis Jones provided lay testimony of minority voter cohesion. (Doc. 1364, p. 140, ¶ 691)

47) There is expert testimony and lay testimony of cohesion in the general election. (Doc. 1364, p. 141, ¶ 698)

Respectfully submitted,

*/s/ David Richards*

_____

DAVID RICHARDS
State Bar No. 16846000
Richards, Rodriguez & Skeith LLP
816 Congress Avenue, Suite 1200
Austin, Texas 78701
Tel (512) 476-0005
Fax (512) 476-1513

**ATTORNEY FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

This is to certify that on July 3, 2017, a true and correct copy of the above and foregoing document was filed via the Court's ECF/CM system, which will serve a copy on all counsel of record.

*/s/ David Richards*

_____

**DAVID RICHARDS**