IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| SHANNON PEREZ, *et al.*, | |
| Plaintiffs, | |
| and | |
| UNITED STATES of AMERICA, | Civil Action No. 5:11-cv-360 (OLG-JES-XR) |
| Plaintiff-Intervenor, | Three-Judge Court [Lead Case] |
| v. | |
| STATE OF TEXAS, *et al.*, | |
| Defendants. | |

## UNITED STATES' BRIEF OPPOSING SECTION 3(C) RELIEF

Like every state in the Union, Texas must comply with the Constitution and Section 2 of the Voting Rights Act (VRA) whenever it enacts voting laws or adopts redistricting plans. Thus, when Texas conducts statewide redistricting following the 2020 Census, it is strictly prohibited from intentionally diluting minority voting strength, 52 U.S.C. § 10302(a); *Abbott v. Perez*, 138 S. Ct. 2305, 2314 (2018), from adopting any redistricting plan that results in dilution of minority voting strength, 52 U.S.C. § 10302(b); *Thornburg v. Gingles*, 478 U.S. 30 (1986); *Bartlett v. Strickland*, 556 U.S. 1 (2009), and from engaging in unconstitutional racial gerrymandering by "assigning citizens to a district on the basis of race without sufficient justification," *Abbott v. Perez*, 138 S. Ct. at 2314. Individual voters can bring suit to enforce these Constitutional and statutory prohibitions, and the United States can bring suit to enforce Section 2's prohibitions. In

1

any such suit, the plaintiff bears the burden to prove that the legislature violated the Constitution or Section 2. *Id.* at 2324.

Private Plaintiffs now ask the Court to invoke Section 3(c) of the VRA to add yet another requirement to Texas's next round of statewide redistricting. In particular, Private Plaintiffs ask the Court to retain jurisdiction for several years, to subject the State's next round of redistricting plans to federal preclearance by this Court or the Department of Justice, and to flip the burden of proof to require the State to prove that those plans "do not have the purpose and will not have the effect of denying or abridging the right to vote on account of race." 52 U.S.C. § 10302(c).

Since the United States first filed a statement of interest and later intervened in this case more than five years ago, the governing law and the circumstances of this case have changed: an intervening controlling decision from the Fifth Circuit, *Veasey v. Abbott*, 888 F.3d 792, 804 (5th Cir. 2018), makes clear that Section 3(c) relief is no longer warranted or authorized in this case. Private Plaintiffs fail to satisfy their demanding burden to obtain Section 3(c) relief—and, in fact, fail to address this controlling decision, which forecloses such relief here. Federal superintendence and preclearance of state law such as Private Plaintiffs seek "authorizes federal intrusion into sensitive areas of state and local policymaking" and, thus, represents an "extraordinary departure from the traditional course of relations between the States and the Federal Government." *Shelby County v. Holder*, 570 U.S. 529, 545 (2013) (internal citation and quotation marks omitted). Indeed, Private Plaintiffs' requested Section 3(c) relief would require Texas to "beseech the Federal Government for permission to implement laws that [it] would otherwise have the right to enact and to execute on [its] own, subject of course" to the requirements of the Constitution and Section 2. *Id.* at 544. As the United States has previously explained, Section 3(c) preclearance relief has been used only rarely. *See* U.S. Statement of

Interest at 3 (ECF No. 827). Section 3(c) relief has been imposed on only two states since 1965—and only once over a state's objection, in *Jeffers v. Clinton*, 740 F. Supp. 585 (E.D. Ark. 1990) (three-judge court)—as well as on only a handful of local jurisdictions.

The governing law forecloses any showing that the basis for Section 3(c) exists here. Texas's most recent redistricting was the enactment of the 2013 plans, which essentially mirrored this Court's 2012 interim plans and, as the Supreme Court held, did not involve any vote dilution, intentional or otherwise. *See Abbott v. Perez*, 138 S. Ct. at 2324-34. Under recent Fifth Circuit law binding on this Court, the State's "prompt enactment" of new maps uninfected by discriminatory purpose removes the "equitable basis for subjecting Texas to ongoing federal election scrutiny under Section 3(c)" and alone requires denial of Private Plaintiffs' request for such relief. *Veasey*, 888 F.3d at 804.

