Case 5:11-cv-00360-OLG   Document 1683   Filed 07/13/21   Page 1 of 14

FILED
July 13, 2021
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____JU_____
                  DEPUTY

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| SHANNON PEREZ, et. al. ) | |
| ) | |
| Plaintiffs ) | |
| ) | CIVIL ACTION NO. |
| v. ) | 11-CV-360-OLG |
| ) | |
| GREG ABBOTT, et. al. ) | |
| ) | |
| Defendants ) | |

**ORDER**

Upon entry of final judgment in this case, the Court ordered a bifurcated process with regard to attorneys' fees and costs. First, any party seeking fees and costs had to file a motion with accompanying brief explaining why it is a prevailing party entitled to such fees and costs. Then, depending on the Court's determination on prevailing party status, the parties could file their applications for attorneys' fees and costs in conformance with the rules. Docket no. 1637. The following parties have filed motions for a determination on prevailing party status: Texas Latino Redistricting Task Force Plaintiffs (docket no. 1648); Mexican American Legislative Caucus (MALC) (docket no. 1643); the NAACP Plaintiffs (docket no. 1645); LULAC and the Perez Plaintiffs (docket nos. 1641, 1644); the Quesada Plaintiffs (docket no. 1647); and Congressman Cuellar (docket no. 1642). Defendants filed responses, and the movants filed replies. After reviewing the record, the Court finds that the motions should be granted in the following respects, and otherwise denied.

1

Guided by the applicable law, the Court first reviewed the relief granted in this case, and then reviewed the parties that sought and obtained such relief, to determine whether the granting of such relief makes Plaintiffs "prevailing parties" for the purpose of awarding fees and costs.

A.   The relief granted in this case

1.   The 2011 temporary restraining order

On September 29, 2011, the Court entered a temporary restraining order enjoining the implementation of the 2011 redistricting plans, H283 and C185, because the plans had not been precleared under Section 5 of the Voting Rights Act. Docket no. 380. The order stated that "[t]he parties have agreed that the relief granted herein will be effective as a permanent injunction, subject to being lifted by order of the Court as appropriate." *Id.* The order was never lifted and the implementation of plans H283 and C185 never occurred.

In both *Petteway v. Henry*, 738 F.3d 132 (5th Cir. 2013) and *Davis v. Abbott*, 781 F.3d 207 (5th Cir. 2017), the district courts entered orders enjoining the implementation of redistricting plans based on the lack of preclearance. *Petteway*, 738 F.3d at 135; *Davis*, 781 F.3d at 210, 214. In both cases, the Fifth Circuit determined that the injunctions were not enough to make the plaintiffs prevailing parties because the district courts simply enjoined the plans for lack of preclearance. *Davis*, 781 F.3d at 217 ("All the district court had jurisdiction to do [at that juncture] was to defer to the district court in D.C."); *Petteway*, 738 F.3d at 138-140 (because preclearance was always an express condition, the temporary injunction was not a material legal success.). For this reason, the temporary injunction, standing alone, did not confer prevailing party status. But this case did not end with a temporary injunction based on lack of preclearance; instead, the court-ordered relief went much further.

2

2.      Interim relief on the 2011 challenges

Because the State was enjoined from implementing the 2011 redistricting plans, the Court had to fashion interim relief before the next election cycle. In accordance with the Supreme Court's instructions, the Court assessed whether Plaintiffs' § 2 and constitutional challenges to C185 and H283, the 2011 enacted plans, were likely to succeed on the merits or whether the pending § 5 challenges to the enacted plans were not insubstantial. *Perry v. Perez*, 565 U.S. 388, 132 S. Ct. 934, 942 (2012) (per curiam). Either a "not insubstantial" finding on the § 5 challenges or a "likelihood of success" finding on the § 2 and constitutional challenges could justify granting interim relief.