Private Plaintiffs do not address the Fifth Circuit's recent controlling holding in *Veasey*, much less explain how their request for Section 3(c) relief survives it. Instead, they proffer a number of past instances of intentional voting discrimination as predicates for Section 3(c) relief today—but all of those instances already have been remedied, and many date from decades ago. They therefore do not warrant the extraordinary remedy of preclearance today, and the Court should decline Private Plaintiffs' invitation to retain jurisdiction and deny their request for Section 3(c) relief.

## BACKGROUND

The history of this case is well known to the Court. The United States first became involved in litigation concerning Texas's 2011 redistricting plans when the State brought suit seeking preclearance for those plans under Section 5 of the VRA. A three-judge court in the District of Columbia denied preclearance to three of Texas's statewide plans, *see Texas v. United*

3

*States*, 887 F. Supp. 2d 133 (D.D.C. 2012), and, following *Shelby County v. Holder*, 570 U.S. 529 (2013), the Supreme Court vacated and remanded that decision, 570 U.S. 928 (2013). In 2013, Texas adopted new plans for Congress and the State House based upon this court's 2012 interim plans, with minor changes. Thereafter, this Court permitted the United States to intervene in this case to continue to challenge the 2011 Congressional and House plans. *See Perez v. Perry*, No. 5:11-cv-360, 2013 WL 5372882 (W.D. Tex. Sept. 24, 2013). The United States sought only declaratory and Section 3(c) relief, based on its claims regarding the 2011 plans. *See* U.S. Compl. (ECF No. 907). Following a multi-week trial, this Court found that the 2011 Congressional plan and 2011 House plan had been enacted, at least in part, for a discriminatory purpose, in violation of Section 2 of the VRA and the Fourteenth Amendment to the U.S. Constitution. *See Perez v. Abbott*, 253 F. Supp. 3d 864 (W.D. Tex. 2017) (three-judge court) (Congress); *Perez v. Abbott*, 250 F. Supp. 3d 123 (W.D. Tex. 2017) (three-judge court) (House).

After a second trial, in which the United States did not participate, this Court found that the State of Texas's 2013 Congressional plan and 2013 House plan purposefully maintained the intentional discrimination in the prior plans. *See Perez v. Abbott*, 274 F. Supp. 3d 624 (W.D. Tex. 2017) (Congress); *Perez v. Abbott*, 267 F. Supp. 3d 750 (W.D. Tex. 2017) (House). The Supreme Court reversed these decisions in relevant part and held that the evidence as to the 2013 plans was "insufficient to prove . . . intentional discrimination." *Abbott v. Perez*, 138 S. Ct. at 2327. The Supreme Court further held that Private Plaintiffs had failed to prove any vote dilution, intentional or otherwise, in either of the challenged 2013 plans. *Id.* at 2324-34. The Supreme Court also held that the Private Plaintiffs had proven that one district, HD90 in the House plan, is an improper racial gerrymander. *See id.* at 2334-35.

4

**ARGUMENT**

Section 3(c) of the VRA provides in relevant part:

> If in any proceeding instituted by the Attorney General or an aggrieved person under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment in any State or political subdivision the court finds that violations of the fourteenth or fifteenth amendment justifying equitable relief have occurred within the territory of such State or political subdivision, the court, in addition to such relief as it may grant, shall retain jurisdiction for such period as it may deem appropriate and during such period no voting qualification or prerequisite to voting or standard, practice, or procedure with respect to voting different than that in force or effect at the time the proceeding was commenced shall be enforced unless and until the court find that such qualification, prerequisite, standard, practice, or procedure does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color, or in contravention of the voting guarantees set forth in section 10303(f)(2) of this title [or the Attorney General has received a preclearance submission and not interposed an objection within sixty days after such submission].