On the challenges to C185, the 2011 enacted plan for U.S. House of Representatives, the Court found that the § 5 retrogressive effects challenge to CD23 was not insubstantial, and found it unnecessary to reach the merits of the § 2 claims. Docket no. 691, pp. 30, 32. In the Dallas/Fort Worth area, which includes CD6, 12, 26, 30, and 33, the Court found that the § 5 retrogressive effects challenges were not insubstantial. *Id.* at pp. 36, 38, 40-41. The Court found it unnecessary to reach of merits of the constitutional challenges, and was unable to conclude that Plaintiffs were likely to succeed on their § 2 claims. *Id.* at 38-39. In the Houston area, which includes CDs 9 and 18, the Court again found the § 5 retrogressive effects challenges were not insubstantial, but went no further. Docket no. 691, pp. 40-41. As to CD35, the Court found that the plaintiffs challenging the district were not "likely to succeed on their claim that CD35 [was] subject to strict scrutiny, [nor had] Plaintiffs demonstrated a substantial likelihood that CD35 would fail a strict scrutiny analysis if scrutiny applies." *Id.* at p. 48. On CD25, "the Court [could] not conclude . . . that the dismantling of CD25 was motivated by a discriminatory purpose," and was

3

"unable to predetermine how the D.C. Court may ultimately resolve these difficult issues." *Id.* at pp. 48-49. As to CDs 27 and 34, the placement of Nueces County, and the challenge to the number of Latino opportunity districts in South/Central/West Texas, the Court did not find that Plaintiffs had shown, at that juncture, a likelihood of success on the merits of their § 2 and constitutional claims. Docket no. 691, pp. 51-55. The Court found that interim plan C235 at least partially addressed these concerns in response to the § 5 claims. *Id.*

After such review, and after independently evaluating proposed interim maps, the Court determined that interim plan C235 sufficiently addressed the "not insubstantial" § 5 claims and "no § 2 or Fourteenth Amendment claims preclude[d] its acceptance." Docket no. 691, p. 29.

On the challenges to H283, the 2011 enacted plan for the Texas House, the Court determined that the Hidalgo County configuration (HD40/41) presented "serious concerns under *Larios v. Cox* . . . [t]hus, the plaintiffs [had] a likelihood of success on the merits on their one-person, one-vote claims." Docket no. 690, pp. 3-4. The Court found it unnecessary to reach the remaining challenges to the Hidalgo County configuration. *Id.* at p. 4. As to HD35, the Court found the Section 5 challenges were not insubstantial, and did not reach the remaining claims. *Id.* at p. 5. The Court also found the Section 5 challenges against HD117 were not insubstantial but declined to reach the remaining challenges. Docket no. 690, p. 6. With respect to HD33 and the configuration of Nueces County, the Court found that "any retrogression has been offset in the interim plan by the creation of a new Hispanic opportunity district, HD144," and declined to further address any other Section 5, Section 2, or constitutional challenges to the district. *Id.* at pp. 6-8. As to HD144 in Harris County, the Court found that the plaintiffs "demonstrated a likelihood of success on the merits of their Section 2 claim." *Id.* at pp. 8-9. The Court determined

4

that the Section 5 challenges to HD149 were not insubstantial, and did not reach the remaining challenges to HD149 in the 2011 enacted plan. Docket no. 160, pp. 9-10. In El Paso County, the Court found that the Section 5 challenges to HD77/78 were not insubstantial, and found it unnecessary to reach the remaining challenges. *Id.* at pp. 10-11.

After such review, and after independently evaluating proposed interim maps, the Court determined that interim plan H309, which left 122 districts unchanged, seven districts minimally altered, and 21 districts substantially altered, sufficiently addressed the legal challenges that were not insubstantial or likely to succeed on the merits. Docket no. 690, p. 12.

The Court adopted C235 and H309 as interim plans to elect representatives to the U.S. House of Representatives and the Texas House of Representatives. Docket nos. 681, 691, 682, 690. No interlocutory appeal was taken in response to either the Court's findings or the court-ordered interim plans. Instead, the Texas legislature repealed the 2011 enacted plans and adopted the court-ordered interim plans (with slight modification), which became the 2013 enacted plans.