52 U.S.C. § 10302(c).

Private Plaintiffs suggest that a "pattern" of "historical prevalence of intentional discrimination" that has been "persistent and repeated" in Texas justifies the imposition of Section 3(c) relief. Pls.' Joint Request For Section 3(c) Relief 11, 23 (ECF No. 1603) ("Pls.' Br."); Texas Latino Redistricting Task Force Brief 10 (ECF No. 1604) ("TLRTF Br."); *see also Jeffers*, 740 F. Supp. at 601. Private Plaintiffs, however, have failed to justify the imposition of Section 3(c) relief against the State here. Indeed, under intervening and controlling Fifth Circuit precedent such a showing is not possible in this case. The Court should deny Private Plaintiffs' request for Section 3(c) relief.

**I. TEXAS'S ENACTMENT OF THE 2013 PLANS FORECLOSES IMPOSITION OF SECTION 3(C) RELIEF UNDER INTERVENING AND CONTROLLING FIFTH CIRCUIT PRECEDENT**

To impose Section 3(c) relief, the Court first must find "that violations of the fourteenth or fifteenth amendment justifying equitable relief have occurred within the territory of [the] State." 52 U.S.C. § 10302(c); *Jeffers*, 740 F. Supp. at 591-92 (assessing broader evidence of

5

discriminatory voting practices); *see also* U.S. Statement of Int. 5, 17. At the time that the United States entered this litigation, Section 3(c) case law had a retrospective focus on the challenged voting law and the defendant jurisdiction's history of voting discrimination, including discrimination beyond the specific law challenged in the case. *See* U.S. Statement of Int. 17-20. The Fifth Circuit's recent decision in *Veasey* adds another element to the Section 3(c) inquiry: it requires the Court to look prospectively and to assess Texas's actions subsequent to the enactment of the 2011 plans. *See* 888 F.3d at 804.[1]

In *Veasey*, the Fifth Circuit addressed an appeal from a district court decision that had found both Texas's 2011 photographic voter ID legislation (SB 14) and the State's 2017 remedial legislation (SB 5) intentionally discriminatory. *See id.* at 795-98. The Fifth Circuit reversed the district court's finding of intentional discrimination in SB 5. *See id.* at 795-804. The Fifth Circuit further held that, even if SB 14 had been intentionally discriminatory, the Texas Legislature's enactment of SB 5 also foreclosed Section 3(c) relief based upon its enactment of SB 14. *See id.* at 804. Specifically, *Veasey* held that "because SB 5 constitutes an effective remedy for the only deficiencies testified to in SB 14, and it essentially mirrors an agreed interim order for the same purpose, the State has acted promptly following this court's mandate, and there is no equitable basis for subjecting Texas to ongoing federal election scrutiny

---

[1] Decisions of the Fifth Circuit are binding on this Court, notwithstanding the lack of circuit review from a three-judge district court. *See, e.g.*, *Finch v. Miss. State Med. Ass'n*, 585 F.2d 765, 773 (5th Cir. 1978); *Russell v. Hathaway*, 423 F. Supp. 833, 835 (N.D. Tex. 1976) (three-judge court); *see also Perez v. Abbott*, 250 F. Supp. 3d 123, 139 (W.D. Tex. 2017) (three-judge court) ("[A] district court is bound by a circuit decision unless or until it is overturned . . . ."); *Ala. Legis. Black Caucus v. Alabama*, 988 F. Supp. 2d 1285, 1305-06 (M.D. Ala. 2013) (three-judge court) (collecting cases).

under Section 3(c)." *Id.* (citing *N.C. State Conf. of NAACP v. McCrory*, 831 F.3d 204, 241 (4th Cir. 2016)).[2]