3.   Merits findings on the 2011 challenges

In 2017, after finding that the 2011 challenges were not moot, and after full trial on the merits, the Court reached its final decision on the challenges to plan C185 (docket nos. 1340, 1390) and plan H283 (docket nos. 1364, 1365). As to the challenges to plan C185, the Court found that CD23 was drawn in violation of the Fourteenth Amendment as an unconstitutional racial gerrymander and in violation of Section 2 as to both intent and effect. Docket no. 1390, pp. 29, 32, 57-58, 164. The Court further determined that CD35 was an unconstitutional racial gerrymander and violated the Fourteenth Amendment's Equal Protection Clause. *Id.* at pp. 41, 46, 57, 164. The Court also found that CD27 was drawn in violation of Section 2. *Id.* at pp. 57-

5

58, 164. The Court concluded that CD26 was an unconstitutional racial gerrymander and violated the Equal Protection Clause. Docket no. 1390, pp. 108, 165. The Court found intentional vote dilution in violation of both § 2 and the Fourteenth Amendment in the packing of CD30 with minorities and cracking of other DFW districts to disperse minority voters in the metroplex. Docket no. 1390, pp. 109, 125, 131-32, 134, 145-46, 165.[1]

With regard to the challenges to plan H283, the Court found intentional vote dilution in violation of both § 2 and the Fourteenth Amendment with regard to the Plan as a whole and, more specifically, with regard to HD78 in El Paso County, HD117 in Bexar County, and HD32/33/34 in Nueces County. Docket no. 1365, pp. 26-28, 31-32, 40, 153. The Court also determined that HD117 in Bexar County was the product of racial gerrymandering, a violation of the Fourteenth Amendment. *Id.* at pp. 89, 153. The Court found the Fourteenth Amendment's one person-one vote requirement was violated in Nueces County (HD32/34) and Hidalgo County (HD31, 36, 39, 40, and 41). Docket no. 1365, pp. 136, 139. 149, 153. The Court also found intentional vote dilution in HD41, a violation of § 2 and the Fourteenth Amendment. *Id.* at pp. 45-46, 153. The Court further determined that the Harris County configuration was the result of intentional vote dilution in violation of § 2 and the Fourteenth Amendment. *Id.* at pp. 57, 153. In Dallas County (HD103/104/105) and Tarrant County (HD90/93/95), the Court found intentional vote dilution in violation of § 2 and the Fourteenth Amendment. Docket no. 1365, pp. 69, 71, 153. With respect to HD54/55 in Bell County, the Court found intentional vote dilution in violation of § 2 and the Fourteenth Amendment, and a violation of the one person-one vote

---

[1] Circuit Judge Jerry E. Smith agreed with the result and largely with the reasoning with regard to the DFW districts, but otherwise dissented. Docket no. 1390, p. 165.

requirement under the Fourteenth Amendment. *Id.* at pp. 78, 149, 153.

    4.    Merits findings on the 2013 challenges

In 2017, after full trial on the merits, the Court also reached its final decision on the challenges to C235 and H358, the 2013 enacted plans. Docket nos. 1535, 1540. Again, these enacted plans adopted the same district lines as those in the court-ordered interim plans (C235 and H309), with slight modification to the Texas House plan. *See* docket no. 1535, pp. 6-7. With regard to plan C235, the Court concluded that "the racially discriminatory intent and effects that it previously found in the 2011 plans carr[ied] over into the 2013 plans where those district lines remain unchanged. The discriminatory taint was not removed by the Legislature's enactment of the Court's interim plans, because the Legislature engaged in no deliberative process to remove any such taint, and in fact intended any such taint to be maintained but be safe from remedy. The Legislature in 2013 intentionally furthered and continued the existing discrimination in the plans." *Id.* at 39, 104-05. More specifically, the Court determined that CD27 and CD35 in plan C235 still violated § 2 and the Fourteenth Amendment. *Id.* at 104. But the Court found that no additional remedies were required in the DFW area. *Id.* at 78, 105. The Court also denied the remaining challenges to CD23 and the districts in the Houston area. *Id.* at 84, 98, 105.