Similarly here, the Texas Legislature's enactment of the 2013 redistricting plans has foreclosed Section 3(c) relief. This Court determined that the 2011 plans were tainted with discriminatory intent and developed interim redistricting plans to be used in the 2012 elections, pursuant to the Supreme Court's directions in *Perry v. Perez*, 565 U.S. 388, 394-95 (2012) (per curiam), to address issues under Section 2 and Section 5 of the VRA. After those interim plans were used in 2012, the Texas Legislature enacted the 2013 plans that "essentially mirror[]" the Court's interim plans. *Veasey*, 888 F.3d at 804. The Supreme Court ultimately determined that the 2013 plans lack any discriminatory intent and did not involve any vote dilution, intentional or otherwise. *See Abbott v. Perez*, 138 S. Ct. at 2324-34. Thus, as in *Veasey*, "the State acted promptly following the court's mandate" to remedy the violations the Court identified in the 2011 plans. *Cf. Veasey*, 888 F.3d at 804. Accordingly, in this case, "there is no equitable basis for subjecting Texas to ongoing federal election scrutiny under Section 3(c)", and the Court should deny Private Plaintiffs' request to do so. *Id.*

---

[2] In its 2016 decision in *McCrory*, the Fourth Circuit likewise declined to impose the Section 3(c) relief against the State of North Carolina sought by private plaintiffs and the United States, even though the court concluded there was intentional racial discrimination in the enactment of the 2013 omnibus state election law challenged there. *See McCrory*, 831 F.3d at 231 ("[W]e decline to impose any of the discretionary additional relief available under § 3 of the Voting Rights Act, including imposing poll observers during elections and subjecting North Carolina to ongoing preclearance requirements. *See* 52 U.S.C. § 10302(a), (c) (formerly 42 U.S.C. § 1973a). Such remedies '[are] rarely used' and are not necessary here in light of our injunction. *Conway Sch. Dist. v. Wilhoit*, 854 F. Supp. 1430, 1442 (E.D. Ark. 1994).") As with *Veasey*, *McCrory* was decided after United States' statement of interest on Section 3(c) and intervention in this case.

## II. PRIVATE PLAINTIFFS IDENTIFY NO BASIS FOR IMPOSING SECTION 3(C) RELIEF

Private Plaintiffs discuss at length the Court's findings with respect to the 2011 plans, *see, e.g.*, Pls.' Br. 12-18; TLRTF Br. 8-10, but they neglect to mention that the Texas Legislature's enactment of the 2013 plans devoid of any intentional discrimination forecloses Section 3(c) relief based upon the 2011 plans, *see Veasey*, 888 F.3d at 804; *supra* Part I. Private Plaintiffs also point to four other instances of intentional voting discrimination as bases for Section 3(c) relief. But without intentional discrimination in the 2013 plans, none of those instances—all of which have already been remedied and many of which date from decades ago—"justif[ies] equitable relief" now, let alone the imposition of Section 3(c) relief upon Texas's next round of statewide redistricting. 52 U.S.C. § 10302(c).

First, Private Plaintiffs invoke the district court's findings in *Veasey* that the Texas Legislature intentionally discriminated when it enacted SB 14 and SB 5, its photographic voter ID requirement and the subsequent remedial legislation. Pls.' Br. 20-21. But while they acknowledge the Fifth Circuit's reversal of the finding of intentional discrimination in SB 5 (2017), Private Plaintiffs fail to mention the Fifth Circuit's holding that those findings do not support Section 3(c) relief as a matter of law. *See id.*; *see also Veasey*, 888 F.3d at 804; *supra* Part I. Private Plaintiffs therefore do not explain how findings that did not justify Section 3(c) relief in the case in which they were made could justify such relief in this separate case. In *Veasey* itself, the identified violations regarding voter ID were remedied first by interim relief agreed to by the parties, and then by legislation promptly adopted by the State that was largely modeled on that interim relief. The Fifth Circuit made clear that the Texas Legislature's "prompt[]" action to remedy the violations found in *Veasey* eliminates any justification for

8

further "equitable relief," including Section 3(c) relief, based upon those violations.  *Veasey*, 888 F.3d at 804; 52 U.S.C. § 10302(c).