With regard to the challenges to plan H358, the Court again found that "the 2013 Legislature purposefully maintained the intentional discrimination contained in Plan H283 where the district lines remain unchanged or substantially unchanged." Docket no. 1540, pp. 4, 80. In its district by district analysis, the Court found intentional vote dilution in violation of § 2 still existed in HD54/55 in Bell County. *Id.* at pp. 16-19, 81. The Court also determined that the intentional discrimination previously found in the Dallas County districts (HD103/104/105) still

existed and required a remedy. *Id.* at pp. 24, 81. The Court further found a § 2 results violation and a persisting one person-one vote violation in Nueces County (HD32/34), for which a remedy was needed. *Id.* at 56-57, 80. The Court also found that HD90 in Tarrant County, which was changed from the court-ordered plan, suffered from racial gerrymandering and required a remedy. Docket no. 1540, pp. 78, 80-81. However, the Court rejected the claims relating to Bexar, Harris, Fort Bend, and Midland/Ector Counties. *Id.* at pp. 10, 16, 62, 64, 80-81.

   5. Supreme Court review

The Court's decisions on the merits of the challenges to the 2011 and 2013 enacted plans were appealed, and the Supreme Court issued its decision in June 2018. *Abbott v. Perez*, __ U.S. __, 138 S. Ct. 2305 (2018). First, the Supreme Court held that it had jurisdiction "*because the orders were effectively injunctions.*" *Id.* at 2319 (emphasis added).[2] Next, the Supreme Court "express[ed] no view on the correctness of [the mootness] holding." *Id.* at 2317 n. 8. Thus, this Court's ruling that the 2011 claims were not moot remained undisturbed. Nor did the Supreme Court disturb this Court's findings on the merits of the challenges to the 2011 enacted plans. Importantly, those findings remained intact.

With regard to the findings on the challenges to the 2013 enacted plans, the Supreme Court reversed the finding of discriminatory intent in the 2013 legislative process. *Id.* at 2326-30. On the district level challenges to the 2013 plans, the Supreme Court held:

> Once the Texas court's intent finding is reversed, there remain only four districts that were invalidated on alternative grounds. For three of these districts, the District Court relied on the "effects" test of § 2. We reverse as to each of these, but we affirm the

---

[2]Defendants continue to argue that this Court's merits orders were mere declarations or judicial pronouncements, conferring no judicial relief. This argument ignores the Supreme Court's finding that the orders "*were effectively injunctions.*" 138 S.Ct. at 2319.

District Court's final holding that HD90 is a racial gerrymander.

*Id.* at 2330. The Supreme Court reversed this Court's ruling on CD27 and CD35 in plan C235 and Nueces County HD32 and HD34 in plan H358. *Id.* at 2331-34. But the Supreme Court affirmed this Court's finding that HD90 was an impermissible racial gerrymander and remanded for an appropriate remedy for that district. *Id.* at 2335.

6. Final Judgment

After the case was returned to the district court, and after further briefing and review, this Court adopted plan H411 as an appropriate remedy for the violation in HD90. Docket no. 1631. The Court also heard extensive oral argument on the requests for bail-in relief under Section 3(c) and ultimately denied such relief. Docket no. 1632. And finally, based on all findings that the Supreme Court either affirmed or left undisturbed, the three judge panel unanimously entered final judgment as follows:

> In Plan C185, district lines in the Dallas-Fort Worth area were drawn in violation of the Fourteenth Amendment (as both improper racial gerrymanders and the product of intentional vote dilution) and § 2 of the Voting Rights Act. Docket nos. 1390 and 1340. Further, district lines for CD23 in Plan C185 were drawn in violation of the Fourteenth Amendment (as an unconstitutional racial gerrymander) and § 2 of the Voting Rights Act (both as the product of intentional vote dilution and in result). *Id.*

> In Plan H283, district lines were drawn in violation of § 2 of the Voting Rights Act and the Fourteenth Amendment as the product of intentional vote dilution in El Paso County (HD78), Bexar County (HD117), Nueces County (the elimination of HD33 and the configuration of HD32 and HD 34), HD 41 in the Valley, Harris County, western Dallas County (HD103, HD104, and HD105), Tarrant County (HD90, HD93), Bell County (HD54), and with regard to Plan H283 as a whole. District lines in HD117 in Bexar County were drawn as improper racial gerrymanders in violation of the Fourteenth Amendment. District lines were drawn in violation of the one-person, one-vote requirements of the Fourteenth Amendment in the Nueces County districts (HD32 and HD34), the Hidalgo County districts (HD31, HD36, HD39, HD40, and HD41), and the Bell/Lampasas County districts (HD54 and HD55). Docket nos. 1364 and 1365.