Second, Private Plaintiffs point out that past Texas redistricting plans dating back to the 1970s have been found to violate federal law.  *See, e.g.*, Pls.' Br. 3, 11-12; TLRTF Br. 10.  But of course, only "violations of the fourteenth or fifteenth amendment justifying equitable relief" —and not other violations such as unintentional violations of Section 2's results provision—can serve as the predicate for Section 3(c) relief.  52 U.S.C. § 10302(c).  Moreover, without intentional discrimination in the 2013 plans, none of the past redistricting violations that Private Plaintiffs identify supports a retention of jurisdiction by this Court or an imposition of federal preclearance upon Texas's next round of statewide redistricting:  all of those violations either are not constitutional or are too remote in time, *cf. Jeffers*, 740 F. Supp. at 599 (concluding that even "serious constitutional violations" of voting rights predating 1976 did not establish "the need for equitable relief in 1990"), and "already have been remedied by judicial action," *id.* at 601.  These past remedied violations do not "justify[] equitable relief" now and cannot form the predicate for Section 3(c) relief under *Veasey*.  52 U.S.C. § 10302(c).

Third, for the first time on remand, Private Plaintiffs now contend that this Court's findings of "*Shaw*-type racial gerrymandering violations and violations of the one-person, one-vote guarantee of the Equal Protection Clause" can support Section 3(c) relief.  Pls.' Br. at 12 n.5; TLRTF Br. 5, 9-11; *see also* TLRTF 3(c) Br. (ECF No. 823); Jnt. Pls.' 3(c) Br. (ECF No. 788); MALC 3(c) Br. (ECF No. 787).  That contention is wrong as a matter of both law and fact.  Indeed, no court has ever imposed Section 3(c) relief for racial gerrymandering violations under *Shaw v. Reno*, 509 U.S. 630 (1993), or one-person, one-vote violations—and with good reason.  Section 3(c) relief is limited to "violations of the fourteenth or fifteenth amendment *justifying*

9

*equitable relief*." 52 U.S.C. § 10302(c) (emphasis added). Because Section 3(c) relief is designed to thwart changes in voting laws with "the purpose" or "the effect of denying or abridging the right to vote on account of race[,] color[, or language minority status]," 52 U.S.C. § 10302(c), intentional discrimination on the basis of race, color, or language minority status is the only category of constitutional violation that can justify the equitable remedy of preclearance, *see, e.g.*, *Milliken v. Bradley* (*Milliken I*), 418 U.S. 717, 744 (1974) ("[T]he scope of the remedy is determined by the nature and extent of the constitutional violation."). Thus, as the United States consistently has advised the Court, Section 3(c) relief must rest upon "a finding of intentional voting discrimination." U.S. Statement of Int. 3. It cannot rest upon "analytically distinct" racial gerrymandering or one-person, one-vote violations, *Shaw*, 509 U.S. at 652; *Miller v. Johnson*, 515 U.S. 900, 911 (1995); *Perez v. Abbott*, 253 F. Supp. 3d at 947 ("All parties agree that an intentional vote dilution and a *Shaw*-type racial gerrymandering case are analytically distinct."), because such relief would not redress the "condition alleged to offend the Constitution" at which Section 3(c) is aimed, *Milliken v. Bradley* (*Milliken II*), 433 U.S. 267, 280 (1977).[3]

---

[3] Relatedly, the United States has long made clear that racial gerrymandering and one-person one-vote violations are analytically distinct from Section 5's substantive preclearance standard and cannot justify a denial of preclearance under that section. *See* Guidance Concerning Redistricting Under Section 5 of the Voting Rights Act, 76 F.R. 7470, 7470 (2011) ("The Attorney General may not interpose an objection to a redistricting plan on the grounds that it violates the one-person one-vote principle, on the grounds that it violates *Shaw v. Reno*, 509 U.S. 630 (1993), or on the grounds that it violates Section 2 of the Voting Rights Act. The same standard applies in a declaratory judgment action."); Guidance Concerning Redistricting and Retrogression Under Section 5 of the Voting Rights Act, 66 F.R. 5412, 5412 (2001) ("The Department of Justice may not deny Section 5 preclearance on the grounds that a redistricting plan violates the one-person one-vote principle, on the grounds that it violates *Shaw v. Reno*, or on the grounds that it violates Section 2 of the Voting Rights Act.").