9

> The district lines of HD90 as drawn by the Legislature in 2013 in Plan H358 are the result of an unconstitutional racial gerrymander. Plan H358 is modified to incorporate the district boundaries contained in plan H411 and the resulting district shall be used as the district boundaries to elect members of the Texas House of Representatives in the 2020 elections.
>
> All other requested relief is DENIED.

Docket no. 1637. The final judgment reflects the culmination of all findings of violations in the 2011 and 2013 enacted plans, after a full and final determination on the merits. For each of the violations, a remedy was provided in court-ordered plans C235, H309, and H411. No post judgment appeal was taken.

### B. The parties that prevailed on their claims

The Court finds that the following parties have prevailed on their § 2 and/or Fourteenth Amendments claims brought against the 2011 and 2013 enacted plans. If any party is not mentioned herein, the Court does not find them to be a prevailing party.

#### 1. Texas Latino Redistricting Task Force

The Task Force plaintiffs sought and obtained relief on their 2011 § 2 and Fourteenth Amendment challenges to CD23 and CD26 in plan C185. *See* docket nos. 891, 1390, 1637. They also sought and obtained relief on their 2011 § 2 and Fourteenth Amendment challenges to plan H283 with respect to HD78 in El Paso and HD117 in Bexar County. *See* docket nos. 891, 1365, 1637. The Task Force plaintiffs also prevailed on their 2013 Fourteenth Amendment challenge to HD90 in plan H358. *See* docket nos. 891, 1540, 1637. As prevailing parties, the Task Force plaintiffs are entitled to fees and costs under 42 U.S.C. § 1988(b) and 52 U.S.C. § 10310(e).

#### 2. MALC

MALC sought and obtained relief on its 2011 § 2 challenge to CD23 in plan C185. *See*

docket nos. 897, 1390, 1637. MALC also sought and obtained relief on its 2011 § 2 and Fourteenth Amendment challenges to plan H283 as a whole for intentional vote dilution, and with respect to HD78 in El Paso, HD117 in Bexar County, the Nueces County configuration (HD32/33/34), HD41 in Hidalgo County, the Harris County configuration, Dallas County (HD103/104/105), and Bell County (HD54/55). *See* docket nos. 897, 1365, 1637. As a prevailing party, MALC is entitled to fees and costs under 42 U.S.C. § 1988(b) and 52 U.S.C. § 10310(e).

       3.      LULAC/Perez plaintiffs

As this litigation progressed, LULAC and the Perez plaintiffs joined together in much of their pleadings and proof and asserted most of the same challenges; thus, the record refers to them collectively as the "Perez plaintiffs." *Compare* docket nos. 894, 960. However, LULAC and the Perez plaintiffs filed separate motions for attorneys fees. *See* docket nos. 1641, 1644. The Court has reviewed both motions for the purpose of determining prevailing party status; however, to the extent these plaintiffs (and others) had separate lawyers but shared resources, the fees and costs should reflect their proportionate share.[3] LULAC and the Perez plaintiffs (together) sought and obtained relief on their 2011 § 2 and Fourteenth Amendment challenges to plan H283 as a whole and with respect to Dallas County (HD105), Tarrant County (HD93), Bell County (HD54), and the configuration of Harris County. *See* docket nos. 960, 1365, 1637. And LULAC (only) prevailed on its vote dilution claim with respect to CD23 in plan C185. *See* docket nos. 894, 1390, 1637. As prevailing parties, LULAC and the Perez plaintiffs are entitled to fees and costs under 42 U.S.C. § 1988(b) and 52 U.S.C. § 10310(e).

---

[3]The Court encouraged the parties to work together to avoid duplication, which saved time, cost, and effort for both the parties and the Court.