Moreover, even if racial gerrymandering or one-person, one-vote violations were among the class of constitutional violations that could trigger Section 3(c) relief as a matter of law, none of the Court's findings of such violations could trigger that relief here. Indeed, as explained, any such violations found in the 2011 plans "provide no equitable basis" for Section 3(c) relief because the Texas Legislature remedied those violations when it enacted the 2013 plans. *See Veasey*, 888 F. 3d at 804; *supra* Part I. Furthermore, the Court already has concluded that its finding of a single racial gerrymandering violation in HD90 in the 2013 House plan does not "justify[] equitable relief" now, 52 U.S.C. § 10302(c), because the Texas Legislature may redraw that district early this year, *see* Order 1-3 (ECF No. 1600). And a finding of a single violation such as in HD90 would not be an adequate and proportionate basis for imposing Section 3(c) relief on the entirety of Texas's statewide redistricting efforts over the next decade, *Milliken I*, 418 U.S. at 744; *Milliken II*, 433 U.S. at 280, and, in all events, cannot support Section 3(c) relief as a matter of Section 3(c)'s plain statutory text, which requires a finding of "*violations* of the fourteenth and fifteenth amendment justifying equitable relief," 52 U.S.C. § 10302(c) (emphasis added).[4]

Fourth, Private Plaintiffs invoke a district court's imposition of Section 3(c) relief on the City of Pasadena, Texas—based upon intentional discrimination in a redistricting plan adopted by the City, not the State. *See* Pls.' Br. 21-23 (citing *Patiño v. City of Pasadena*, 230 F. Supp. 3d 667 (S.D. Tex. 2017)). But imposing Section 3(c) preclearance obligations on the State's next round of statewide redistricting based upon the City's violations in its local redistricting plan would stray far beyond "the nature and extent of the constitutional violation" and would not be

---

[4] *Compare* U.S. Statement of Int. 4 n.2 (arguing that Section 3(c) "is best read to require proof of only a single constitutional violation" but noting a split of authority and advising the Court that, at that time, "[t]he Court need not reach this issue").

proportionate here.  *Milliken I*, 418 U.S. at 744.  The State was not a party to the Pasadena litigation and did not commit or participate in the City's violation.  *Cf. Milliken II*, 433 U.S. at 280-81.  And, the City's violation of the Constitution "ha[s] already been remedied by judicial action," *Jeffers*, 740 F. Supp. at 601, through injunctive relief and targeted Section 3(c) relief against the City, *see Patiño*, 230 F. Supp. 3d at 730-731.

## CONCLUSION

More than five years have elapsed since the parties first discussed the question of possible Section 3(c) relief in this case.  In those intervening years, the relevant and controlling law regarding Section 3(c) has clarified that such relief is no longer warranted or authorized in this case.  The Court should deny Private Plaintiffs' request to retain jurisdiction and to impose preclearance relief under Section 3(c) of the VRA.

Date:  January 29, 2019

Respectfully submitted,

JOHN F. BASH
United States Attorney
Western District of Texas

ERIC S. DREIBAND
Assistant Attorney General
Civil Rights Division

JOHN M. GORE
Principal Deputy Assistant Attorney General
Civil Rights Division

*/s/ John M. Gore*
T. CHRISTIAN HERREN, JR.
TIMOTHY F. MELLETT
DANIEL J. FREEMAN
Attorneys
Voting Section, Civil Rights Division
U.S. Department of Justice
Room 7123 NWB
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
(202) 307-2767

## **CERTIFICATE OF SERVICE**

   I hereby certify that on January 29, 2019, I served a true and correct copy of the foregoing via the Court's ECF system on all counsel of record.

                */s/ Daniel J. Freeman*
                DANIEL J. FREEMAN
                Attorney, Voting Section
                Civil Rights Division
                U.S. Department of Justice
                Room 7123 NWB
                950 Pennsylvania Avenue, N.W.
                Washington, D.C. 20530
                daniel.freeman@usdoj.gov