#### 4. The NAACP plaintiffs

The Texas State conference of NAACP Branches, Rev. Bill Lawson, and Howard Jefferson (the NAACP plaintiffs), along with Congresspersons Eddie Bernice Johnson, Sheila Jackson-Lee, and Alexander Green, joined together to challenge the 2011 and 2013 Congressional and House plans. *See* docket nos. 900, 901. With regard to plan C185, the NAACP plaintiffs sought and obtained relief on their Fourteenth Amendment challenge to the packing of CD 30 with minorities and cracking of other DFW districts to disperse minority voters in the metroplex. *See* docket nos. 900, 1390, 1637.[4] As noted, the court-ordered interim plan addressed the claim; no interlocutory appeal was taken; this part of the merits decision was unanimous; the Court's merits findings on this 2011 challenge were left undisturbed by the Supreme Court; it is reflected in the final judgment; and there was no post judgment appeal. The NAACP also sought and obtained relief on their 2011 Fourteenth Amendment challenge to plan H283 with respect to the Harris County configuration. *See* docket nos. 690, 900, 1365, 1637. As prevailing parties, the NAACP plaintiffs are entitled to fees and costs under 42 U.S.C. § 1988(b) and 52 U.S.C. § 10310(e).

#### 5. Quesada plaintiffs

The Quesada plaintiffs sought and obtained relief on their challenges to the DFW districts in plan C185 as intentional vote dilution in violation of both § 2 and the Fourteenth Amendment in the packing of CD 30 with minorities and cracking of other DFW districts to disperse minority voters in the metroplex. *See* docket nos. 899, 1390, 1637. As prevailing parties, the Quesada

---

[4]This claim by the NAACP was separate and apart from the claim by the Congresspersons that economic engines and member offices and homes were drawn out of their districts.

plaintiffs are entitled to fees and costs under 42 U.S.C. § 1988(b) and 52 U.S.C. § 10310(e).

Despite almost a decade of litigation, substantial injunctive and declaratory relief, and a final determination on the merits, Defendants reject the idea that even a single plaintiff prevailed on a single claim. However, the orders and judgment of the Court, construed together, make clear that numerous statutory and constitutional violations occurred and substantial injunctive relief was ordered to correct the violations.[5] Most of the violations were in the 2011 enacted plans. The claims challenging those violations were not moot, and all injunctive and declaratory relief is final and enforceable. "If a case is not found to be moot, and the plaintiff later procures an enforceable judgment, the court may of course award attorney's fees." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Resources*, 532 U.S. 598, 609, 121 S. Ct. 1835 (2001). For every violation found in the 2011 and 2013 enacted plans, and for every district line that had to be redrawn as the result of such violations, the defendants' behavior was modified and the plaintiff(s) obtained a benefit. The parties are in a far different legal position than when this litigation began and though the path to final relief was somewhat tortured and difficult, there can be no doubt that the plaintiffs prevailed on the claims designated herein.[6] *See Energy Management Corp. v. City of Shreveport*, 467 F.3d 471, 482 (5th Cir. 2006) ("for a party to qualify as a prevailing party it must (1) 'obtain actual relief, such as an enforceable judgment or a

---

[5] The Court has construed the record as a whole and has reached no finding of prevailing party status based on interim relief alone. Plaintiffs obtained final relief on the merits so it is unnecessary to make a determination based on preliminary relief alone. However, the Fifth Circuit has found that preliminary relief, standing alone, has been enough for prevailing party status in certain cases. *Dearmore v. City of Garland*, 519 F.3d 517, 524-525 (5th Cir. 2008).

[6] Plaintiffs did not prevail on all claims. The Court has designated only those claims that were successful.

13

consent decree; (2) that materially alters the legal relationship between the parties; and (3) modified the defendant's behavior in a way that directly benefits the plaintiff at the time of the judgment or settlement.'"); *Buckhannon*, 532 U.S. at 604 ("enforceable judgments on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees."). There are no special circumstances that would render an award of fees and costs unjust in this case.

Pursuant to Fed. R. Civ. P. 54, the prevailing parties shall file their respective applications for fees and costs, substantiating the amount sought, no later than August 16, 2021. Movants shall confer with each other to the extent they shared expenses, and also confer with defense counsel prior to filing their applications in an attempt to reach an agreement on all or part of the amounts being sought. Defendants may file a response pertaining to those amounts that remain in dispute on or before August 31, 2021. Movants may file a reply brief, if necessary, within seven days thereafter.

SIGNED and ENTERED on the 13 day of July, 2021.

ORLANDO L. GARCIA
CHIEF U.S. DISTRICT JUDGE